AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
JULIA HARUMI MASS (SBN 189649)
WILLIAM S. FREEMAN (SBN 82002)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org
            wfreeman@aclunc.org

*Attorneys for Petitioner/Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on her own behalf, | Case No.: |
| Petitioner/Plaintiff, | **PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| v. | |
| Jefferson B. Sessions, Attorney General of the United States; James McHenry, Acting Director of the United States Executive Office for Immigration Review; Thomas E. Price, M.D., Secretary of the Department of Health and Human Services of the United States; Steven Wagner, Acting Assistant Secretary of the Administration for Children and Families; Scott Lloyd, Director of the Office of Refugee Resettlement of the United States; Elicia Smith, Federal Field Specialist of the Office of Refugee Resettlement of the United States; and Brent Cardall, Chief Probation Officer of Yolo County, in their official capacities, | **IMMIGRATION ACTION** |
| Respondents/Defendants. | |

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF

## INTRODUCTION

1.      Petitioner and Plaintiff Ilsa Saravia ("Plaintiff") brings this action on behalf of herself and son, A.H., a minor who is being wrongfully incarcerated in a secure juvenile facility by Defendants/Respondents ("Defendants"). A.H. is a citizen of Honduras who escaped abuse by his father and entered the United States in 2015 as an unaccompanied alien child. After a brief stint in the custody of the United States Office of Refugee Resettlement ("ORR"), he was released into Plaintiff's custody under an agreement between ORR and Plaintiff, and he has been living with Plaintiff in New York State under that agreement for the last two years. He is eligible to receive Special Immigrant Juvenile ("SIJ") status, which would put him on a lawful path to citizenship, and he has undertaken to comply with all the requirements to obtain SIJ status.

2.      On June 12, 2017, Immigration and Customs Enforcement ("ICE") agents arrested A.H. outside his home, refused his repeated requests to contact his attorney, and interrogated him without counsel present. On June 13, without notice to A.H.'s mother or his counsel and without explaining to A.H. what was happening to him, two federal agents escorted A.H. by airplane first to Los Angeles and then to Sacramento, California, where they left him in ORR custody in a secure juvenile facility, the Yolo County Juvenile Detention Facility ("Yolo").

3.      A.H. has been arrested without cause, transported across the country, and placed in a secure holding cell 2,500 miles from his mother and guardian without any notice or opportunity be heard regarding the government's purported justification for his detention, all in violation of his constitutional rights, his statutory rights, and the provisions of a federal court consent decree that is binding on Defendants.

4.      Defendants' actions removed A.H. from his home, community, and long term legal counsel just weeks before critical court hearings whose outcomes will determine A.H.'s ability to remain in his adopted country with his family. Defendants' violations of A.H.'s constitutional and statutory rights require the prompt intervention of this Court.

///

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

5.      A.H. is scheduled to appear in two hearings in New York next month, each of which is consequential to his access to permanent resident status and the ability to remain legally in the United States. He has a Master Calendar hearing scheduled for July 6 in Immigration Court in New York, New York, and failure to appear could render him subject to a removal order *in absentia*. On July 7, A.H. is scheduled to appear and testify before the Family Court of Nassau County in Westbury, New York in the final hearing in his application for SIJ status, for which he is eligible.

6.      If granted SIJ status, A.H. would become a legal permanent resident, would be able to seek termination of the removal proceedings, and would be eligible for naturalization after five years. If A.H. is unable to appear and testify, he may be unable to obtain the Family Court order that would qualify him for SIJ status.

7.      Plaintiff Saravia, acting as next friend of A.H., respectfully applies to this Court for a writ of habeas corpus ordering A.H.'s immediate release to Plaintiff's custody, or, in the alternative, to ORR custody in the vicinity of A.H.'s legal counsel and court hearings pending a hearing before a neutral decision-maker at which A.H. and his counsel can test the evidence against him and submit A.H.'s position on any purported justification for his detention.

## JURISDICTION

8.      This Court has subject matter jurisdiction over a writ of habeas corpus pursuant to Art. I, § 9, cl. 2 of the United States Constitution, 28 U.S.C. § 2241, 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1361. This action arises under the Due Process Clause of the Fifth Amendment of the United States Constitution, the Immigration and Nationality Act ("INA"), and Paragraphs 24A and 24B of the class action settlement agreement in *Flores v. Reno*, Case No. 85-cv-4544-RJK(Px) (C.D. Cal. Jan. 17, 1997) ("*Flores*"), which is binding on Defendants. This Court may grant relief under the habeas corpus statute, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

///

///

**VENUE**

9.     Venue is properly with this Court pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California, including decisions concerning the current detention of Petitioner. Specifically, Defendant Elicia Smith, who serves as the approval authority for transfer and release decisions pertaining to unaccompanied minors within the Northern California region, maintains a work space in San Francisco. Venue is proper in this Court pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-94 (1973).

**INTRADISTRICT ASSIGNMENT**

10.     Pursuant to Civil L. R. 3-2(c), this case should be assigned to the San Francisco Division of this Court because the action arises in the City and County of San Francisco.

**PARTIES**

11.     Plaintiff Ilsa Saravia, the next friend of A.H., is the mother of A.H. and is filing this complaint and petition on A.H.'s behalf, she also seeks injunctive relief on her own behalf as to the Fourth Claim for Relief only. Plaintiff resides in Amityville, Suffolk County (Long Island), New York. Plaintiff has been awarded sole custody of A.H. by the State of New York and is dedicated to A.H.'s best interests.

12.     A.H. is a seventeen year old unaccompanied immigrant child, a citizen of Honduras, who until June 12, 2017 resided with his mother on Long Island, but is currently imprisoned by Defendants in a secure detention facility in Yolo County, California, in the custody of ORR. As such, he is in custody under color of the authority of the United States, and he is in custody in violation of the Constitution or laws of the United States, within the meaning of 28 U.S.C. § 2241.

13.     Defendant Jefferson B. Sessions is the Attorney General of the United States, responsible for the enforcement of the nation's immigration laws. He is sued solely in his official capacity.

14.     Defendant James McHenry is the Acting Director of the United States Executive Office for Immigration Review ("EOIR"), the agency within the United States Department of Justice that is responsible for the adjudication of immigration cases.  He is sued solely in his official capacity.

15.     Defendant Thomas E. Price, M.D. is the Secretary of the Department of Health and Human Services ("HHS") of the United States, the federal agency upon whose orders A.H. is detained. He is sued solely in his official capacity.

16.     Defendant Steven Wagner is the Acting Assistant Secretary of the Administration for Children and Families. The Administration for Children and Families is an office within HHS that has responsibility for ORR, the agency that is directly responsible for the detention of A.H. He is sued solely in his official capacity.

17.     Defendant Scott Lloyd is the Director of ORR. He is sued solely in his official capacity.

18.     Defendant Elicia Smith is a Federal Field Specialist for ORR, who serves as the approval authority for the transfer and release of unaccompanied children within the geographic region of Northern California. She works in the field and maintains a work space in San Francisco, California.  She is sued solely in her official capacity.

19.     Brent Cardall is the Chief Probation Officer of Yolo County. Upon information and belief, Defendant Cardall is responsible for providing care and custody to unaccompanied minor children through a contract with ORR.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A.H. is Present in the U.S. as an Unaccompanied Alien Child

20.     After suffering severe abuse and neglect from his father in Honduras, A.H. fled Honduras and entered the United States as an unaccompanied minor on or about April 26, 2015. He was detained by U.S. Customs and Border Protection upon his arrival, and placed in the custody of ORR, an office within the Administration for Children and Families ("ACF") of the

U.S. Department of Health and Human Services ("HHS"), and the agency responsible for the care and custody of unaccompanied immigrant children in the United States. See 6 U.S.C. § 279(a). Upon his arrival, A.H. spent one month in ORR custody at Lincoln Hall in New York before being released to the custody of his mother, Plaintiff Saravia, on or about May 28, 2015. Plaintiff signed a sponsor agreement with ORR and became A.H.'s official sponsor.

21.     For over two years, between May 28, 2015 and June 12, 2017, A.H. lived with Plaintiff, his mother and sponsor, in Massapequa, New York. By order of the New York State Family Court for Nassau County dated January 29, 2016, Plaintiff was awarded sole residential and legal custody of A.H.

**A.H. is Pursuing SIJ Status, to which He is Entitled**

22.     Under the provisions of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122 Stat. 5044 (2008), A.H. is eligible to apply for SIJ status upon the issuance by an appropriate state court of an order (commonly referred to as a "Predicate Order") finding that (1) he is a dependent of the court; (2) he cannot be reunited with one parent due to abuse, abandonment and/or neglect; and (3) it is not in his best interest to return to his home country.  8 U.S.C. § 1101(a)(27)(J). A.H. qualifies for the issuance of the Predicate Order. Once the Predicate Order is issued, A.H. can file a Special Immigrant Juvenile Status Petition (U.S. Citizenship and Immigration Services Form I-360), he can obtain lawful permanent residency and a path to citizenship, and he can be protected from removal from the United States.

23.     On or about January 3, 2017, through his New York attorney, Ms. Gibbs, A.H. filed a Motion for Special Findings in the Family Court in Nassau County, requesting that the Family Court issue a Predicate Order containing the findings required under the TVPRA.

24.     The next hearing in the Family Court matter is currently scheduled to take place on July 6, 2017 at 9:00 a.m. in Westbury, New York. A.H. had planned to be present and to testify on his own behalf in order to establish the conditions that would enable the Court to issue the Predicate Order.

25.     A.H. is also the subject of removal proceedings under 8 U.S.C. § 1226(a) in Immigration Court in New York, New York. He has a Master Calendar hearing in this matter on July 7, 2017 at 8:30 a.m. Failure of A.H. to appear could result in an order of removal *in absentia*.

**A.H. is Arrested, Transported across Country, and Incarcerated in a Secure Facility**

26.     On or about June 12, A.H. was arrested outside his home by two plainclothes officers who identified themselves as Immigration and Customs Enforcement ("ICE") officers and said they had an order to arrest him. A.H. asked why the officers were arresting him and they told A.H. he had admitted to being in a gang, which was untrue. The officers handcuffed him and transported him to a holding cell. They did not give him an opportunity to gather any belongings or to communicate with either his mother or his attorney.

27.     After about thirty minutes in the holding cell, an officer came into the cell and A.H. asked to speak with his attorney. The officer did not reply to A.H.'s request.

28.     Later, two officers (one who had participated in the arrest and one new officer) came to the cell and woke A.H., took him to a small room, and began to question him. A.H. said he would not answer their questions before he could talk to his mother. The officers allowed him to call his mother, leaving the door to the room open and standing right at the entrance. A.H told his mother he had been arrested by ICE and that he might have to pay bond if ordered to do so by a judge, and asked her to contact his immigration attorneys to let them know he was in ICE custody. The call lasted about two minutes.

29.     After the phone call, the two officers came back into the room. A.H. asked again to talk to his attorney. The officers said he would be able to talk to his lawyer but that they first had questions for him. They asked if he was in a gang. He said he was not. They told him he should not be afraid to tell them he was a member of a gang and that they had a police report that said he had admitted to being in a gang. A.H. denied all involvement with a gang. The officers then asked him if he knew anyone who was a gang member. A.H. answered that he did not. The officers repeated these questions and statements several times and A.H. continually denied being

in a gang or knowing gang members. The agents did not allow A.H. to contact his attorney but they did ask if he wanted to appear before a judge or pay bond. A.H. replied that he would like to go before a judge. The agents took A.H. back to his cell.

30.     A short time later, the two agents that had interviewed A.H. retrieved him from the cell and told him they were taking him to Manhattan. A.H. asked if he would see a judge there, and they replied yes. The car ride to the Varick Street Processing and Detention Center in Manhattan took about two hours. Once they arrived, A.H. spent about an hour in an office and then was put in a cell. A.H. was only wearing sandals with no socks, a t-shirt, shorts, and no sweater. He was not given a blanket although the cell was cold. There was no bed, so he slept on a concrete bench.

31.     At about 3:30 a.m. on Tuesday, June 13, 2017, an officer knocked and woke A.H. and told him they were leaving. A.H. asked the officer if he was going to see a judge. The officer said he was. That officer and another put A.H. in a car and drove about an hour to the airport. Realizing he was at the airport, A.H. asked the officers where he was going and said, "I'm not going to see my judge?" The officers told him he was going to Los Angeles and would see a judge then.

32.     The officers accompanied A.H. on a flight to Los Angeles, California. When they arrived in Los Angeles, the officers told A.H. he was going to get onto another flight to Sacramento. A.H. again inquired and was assured that he was going to see a judge in Sacramento.

33.     When they arrived in Sacramento, on Tuesday, June 13, 2017, A.H. asked again if they were going to see a judge. The agents responded yes, but first they were going to a children's home ("casa hogar"). They proceeded to take him to the Yolo Juvenile Detention Facility in Woodland, California, where he has been imprisoned ever since.

34.     Yolo is one of only two "secure care facilities" used by ORR to house unaccompanied immigrant children and provides the most restrictive setting possible for youth in ORR custody. A.H. is confined to a locked cell with a metal door for much of the day. Even

during recreational time and meals, A.H. is required to request permission before standing up to get a drink of water or go to the bathroom. Although A.H. was eventually permitted to place calls to his New York attorney from Yolo, such calls are only permitted after 2:00 p.m., which corresponds to 5:00 p.m., the end of the work day in the Eastern Time Zone where his New York attorney is located.

**A.H.'s Incarceration is Utterly Devoid of Reason or Due Process**

35.     During the time of his initial detention and transportation across country, A.H.'s mother and his New York attorney repeatedly requested of Defendants and their agents information concerning A.H.'s location, condition, and the reasons he had been detained. Defendants did not even confirm that they had arrested A.H. until the day after his arrest; and even then, they provided no information as to A.H.'s whereabouts.

36.     At approximately 5:00 p.m. on Tuesday, June 13, 2017, Ms. Gibbs, A.H.'s New York attorney, together with Lenni Benson, a professor at New York Law School, telephoned James De La Cruz, an official of ORR, and asked for information about A.H.'s whereabouts. Mr. De La Cruz informed Ms. Gibbs and Professor Benson that A.H. was "en route" to Yolo Detention Center, but did not provide information about who had decided to send him there or why A.H. had been taken into custody. He said A.H. would be subjected to a determination whether his detention in a secure facility would be mantained—a process that he said usually takes 32 days.

37.     Ms. Gibbs informed Mr. De La Cruz that A.H. has pending proceedings in state court and Immigration Court, and requested that Mr. De La Cruz stop the transfer. Mr. De La Cruz told Ms. Gibbs that he could not intervene and that the transfer was already in process.

38.     Soon after this telephone call, Ms. Gibbs sent an email demand to Mr. De La Cruz, demanding, among other things, that Mr. De La Cruz (1) inform her of the exact location of her client and where he was being taken; (2) inform his own staff not to remove A.H. from New York State; and (3) inform A.H. in English and Spanish that he should not consent to any interview or questioning until counsel could be present.

39.     During the telephone call, Mr. De La Cruz also directed Ms. Gibbs to a publication entitled "ORR Guide: Children Entering the United States Unaccompanied" (ORR Guide) which, among other things, describes ORR placement criteria for unaccompanied children. The ORR Guide is available at:  https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied.

40.     The ORR Guide sets forth criteria regarding placement in a "secure facility" that manifestly do not apply to A.H. ORR only places an unaccompanied alien child in a secure facility if the child (1) poses a danger to self or others, or (2) has been charged with having committed a criminal offense. ORR may not base placement in a secure facility under the latter criterion if the offenses charged were "isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon," or were "petty offenses which are not considered grounds for a stricter means of detention …."

41.     A.H. does not meet any of the criteria for detention in a secure facility. During his time in the United States, A.H. has had two minor brushes with law enforcement, neither of which resulted in a conviction of any offense. In April or May 2016, a classmate alleged that A.H. had threatened him with a knife. Although A.H. was charged with "menacing with a weapon," the charges were later adjourned in contemplation of dismissal. In March 2017, A.H. was charged with fifth degree marijuana possession, the lowest possible possession offense. This charge, too, was adjourned in contemplation of dismissal. Under New York criminal law, adjournment in contemplation of dismissal is a final adjudication that does not involve either an admission or a finding of guilt, and therefore should not be treated as a "conviction" that carries adverse immigration consequences.

42.     Plaintiff is informed and believes, and on that basis alleges, that Defendants arrested A.H. and placed him in a highly restrictive "secure facility" in order to make a dramatic public show of force as part of a claimed "immigration crackdown." On June 14, 2017, two days

after A.H.'s arrest, ICE issued a press release announcing the launch of "Operation Matador" and the "DHS [Department of Homeland Security] Transnational Organized Crime Initiative" which was purportedly intended "to combat the proliferation of MS-13 and other transnational criminal gang activity in the New York City metropolitan area, including Long Island." The full text of the press release is available at: https://www.ice.gov/news/releases/operation-matador-nets-39-ms-13-arrests-last-30-days. In the press release, ICE claimed that its efforts had resulted in 45 arrests, including 8 in Nassau County, and that all of the individuals arrested were "confirmed as gang members or affiliates." According to ICE, "[i]ndividuals are confirmed as gang members if they admit membership in a gang, have been convicted of violating Title 18 USC 521 or any other federal or state law criminalizing or imposing civil consequences for gang-related activity, or if they meet certain other criteria such as having tattoos identifying a specific gang or being identified as a gang member by a reliable source."

43.     Based on the foregoing press release, Plaintiff is informed and believes that Defendants may have counted the arrest of A.H. toward the total of 45 "confirmed gang members" even though has never been a member of a gang and, to his knowledge, he has never been "identified as a gang member by a reliable source."

44.     Moreover, Plaintiff is informed and believes that Defendants arrested A.H. and placed him in a secure facility based on an improper application of the criteria contained in the ORR Guide. The ORR Guide was revised on June 12, 2017—the day of A.H.'s arrest as part of a purported gang suppression effort—to include, as factors for consideration in placing a child in a secure facility, whether the child "[h]as reported gang involvement or displays gang affiliation while in care" or [h]as self-disclosed violent criminal history or gang involvement prior to placement in ORR custody…." However, neither of these criteria applies to A.H. because he could not have "reported gang involvement or display[ed] gang affiliation while in care" *prior to* being detained; and he has never "self-disclosed" either "violent criminal history or gang involvement."

45.     ORR has no process by which A.H., his legal custodian, or his counsel can obtain the evidence upon which ORR relies to detain him in the most restrictive setting available for children in ORR custody. A.H., his legal custodian, and his counsel have no opportunity to test this evidence, cross examine the witnesses who may be the source of incriminating information, or to present the true facts to a neutral decision-maker to determine whether such a great deprivation of liberty is warranted by a compelling governmental interest.

46.     In addition, ORR has recently taken the extraordinary position that unaccompanied minor children in ORR custody are not entitled to a bond hearing before an immigration judge.

47.     As a result of Defendants' wrongful acts, A.H., a minor who would otherwise be eligible for SIJ status that would allow him to remain in the United States and gain a path to citizenship, has been arrested without cause, placed in a secure holding cell 2,500 miles from his mother and guardian, deprived of access to his counsel, deprived of notice and an opportunity to be heard on whether he should be detained, and deprived of any consideration of his right to be released on bond, in violation of due process and federal law. In addition, A.H. now faces a real threat of being denied the opportunity to participate in legal proceedings that would entitle him to remain in the United States.

## ADDITIONAL LEGAL FRAMEWORK

48.     As a minor within the custody of ORR, A.H. is protected by the terms of the 1995 consent decree entered by the U.S. District Court for the Central District of California in *Flores v. Reno*, Case No. CV 85-4544-RJK(Px) ("*Flores* Decree"), which sets national standards for detention, release, and treatment of all such minors. These terms include the availability of judicial oversight of detention by an Immigration Judge and judicial review of other violations by any United States District Court. The *Flores* Decree agreement remains valid in its entirety, and none of the provisions in the Homeland Security Act of 2002 or the TVPRA conflict with the government's obligations under the *Flores* Decree.

49.     The *Flores* Decree and federal immigration laws require that unaccompanied minors in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child." The statute requires that "the placement of a child in a secure facility shall be reviewed, at a minimum, on a monthly basis" and it provides guidelines for the reunification of minors with family members, including the conducting of home studies. 8 U.S.C. §§ 1232(c)(2) and (3).

50.     The immigration laws further provide that the Secretary of HHS shall ensure, to the greatest extent practicable, that unaccompanied minors in HHS custody "have counsel to represent them in legal proceedings" and "[t]o the greatest extent practicable . . . shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge." 8 U.S.C. § 1232(c)(5).

51.     Moreover, under the INA, an alien is guaranteed the right to counsel of the alien's own choosing, at no expense to the government, in removal proceedings.  8 U.S.C. § 1362. With limited exceptions that do not apply here, immigration detainees also have a statutory right to a bond hearing. 8 U.S.C. § 1226(a).

## INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS

52.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

53.     An actual and substantial controversy exists between Plaintiff and Defendants regarding their respective legal rights and duties. Plaintiff contends that Defendant's continued detention of A.H. violates his constitutional and statutory rights as alleged above. Defendants deny that their conduct violates A.H.'s constitutional and statutory rights and intend to continue such conduct.

54.     Defendants' conduct as alleged above has caused and, absent injunctive relief or a writ of habeas corpus, will continue to cause irreparable harm to Plaintiff and A.H. by denying A.H.'s liberty without due process and by interfering with his access to courts and counsel, as well as his statutory and contractual rights to be placed in the least restrictive setting that is in his

best interest. In the absence of immediate relief, A.H. will continue to be unjustly incarcerated and will be denied the opportunity to participate in court proceedings that are critical to his ability to remain in the United States and proceed on a path to citizenship.

55.     There is no adequate remedy at law for the continuing violations by Defendants of A.H.'s constitutional and statutory rights.

## FIRST CLAIM FOR RELIEF

### Interference with Constitutional Right of Access to the Courts

### First and Fifth Amendments to the U.S. Constitution

56.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

57.     The First Amendment right to petition the government includes the right to file civil actions in court that have a reasonable basis in law or fact.

58.     The Fifth Amendment right to substantive due process also includes the right to access the courts without undue governmental interference.

59.      A.H.'s arrest, transportation to a distant location and continuing detention impede his ability to participate in judicial proceedings, both in Family Court and in Immigration Court, that are critical to his ability to establish his entitlement to SIJ status, to put him on a path to citizenship, and to prevent his removal. By interfering with A.H.'s ability to participate in these proceedings, Defendants have denied, and unless enjoined will continue to deny, his right to access to the courts guaranteed by the First and Fifth Amendments to the U.S. Constitution.

## SECOND CLAIM FOR RELIEF

### Interference with Right to Counsel

### First and Fifth Amendments to the U.S. Constitution,

### INA (8 U.S.C. §§ 1362, 1229a) and TVPRA (8 U.S.C. § 1232)

60.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

61.     The Due Process Clause of the Fifth Amendment guarantees respondents in removal proceedings the right to representation by counsel of their choice, at no expense to the government.

62.     Civil litigants, including A.H., have a First Amendment right to be represented by counsel of their choice free from unreasonable interference with the attorney-client relationship.

63.     A.H. has a statutory right to representation by counsel, at no expense to the government under the INA. 8 U.S.C. §§ 1362, 1229a(b)(4)(A).

64.     Defendant Price has a statutory obligation to ensure A.H.'s access to representation to the greatest extent practicable under the TVPRA. 8 U.S.C. § 1232(c)(5).

65.     By their conduct, Defendants have interfered with and denied, and unless enjoined will continue to interfere with and deny, A.H.'s access to counsel in violation of his constitutional and statutory rights.

## THIRD CLAIM FOR RELIEF

### Deprivation of Liberty without Procedural Due Process

### Fifth Amendment to the U.S. Constitution and INA, 8 U.S.C. § 1226

66.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

67.     The Fifth Amendment to the U.S. Constitution protects all "persons" from deprivation of liberty without due process of law.

68.     8 U.S.C. § 1226(a) requires that immigration detainees in removal proceedings be provided access to a bond redetermination hearing before an immigration judge.

69.     In violation of this statutory requirement, Defendants, as a matter of policy and practice, do not allow unaccompanied immigrant children in ORR custody to seek bond before an immigration judge.

///

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

70.     Defendant ORR has not provided A.H. or his representatives, and as a matter of general policy and practice does not provide youth in its custody or their representatives, access to the evidence upon which it basis its custody decisions or an opportunity to present counter-evidence and argument to a neutral decision maker.

71.     Defendants' arrest and continuing detention of A.H. without any notice or opportunity to be heard regarding the basis for detention violate his rights to procedural due process under the Fifth Amendment.

## FOURTH CLAIM FOR RELIEF

### Interference with Family Integrity without Due Process

### Fifth Amendment to the U.S. Constitution

72.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

73.     Plaintiff and A.H. have liberty interests in family integrity, which is protected by procedural due process.

74.     Defendants' arrest and removal of A.H. from his family home and vicinity has deprived Plaintiff and A.H. of family integrity without due process, and unless enjoined will continue to do so, in violation of the Fifth Amendment.

## FIFTH CLAIM FOR RELIEF

### Denial of Substantive Due Process

### Fifth Amendment to the U.S. Constitution

75.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

76.     The Due Process Clause of the Fifth Amendment permits government detention of individuals only where it is ordered in a criminal proceeding with adequate procedural safeguards or in special and non-punitive circumstances where a special justification outweighs an individual's interest in avoiding physical restraint.

77.    A.H. does not meet Defendant's own criteria for placement in a secure care facility.

78.    To the extent A.H. meets Defendants' criteria for placement in a secure care facility, those criteria are so overbroad as to impose liberty restrictions that are not justified by Defendants' interests.

79.    Detention of A.H. at Yolo is so unnecessarily restrictive as to be punitive in nature and therefore violates his right to substantive due process.

80.    Defendants have denied, and unless enjoined will continue to deny, A.H.'s liberty in violation of the substantive due process component of the Fifth Amendment.

## SIXTH CLAIM FOR RELIEF

### Failure to Place in Least Restrictive Setting Consistent with Child's Best Interests

### TVPRA, 8 U.S.C. § 1232

81.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

82.    The TVPRA requires that unaccompanied minors in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child," and other protections to ensure compliance with the "least restrictive setting" standard and family reunification. 8 U.S.C. § 1232(c).

83.    Defendants' actions have violated, and unless enjoined will continue to violate, A.H.'s rights under the TVPRA.

## SEVENTH CLAIM FOR RELIEF

### Violation of *Flores v. Reno* Consent Decree

84.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

///

///

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

85.     Plaintiff seeks the Court's review and an order to remedy violations of A.H.'s rights under the *Flores* Decree pursuant to Paragraph 24B, which provides: "[a]ny minor who disagrees with the INS's determination to place that minor in a particular type of facility … may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination …."

86.     Defendants have violated, and unless enjoined will continue to violate the A.H.'s rights under the following paragraphs of the *Flores* Decree:

a.    Paragraph 12A: "Whenever the INS takes a minor into custody, it shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable."

b.    Paragraph 14: requiring that the Government release a minor to the minor's parent unless "the detention of the minor is . . . required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others."

c.    Paragraph 24A: "A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case . . . ."

d.    Paragraph 27: "No minor who is represented by counsel shall be transferred without advance notice to such counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived such notice . . . ."

///

///

///

///

///

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

1.     A declaration that the arrest, transportation, and detention of A.H. are in violation of A.H.'s First and Fifth Amendment rights, the TVPRA, the INA, and the *Flores* Decree;

2.     A declaration that:

    a.     A.H. is entitled to immediate release by Defendants to the custody of Plaintiff; or, in the alternative,

    b.     a declaration that A.H. is entitled to be transferred to an ORR facility close to Plaintiffs' home and afforded a prompt hearing in which ORR has the burden of justifying A.H.'s detention and A.H. has the right to be represented by counsel, notice of and access to the evidence on which ORR relies, and an opportunity to cross examine witnesses and present A.H.'s response before a neutral decision maker; or, in the alternative,

    c.     a declaration that A.H. is entitled to a bond redetermination hearing;

3.     A temporary restraining order and a preliminary and permanent injunction ordering Defendants, and all persons acting under their direction:

    a.     to immediately release A.H. to the custody of Plaintiff; or, in the alternative

    b.     to transfer A.H. to an ORR facility close to Plaintiffs' home and afford him a prompt hearing in which ORR has the burden of justifying A.H.'s detention and A.H. has the right to be represented by counsel, notice of and access to the evidence on which ORR relies, and an opportunity to cross examine witnesses and present A.H.'s response before a neutral decision maker; or, in the alternative,

    c.     to conduct a bond redetermination hearing within three (3) court days of the issuance of the injunction;

///

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

4.      Attorneys' fees and costs; and

5.      For such other and further relief as the Court may deem proper.

Dated: June 22, 2017                    AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF NORTHERN CALIFORNIA

                                        By: _/s/ Julia Harumi Mass_____
                                            Julia Harumi Mass
                                            William S. Freeman
                                            Attorneys for Plaintiff

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF