CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
VINITA B. ANDRAPALLIYAL
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962
E-mail: Sarah.B.Fabian@usdoj.gov

*Counsel for Respondents*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on her own behalf,<br><br>        Petitioner/Plaintiff,<br><br>    vs.<br><br>Jefferson B. Sessions III, U.S. Attorney General, et al.,<br><br>        Respondents/Defendants. | Case No.: 3:17-cv-03615<br><br>Defendants' Opposition to Ex Parte Application for Temporary Restraining Order<br><br>Date: June 29, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor, 450 Golden Gate Ave, San Francisco, CA 94102<br><br>Honorable Vince Chhabria |

## TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................1

II.   LEGAL FRAMEWORK ..................................................................................2

      a.   The Homeland Security Act of 2012 ....................................................2

      b.   Trafficking Victims Protection Reauthorization Act of 2008..................2

III.  FACTUAL BACKGROUND ............................................................................4

IV.   ARGUMENT ...................................................................................................4

      a.   A TRO Is Not Proper Here Because Plaintiff Does Not Seek To Preserve the Status Quo. ...............................................................................................4

      b.   Plaintiff has Not Met The Standards for Issuance of a TRO ...................5

          1.   Plaintiff Has Not Shown a Likelihood of Success on the Merits ...................6

            A. Plaintiff cannot bring habeas corpus claims on her own behalf................6

            B. The Petition must be dismissed or transferred to the Eastern District of California. ................................................................................7

            C. A.H.'s custody by HHS does not violate the applicable statutes or the Constitution ..................................................................................8

               i.   A.H.'s custody by HHS is in accordance with the applicable statutory framework. ..................................................................8

               ii.  A.H.'s custody by HHS does not violate the Constitution...........10

            D. HHS's custody of A.H. does not interfere with his ability to participate in family court and immigration court proceedings. ....................................13

          2.   Plaintiff Has Not Shown Irreparable Harm. ....................................................14

          3.   Plaintiff Has Not Shown That the Balance of Hardships Tips in Favor of A.H. or That Injunctive Relief is in the Public Interest. ..........................................15

V.    CONCLUSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Cottrell*,
  632 F. 3d 1127 (9th Cir. 2011) ........................................................................... 5, 14

*Alvarez-Garcia v. Ashcroft*,
  378 F.3d 1094 (9th Cir. 2004) ............................................................................. 10

*Angov v. Lynch*,
  788 F.3d. 893 (9th Cir. 2015) .............................................................................. 10

*Armentero v. INS*,
  340 F.3d 1058 (9th Cir. 2003) ............................................................................... 7

*Bakhtriger v. Elwood*,
  360 F.3d 414 (3d Cir. 2004) .................................................................................. 6

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d. 1011 (9th Cir. 2016) ............................................................................ 14

*Braden v. 30th Judicial Circuit Court of Ky.*,
  410 U.S. 484 (1973) ............................................................................................... 8

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ............................................................................... 15

*Castro v. Dep't of Homeland Sec.*,
  No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017) ........................................ 10

*Castro v. United States*,
  835 F.3d 422 (3d Cir. 2016) ................................................................................ 10

*Clark v. Smith*,
969 F.2d 1329 (9th Cir. 1992) ............................................................................. 10

*D.B. v. Cardall*,
  826 F.3d 721 (4th Cir. 2016) ................................................................................. 2

*D.B. v. Poston*,
  119 F.Supp. 3d 472 (E.D. Va. 2015) ..................................................................... 9

*F.L. v. Thompson*,
  293 F. Supp. 2d 86 (D.D.C. 2003) ......................................................................... 2

*Flores v. Sessions*,
    507 U.S. ---, Case No. 85-4544 (C.D. Cal.). ...................................................... 8, 12

*Fyock v. City of Sunnyvale*,
    25 F. Supp. 3d 1267 (N.D. Cal. 2014) ............................................................ 12

*Golden Gate Rest. Ass'n v. City of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ...................................................................... 15

*Gutierrez Chavez v. I.N.S.*,
    337 F.3d 1023 (9th Cir. 2003) ........................................................................ 8

*Gutierrez-Chavez v. I.N.S.*,
    298 F.3d 824 (9th Cir. 2002) .......................................................................... 8

*Holloman v. Watt*,
    708 F.2d 1399 (9th Cir. 1983) ........................................................................ 6

*Jones v. Cunningham*,
    371 U.S. 236 (1963) ....................................................................................... 6

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ...................................................................................... 10

*LGS Architects, Inc. v. Concordia. Homes of Nevada*,
    434 F.3d 1150 (9th Cir. 2006) .................................................................... 4, 5

*Marin All. for Med. Marijuana v. Holder*,
    866 F. Supp. 2d 1142 (N.D. Cal. 2011) ...................................................... 14

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................................... 11

*Mudric v. Att'y Gen.*,
    469 F.3d 94 (3d Cir. 2006) ......................................................................... 14

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015) ...................................................................... 13

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) .................................................................................... 5

*Nordloff v. Allison*,
    No. 1:10-cv-02170 AWI, 2012 WL 43136 (E.D. Cal. Jan. 9, 2012) ...................... 13

*Pit River Home and Agric. Coop. Ass'n v. United States*,
    30 F.3d 1088 (9th Cir. 1994) ............................................................ 6

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ............................................................15

*Pub. Serv. Co. of New Hampshire v. Town of W. Newbury*,
    835 F.2d 380 (1st Cir. 1987)............................................................ 14

*Puri v. Gonzalez*,
    464 F.3d 1038 (9th Cir. 2006) .......................................................... 7

*Reno Air Racing Ass'n., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .......................................................... 4

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ......................................................................... 7

*Santosky v. Kramer*,
    455 U.S. 745 (1982) ....................................................................... 12

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953) ....................................................................... 10

*Smith v. Grimm*,
    534 F.2d 1346 (9th Cir. 1976) .......................................................... 6

*United States v. Barajas-Alvarado*,
    655 F.3d 1077 (9th Cir. 2011) ........................................................ 10

*United States v. Peralta-Sanchez*,
    No. 14-50393, 2017 WL 510454 n.8 (9th Cir. Feb. 7, 2017).................. 10

*United States v. Salerno*,
    481 U.S. 739 (1987) ....................................................................... 12

*United States v. Verdugo–Urquidez*,
    494 U.S. 259 (1990) ....................................................................... 10

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ......................................................................... 4

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ....................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ........................................................................................... 5

*Zinerman v. Burch,*
   494 U.S. 113 (1990) ...................................................................................... 11

## STATUTES

6 U.S.C. § 279(a) .............................................................................................. 2

6 U.S.C. § 279(b)(l)(a) ...................................................................................... 2

6 U.S.C. § 279(b)(l)(C) ..................................................................................... 2

6 U.S.C. § 279(b)(l)(D) ..................................................................................... 2

6 U.S.C. § 279(b)(2)(A) ..................................................................................... 2

6 U.S.C. § 279(b)(2)(B) ..................................................................................... 2

6 U.S.C. § 279(g)(2) .......................................................................................... 2

8 U.S.C. § 1101(a)(27)(J) ................................................................................ 14

8 U.S.C. § 1226(a) ............................................................................................. 8

8 U.S.C. § 1232 .................................................................................................. 9

8 U.S.C. § 1232(b)(1) ........................................................................................ 2

8 U.S.C. § 1232(b)(3) ............................................................................... 3, 9, 10

8 U.S.C. § 1232(c)(2)(A) ........................................................................ 3, 4, 9, 10

8 U.S.C. § 1232(c)(3) ......................................................................................... 3

8 U.S.C. § 1232(c)(3)(A) ................................................................................. 3, 9

8 U.S.C. § 1232(c)(3)(B) .................................................................................... 3

8 U.S.C. § 1232(c)(3)(4) .................................................................................... 3

8 U.S.C. § 1255(a) ........................................................................................... 14

8 U.S.C. § 1255(h) ........................................................................................... 14

8 U.S.C. § 2241 ................................................................................................................. 6

28 U.S.C. § 1331 ............................................................................................................... 6

28 U.S.C. § 1361 ............................................................................................................... 6

28 U.S.C. § 2241 ............................................................................................................ 6, 7

28 U.S.C. § 2241(c)(1) ...................................................................................................... 6

28 U.S.C. § 2241(c)(3) ...................................................................................................... 6

28 U.S.C. § 2243 ............................................................................................................... 7

## REGULATIONS

8 C.F.R. § 1003.23(b)(4)(iii)(A)(2) ................................................................................. 5

8 C.F.R. § 1003.25(c) ...................................................................................................... 13

## I.   __INTRODUCTION__

The Government hereby opposes Plaintiff's request for a temporary restraining order (TRO), ECF 7, and asks the Court instead to set this case for briefing on a standard briefing timeline for a habeas corpus petition. A TRO should not issue in this case for multiple reasons.

First, this Court lacks jurisdiction over this habeas petition. Plaintiff has filed a petition for habeas corpus on behalf of A.H., who is in U.S. Department of Health and Human Services (HHS) custody in the Yolo Juvenile Detention Facility in Woodland, CA. That facility is located in the Eastern District of California, and jurisdiction over any habeas petition for A.H. therefore is found only in that District.

Second, no irreparable harm would accrue in the absence of a TRO. HHS agrees that it will make arrangements for A.H. to participate in his state court proceedings and his immigration court proceedings on July 6 and 7, 2017 by telephone or video conference if A.H. is unable to participate in person. HHS also provides, and will continue to provide, opportunities for A.H. to regularly meet with his counsel, either in person or by telephone. Further, the U.S. Department of Homeland Security (DHS) is seeking to transfer A.H.'s removal proceedings to San Francisco so he can continue to appear for those proceedings in person. Thus, the immediate harms identified by Plaintiff are mitigated.

Finally, a TRO should not issue because Plaintiff ignores the important statutory framework of the Homeland Security Act (HSA) and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), which govern the custody of A.H. by HHS. Instead, Plaintiff asks the Court to order affirmative relief that would contravene the requirements of that statutory framework, and that is not properly sought through a TRO. The complex issues in this case require that the Court make a full and fair review of the record and of the legal framework that governs this case, and such review can only be provided by allowing the Government sufficient time to fully respond to the Petition. Thus, a TRO ordering the release of A.H. is not the proper vehicle for resolution of this case.

## II.   LEGAL FRAMEWORK

### a.   The Homeland Security Act of 2002

Before the creation of DHS in 2002, the care and placement of unaccompanied alien children (UACs) in the United States was the responsibility of the Office of Juvenile Affairs in the former Immigration and Naturalization Service (INS). *See F.L. v. Thompson*, 293 F. Supp. 2d 86, 96 (D.D.C. 2003). In 2002, Congress enacted the HSA, which created DHS and transferred most immigration enforcement functions formerly performed by the legacy INS to the newly-formed DHS and its components.

The HSA also transferred to HHS, Office of Refugee Resettlement (ORR), the responsibility for the care and placement of UACs "who are in Federal custody by reason of their immigration status." HSA § 462(a), (b)(1)(A), (b)(1)(C); 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C). The HSA defined an "unaccompanied alien child" as:

> a child who-
> (A) has no lawful immigration status in the United States;
> (B) has not attained 18 years of age; and
> (C) with respect to whom- (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2). The HSA transferred to HHS the responsibility for making all placement decisions for UACs, and required HHS to consult with DHS and others in making such decisions. 6 U.S.C. § 279(b)(l)(C), (D), (b)(2)(A). The HSA also prohibited HHS from releasing UACs on their own recognizance. 6 U.S.C. § 279 (b)(2)(B).

### b.   Trafficking Victims Protection Reauthorization Act of 2008

In 2008, the TVPRA codified further protections related to the processing, custody, and detention of UACs. "The intricate web of statutory provisions relating to UACs reflects Congress's unmistakable desire to protect that vulnerable group." *D.B. v. Cardall*, 826 F.3d 721, 738 (4th Cir. 2016). The TVPRA built on the HSA and required that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate,

***shall be*** the responsibility of the Secretary of Health and Human Services." 8 U.S.C.

§ 1232(b)(1) (emphasis added). Further, the TVPRA requires that:

> Except in the case of exceptional circumstances, any department or agency of the
> Federal Government that has an unaccompanied alien child in custody shall
> transfer the custody of such child to the Secretary of Health and Human Services
> not later than 72 hours after determining that such child is [a UAC].

8 U.S.C. § 1232(b)(3).

The TVPRA makes clear that HHS is responsible for all placement decisions for UACs in

Government custody, and provides guidelines for placing UACs with suitable custodians,

including dictating the requirements for HHS to evaluate the suitability of any placement. 8

U.S.C. § 1232(c)(3). The TVPRA prohibits HHS from releasing to a proposed custodian:

> unless [HHS] makes a determination that the proposed custodian is capable of
> providing for the child's physical and mental well-being. Such determination
> shall, at a minimum, include verification of the custodian's identity and
> relationship to the child, if any, as well as an independent finding that the
> individual has not engaged in any activity that would indicate a potential risk to
> the child.

8 U.S.C. § 1232(c)(3)(A). In some instances, HHS must conduct a home study before placing a

UAC with a proposed custodian. 8 U.S.C. § 1232(c)(3)(B). If the proposed custodian is found to

be a suitable custodian to whom an unaccompanied child may be released, the custodian receives

a legal orientation presentation addressing their responsibility to ensure the juvenile's appearance

at all immigration proceedings, and to protect the child from mistreatment, exploitation, and

trafficking.[1] *See* 8 U.S.C. § 1232(c)(3)–(4).

The statute further requires that UACs who remain in HHS custody must be "promptly

placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. §

1232(c)(2)(A). It delegates to the Secretary of HHS the authority to (1) make such placement

decisions, considering "danger to self, danger to the community, and risk of flight," *id.*, and (2)

---

[1] Finally, when reunification is complete, HHS must conduct follow-up services, during the pendency of removal
proceedings, on children for whom a home study was conducted, and is authorized to conduct follow-up services in
cases involving children with mental health or other needs who could benefit from ongoing assistance from a social
welfare agency. 8 U.S.C. § 1232(c)(3)(B).

create review "procedures" to be used when a UAC is placed in a secure facility. Specifically, secure placements "shall be reviewed, at a minimum, on a monthly basis, in accordance with procedures prescribed by the Secretary, to determine if such placement remains warranted." 8 U.S.C. § 1232(c)(2)(A).

ORR has created a comprehensive policy guide for carrying out its statutory mandate. OFFICE OF REFUGEE RESETTLEMENT, ORR Guide: Children Entering the United States Unaccompanied ("ORR Guide"), *available at* http://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last visited June 24, 2017).

### III.   FACTUAL BACKGROUND

Respondents refer the Court to the attached declaration of Daniel Loechner, Group Supervisor, Office of Homeland Security Investigations, U.S. Immigration and Customs Enforcement (ICE) (Loechner Decl.), for factual background regarding A.H.'s arrest by ICE. Ex. A. Respondents further refer the Court to the declaration of Jim De La Cruz, Senior Federal Field Specialist Supervisor, ORR, Administration for Children and Families, HHS (De La Cruz Decl.), for factual background regarding A.H.'s present status in ORR custody. Ex. B.

### IV.   ARGUMENT

#### a.   A TRO Is Not Proper Here Because Plaintiff Does Not Seek to Preserve the Status Quo.

Plaintiff seeks a TRO expediting the ultimate relief sought in this case—the release of A.H. in contravention of the TVPRA's requirements. Plaintiff's motion inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Instead, Plaintiff asks this Court to completely alter the status quo by granting A.H. the very relief he hopes to obtain through this action. Such a "mandatory injunction," as it is known, is granted only in extraordinary circumstances and is "particularly disfavored." *See LGS Architects, Inc. v. Concordia. Homes of Nevada*, 434 F.3d 1150, 1158 (9th Cir. 2006); *see also*

*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO").

In this case, the Court should be particularly cautious about ordering the relief requested by Plaintiff without proving a full and fair opportunity for briefing to determine whether A.H.'s custody, in fact, complies with the TVPRA and the Constitution, because release of A.H. from HHS custody may well moot this case. This is because HHS does not have the ability to re-detain a minor on its own once it has released that individual from its custody. Thus, the Court should deny Plaintiffs request for a TRO granting Plaintiff release from HHS custody, and should instead refer this case for full briefing on the issues presented.[2]

### b.  Plaintiff Has Not Met the Standards for Issuance of a TRO.

The substantive standard for granting a TRO is the same as that for entering a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. This is particularly so where, as here, the movant seeks a "mandatory injunction," effectively a judgment on the merits before dispositive motions are filed or a trial is held. *See LGS*, 434 F.3d at 1158.

The Ninth Circuit follows a "sliding scale" approach to preliminary injunctions. *See All. for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131 (9th Cir. 2011). Under this approach, a weaker showing of likelihood of success on the merits could be offset by a stronger showing with respect

---

[2] It also should be considered that the relief Plaintiff seeks is not necessary to address what Plaintiff alleges are the immediate harms A.H. will suffer with regard to his state court and immigration court hearings scheduled for July 6 and 7, 2017. HHS has committed that it will make arrangements to allow A.H. to participate in the State court hearing by telephone or video conference, and is willing to make arrangement so that A.H. can participate in his immigration proceedings by phone as well, if needed. De La Cruz Decl. ¶ 8. Moreover, DHS has moved to transfer A.H.'s immigration court proceedings to San Francisco so that A.H. may participate in those proceedings. Finally, if *in absentia* order of removal was obtained while Plaintiff was in federal custody, which is unlikely, the regulations provide for the case to be reopened. 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2).

to the balance of the equities. *Id.* at 1131-32. Where, as here, Plaintiff has not met any of the elements for obtaining injunctive relief, the Court should deny the requested relief.

1. Plaintiff Has Not Shown a Likelihood of Success on the Merits

A. *Plaintiff cannot bring habeas corpus claims on her own behalf.*[3]

Plaintiff cites a number of statutes in support of her claim for jurisdiction. *See* Petition ¶ 8. However, neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1361 waives sovereign immunity, and therefore those statutes do not provide independent jurisdiction over Plaintiff's claims. *See Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097-98 n.5 (9th Cir. 1994) ("Sections 1331 and 1361 do not waive the sovereign immunity of the United States."); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (§ 1331 not a waiver); *Smith v. Grimm*, 534 F.2d 1346, 1352 n.9 (9th Cir. 1976) (§ 1361 not a waiver). The only statute cited by Plaintiff that provides independent jurisdiction over the claims raised in this action is the habeas corpus statute, 8 U.S.C. § 2241, et seq.

Because this action is properly understood as a petition for a writ of habeas corpus, Plaintiff is not a proper petitioner to this action, to the extent she seeks to raise claims on her own behalf. This is because the federal habeas corpus statute, 28 U.S.C. § 2241, provides that habeas corpus relief is available to persons "in custody under or by color of the authority of the United States" and those "in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(1), (3) (emphasis added). Plaintiff has not identified any manner in which she is in custody—either physically or constructively, *see Jones v. Cunningham*, 371 U.S. 236 (1963)—nor can she. Thus, because Plaintiff is not in Respondents' physical or constructive custody, claims brought by her on her own behalf, as opposed to those brought on behalf of A.H., cannot succeed.[4]

---

[3] Respondents do not dispute jurisdiction for Plaintiff to bring legal and constitutional claims on behalf of A.H. as his next friend.

[4] This position does not leave Plaintiff without options. HHS provides an administrative process through which Plaintiff may seek to have A.H. released to her custody. Should HHS deny her request for release, Plaintiff would be able to file a complaint under the Administrative Procedure Act. *See Bakhtriger v. Elwood*, 360 F.3d 414, 423 (3d

1

2

### B. The Petition must be dismissed or transferred to the Eastern District of California.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Because this action is a habeas corpus challenge to HHS's physical custody of A.H. in the Yolo Juvenile Detention Facility (Yolo), in Woodland California, Plaintiff has improperly named all Respondents other than Brent Cardall, Chief Probation Officer of Yolo, and has brought this action in the wrong Federal District Court. The Supreme Court instructed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the proper respondent to a habeas petition brought under 28 U.S.C. § 2241 is the person with immediate physical custody over the petitioner, or the "ability to produce the prisoner's body before the habeas court." *Padilla*, 542 U.S. at 435. For "core" habeas challenges—defined as "challenges to present physical confinement"—brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435; *see also* 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained."). Applying this rule here, the only proper respondent is the individual with immediate physical custody over A.H., which is the Chief Probation Officer of the Yolo facility Brent Cardall.[5]

17

18

Because Respondent Cardall is the only proper respondent to this Petition, this Court lacks jurisdiction over the Petition. To have jurisdiction over a habeas action, a federal court must have

19

20

21

22

23

24

25

26

Cir. 2004) ("[T]he broader species of review for substantial evidence and abuse of discretion typical of APA challenges" is "wholly out of bounds" in a habeas case).

[5] Prior to the Supreme Court's *Padilla* decision the Ninth Circuit had rejected the immediate custodian rule. *See Armentero v. INS*, 340 F.3d 1058, 1059-60 (9th Cir. 2003) (withdrawn), *opinion on reh'g*, 412 F.3d 1088 (9th Cir. 2005). However, the Ninth Circuit has not revisited the question since *Padilla* was decided. Further, in *Padilla*, the Supreme Court declined to decide the question of whether the Attorney General is the proper respondent to a habeas petition in the immigration context. *See* 542 U.S. at 435 n.8. However, at the time *Padilla* was decided, immigration habeas cases were distinct from "core" habeas challenges because an alien could bring challenges to his order of removal from the immigration court, along with challenges to his confinement, through a writ of habeas corpus. The REAL ID act, passed by Congress in 2005, required instead that all challenges to an order of removal be brought in the circuit courts through a petition for review. *See Puri v. Gonzalez*, 464 F.3d 1038, 1041 (9th Cir. 2006) (The REAL ID Act "eliminated district habeas corpus jurisdiction over orders of removal."). Thus, after the REAL ID Act, where immigration habeas petitions are limited to "core" challenges to confinement, the immediate custodian rule of *Padilla* should be applied. *See* 542 U.S. at 449-50 (noting that there is not "a single case in which we have deviated from the longstanding rule we reaffirm today-that is, a case in which we allowed a habeas petitioner challenging his present physical custody within the United States to name as respondent someone other than the immediate custodian and to file somewhere other than the district of confinement").

jurisdiction over the properly named custodian. *See id.* at 442-43 (citing *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)). Yolo is located in Woodland, CA, and the Chief Probation Officer of that facility is located there. Thus, the Eastern District of California is the only district where Plaintiff may bring a habeas petition on behalf of A.H. to challenge his custody in that facility. *See id.*, 542 U.S. at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").[6] Because Plaintiff failed to file this petition in the proper district, the Petition should be dismissed or transferred to the Eastern District of California, and this Court should decline to issue a TRO. *See id.* at 451 (dismissing petition because it was brought in the incorrect district).

> C. *A.H.'s custody by HHS does not violate the applicable statutes or the Constitution.* [7]
>
>> i. A.H.'s custody by HHS is in accordance with the applicable statutory framework.

A TRO should not issue here because HHS's custody of A.H. at the Yolo facility is in accordance with the applicable statutory framework for Government custody of minors. In any event, a determination regarding HHS's compliance with the TVPRA should be given a full and fair opportunity for briefing and review.[8] ICE arrested A.H. pursuant to a valid warrant that was

---

[6] Plaintiff states that venue is proper in the Northern District of California because Respondent Elicia Smith serves as the approval authority for transfer and release decisions pertaining to UACs within Northern California. Petition ¶ 8. However, Smith is a Federal Field Specialist with ORR, who reports to a Federal Field Specialist Supervisor, who reports to a Chief Federal Field Specialist in Washington D.C., who then reports to the Director of ORR. Smith is not the final decisionmaker for any of the determinations addressed by the Petition. De La Cruz Decl. ¶ 9. In fact, ORR policies make clear that any release from secure or staff-secure shelters require Director approval. *See id.*; ORR Guide § 2.7. Therefore, Smith is not a decisionmaker in this case, and is not a properly-named respondent in any event.

[7] As an initial matter, to the extent that Plaintiff seeks to raise claims under the provisions of the 1997 Settlement Agreement in *Flores v. Sessions*, Case No. 85-4544 (C.D. Cal.), those claims fail because they do not allege any statutory or constitutional error. *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 827 (9th Cir. 2002), *opinion amended on denial of reh'g sub nom. Gutierrez Chavez v. I.N.S.*, 337 F.3d 1023 (9th Cir. 2003) ("[H]abeas review under § 2241 is limited only to claims of constitutional or statutory error.").[7] Therefore, Plaintiff is not likely to succeed on her Seventh Claim for Relief. Petition ¶¶ 84-86. Moreover, Plaintiff is unlikely to succeed on her other claims to the extent they rely on assertions of rights she contends are granted to A.H. by the *Flores* Agreement.

[8] Plaintiff also contends that A.H. is entitled to a bond hearing under 8 U.S.C. § 1226(a). However, as discussed above, the custody of minors is governed by the TVPRA, and not by the detention provisions of the Immigration and Nationality Act, so that 8 U.S.C. § 1226(a) does not apply to HHS's custody of A.H. Moreover, a bond hearing would provide no benefit to A.H. because an immigration court has no authority to order HHS to release A.H. *See In re: A—R--*, at 2 (BIA June 28, 2016), attached as Ex. C. Finally, to the extent that Plaintiff contends that a bond

supported by probable cause, in accordance with ICE's statutory authority to arrest aliens without lawful status in the United States. Loechner Decl. ¶ 5. Once ICE had A.H. in its custody, it was obligated to turn him over to the custody of HHS within seventy-two hours because he is a UAC. *See* Petition ¶¶ 1, 12; 8 U.S.C. § 1232(b)(3); *see also D.B. v. Poston*, 119 F.Supp. 3d 472, 482-84 (E.D. Va. 2015). ICE did so, and at that point HHS became responsible for all placement decisions for A.H., in accordance with the requirements of the TVPRA. 8 U.S.C. § 1232; *see also* ORR Guide §§ 1.3.2, 1.3.4.

Specifically, now that A.H. has been placed in HHS custody, HHS is prohibited from releasing A.H. to his mother until HHS makes the required determinations under 8 U.S.C. § 1232(c)(3)(A). *See* ORR Guide §§ 2.2.3, 2.4. Although HHS previously released A.H. to the custody of his mother, HHS has been given evidence that since his prior release he has had multiple criminal arrests, and has admitted to being a member of the MS-13 gang. De La Cruz Decl. ¶ 4. Thus, HHS cannot rely on the previous determination, and must evaluate whether A.H.'s mother is a suitable sponsor based on its current evaluation of A.H., and the information before it at this time. De La Cruz Decl. ¶ 7. In fact, HHS has already begun this determination, including discussing reunification with Plaintiff, and seeking to schedule a sponsor assessment with her. De La Cruz Decl. ¶ 7.

HHS's placement of A.H. into a secure facility also does not violate the TVPRA. The statute recognizes that in some cases, it may be necessary to place a child in "secure" care, and specifically delegates this decision to the Secretary of HHS, considering "danger to self, danger to the community, and risk of flight." *Id.* The TVPRA restricts the use of a secure facility to a child who "poses a danger to self or others or has been charged with having committed a criminal offense." 8 U.S.C. § 1232(c)(2)(A). HHS's decision to initially place A.H. into a secure facility is consistent with this statute, based on HHS's consideration of his recent criminal history and reported gang involvement. *See* ORR Guide § 1.2.4; De La Cruz Decl. ¶ 4.

---

hearing is required under the provisions of the *Flores* Settlement Agreement, as noted above, that claim cannot properly be raised in this habeas petition. Moreover, that question is currently pending before the Ninth Circuit in *Flores, et al. v. Sessions, et al.*, Case No. 17-55208 (9th Cir.).

Finally, while A.H. remains in HHS custody, the TVPRA also explicitly mandates that placements in secure facilities "shall be reviewed, at a minimum, on a monthly basis, in accordance with procedures prescribed by the [HHS] Secretary, to determine if such placement remains warranted." 8 U.S.C. § 1232(c)(2)(A). There is no basis, at this time, to believe that HHS will not conduct such reviews in accordance with the statute and its own procedures, *see* Orr Guide § 1.4.2 and De La Cruz Decl. ¶ 10, or that A.H. will not be stepped down to a less restrictive environment if secure placement is no longer warranted.

ii.   A.H.'s custody by HHS does not violate the Constitution.

HHS's custody of A.H. does not violate the Constitution, and in any event, the complexities of this issue require that the Court allow for full and fair briefing and consideration of these constitutional claims raised by Plaintiff before determining whether A.H. should be ordered released from HHS custody.

To start, ICE's arrest of A.H. was made under a procedurally valid warrant, and ICE had probable cause to make the arrest. Loechner Decl. ¶ 5. Thus, A.H.'s arrest did not violate his due process rights. And at that point, the TVPRA mandated that ICE transfer A.H. into HHS custody. 8 U.S.C. § 1232(b)(3).

Plaintiff's procedural and substantive due process claims regarding HHS's custody of A.H. also fail.[9] "In procedural due process claims, the deprivation by state action of a constitutionally

---

[9] The Government does not concede that inadmissible aliens are entitled to the same due process protections as aliens who have entered the United States. It is well-settled that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo–Urquidez*, 494 U.S. 259, 271 (1990). Aliens identified at the border who have not had any contact with the United States—even if they are subsequently paroled into the territorial United States during the resolution of their claims for admission—are not entitled to any process other than that provided by statute. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"). For such aliens, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097-98 (9th Cir. 2004); *see also Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 896 (2016); *Castro v. United States*, 835 F.3d 422 (3d Cir. 2016), *cert. denied sub nom. Castro v. Dep't of Homeland Sec.*, No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017); *United States v. Peralta-Sanchez*, No. 14-50393, 2017 WL 510454, at *4 n.8 (9th Cir. Feb. 7, 2017). This lack of entitlement to extra-statutory procedure also applies to claims relating to detention because, as the Ninth Circuit has explained, "[a]n alien's freedom from detention is only a variation on the alien's claim of an interest in entering the country." *See Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1992).

protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, A.H.'s liberty interest must be considered in light of the fact that HHS is required, by statute, to evaluate whether Plaintiff is a suitable custodian to whom it may release A.H. The Court then should look to the question of whether there is a real, concrete risk that A.H. will erroneously be deprived of this interest. Notably, A.H. was only recently transferred into HHS custody, and HHS has just begun its process to determine whether to release A.H. to the custody of his mother. *See* ORR Guide § 2.7. There is no basis to believe at this juncture that A.H. is at risk of an erroneous deprivation of any liberty interest he may possess in being released into the custody of his mother. Any such claim is purely speculative until HHS has the opportunity to evaluate Plaintiff's request to take custody of A.H. and make a determination on that request. Further, to the extent Plaintiff claims that HHS's review procedures are inadequate should HHS deny her request, this claim too is purely speculative and should not provide the basis for granting a TRO.

Similarly, Plaintiff's claim that A.H.'s initial placement in a secure ORR facility violates procedural due process is misplaced. HHS was made aware by ICE at the time that A.H. was transferred to their custody that he had made a disclosure that he was a member of the MS-13 Gang and had a recent criminal history. De La Cruz Decl. ¶ 4. Thus, initial placement into a secure facility was appropriate. *See id*; ORR Guide §§ 1.2.4, 1.3.2.

Moreover, A.H.'s placement is subject to regular monthly review. ORR Guide § 1.4.2. A.H. has had three separate significant behavioral incidents in the short time he has been in the Yolo facility. De La Cruz Decl. ¶ 6. To conduct review of A.H.s placement HHS must consider these incidents, the information it received from ICE, and its own evaluations of A.H. by providers at Yolo, in order to determine whether it can step A.H. down to a less secure facility while at the same time ensuring the safety of A.H. and others in HHS custody. Until HHS has time to conduct this review, Plaintiff's claims about its adequacy are purely speculative. Again, the

Court should not issue a TRO where, as here, Plaintiff's claims of inadequacy in HHS's procedures are purely speculative, and further briefing and review are required before any such determination can properly be made by the Court.[10]

Finally, Plaintiff is unlikely to succeed on her claim that HHS's custody of A.H. violates substantive due process. In *Flores*, the Ninth Circuit stated:

> Where a juvenile has no available parent, close relative, or legal guardian, where the government does not intend to punish the child, and where the conditions of governmental custody are decent and humane, such custody surely does not violate the Constitution. It is rationally connected to a governmental interest in "preserving and promoting the welfare of the child,", and is not punitive since it is not excessive in relation to that valid purpose.

*Flores*, 507 U.S. at 303 (quoting *Santosky v. Kramer*, 455 U.S. 745, 766 (1982)). *Flores* applies with full force here. At this juncture, HHS has not yet determined whether Plaintiff is a suitable custodian who can adequately provide for A.H.'s physical and mental well-being, considering ICE's reports regarding his recent criminal history and membership in the MS-13 gang. Thus, at a minimum, A.H. has no "available" custodian to whom he may be released at least until HHS has determined the suitability of Plaintiff as a custodian in light of the aforementioned considerations. Moreover, HHS has not placed A.H. in a secure facility for the purpose of punishment, but rather to ensure his safety and the safety of others. Yolo provides, among other services, proper physical care and maintenance, appropriate medical care, educational services, recreational activities and leisure time plan, routine counseling sessions, acculturation and adaptation services, routine visitation and contact with family members, a reasonable right to privacy, and legal services information. ORR Guide § 3.3. Given the services and conditions provided at the facility and the importance of providing secure care for juveniles with criminal

---

[10] The Government also has an interest in play in this constitutional analysis: that of preserving public welfare, including A.H.'s own welfare. *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) ("[T]he State has an urgent interest in the welfare of the child . . . ."); *Flores*, 507 U.S. at 303; *see also United States v. Salerno*, 481 U.S. 739, 748–50 (1987); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1279 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ("Public safety and crime prevention are compelling government interests."). Consequently, there is further good reason for the Court to provide for full briefing in this case to more fully weigh the interests of the parties before determining whether any relief should be granted.

histories, gang ties, or other behavioral issues, A.H.'s detention at Yolo does not violate his substantive due process rights.

> ### D.   HHS's custody of A.H. does not interfere with his ability to participate in family court and immigration court proceedings.

Plaintiff has failed to demonstrate a denial of A.H.'s right to counsel and access to courts, such that a TRO is necessary. *See* Petition ¶¶ 56-65. First, Plaintiff has not sufficiently established that these claims may properly be brought in a petition for a writ of habeas corpus, where they do not relate to the lawfulness of A.H.'s continued custody by HHS. Moreover, these claims fail because Plaintiff has failed to prove an injury-in-fact such that would sustain either claim. More specifically, Plaintiff does not sufficiently allege that A.H.'s current status in HHS custody has actually, meaningfully interfered with his rights to counsel or his access to the courts resulting in any concrete, cognizable injury. *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1196 (2016).

To the extent that Plaintiff alleges that A.H. would be harmed if he is not able to attend his state court or immigration court hearings, Plaintiff does not explain why these harms cannot be avoided through remedies other than the release of A.H. from HHS custody in contravention of the TVPRA. Family and immigration court proceedings are routinely held with parties and witnesses appearing remotely. *See* Family Court of the State of New York, Electronic Testimony Application and Waiver of Personal Appearance, https://www.nycourts.gov/forms/familycourt/pdfs/GF-17.pdf (last accessed June 24, 2017); 8 C.F.R. § 1003.25(c) ("[A]n Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person").[11] In fact, HHS has agreed that it will make arrangements for A.H. to confer with his attorney and participate in his state court proceeding by telephone. De La Cruz Decl. ¶ 8. Moreover, DHS has moved to transfer A.H.'s

---

[11] Indeed, Plaintiff does not and cannot point to any applicable law requiring in person conference with an attorney or appearance in immigration or family court that could credibly support these claims. *Cf. Nordloff v. Allison*, No. 1:10-CV-02170 AWI, 2012 WL 43136, at *3 (E.D. Cal. Jan. 9, 2012), *report and recommendation adopted*, 2013 WL 1192983 (E.D. Cal. Mar. 22, 2013) ("Petitioner does not identify any federal law providing for live witness appearance. His claim does not address a federally protected due process interest.").

immigration proceedings to San Francisco so he can participate in person—a motion opposed by A.H.'s attorney.

2.    <u>Plaintiff Has Not Shown Irreparable Harm.</u>

The Ninth Circuit "has ruled that speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d. 1011, 1022 (9th Cir. 2016)); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."). To the extent that Plaintiff's claims of irreparable harm to A.H. turn on alleged concerns that A.H. will be prejudiced in his immigration court hearing, or in his family court hearing, those concerns are unfounded for the reasons discussed above, and therefore do not establish the requisite showing of irreparable harm.[12]

Moreover, although "[a]n alleged constitutional infringement will often alone constitute irreparable harm," it will not justify preliminary injunctive relief when "the constitutional claim is too tenuous." *Id.; accord Marin All. for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011); *Pub. Serv. Co. of New Hampshire v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir. 1987) ("The alleged denial of procedural due process, without more, does not automatically trigger" a finding of irreparable harm.). Here, Plaintiff's constitutional claim rests

---

[12] Plaintiff's contention that A.H.'s detention will irreparably harm his ability to submit a Special Immigrant Juvenile (SIJ) application is also incorrect. As explained above, A.H. has access to state court proceedings, and his request for a state order may proceed whether he is detained or not. Moreover, it should be noted that an approved SIJ application does not confer immigration status. ("Nothing in [section 1255(h)] or 8 U.S.C. § 1101(a)(27)(J) of [8 U.S.C.] shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant status described in such section." 8 U.S.C. § 1255(h). Rather, the applicant must demonstrate that that he is eligible for adjustment of status, which would be impossible in this case because, even if his application for SIJ status was approved today, there is no visa number available in the category he seeks. *See* 8 U.S.C. §§ 1255(a), (h); *see also* Department of State Visa Bulletin for July of 2017, available at https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2017/visa-bulletin-for-july-2017.html. Moreover, adjustment of status is a discretionary form of relief, and given the plaintiff's significant criminal background, it is not a given that any application for relief would be granted. See 8 U.S.C. § 1255(a); *Mudric v. Att'y Gen.*, 469 F.3d 94, 98–99 (3d Cir. 2006).

14

on speculation that A.H.'s liberty interest will be denied either because HHS will decline to release him to his mother, or because HHS will maintain his custody in a secure facility. At this juncture, however, where HHS has not yet the opportunity to fully evaluate Plaintiff's request to have A.H. released to her custody, or to reevaluate its initial decision to place A.H. into a secure facility, such claims are tenuous, and do not constitute irreparable harm. Therefore Plaintiff has not established this element and her request for a TRO should be denied. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

> 3. Plaintiff Has Not Shown That the Balance of Hardships Tips in Favor of A.H., or That Injunctive Relief is in the Public Interest.

The balance of equities does not tip in A.H.'s favor and a TRO is not in the public interest given that Plaintiff is unlikely to succeed on the merits. *Cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (the plaintiffs' failure to show a likelihood of success on the merits of their constitutional claim supported a determination that the public interest did not require a preliminary injunction). Further, the public undoubtedly has a weighty interest in allowing HHS to fulfill its obligations under the TVPRA for a minor who is placed into its custody. This is especially true in this case, where HHS is being asked to protect the safety of A.H., and of the public, by evaluating whether a proposed custodian can provide adequate care and custody for a juvenile for whom there is evidence of recent criminal history combined with membership in the MS-13 gang. Circumventing the protections of the TVPRA by issuing preliminary injunctive relief in this case is not in the best interest of the public or of A.H., and the Court should find that these final two factors weigh against the issuance of a TRO in this case.[13]

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff's application for a TRO should be denied.

---

[13] As explained in *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112 (9th Cir. 2008), the Court's "consideration of the public interest is constrained in this case, for the responsible public officials . . . have already considered that interest" and made evident their conclusion regarding where the public interest lies in the legislation they enacted. *Id.* at 1126-27 ("The public interest may be declared in the form of a statute") (internal quotation marks omitted); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 327 (1982) (observing that the "public interest" is "reflected in an Act of Congress").

DATE: June 27, 2017                  Respectfully submitted,

                                     CHAD A. READLER
                                     Acting Assistant Attorney General

                                     WILLIAM C. PEACHEY
                                     Director

                                     WILLIAM C. SILVIS
                                     Assistant Director

                                 By: Sarah B Fabian
                                     SARAH B. FABIAN
                                     Senior Litigation Counsel
                                     VINITA B. ANDRAPALLIYAL
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Office of Immigration Litigation
                                     District Court Section
                                     Box 868, Ben Franklin Station
                                     Washington, DC 20442
                                     Telephone: (202) 532-4824
                                     Fax: (202) 616-8962
                                     E-mail: Sarah.B.Fabian@usdoj.gov

                                     *Counsel for Respondents*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2017, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.


/s/ Sarah B. Fabian
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

*Attorney for Respondents*