EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on her own behalf, <br><br> Petitioner/Plaintiff, <br><br> vs. <br><br> Jefferson B. Sessions III, U.S. Attorney General, et al., <br><br> Respondents/Defendants. | Case No.: 3:17-cv-03615 <br><br> Defendants' Opposition to Ex Parte Application for Temporary Restraining Order <br><br> Date: June 29, 2017 <br> Time: 10:00 a.m. <br> Place: Courtroom 4, 17th Floor, 450 Golden Gate Ave, San Francisco, CA 94102 <br><br> Honorable Vince Chhabria |

**DECLARATION OF JAMES S. DE LA CRUZ, SENIOR FEDERAL FIELD SPECIALIST SUPERVISOR, OFFICE OF REFUGEE RESETTLEMENT, ADMINISTRATION FOR CHILDREN AND FAMILIES, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

I, James S. De La Cruz, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows:

1. I am the Senior Field Program Specialist Supervisor for the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), Department of Health and Human Services ("HHS"). I supervise all Supervisory Federal Field Specialists within ORR. The following statements are based on my personal knowledge, information acquired by me in the course of performing my official duties, my review of HHS records and information contained therein, and information supplied to me by current HHS employees.

2. ORR has established an online case management database ("UC Portal") for unaccompanied alien children ("UAC"). When a referring Federal agency determines it has a UAC in custody, it usually enters basic information about the UAC into the intake section of the UC portal. (Alternatively, the referring Federal Agency may provide the initial basic

information about the UAC to ORR via email or telephone call; in these cases, ORR would enter the information into the UC Portal). ORR uses this information to determine an appropriate placement for the UAC, and then communicates the placement to the referring Federal Agency. The referring Agency then transports the UAC to the placement, where the UAC formally enters ORR custody.

3. On June 12 at 2:50 PM, the Enforcement Removal Operations Division of Immigration and Customs Enforcement ("ICE") entered A.H. into the UC portal.

4. Upon receiving A.H.'s referral, after considering the information provided by ICE, the ORR intake team made the initial determination that the appropriate placement was a secure facility. Jill Volovar, a Federal Field Specialist Supervisor based in Florida, approved the placement. ORR determined Yolo County Juvenile Detention Center ("Yolo") was the most appropriate facility, given its available bed capacity and the referral information indicating A.H. had a pending criminal charge. ORR oversees only two secure facilities throughout the country, one in Virginia and the other, Yolo, in California. Generally, in order to determine if a minor should be placed in a secure facility, ORR uses a placement tool. ORR uses the placement tool in a number of circumstances outlined in the ORR Policy Guide, including when the minor has a juvenile or adult criminal history or is a member of a gang. In this case, ORR used the placement tool because ICE reported that A.H. had self-disclosed gang involvement and a history of criminal arrests. Based on its assessment ORR placed A.H. in secure care both because he posed a danger to others and due to his prior criminal charges. *See* ORR Policy Guide Section 1.2.4, available at: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.4.

5. A.H. was admitted into Yolo at 1:45 PM on June 13 and has resided there since that date.

6. During his time at Yolo, A.H. has had three significant behavioral incidents. The first occurred on June 19. A.H. covered his window during a visual check and responded with inappropriate sexual comments when the detention officer requested he take the paper down. He also encouraged another youth to put paper over his window and the two yelled at each other for over an hour. In the second incident, on June 20, A.H. engaged in an altercation with another youth. In the third incident, on June 22, A.H. was involved in a verbal altercation, and staff reported the incident occurred due to gang affiliations.

7. ORR staff has been in contact with A.H.'s mother about the family reunification process and has discussed performing a sponsor assessment interview over the phone with her, although a date has not been set. Even though ORR evaluated Ms. Saravia when A.H. was first in custody in 2015, ORR conducts a new sponsor evaluation whenever a minor returns to ORR custody. ORR plans to conduct a new evaluation in this case.

8. ORR and the staff at Yolo are aware that A.H. has upcoming state court and immigration court hearings on July 6 and 7. ORR plans to arrange for him to attend the state hearing by telephone or video conference. If the immigration court hearing is moved to Northern California, ORR will arrange for him to attend in person. If it remains in New York, ORR will arrange for him to attend by telephone or video conference. ORR will also arrange for him to attend any future court hearings as necessary, either in person or by telephone or video conference. ORR also has allowed – and will continue to allow – A.H. to meet with his counsel in person or by telephone in order to prepare for these hearings.

9. Elicia Smith is a Federal Field Specialist with an assigned geographic region of Northern California. Ms. Smith did not have authority over A.H.'s initial placement, nor does she have decision-making authority to release A.H. from ORR custody or from secure care. Only the Director can issue a final decision to release A.H. from secure care. *See* ORR Policy

Guide Section 2.7, available at: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.

10. A.H. will be evaluated every 30 days while in secure care for possible placement into a less restrictive setting. If new information regarding A.H. becomes available this review also may take place earlier. In addition, under a new policy, after 30 days of placement in a secure facility, A.H. may request the ORR Director, or the Director's designee, to reconsider the secure placement. *See* ORR Policy Guide Section 1.4.7, available at: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.4.7.

11. Finally, if A.H.'s eventual release is denied for the sole reason that he is a danger to himself or the community, he may request an appeal in accordance with section 2.7 of the ORR Policy Guide. If he expresses a desire to seek an appeal, ORR appoints a child advocate to assist him in seeking the appeal. He may seek the appeal at any time after denial of release while in ORR custody, but would have to wait for the reunification request to be denied on the sole basis that he is a danger to himself or the community. Under ORR policy, A.H.'s mother may appeal a release denial based on dangerousness or other reasons.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 27, 2017.

_____
James De La Cruz, ORR Senior Field Program *Specialist Supervisor*

4