AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
JULIA HARUMI MASS (SBN 189649)
WILLIAM S. FREEMAN (SBN 82002)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org
wfreeman@aclunc.org

*Attorneys for Petitioner/Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on her own behalf<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>Jefferson B. Sessions, Attorney General of the United States; James McHenry, Acting Director of the United States Executive Office for Immigration Review; Thomas E. Price, M.D., Secretary of the Department of Health and Human Services of the United States; Steven Wagner, Acting Assistant Secretary of the Administration for Children and Families; Scott Lloyd, Director of the Office of Refugee Resettlement of the United States; Elicia Smith, Federal Field Specialist of the Office of Refugee Resettlement of the United States; and Brent Cardall, Chief Probation Officer of Yolo County, in their official capacities,<br><br>Respondents/Defendants. | Case No.: 3:17-cv-03615-VC<br><br>**REPLY BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS AND *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**IMMIGRATION ACTION**<br><br>Date: June 29, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom #4<br>Judge: Hon. Vince Chhabria |

I.      INTRODUCTION[1]

Neither Defendants' Opposition to *Ex Parte* Application for Temporary Restraining Order ("Opp.") nor the hearsay declarations submitted in support present valid reasons for the continued detention of A.H. Defendants' claimed helplessness to provide A.H. access to counsel and notice and an opportunity to be heard before transporting him away from life-changing court proceedings are unsupported by evidence or legal authority. With venue proper under traditional factors applied in immigration detention cases, Plaintiff respectfully seeks this Court's intervention to prevent A.H.'s continued unconstitutional detention.

II.     OBJECTIONS TO EVIDENCE

Plaintiffs object to Defendants' inadmissible evidence submitted in support of their opposition to this motion. First, the Declaration of Daniel Loechner fails to affirm the information presented is based on the declarant' personal knowledge, in violation of Federal Rule of Evidence 602. Having failed to affirm his personal knowledge, the declarant also fails to provide a foundation for his allegations against A.H. For example, he does not specify the law enforcement agencies or individuals from whom he claims to have "received information" concerning "admitted MS-13 gang members on Long Island" alleged to include A.H. Loechner Dec., ¶ 2. He fails to describe the date, author, or type of "records provided by local law enforcement" relating to A.H.'s two arrests. The described statement that "during the booking process, A.H, admitted that he was a member of MS-13" (Loechner Dec., ¶ 3) is hearsay upon hearsay, which is inadmissible under Fed. R. Evid. 802, as are Mr. Loechner's remaining

---

[1] All defined terms and acronyms have the same definitions as in Plaintiff's opening memorandum (ECF 7), unless otherwise stated.

statements concerning A.H.'s criminal history, which are the entirety of the claimed basis for A.H.'s arrest.[2]

The other declaration submitted by Defendants, that of James De La Cruz, is similarly deficient. Notably De La Cruz claims to set forth the basis for ORR's decision to place A.H. in a secure facility even after he disclaimed knowledge of the arresting agency or basis for arrest in a telephone call with A.H.'s immigration counsel after A.H. was already en route to California. *See* Gibbs Supp. Dec., ¶ 2. Mr. De La Cruz's statements concerning A.H.'s alleged "behavioral incidents" *after* he was wrongfully incarcerated are inadmissible hearsay and immaterial to the lawfulness of his detention that are the subject of this motion. De La Cruz Dec., ¶ 6; F.R.E. 802.

### III.  ARGUMENT

#### A.  THE COURT HAS HABEAS AND EQUITABLE JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS.

Defendants concede that the habeas corpus statute, 8 U.S.C. § 2241, provides a jurisdictional basis for this action, but claims there is no jurisdiction over Plaintiff's equitable claims for due process with respect to her fundamental right to family integrity. Opp. at 6. Outside of habeas jurisdiction, this Court has jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, which contains an express waiver of sovereign immunity and permits actions against the United States and its officers for injunctive and declaratory relief. 5 U.S.C. §§ 702, 703. Plaintiff will amend her complaint to state this ground for jurisdiction.

In the main, Plaintiff is asserting claims for *habeas* relief on behalf of her son. *See* 28 U.S.C. § 2242 (application for habeas corpus may be made "by the person for whose relief it is intended *or by someone acting in his behalf*") (emphasis added); *Coalition of Clergy, Lawyers,*

---

[2] Plaintiffs object to the admission of any of these statements, including: "When A.H. was booked into custody, the police found a knife on his person;" that he "was wearing gang colors and beads associated with gang membership;" and that he was "arrested with two other individuals, who both admitted to being members of the MS-13 gang." Loechner Dec. ¶¶ 2-3. For the record, A.H. denies having been in possession of a knife at the time of the school incident that led to his first arrest or the police having found a knife in his possession.

*and Professors v. Bush,* 310 F.3d 1153, 1159-60 (9th Cir. 2002). Plaintiff seeks A.H.'s release or transfer to a less restrictive environment within the vicinity of his counsel and impending court appearances, a remedy that is appropriately achieved through a writ of habeas corpus. *See e.g. Farez-Espinoza v. Chertoff,* 600 F.Supp.2d 488 (S.D.N.Y. 2009) (issuing writ of habeas corpus to remedy transfer of immigration respondent away from retained counsel).

### B. VENUE IS PROPER IN THE NORTHERN DISTRICT.

Plaintiff acknowledges the general rule, as stated in *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004), that "the proper *respondent* to a habeas petition is "the person who has custody over [the petitioner]" and "the ability to produce the prisoner's body before the habeas court." (Emphasis added.) The discussion of the "proper respondent," however, does not resolve the question of venue in *habeas* cases. "Inquiry into proper venue is still required in a noncore habeas proceeding following *Padilla.*" *Reyes-Cardenas v. Gonzales,* 2007 WL 1290141, at *5 (S.D.N.Y. 2007), citing *Somir v. U.S.,* 354 F.Supp.2d 215, 218 (S.D.N.Y. 2005). In *Somir,* the court, citing *Braden v. 30th Judicial Court of Kentucky,* 410 U.S. 484, 493 (1973), observed: "Venue considerations traditionally have acted alongside jurisdictional barriers to limit the number of courts that may properly entertain a habeas petition.… That limitation appears to have survived *Padilla,* in which a majority of the justices noted that the question of where a habeas petition may be filed is best understood as one involving both personal jurisdiction and venue." *See also, Garcia-Rivas v. Ashcroft,* 2004 WL 1534156 at *4-5 n.8 (S.D.N.Y. 2004) ("Because the habeas statute, 28 U.S.C. § 2241, contains no venue provisions, 'traditional venue considerations apply'") (citing *Braden*).

In immigration cases, where petitioners are often moved from one district to another, venue is not arbitrarily limited to the judicial district where the petitioner's body can be found at any particular time.[3] Here, for example, A.H. was, within the space of two days, separately

---

[3] In *Beltran v. Cardall,* 222 F.Supp. 3d 476 (E.D. Va. 2016), venue remained in the Eastern District of Virginia even though the petitioner had been transferred to Yolo County. 222 F.Supp. 3d at n. 1.

confined in the Eastern and Southern Districts of New York and the Central and Eastern Districts of California.  Because the Government controls the location of the petitioner, "the venue doctrine serves to mitigate potential forum shopping *by the Government itself*," since otherwise, the Government could unilaterally determine venue by continuously transferring a detainee. *Farez-Espinoza v. Chertoff,* 600 F.Supp.2d at 497 (emphasis added) (venue proper in Southern District of New York even though petitioner was detained in Pennsylvania).

In immigration cases federal agencies frequently contract with state and local authorities to house prisoners, but do not, by reason of those contracts, cede any authority to control over the physical location of the prisoner. *See generally, Armentero v. INS,* 340 F.3d 1058, 1069-70 (9th Cir. 2003) (withdrawn) (*Armentero I*).  The ORR guidelines cited by Defendants make it clear that the chief officer of the contracted facility at which a UAC may be housed has absolutely no authority over his placement; that authority belongs solely to ORR.  *See e.g.,* De La Cruz Dec., ¶¶ 9-11. *See also* Mass Supp. Dec., Ex. 2 (Yolo County Board of Supervisors agenda item describing ORR authority over youth held pursuant to contract at Yolo).

As Judge Berzon explained in *Armentero I*, a more flexible approach to venue "need not open the door to forum shopping by petitioners" because "[d]istrict courts may use traditional venue considerations to control where detainees bring habeas petitions." *Id.* at 1070.  Here, traditional venue factors weigh in favor of this district: A.H.'s counsel in this action maintain their offices in San Francisco; the ORR official with immediate supervisory responsibility over A.H. maintains an office in San Francisco; and Defendants have conceded that they can "arrange for him to attend [court proceedings] in person" in San Francisco.  De La Cruz Dec., ¶ 8.[4]

---

[4] Nor does the REAL ID Act, which Defendants claim "eliminated district court habeas corpus jurisdiction over orders of removal," resolve this issue in Defendants' favor. See Opp. at 7 n.5. This action does not involve an "order of removal," but rather, the detention of an alien independent of his pending removal proceedings in Immigration Court. The Conference Report on the REAL ID Act states that it "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders." H.R. CONF. REP.. NO. 109–72, at 175

Within ORR, the person with most immediate control of A.H.'s body—Federal Field Specialist Elicia Smith—is located in San Francisco. She "is a Federal Field Specialist with an assigned geographic region of Northern California." De La Cruz Dec., ¶ 9. The ORR Guidelines provide that the Federal Field Specialist for a geographic region is normally the person who normally makes release decisions for detainees within that region. See ORR Policy Guide § 2.3.1 (FFS is regional field staff and "have the authority to approve all unaccompanied alien children transfer and release decisions"), and § 2.7. There can hardly be any doubt that in the event this Court were to order the release of A.H., that order would properly be directed to Defendant Smith.

### C. A TEMPORARY RESTRAINING ORDER IS APPROPRIATE AND NECESSARY TO PRESERVE THE *STATUS QUO ANTE*.

Defendants claim that a TRO would be inappropriate because it would "alter" the status quo rather than preserve it. Opp. at 4. This argument is backwards, as it suggests that where a person who was otherwise subject to an ongoing sponsorship agreement with one agency of the government has been improperly arrested and detained by a different agency, the detention should continue. To the contrary, the "status quo" that should be preserved pending a final custody determination is the ORR sponsorship agreement with Plaintiff, under which Plaintiff and A.H. were complying with all of their obligations to the Immigration Court and Family Court. The cases cited by Defendants do not hold otherwise.[5]

#### 1. A.H.'S Detention Is Based on an Illegal Arrest and Continues in Violation of Statutory and Constitutional Law.

---

(2005), quoted in *Armentero v. I.N.S.*, 412 F.3d 1088, 1099 (9th Cir. 2005) (*Armentero II"*) (Berzon, J., dissenting).

[5] *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1158 (9th Cir. 2006) was a copyright case in which the court held that there was no need for the alleged infringer to return design materials to the plaintiff during the pendency of an infringement action. In *Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006) the court held that an *ex parte* TRO was improperly granted in a trademark infringement action because, unlike the situation here, it was issued without notice to the defendant on the day the complaint was filed. Defendants have not cited a single case in which a court held that a TRO or writ of habeas corpus should be denied because the release of a prisoner would "alter the status quo."

Defendants have not offered a shred of evidence to contest the outrageous facts related to A.H.'s detention, namely that after A.H. was arrested, he was interrogated without counsel despite his repeated requests to speak with his attorney; that Defendants' agents repeatedly lied to him about taking him before a judge; that Defendants did not reveal A.H.'s location to his attorney until after they had transported him across country; and that they did not at any time reveal to A.H. or his attorney the basis for his arrest and detention. These facts must therefore be accepted as conclusively established for purposes of these proceedings. The declarations submitted by Defendants—while inadmissible under the Federal Rules of Evidence—add nothing to justify A.H.'s arrest, transfer, or detention at Yolo.

Instead, Defendants' arguments rely on a clever shell game—namely, their inconsistent assertions that ORR has exclusive jurisdiction over unaccompanied alien children like A.H. under the Trafficking Victims Protection Act of 2009, 8 U.S.C. § 1232 ("TVPRA"), but once ORR has made a custody determination to place a child with a sponsor under that authority, ICE is free to upset that custodial relationship as long as it turns custody over to ORR again within 72 hours. *See* Opp. at 9, citing Loechner Dec., ¶ 5 and Ex. A. But pointing to ICE's statutory authority to arrest any person who is charged with removability to place A.H.—or any other youth—into a secure setting proves too much, as it could always be used to circumvent ORR's responsibilities under the TVPRA as well as postpone any kind of notice or opportunity to be heard prior to deprivation of both the sponsor's and children's interest in family integrity.

Nowhere in Defendants' discussion is there *any* mention of statutory authority for ICE to arrest a UAC who has previously been transferred to the custody of ORR.[6] Plaintiff does not dispute ICE's authority to make the *initial* arrest of a person who is subject to removal, but once a UAC has been released to the care of ORR under the TVPRA, that statute prohibits ICE from

---

[6] We do not mean to suggest that a UAC cannot be arrested by police and charged with commission of a crime. That is far different, however, from ICE arresting a UAC it has previously released to HHS, on the sole purported ground that he is "deportable."

arresting him or her simply on grounds of "removability." Under the TVPRA, *authority over the placement of unaccompanied immigrant children resides solely with ORR.* 8 U.S.C. § 1232(c).

### 2. ORR Relied on Uncorroborated Hearsay Allegations to Place A.H. in the Most Restrictive Setting Available.

The Loechner Declaration make clear that ICE relied on uncorroborated and unexamined statements in local law enforcement records to conclude that A.H. "was a danger to the community." Loechner Dec., ¶ 2-4. Mr. Loechner provides no explanation for why ICE did not allow A.H. access to his attorney upon request or why ICE did not reexamine its conclusions in response to A.H.'s denials of gang membership. *See* A.H. Decl., ¶ 9.[7] It is unclear from Mr. Loechner's declaration how these law enforcement records came into ICE's possession or whether ICE also investigated the outcomes of A.H.'s arrests—which involved no admissions or finding of liability. *See* Gibbs Decl., ¶¶ 12-18. Mr. Loechner declares that "ICE subsequently verified that A.H. was a removable alien," but provides no information about whether ICE was also aware that A.H. had been released to his mother pursuant to an ORR agreement. Loechner Dec., ¶ 5. ORR in turn relied entirely on information provided by ICE to justify its placement of A.H. at Yolo. De La Cruz Dec., ¶ 4. Uncorroborated and disputed allegations of gang involvement are insufficient to conclude that A.H. "poses a danger to self or others," sufficient to justify secure custody particularly in the context of an arrest history void of admissions, guilty adjudications, factual findings against A.H., or even juvenile custody of more than 12 hours. 8

---

[7] Local law enforcement agencies are notoriously inaccurate and over-inclusive in determining that individuals are gang affiliated. *See e.g.* K. Babe Howell, "Fear Itself: The Impact of Allegations of Gang Affiliation on Pre-Trial Detention," 23 St. Thomas L. Rev. 620, 644-654 (2011) available at http://academicworks.cuny.edu/cl_pubs/91/. In a 2015 audit, the California State Auditor "found 42 individuals in the CalGang database who were supposedly younger than one year of age at the time of entry—28 of whom were entered for "admitting to being gang members." California State Auditor, "The CalGang Criminal Intelligence System," Report 2015-130, at 3 (Aug. 2016), available at https://www.auditor.ca.gov/pdfs/reports/2015-130.pdf.

U.S.C. § 1232(c)(2)(A). For these reasons, Plaintiff is likely to prevail on the merits of her claims that Defendants are detaining A.H. at Yolo in violation of federal law.[8]

### 3.  ORR's Step Down Assessment Process Does Not Satisfy Due Process.

Defendants claim a TRO is premature because ORR has not yet evaluated whether Plaintiff is a suitable custodian. Opp. at 11. This argument relies on a false premise—that ICE's arrest and ORR's referral of A.H. to Yolo without regard for the existing sponsorship agreement was outside of Defendants' control. *See* Opp. at 9 (describing HHS as "prohibited" from relying on its previous determination and releasing A.H. to Plaintiff). Defendants cite no authority for their assumption that ORR could not exercise discretion to place A.H. into a facility closer to home while it evaluated new information provided by ICE. Indeed, both the controlling statute and procedural due process required it. 8 U.S.C. § 1232(c)(2)(A); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1975) (setting forth test for procedural due process prior to deprivation of liberty interest); *D.B. v. Cardall*, 826 F.3d 721, 741-43 (4th Cir. 2016) (procedural due process applies to deprivation of liberty interest in family integrity).

As explained in the Motion, ORR's "step down" assessment fails to provide notice of the evidence on which ORR makes its custody determination or an opportunity to respond in front of a neutral decision-maker and therefore—like its release determination process—is insufficient to provide procedural due process. *See* Motion pp. 9-12, citing *Beltran v. Cardall*, 222 F.Supp. 3d 476, 485 (E.D. Va. 2016) and *Santos v. Smith*, No. 5:17-Cv-00020, 2017 WL 2389722 at *11 (W.D. Va. June 1, 2017).

---

[8] Defendants' argument that Plaintiff cannot seek habeas relief for violations of the *Flores* Decree ignores the fact that the *Flores* lawsuit has from its inception raised just such challenges. *See Reno v. Flores*, 507 U.S. 292, 296 (1993) (describing *Flores* litigation in which a class of noncitizen juveniles challenged INS release policies "on constitutional, statutory, and international law grounds"). Plaintiff's claims under the *Flores* Decree are also a basis for emergency injunctive relief, if not habeas relief. *See* Compl. ¶¶ 85-86.

### 4. A.H. Will Suffer Irreparable Harm in the Absence of Injunctive Relief and the Government's Interests Can Be Preserved by Transferring A.H. to a Supervised Placement in New York.

Defendants' proposed solution to the ongoing violation of A.H.'s rights to access his counsel and his court proceedings is to suggest that he can participate via telephone in his state court and immigration court proceedings. Opp. at 13. But, as set forth in the supplemental declarations of Stephanie Gibbs and Julia Harumi Mass, telephone access provided by Yolo to counsel and A.H. is limited at best, and certainly insufficient to take the place of the several in-person preparation sessions Ms. Gibbs usually conducts with clients before a Family Court hearing for special findings to support a Special Immigrant Juvenile Status application. Gibbs Dec., ¶ 36; Gibbs Supp. Dec., ¶ 4; Mass Supp. Dec., ¶ 4-5. In addition, testimony under the circumstances suggested here—where A.H. is calling from a secure detention facility, unable to confer privately with counsel; where the court and A.H. cannot observe each other's demeanor and body language; where interpretation adds an additional barrier to communication; and where the nature of A.H.'s testimony is his extremely sensitive history of family abuse—appearance by telephone simply does not satisfy his right to participate in his state and immigration court hearings. Gibbs Supp. Dec., ¶¶ 5-7. New York law provides that children in foster care over the age of 14 in abuse and neglect cases right to appear *in person* in court proceedings that relate to their care and custody. N.Y. Family Court Act § 1091(b)(1). No less should be provided to a child seeking findings regarding domestic abuse he has suffered that would entitle him lawful permanent resident status, and ultimately citizenship, in the United States. This is particularly true given A.H.'s track record of diligently attending his immigration court hearings, his lack of criminal convictions, and the multitude of options available to ORR to monitor his release or keep him in custody in the vicinity of life-changing court hearings in New York. *See* Gibbs Supp. Dec., ¶¶ 8-9. For these reasons, and those included in Plaintiff's opening brief, the balance of hardships and the public interest also favor injunctive relief.

## IV. CONCLUSION

Defendants' Opposition makes clear, in the starkest of terms, the magnitude of the Defendants' violations of A.H.'s rights, and the need for an order of this Court to remedy those violations.

Date: June 28, 2017

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

By: /s/ Julia Harumi Mass
Julia Harumi Mass
William S. Freeman
Attorneys for Plaintiff