AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
JULIA HARUMI MASS (SBN 189649)
WILLIAM S. FREEMAN (SBN 82002)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org
          wfreeman@aclunc.org

*Attorneys for Petitioner/Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on her own behalf<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>Jefferson B. Sessions, Attorney General of the United States; James McHenry, Acting Director of the United States Executive Office for Immigration Review; Thomas E. Price, M.D., Secretary of the Department of Health and Human Services of the United States; Steven Wagner, Acting Assistant Secretary of the Administration for Children and Families; Scott Lloyd, Director of the Office of Refugee Resettlement of the United States; Elicia Smith, Federal Field Specialist of the Office of Refugee Resettlement of the United States; and Brent Cardall, Chief Probation Officer of Yolo County, in their official capacities,<br><br>Respondents/Defendants. | Case No.: 3:17-cv-03615-VC<br><br>**SUPPLEMENTAL DECLARATION OF STEPHANIE GIBBS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**IMMIGRATION ACTION** |

I, Stephanie Gibbs, declare and state as follows:

1. I submit this declaration to supplement my declaration of June 22, 2017, submitted in support of the petition for habeas corpus and application for a temporary restraining order in this action. I have knowledge of the facts set forth herein, and if called upon to testify as a witness thereto, I could and would competently do so under oath.

2. When Professor Lenni Benson and I spoke to James De La Cruz at about 6:00 p.m. EST on Tuesday June 13, 2017, we asked Mr. De La Cruz the reason for A.H.'s arrest and referral to ORR. He told us that he did not know with certainty the reason for arrest or the arresting agency, but said he believed ICE was the arresting agency and suggested that A.H.'s arrest could be connected to "a lot of gang problems in Long Island."

3. When Mr. De La Cruz described the "step-down process" through which the Office of Refugee Resettlement ("ORR") would consider whether to maintain A.H. in a secure setting and put us in touch with Elicia Smith with regard to that process, I understood Mr. De La Cruz to be saying Ms. Smith would complete the assessment and make a determination regarding A.H.'s placement for the ORR.

4. Communications with A.H. at the Yolo detention center have been difficult to coordinate. I was put in touch with Officer Jose Castaneda who informed me that all attorney-client, confidential communication with A.H. could be coordinated through him, via email. I have requested three confidential phone calls with my client, and only one request, the very first, was accommodated. The only phone call that my office has had was on June 14, 2017, the day after A.H. arrived and was processed at Yolo. Officer Castaneda told me that A.H. would be free to call my office any afternoon after his school classes were concluded. However, my office has not received any phone calls from A.H., except the first and only phone call on June 14, 2017. This inability to regularly communicate with my client has substantially interfered with my ability to prepare my client for his upcoming court hearings, on June 6, 2017 in NYC Immigration Court, and on June 7, 2017 in Nassau County Family Court.

5. I understand that the Office of Refugee Resettlement has indicated A.H. will be provided an opportunity to make his scheduled court appearances via telephone or video

conference. However, a telephonic appearance is an inadequate substitute for live testimony. While Immigration Court may be more experienced with these types of appearances, it is still highly unusual, and in general immigration judges want to see and question the young person.

6. As a matter of law in family court, a subject's child's court appearance via telephone is neither outlined nor contemplated in the controlling New York Family Court Act or Surrogate's Court Procedure Act. On July 7, 2017, A.H. will be expected in Family Court for a final appearance to adjudicate the merits of his Motion for Special Findings and A.H.'s testimony will make up almost the entirety of that fact finding hearing. There are several factors that contribute the strength of this testimony. A.H.'s composure and peace of mind, as well as our opportunity to prepare together, have already been substantially impaired by his detention in California. I am also concerned about technological issues, given that the family court rarely hears substantive testimony provided via telephone. Moreover, because A.H. only speaks Spanish, his testimony will be conducted with a New York Courts interpreter, who will be present in the courtroom in New York, increasing the opportunities for technical issues to arise.

7. Because the Family Court hearing on July 7, 2017 is based on the Motion for Special Findings, highly sensitive information will be discussed. It is not unusual in cases such as A.H.'s that testifying to some of the most difficult parts of their personal history can be a re-traumatizing experience. In addition to the words that A.H. will say, his physical demeanor and non-verbal, facial responses all impact the quality of the testimony, and allow A.H.'s counsel to respond and follow up with all necessary questions to build an adequate record for the judge's consideration. Last, there may be other external factors that may need to be addressed by counsel in private with A.H. before testimony or on recess, which will be wholly impossible without his physical presence the day of hearings. Without my client's physical presence at Family Court on June 7, 2017, my ability to perform my duties as his attorney will be substantially impaired.

8. There are several alternatives to detention in California, nearly 3000 miles away from his mother, appointed guardian and ORR sponsor, and his counsel of record, that are less burdensome and should be considered. For example, one of the nearest ORR children's facilities in New York State is Children's Village. Children's Village is made up of several "cottages"

throughout the campus with double doors and locks, with 24 hours security cameras, and staffed 24 hours per day. The children spend most of their time inside each cottage, as one room is their school, one their common area, and other rooms where they sleep in approximately groups of four. There is mobility inside the cottage, however, they are only permitted outside approximately once per day for recreation in the area directly in front of their cottage.

9. Further, there are other alternatives to detention that have been used for Safe Passage Project clients. A.H. could be fitted with a tracking ankle bracelet that is worn at all times, and that cannot be removed. A.H. could report for regular ERO in-person reporting at the local ERO Field Office in New York City for check-in appointments. Last, A.H.'s mother could share her direct contact information with ERO for periodic phone call check-ins by the ERO officer regarding the whereabouts and welfare of A.H.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 28 2017, at New York, New York.

_____
Stephanie Gibbs