```
                                    Pages 1 -

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

ILSA SARAVIA, AS NEXT FRIEND   )
FOR A.H., A MINOR, AND ON HER  )
OWN BEHALF,                    )
                               )
         Plaintiff,            )
                               )
  VS.                          )     NO. CV 17-03615-VC
                               )
JEFFERSON B. SESSIONS, et al., )
                               )
         Defendants.           )
                               )
```

San Francisco, California
Thursday, June 29, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        AMERICAN CIVIL LIBERTIES UNION OF
        NORTHERN CALIFORNIA, INC.
        39 Drumm Street
        San Francisco, CA  94111
    **BY: WILLIAM S. FREEMAN, ESQUIRE**
        **JULIA H. MASS, ESQUIRE**

For Defendants:
        U.S. DEPARTMENT OF JUSTICE
        Civil Division
        P.O. Box 868
        Ben Franklin Station
        Washington, DC  20044
    **BY: SARAH B. FABIAN, ESQUIRE**

Reported By:    Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                Official Reporter

1 **Thursday - June 29, 2017**                                      **4:41 p.m.**

2                              **P R O C E E D I N G S**

3                                    ---oOo---

4     **THE COURT:**  Okay.  In light of the time sensitivity,
5 I'm just going to issue a ruling right now from the bench.

6     First, on the issue of proper respondent, I think it's a
7 close question, and my ruling is without prejudice to the
8 Government asking me to revisit it at a later stage in the
9 litigation, if necessary, but I am concluding that Ms. Smith is
10 the appropriate respondent.

11     As I said earlier, I do not believe that the distinction
12 between immigration habeas cases and other core habeas cases,
13 criminal cases, the *Padilla* case -- I don't believe that
14 distinction is convincing or the reasons for that distinction
15 are convincing.

16     But I do believe that it is appropriate, at least -- and I
17 believe -- it's a close question, and, like I said, you can ask
18 me to revisit it, but I do believe that it is appropriate to
19 distinguish between situations where the Government is holding
20 someone in its own facility and situations where the Government
21 is holding someone in a contracted-out facility.

22     I also think that in a situation where the Government is
23 holding someone in a facility run by some other entity, some
24 other government entity or some private entity, there are a lot
25 of reasons, as we discussed today, for not having the head of

1   that facility be named the respondent in a habeas case.
2        Moreover, I think the testimony here made clear that in
3   this context, Ms. Smith really is the custodian because
4   Ms. Smith is responsible for how things go with the custody of
5   the child.
6        There are all these ORR policies about the way in which
7   the child is held in custody and the procedures for holding the
8   child in custody, and Ms. Smith is in charge of that, in charge
9   of overseeing that, much like a warden would be in charge of it
10  in a more conventional scenario.
11       Moreover, I became even more convinced this must be the
12  right answer upon hearing that -- basically it appears that
13  every facility that ORR uses is a facility operated by somebody
14  other than ORR, including these private not-for-profit
15  corporations.
16       So it seems like the Government's argument in this case
17  for who is the proper respondent would stand for the
18  proposition that if somebody's in a nonprofit group home like
19  the one described in New York, the only appropriate respondent
20  in a habeas petition would be the person who works for that
21  nonprofit organization who's in charge of running that group
22  home.
23       And that, it seems, can't be right and particularly when
24  we now have testimony about how it's really ORR officials, the
25  ORR district director, who is responsible for making sure that

1  the ins and outs of custody are handled properly by the people
2  who are under contract with ORR.
3       So that is my conclusion about the proper respondent, and
4  so we're in the right district, and so I won't be, at least at
5  this stage, again without prejudice to the Government making
6  the argument later, if necessary -- I am concluding that we're
7  in the right district, and I won't be transferring the case to
8  the Eastern District of California.
9       With respect to the merits, I think on most of the issues
10  raised by the petitioner, the petitioner has not established a
11  likelihood of success or raised serious questions on the
12  merits.
13       I think also with respect to the access-to-counsel issue
14  and the access-to-courts issue, in addition to not establishing
15  strong likelihood of success on the merits, the petitioner
16  hasn't established irreparable harm because of all the issues
17  we discussed this morning and early afternoon regarding getting
18  a continuance.
19       However, with respect to one issue and that is -- sorry;
20  give me a second -- that is the issue relating to 8 U.S.C.
21  Section 1232 -- by the way, before I forget, let me hand these
22  exhibits back to Kristen.
23       With respect to the TVPRA, I believe that under the
24  sliding-scale approach that exists in the Ninth Circuit, the
25  petitioner has raised serious questions going to the merits.  I

1   wouldn't say made a strong showing of a likelihood of success,
2   but has raised serious questions going to the merits on whether
3   the TVPRA was violated by not giving adequate consideration to
4   whether A.H. should be placed into custody and placed into a
5   secure facility.
6          I say that with the caveat that -- as I said, I think it's
7   a close issue, even as to this child, but I say it without
8   regard to what the requirements are in the vast, vast majority
9   of cases.  I mean, one of the things that the testimony
10  established here is that this is a highly, highly unusual case.
11         But this is a case in which ORR had already screened the
12  child, screened the mother, made a decision that the child
13  could be placed with the mother, and entered into a contract
14  with the mother regarding the care of the child.
15         In those circumstances and given that ORR knew at the time
16  it received the referral from DHS that it had already engaged
17  in this screening process, it had an obligation to investigate
18  the information it was receiving from DHS about A.H.
19         Obviously it doesn't need to be reached, but I think it's
20  fair to assume at least that in normal circumstances, ORR might
21  not need to look behind the information it receives from DHS
22  about an unaccompanied minor that DHS has picked up for the
23  first time and that ORR has been referred for the first time
24  and that ORR has never had any contact with before.
25         But in a case like this, ORR had an obligation under the

1  statute, given the information that it had, to do more, to make
2  sure that the child should be in custody and that the child
3  should be in -- that being in a secure facility was the least
4  restrictive setting that is in the best interests of the child.
5      And so I believe that in a Temporary Restraining Order,
6  that violation or possible violation ought to be remedied, and
7  here's what I'm going to order ORR to do:
8      I'm going to require ORR to look much more carefully than
9  it has done up until now into whether it should have taken the
10 child into custody on -- June 12th, was it?
11     **MR. FREEMAN:**  Yes, Your Honor.
12     **THE COURT:**  And whether it should have -- if it should
13 have taken the child into custody, whether it should have
14 placed the child in a secure facility on June 12th.
15     I'm going to require ORR, number three, to look much more
16 carefully into whether -- even if it was appropriate to take
17 the child into custody on June 12th, whether it remains
18 appropriate under the statute to keep the child in custody, and
19 if so, where.
20     If so, number four, should the child remain in custody in
21 a secure facility.
22     So just to be clear, what I'm asking -- what I'm ordering
23 ORR to go back and look at carefully is, number one, whether it
24 should have retained, on June 12th, the child in custody at
25 all.

1       Number two, whether it should have sent the child to a
2  secure facility.
3       Number three, whether the child should remain in custody
4  today.
5       And number four, if so, whether the child should remain in
6  a secure facility as opposed to, say, the facility in New York
7  that we discussed.
8       I'm going to require ORR to make that determination by
9  July 7th.
10      And among other things -- I mean, it's obviously up to ORR
11 whether it wants to be more thorough than I'm requiring, but at
12 a minimum -- at a minimum -- ORR must conduct a careful check
13 of the accuracy of the information it received from DHS,
14 including obtaining police reports, if possible, and court
15 records, if possible, and including contacting the appropriate
16 local law enforcement officials who might have information
17 about the child's status as a member or affiliate of MS-13.
18      ORR must give the child an opportunity to be heard in the
19 presence of his attorney and must give his attorney the
20 opportunity to be heard in connection with this decision.
21      ORR must give the attorney access to all the information
22 on which the decision would be based and give her an
23 opportunity to respond to that information before the final
24 decision is made by July 7th.
25      Those are all the requirements that come to mind that I

1   want to impose on ORR in connection with this reconsideration,
2   but I'm willing to hear other suggestions, if anybody wants to
3   make any other suggestions about what ORR should be required to
4   do.
5          **MS. FABIAN:**  Your Honor, one question.
6      And I'm only guessing here if July 7th was based on
7   testimony from my client.  The 30-day process is already under
8   way and sort of --
9          **THE COURT:**  I'm concerned --
10         **MS. FABIAN:**  -- anticipated to close on the 13th, and
11  only because of the holiday next week would ask if perhaps the
12  Court would allow them to complete it --
13         **THE COURT:**  No.  I'm ordering it to be done by
14  July 7th, and I'm very concerned about the adequacy of that
15  process, which is why I included some specific requirements for
16  things that ORR needs to do and things that ORR needs to look
17  into.
18         **MS. FABIAN:**  Okay.
19     And then I guess I would ask -- and I -- I apologize.  You
20  asked ORR to -- I understand the requirements with what they
21  need to do and the process that that they need to follow.  I
22  think that makes sense.
23     You initially said to review the initial decision and --
24  so that their initial custody determination and then their --
25  make a new determination.  And you said consistent with the

1  statute.

2  Is that consistent with their own policy as they've
3  interpreted the statute, or is there another sort of
4  interpretation of the statute that you're asking them to apply?

5  **THE COURT:** I don't have in mind any requirement that
6  they make a determination that is different from how they would
7  do it pursuant to their policy, except to the extent that the
8  policy is inconsistent with anything that I just said. Is that
9  fair?

10  **MS. FABIAN:** That's helpful, Your Honor. Thank you.
11  **THE COURT:** Anything else?
12  **MR. FREEMAN:** Thank you, Your Honor.

13  Just a logistical question purely, and we understand the
14  order.

15  In terms of opportunity for counsel to have input and
16  respond, I take it that that's something that happens before
17  the 7th and that there's a report that needs to be submitted by
18  ORR to this Court and to us by the 7th?

19  **THE COURT:** Well, so clearly what is baked into my
20  order that I just announced is that ORR needs to provide the
21  child's attorney with the information that will go into
22  whatever decision they will be making well enough before the
23  7th to give the attorney an opportunity to respond.

24  The child himself, as I said, must be given an opportunity
25  to be heard.

1    You seem to be asking is ORR required to submit a report
2 by the 7th.
3    **MR. FREEMAN:**  Right.  I'm not trying to be obtuse.
4 I'm just trying to figure out where does this go and who does
5 it get to and when.
6    **THE COURT:**  I think it's -- it can be that ORR submit
7 a report, it can be that the parties come back for a Status
8 Conference on the Tuesday after -- actually, I don't believe
9 I'm going to be -- where am I going to -- I'm not going to be
10 here.
11    I mean, we could have -- am I going to be here that
12 Friday, the 7th?  We could have a Status Conference on Friday,
13 the 7th, or ORR can provide a written report -- what would
14 be --
15    **MS. FABIAN:**  I will be in L.A. on the 7th.
16    **THE COURT:**  We could have a telephonic Status
17 Conference on the 7th.
18    Would you rather do that or would you rather submit
19 something in writing on the 7th?
20    **MS. FABIAN:**  I believe if my client is going to issue
21 a decision, it would make sense for us to at least submit that
22 to opposing counsel, if not submit it to the Court, and then
23 follow up with a Status Conference from there so that -- so I
24 don't believe we would be able to provide that any earlier, and
25 that way the parties could talk about what we would propose to

1   the Court happen from there.
2           **THE COURT:** Okay.  So what does that mean?  Status
3   Conference on Friday?
4           **MR. FREEMAN:**  Friday afternoon, the 7th?  Friday
5   morning?
6           **MS. FABIAN:**  I guess what I'm saying is if my client
7   issues something on the 7th, having a Status Conference might
8   be premature on that Friday, only because we'll all sort of
9   review it when it's issued and then perhaps talking after that
10  to determine now that that is there, what do we believe should
11  happen next.
12          **THE COURT:**  Okay.  I'm somewhat hopeful -- back when I
13  worked for the Government, if I was the litigator in a case
14  like this, I would then be involved in the decision that was
15  going to be issued afterwards.  I'm hopeful that you are going
16  to be involved as well.
17          **MS. FABIAN:**  Absolutely, Your Honor.  Because I'm in
18  court and across the country from my clients on that day and
19  assuming it is issued that day, that would be the day -- the
20  earliest I would then be able to discuss that with opposing
21  counsel.  I think if we're doing that for the first time with
22  the Court, it may be less productive in terms of seeing where
23  the parties --
24          **THE COURT:**  I assume one of two things is going to
25  happen:  Your client will make a decision that they're happy

1   with or your client will make a decision that they're not happy
2   with.
3       And if they're not happy with it, presumably they will
4   want to seek further relief here, and if they want to seek
5   further relief here, that -- it's going to take time for them
6   to prepare their submission and all that stuff.  They're not --
7   I assume they're not going to be seeking relief on Friday
8   afternoon.
9       But I think what I would like to do is set a Status
10  Conference for Friday afternoon on the 7th at 3:00.  And if you
11  mutually decide that there is no value in having that Status
12  Conference at that time, you can move to continue it to
13  Wednesday, the 12th.
14      We have Case Management Conferences on Wednesday the 12th
15  that week; right?  Why are you looking so troubled?
16          **THE CLERK:**  We have four items at 1:30; one item at
17  2:30.
18          **THE COURT:**  That's not too bad.
19      Why don't we say 2:30 on Friday the 7th, and you can move
20  it, if you want, to 2:30 on Wednesday, the 12th.
21          **MS. FABIAN:**  That sounds fine.
22          **MR. FREEMAN:**  Thank you, Your Honor.
23          **THE COURT:**  Okay.
24          **MR. MASS:**  And is that going to be in person or
25  telephonic?

1          **THE COURT:**  I assume telephonic would be better.
2          **MS. FABIAN:**  It would need to be, yes.
3          **MR. MASS:**  Okay.  Thank you.
4          **THE COURT:**  All right.  Thank you.
5                (Proceedings adjourned at 5:02 p.m.)

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, June 30, 2017

*Pamela A. Batalo*
_____
Pamela A. Batalo, CSR No. 3593, RMR, FCRR
U.S. Court Reporter