CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Trial Attorney
VINITA B. ANDRAPALLIYAL
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962
E-mail: Sarah.B.Fabian@usdoj.gov

*Counsel for Respondents*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Lorenza Gomez, as next friend for J.G., a minor, and on her own behalf; Ilsa Saravia, as next friend for A.H., a minor, and on her behalf; and Wilfredo Velasques, as next friend F.E., a minor, and on his own behalf, <br><br> Plaintiff/Plaintiff, <br><br> vs. <br><br> Jefferson B. Sessions III, U.S. Attorney General, et al., <br><br> Respondents/Defendants. | Case : 3:17-cv-03615 <br><br> Defendants' Motion to Dismiss <br><br> Hearing: Oct. 26, 2017    10:00 AM <br> Place: Courtroom 4, 17th Floor, 450 Golden Gate Ave, San Francisco, CA 94102 <br><br> Honorable Vince Chhabria |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

LEGAL FRAMEWORK ......................................................................................1

    I.   U.S. Department of Homeland Security's
        Immigration Enforcement Authority ........................................1

    II.  U.S. Department of Health and Human Services
        Policies ...........................................................................................2

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................5

ARGUMENT .........................................................................................................6

    I.   The Amended Complaint should be dismissed because this Court lacks
        jurisdiction and/or venue over all claims ................................7

        *A.  The Court lacks jurisdiction over Plaintiffs'
            habeas claims* ......................................................................7

        *B.  Plaintiffs' remaining claims should be dismissed
            for improper venue* ...........................................................9

    II.  Count One should be dismissed because Plaintiffs fail to state a cognizable
        claim for unlawful arrest upon which relief may be granted ...............12

    III. Count Two should be dismissed because Plaintiffs lack
        constitutional procedural due process rights; in any event,
        the protections accorded are adequately robust ....................15

    IV. Plaintiffs fail to plead a plausible violation of their substantive
        due process rights in Count Three ...........................................19

    V.  Plaintiffs' *Flores* claims in Count Four is Procedurally Improper ......................20

    VI. Counts Five and Six should be dismissed because Plaintiffs fail to establish
        injury-in-fact or plausible claims for relief ..........................21

CONCLUSION ....................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ........................................................................ 13

*Allstar Marketing Grp., LLC v. Your Store Online LLC,*
666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......................................... 9

*Alvarez-Garcia v. Ashcroft,*
378 F.3d 1094 (9th Cir. 2004) ...................................................... 16

*Angov v. Lynch,*
788 F.3d. 893 (9th Cir. 2015) ........................................................ 16

*Armentero v. INS,*
340 F.3d 1058 (9th Cir. 2003) ........................................................ 7

*Armentero v. INS,*
412 F.3d 1088 (9th Cir. 2005) ........................................................ 7

*Artichoke Joe's v. Norton,*
216 F. Supp. 2d 1084 (E.D. Cal. 2002) ........................................ 13

*Artichoke Joe's California Grand Casino v. Norton,*
353 F.3d 712 (9th Cir. 2003) ........................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 24

*Awad v. Mukasey,* 1:06CV870 LGJMR,
2008 WL 2223285 (S.D. Miss. May 23, 2008) ............................ 25

*Balistreri v. Pacifica Police Dep't,*
901 F. 2d 696 (9th Cir. 1990) ...................................................... 14

*Bell Atlantic Corp. v Twombly,*
550 U.S 544 (2007) ...................................................................... 24

*Cal. v.NRG Energy Inc.,*
391 F.3d 1011 (9th Cir. 2004) ...................................................... 21

*Cannon v. Univ. of Chicago,*
441 U.S. 677 (1979) ...................................................................... 13

*Castro v. United States*,
    835 F.3d 422 (3d Cir. 2016)............................................................... 16

*Catholic Charities CYO v. Chertoff*,
    622 F. Supp. 2d 865 (N.D. Cal. 2008) ............................................... 13

*Catholic Charities CYO v. Napolitano*,
    368 F. App'x. 750 (9th Cir. 2010) ..................................................... 13

*Chew v. Colding*,
    344 U.S. 590 (1953) ........................................................................... 16

*City of Fresno v. United States*,
    709 F. Supp. 2d 888 (E.D. Cal. 2010)................................................ 21

*Cort v. Ash*,
    422 U.S. 66 (1975) ...................................................................... 13, 23

*Dielmann v. INS*,
    34 F.3d 851 (9th Cir. 1994) ............................................................... 25

*Dist. No. 1, Pac. Coast Dist. v. State of Alaska*,
    682 F.2d 797 (9th Cir. 1982) ............................................................... 9

*Flores v. Sessions*,
    862 F.3d 863 (9th Cir. 2017) ..................................................... 4, 6, 18

*Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*,
    450 U.S. 147 (1981) ........................................................................... 11

*Florida Nursing Home Ass'n v. Page*,
    616 F.2d 1355 (5th Cir. 1980) ........................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, (TOC), Inc.*
    528 U.S.167 (2000) ........................................................................... 15

*Fyock v. City of Sunnyvale*,
    25 F. Supp. 3d 1267 (N.D. Cal. 2014) ............................................... 18

*Fyock v. City of Sunnyvale*,
    799 F.3d 991 (9th Cir. 2015) ............................................................. 18

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)............................................................... 10

*Gutierrez Chavez v. I.N.S.*,
    337 F.3d 1023 (9th Cir. 2003) ............................................................. 21

*Gutierrez-Chavez v. I.N.S.*,
    298 F.3d 824 (9th Cir. 2002) ............................................................... 21

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................. 14

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ............................................................. 22

*Johnson v. Eisentrager*,
    339 U.S. 763 (1950) ........................................................................... 16

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ....................................................................... 17

*Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin*,
    333 F. Supp. 1302 (N.D. Cal. 1971) ................................................... 11

*Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ........................................................................... 25

*Kumar v. Gonzales*,
    C06-1805-MJP-JPD, 2007 WL 174089 (W.D. Wash. Jan. 17, 2007) ......... 25

*Lamont v. Haig*,
    590 F.2d 1124 (D.C. Cir. 1978) .......................................................... 11

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ............................................................................. 16

*Lepp v. Gonzales*,
    No. C-05-0566 VRW, 2005 U.S. Dist. LEXIS 41525 (N.D. Cal. Aug. 2, 2005) ............. 15

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................... 17

*Medina v. U.S. Dep't of Homeland Sec.*,
    C17-218 RSM, 2017 WL 1101370 (W.D. Wash. Mar. 24, 2017) ............ 12,15

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015) .............................................................. 22

iv

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ............................................................... 9

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) ................................................................. 9

*Preap v. Johnson*,
  831 F.3d 1193 (9th Cir. 2016) ............................................................... 1

*Puri v. Gonzalez*,
  464 F.3d 1038 (9th Cir. 2006) ............................................................... 7

*Reno v. Flores*,
  507 U.S. 292 (1993).................................................................... 18, 19

*Reuben H. Donnelley Corp. v. F.T.C.*,
  580 F.2d 264 (7th Cir. 1978) ......................................................... 11, 12

*Rumsfeld v. Padilla*,
  542 U.S. 426 (2004)....................................................................... 7, 8

*Sanchez v. Sessions*,
  --- F.3d ---,  14-71768, 2017 WL 3723238 (9th Cir. Aug. 30, 2017)............... 12, 13

*Santosky v. Kramer*,
  455 U.S. 745 (1982)...................................................................... 18, 19

*Schall v. Martin*,
  467 U.S. 253 (1984) ........................................................................ 18

*Shaar v. INS*,
  141 F.3d 953 (9th Cir. 1998) ............................................................. 25

*Shanks v. Dressel*,
  540 F.3d 1082 (9th Cir. 2008) ........................................................... 19

*Shaughnessy v. United States ex rel. Mezei*,
  345 U.S. 206 (1953)..................................................................... 15, 16

*Springle v. City of New York*,  11 CIV 8827 NRB,
  2013 WL 592656 (S.D.N.Y. Feb. 14, 2013) ........................................... 11

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
  552 U.S. 148 (2008)......................................................................... 13

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979) ........................................................... 13

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
136 F.3d 641 (9th Cir. 1998) ............................................. 21

*U.S. ex rel. Bilokumsky v. Tod*,
263 U.S. 149 (1923) ........................................................... 12

*United States v. Barajas-Alvarado*,
655 F.3d 1077 (9th Cir. 2011) ........................................... 16

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992) ............................................................. 21

*United States v. Peralta-Sanchez*,
14-50393, 2017 WL 510454 n.8 (9th Cir. Feb. 7, 2017) ...... 16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............................................... 2

*United States v. Salerno*,
481 U.S. 739 (1987) ........................................................... 18

*United States v. Stringer*,
535 F.3d 929 (9th Cir. 2008) ...................................... 23, 24

*United States v. Verdugo–Urquidez*,
494 U.S. 259 (1990) ........................................................... 16

*Vinieratos v. U.S. Dep't of Air Force Through Aldridge*,
939 F.2d 762 (9th Cir. 1991) ............................................. 21

*Wealth Rescue Strategies, Inc. v. Thompson*,
2008 WL 4447040 (D. Ariz. 2008) ................................... 10

*Wilson v. Demosthenes*,
972 F.2d 1348 (9th Cir. 1992) ........................................... 17

*Zinermon v. Burch*,
494 U.S. 113 (1990) ........................................................... 17

vi

## **STATUTES**

5 U.S.C. § 702 ............................................................................................... 12

5 U.S.C. § 706 ............................................................................................... 12

6 U.S.C. § 279(g)(2) ...................................................................................... 19

8 U.S.C. § 1153 .............................................................................................. 25

8 U.S.C. § 1226(a) ................................................................................. 1, 2, 14

8 U.S.C. § 1229a ............................................................................................ 22

8 U.S.C. § 1229a(b)(4)(A) ............................................................................. 24

8 U.S.C. § 1232 ........................................................................................ *passim*

8 U.S.C. § 1232(b)(3) ...................................................................................... 2

8 U.S.C. § 1232(c)(2)(A) ............................................................................ 3, 6

8 U.S.C. § 1232(c)(3)(A) ................................................................................. 4

8 U.S.C §.1232(c)(5) ..................................................................................... 23

8 U.S.C. § 1252(a)(5) .................................................................................... 22

8 U.S.C. § 1252(b)(9) .................................................................................... 22

8 U.S.C. § 1252(c)(5) .................................................................................... 23

8 U.S.C. § 1252(f) .......................................................................................... 15

8 U.S.C. § 1255(a) ......................................................................................... 25

8 U.S.C. § 1255(h) ......................................................................................... 25

8 U.S.C. § 1362 ........................................................................................ 22, 23

28 U.S.C. § 1331 ............................................................................................ 21

28 U.S.C. § 1343 ............................................................................................ 21

28 U.S.C. § 1361 ............................................................................................ 21

vii

28 U.S.C. § 1391(b) ......................................................................................... 11

28 U.S.C. § 1391(e) ......................................................................................... 11

28 U.S.C. § 1391(e)(1) ....................................................................................... 9

28 U.S.C. § 1391(e)(1)(A) ............................................................................... 11

28 U.S.C. § 1391(e)(1)(B) ............................................................................... 11

28 U.S.C. § 1391(e)(1)(C) ............................................................................... 11

28 U.S.C. § 1406(a) ........................................................................................... 9

28 U.S.C. § 2241 ..................................................................................... 7, 8, 21

28 U.S.C. § 2243 ............................................................................................... 7

## **RULES**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 6

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 6

Fed. R. Civ. P. 12(b)(3) ................................................................................. 6, 9

Fed. R. Civ. P. 12(b)(6) ......................................................................... 6, 14, 25

## **REGULATIONS**

8 C.F.R. § 236.1(b)(1) ..................................................................................... 14

8 C.F.R. § 236.3 ................................................................................................. 2

8 C.F.R. § 1003.25(c) ....................................................................................... 24

## **OTHER AUTHORITIES**

Immigration and Nationality Act of 1952, Pub. L. 82-414, § 66 Stat. 163,
   242(a), 208-09 .............................................................................................1

Family Court of the State of New York, *Electronic Testimony Applicatoin and Waiver of Personal Appearance*, (Sept. 11, 2017), https://www.nycourts.gov/forms/familycourt/pdfs/GF-17.pdf................................................................................................24

Office of Regugee Resettlement, *ORR Guide: Children Entering the United States Unacompanied,* (Sept. 8, 2017), http://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied ............................................................................... *passim*

**INTRODUCTION**

The Government ("Defendants") hereby moves to dismiss the First Amended Petition for Writ of Habeas Corpus and Class Action Complaint filed by Plaintiffs Lorenza Gomez, Ilsa Saravia, and Wilfredo Velasquez as next friends for their minor children and on their own behalf. The Amended Complaint should be dismissed for lack of subject matter and personal jurisdiction, improper venue, and failure to state a claim.

**LEGAL FRAMEWORK**

The Government refers the Court to its brief in opposition to Plaintiff Ilsa Saravia's motion for a temporary restraining order ("TRO") for a thorough legal background of (1) the post-2002 division of responsibilities between U.S. Department of Health and Human Services ("HHS"), which is tasked with the caregiving of unaccompanied alien children ("UACs"), and the newly created U.S. Department Homeland Security ("DHS"), which is tasked with immigration law enforcement; (2) the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), which specifies HHS's caregiving responsibilities, including the terms of its custody and release of UACs. *See* ECF 15, at 9–11. Below, the Government explains DHS's relevant immigration enforcement authority here for the first time, as Plaintiffs now challenge their arrest by DHS. The Government further expounds on the publicly available policies the HHS's Office of Refugee Resettlement ("ORR") follows once it receives a UAC.

I.     **U.S. Department of Homeland Security's Immigration Enforcement Authority**

DHS's enforcement authority includes the authority to arrest and detain any alien on a warrant "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Preap v. Johnson*, 831 F.3d 1193, 1198 (9th Cir. 2016) ("8 U.S.C. § 1226(a), grants the AG discretion to arrest and detain any alien upon the initiation of removal proceedings."). The executive branch has possessed this authority in some form since Congress enacted the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163 (June 27, 1952). *See id.* § 242(a) ("Pending a determination of deportability in the case of any alien as provided in subsection (b) of

this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody.").

Generally, the detention and release of juveniles arrested under Section 1226(a) is governed by 8 C.F.R. § 236.3, which specifies the order of preference of adults to which a juvenile is to be released on parole or recognizance and appropriate interim detention locations until a suitable placement is found. However, if a juvenile is found to be a UAC, DHS must follow the TVPRA and "transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is [a UAC]." 8 U.S.C. § 1232(b)(3).

## II.     U.S. Department of Health and Human Services's Policies

When a UAC is referred to ORR, the agency places the UAC with a care provider. OFFICE OF REFUGEE RESETTLEMENT, ORR Policy Guide: Children Entering the United States Unaccompanied ("ORR Guide") § 3.1, *available at* http://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last accessed September 8, 2017); *see also* Ex. A, *Flores v. Reno*, Case CV-85-4544-RJK(px) (C.D. Cal.) Settlement Agreement Ex. 1 (providing minimum standards for licensed programs.).[1]

The ORR Intakes staff makes an initial care provider placement decision for each UAC.[2] ORR Guide § 1.3.2. The majority of care providers operate one of three types of facilities: shelter-type facilities, staff secure facilities, or secure facilities. *Id.* § 1.1. Shelter care is a residential care facility in which all programs are administered on-site, in the least restrictive setting. *See* ORR Guide: Guide to terms. Staff secure facilities maintain stricter security measures than shelters, such as a higher staff to UAC ratio for supervision and a secure perimeter with a "no climb" fence. *Id.* They have a more shelter, home-like setting than secure detention, and do not have locked pods or

---

[1] The Government attaches a copy of the *Flores* settlement agreement. The document is both incorporated by reference into the Amended Complaint and a court document subject to judicial notice; therefore, this Court may consider the document in considering the Government's motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

[2] There are two types of placement decisions: (1) the initial placement with an ORR care provider; and (2) transfer between ORR care providers. ORR Guide § 1.2. When DHS refers a UAC to ORR, ORR conducts an initial placement decision. Once in care, a UAC may be transferred between facilities.

cell units. *Id.* Secure facilities are the most restrictive level of care. They are physically secure structures with staff able to control violent behavior and may be a licensed juvenile detention center or a highly structured therapeutic facility. *Id.*

When deciding placement, ORR places the child in the "least restrictive setting that is in the best interest of the child," subject to considerations of danger to self, danger to others, or risk of flight, in accordance with the TVPRA. 8 U.S.C. § 1232(c)(2)(A). By statute, ORR may only place children in a secure facility if it determines that the child poses a danger to herself or others, or has been charged with a criminal offense. 8 U.S.C. § 1232(c)(2)(A); *see also* ORR Guide § 1.2.4. For those cases in which a UAC may be placed in a secure or staff secure facility, such as those UACs with possible gang involvement, ORR uses a standardized "Placement Tool" to input all available information on the UAC's history and condition. ORR Guide § 1.3.2. Based on the score, the placement tool suggests a level of care. *Id.* However, this score can be overridden in consultation with Supervisory Federal Field Specialists ("FFS"). *Id.*

After a child is placed in an appropriate facility, the care provider conducts ongoing assessments of the UAC's needs. ORR Guide § 1.4. If a care provider determines that a different placement would better meet the child's needs, care providers make a recommendation to ORR and ORR may transfer the child between ORR care providers. *Id.* ORR assesses each child in secure or staff secure care at least once every 30 days to determine if the child should remain in such care and may step-down the child to a less restrictive facility if the child's circumstances warrant the change. *Id.* § 1.4.2. The ORR FFS may allow a review to take place earlier, particularly if new information indicates that another placement is more appropriate. *Id.* § 1.4.2. Further, after 30 days in a secure facility, a UAC may ask the ORR Director to reconsider her placement. *Id.* § 1.4.7. In making a step down decision, ORR reviews the criteria for the secure placement as well as any mitigating factors such as the UAC's current behavior, previous conduct, self-disclosures, and criminal/delinquent history. *Id.* § 1.4.2.

ORR also makes an ongoing assessment whether there is a suitable sponsor for all children in their care so that children may be released as quickly as is safe and appropriate. ORR Guide § 2.2. Under the TVPRA, ORR must make "a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). The assessment reviews a potential sponsor's strengths, resources, risk factors, and special concerns within the context of the UAC's needs, strengths, risk factors and relationship to the sponsor. ORR Guide § 2.4. A potential sponsor must fill out an application, the "family reunification package", provide identification documentation, and he or she, along with any adult living in his or her household, undergoes a background check. ORR Guide §§ 2.2.3 and 2.5.

Once the assessment of the potential sponsor is complete, the care provider makes a release recommendation. ORR Guide § 2.7. ORR makes the final release decision. *Id*. For children in secure or staff secure facilities, or for children who have been in these facilities previously, the release decision is elevated to the ORR Director or his designee for a final decision. *Id*. ORR will deny release if: (1) the potential sponsor is not willing or able to provide for the child's physical or mental well-being; (2) the physical environment of the home presents a risk to the child's safety or well-being; (3) release of the UAC would present a risk to him or herself, the sponsor, household, or community.[3] ORR Guide § 2.7.4.

Further, under the Ninth Circuit decision in *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017), the child may seek a bond hearing in front of an immigration judge to determine if the child is a danger to the community. ORR Guide § 2.9. ORR will release a child if an immigration judge

---

[3] If ORR denies release to a sponsor who is a parent or legal guardian, it sends a letter to the sponsor with an explanation for the reasons for the denial, instructions on how to obtain the child's case file, the supporting materials and information that formed the basis of the denial, and an explanation of how to appeal the decision to the Assistant Secretary for the Administration for Children and Families (ACF). ORR Guide § 2.7.7. If the sole reason for denial is that a child is a danger to himself/herself or the community, the child will also receive a copy of the denial letter. *Id*. The parent or legal guardian may appeal and explain to the Assistant Secretary why the decision is erroneous and present additional information. ORR Guide § 2.7.8. If a child is denied release solely because the child a danger to himself/herself or the community, the child may appeal if the parent or legal guardian does not seek an appeal. In such a case, ORR will appoint a child advocate to assist the child in seeking the appeal. *Id*.

("IJ") determines the child is not a danger to the community and therefore eligible for bond, but only if the child has a suitable sponsor to whom he/she may be released. *Id.*

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit was originally brought by Ilsa Saravia as next friend of A.H. and on her own behalf against the U.S. Department of Health and Human Services and Brent Cardall, the chief probation officer of Yolo County. ECF 1. At the time, A.H. was in ORR's care and custody at the Yolo County Juvenile Detention Facility, located in Woodland, California. ECF 1 ¶ 33. Plaintiffs raised seven claims for relief. *Id.* at 14–18. The next day, Plaintiffs moved for a temporary restraining order ("TRO"). ECF 7. After briefing and a hearing, this Court granted a TRO, ordering ORR to provide answers to the following questions: (1) should ORR have initially taken A.H. into custody on June 13, 2017; (2) should A.H. initially have been placed into secure custody on June 13, 2017; (3) whether it remains appropriate for A.H. to remain in ORR custody; and (4) if so, whether A.H. should remain in secure care at Yolo. June 30, 2017 Hearing Tr. at 6–7. ORR timely responded to these inquiries, ECF 27, and A.H. was subsequently transferred to a staff-secure facility in Dobbs Ferry, NY. ECF 31 ¶¶ 78–79.

On August 11, 2017, Plaintiffs filed an Amended Complaint. ECF 31. The new pleading adds multiple Plaintiffs, Defendants, claims, and class action allegations. *Id.* The added Plaintiffs are Lorenza Gomez, her son J.G., and F.E., who is represented by his next friend Wilfredo Velazquez. *Id.* The added Defendants are U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Citizenship & Immigration Services ("USCIS"), and officials from those agencies in their official capacities. *Id.*

Minors A.H., F.E., and J.G. are all seventeen years old and lack legal status in the United States. ECF 31 ¶¶ 10, 12, 14; *see also id.* ¶¶ 64, 66–67, 83, 94–95, 103–05. They were arrested by ICE officers. *Id.* ¶¶ 68, 88, 100. ICE temporarily detained each of them, for less than 72 hours. *Id.* ¶¶ 73, 88, 100. Thereafter, they were transferred to the care and custody of HHS. *Id.* ¶¶ 73, 88,

100. ORR is in receipt of information, some of which was provided by ICE, that A.H., F.E., and J.G., are affiliated with, or are members of, gangs. *Id.* ¶¶ 71, 90, 101.

As of the date Plaintiffs filed their amended habeas petition and complaint, A.H. is in a staff-secure ORR facility in Dobbs Ferry, New York. *Id.* ¶ 12. F.E. is at Lincoln Hall Boys' Haven, an ORR grantee shelter facility in Lincolndale, New York. *See id.* ¶ 92. J.G. is in the Selena Carson Home, a staff secure ORR grantee facility in Tacoma, Washington. *Id.* ¶ 102. Thus, as of the date of Plaintiffs' amended filing, none of the minors are in a secure facility, the most restrictive custody contemplated by the TVPRA's provisions for the care and custody of UACs. *See* 8 U.S.C. § 1232(c)(2)(A); ORR Guide § 1.3.2. Further, despite the Ninth Circuit's July 2017 *Flores* decision, 862 F.3d 863, that all UACs have the right to a bond hearing in front of an IJ to determine whether the UAC poses a danger to the community, Plaintiffs do not allege that they have availed themselves of this procedural protection before filing their Amended Complaint.

Plaintiffs allege six causes of action: (1) unlawful arrest in violation of the TVPRA and the Fourth Amendment; (2) deprivation of liberty without procedural due process; (3) excessive restraint of liberty, in violation of the TVPRA and the Fifth Amendment; (4) violation of the 1997 consent decree reached in *Flores v. Sessions*, 85-cv-4544 (C.D. Cal.); (5) interference with the right to counsel, in violation of the First and Fifth Amendments and the TVPRA; and (6) interference with the rights to access the courts and petition the Government, in violation of the First and Fifth Amendments. ECF 31 ¶¶ 119–158. Ilsa Saravia and Lorenza Gomez only assert the second cause of action on their own behalf. *Id.* ¶¶ 9, 11.

## ARGUMENT

Plaintiffs' habeas claims should be dismissed for lack of personal jurisdiction over the proper respondent, and their remaining claims should be dismissed for improper venue. Further, Plaintiffs' claims should be dismissed for either lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1), (2), (3), (6). Finally, the sweeping, permanent injunction they seek is barred by statute and case law.

## I. The Amended Complaint should be dismissed because this Court lacks jurisdiction and/or venue over all claims.

### A. The Court lacks jurisdiction over Plaintiffs' habeas claims.

The Amended Complaint seeks, in part, release from physical custody for each named Plaintiff. To the extent this relief is sought through a writ of habeas corpus, the petition for each named Plaintiff must be brought in the district in which the individual is detained. The Supreme Court has instructed that the proper respondent to a habeas petition brought under 28 U.S.C. § 2241 is the person with immediate physical custody over the petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). For "core" habeas challenges—", defined as "challenges to present physical confinement", brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435; *see also* 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained."). Thus, the default rule anticipates only one proper respondent for any habeas petition. Here, consistent with *Padilla*, the proper respondent for each Plaintiff is the individual who, at the time the petition was filed, had immediate physical custody over each Plaintiff or served as the warden or director of the facility in which each Plaintiff was located.[4]

That a remote federal official may have some role in the decision-making regarding a petitioner should not make that individual a proper respondent to a habeas petition. Nothing in *Padilla* warrants such a result. To the contrary, *Padilla* made clear that whatever legal authority a remote

---

[4] Prior to the Supreme Court's *Padilla* decision, the Ninth Circuit had rejected the immediate custodian rule. *See Armentero v. INS*, 340 F.3d 1058, 1059–60 (9th Cir. 2003) (withdrawn), *opinion on reh'g*, 412 F.3d 1088 (9th Cir. 2005). The Ninth Circuit has not revisited the question since *Padilla* was decided. Further, in *Padilla*, the Court declined to decide whether the Attorney General is the proper respondent to a habeas petition in the immigration context. *See* 542 U.S. at 435 n.8. However, at the time *Padilla* was decided, immigration habeas cases were distinct from "core" habeas challenges because an alien could bring challenges to his order of removal from the immigration court, along with challenges to his confinement, through a writ of habeas corpus. Subsequently, Congress required, through the REAL ID Act of 2005, that all challenges to an order of removal be brought in the circuit courts through a petition for review. *See Puri v. Gonzalez*, 464 F.3d 1038, 1041 (9th Cir. 2006). Given that immigration habeas petitions are limited to "core" challenges to confinement, the immediate custodian rule of *Padilla* should be applied. *See* 542 U.S. at 449–50.

official may have over the custody of a petitioner did not change its analysis that there is only a single proper respondent for challenges to present physical confinement, who is, and as noted above, the warden of the confining facility. *See* 542 U.S. at 434-40 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent. If the 'legal control' test applied to physical-custody challenges, a convicted prisoner would be able to name the State or the Attorney General as a respondent to a § 2241 petition. As the statutory language, established practice, and our precedent demonstrate, that is not the case."). Thus, a remote official is not a proper respondent simply because she makes legal decisions regarding the petitioner's custody.

For this Court to have jurisdiction over a habeas action for any named Plaintiff, it must have jurisdiction over the properly named custodian. *See id.* at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). At the time A.H.'s petition was filed, he was in Yolo, in Woodland, CA. ECF No. 1 ¶ 33. Respondent Cardall was the warden of that facility, and the only proper respondent to A.H.'s Petition. Because Woodland, CA is in the Eastern District of California, this Court lacked jurisdiction over the Petition. Further, at the time the Amended Complaint was filed, named Plaintiffs J.G. and F.E. were in custody in Tacoma, WA and Lincolndale, NY, respectively. ECF No. 31 ¶¶ 92, 102. The Amended Complaint names no respondent who is alleged to be the warden of either of those facilities, nor would this Court have jurisdiction over those individuals even if they were named.[5] Because this court lacks jurisdiction over the proper respondent for any named Plaintiffs' habeas claims, those claims must be dismissed.

> *B. Plaintiffs' remaining claims should be dismissed for improper venue.*

---

[5] Moreover, even if a remote federal official were a proper respondent under *Padilla*, Respondent Elicia Smith does not have authority over custody decisions for the facilities in Tacoma, WA and Lincolndale, NY where J.G. and F.E. were in custody at the time the Amended Complaint was filed, and therefore she still would not be a proper respondent for their habeas petitions. Plaintiffs have not named any other federal official within the jurisdiction of this Court who had such authority.

8

Further, the Northern District of California is an improper venue for the rest of Plaintiffs' claims. The federal venue statute provides that a plaintiff may bring civil action against an officer or agency of the United States "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Further, "[a]dditional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." *Id.*

If the court determines that venue is improper, it may dismiss the case, or, in the interest of justice, transfer it to any district in which it properly could have been brought. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. State of Alaska*, 682 F.2d 797, 799 n.3 (9th Cir. 1982). Where there are multiple parties and/or claims, "the plaintiff must establish that venue is proper as to each defendant and as to each claim." *Allstar Marketing Grp., LLC v. Your Store Online LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (internal citation and quotation marks omitted). On a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted). Plaintiffs bear the burden to establish that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California.").

No named Plaintiff allegedly resides in this district. Rather, Plaintiffs allege that venue is proper because "[a] substantial part of the events or omissions giving rise to the claims occurred in the Northern District of California, including decisions concerning the detention of each of the Plaintiffs, who are currently, or have been, or will be held in ORR custody in Yolo or Solano Counties in northern California." ECF No. 31 ¶ 7. "Specifically, Defendant Elicia Smith, the FFS

who serves as the approval authority for transfer and release decisions pertaining to unaccompanied minors within the Northern California region, is based in San Francisco." *Id.*

First, venue is improper in the Northern District of California for any of Plaintiffs' claims against ICE or USCIS. Plaintiffs allege *no* actions taken by ICE or USCIS in the Northern District of California, nor do they allege that any ICE or USCIS official who made any decision related to the named Plaintiffs—or even who had the authority to make any decision regarding the named Plaintiffs—is located in this district. *See generally* ECF 31. Where Plaintiffs do not allege that ***any*** act or omission on the part of ICE or USCIS occurred within the Northern District of California, they do not establish that venue is proper in this District for the claims against those agencies. The claims against ICE and USCIS therefore should be dismissed or transferred to a district where venue over those claims is proper.

In applying the venue statutes, "the adjective 'substantial' must be taken seriously. '[S]ignificant events or omissions material to the plaintiff's claim must have occurred' here." *Wealth Rescue Strategies, Inc. v. Thompson*, 2008 WL 4447040, at *1 (D. Ariz. 2008) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). The only federal Defendant located within this district is FFS Elicia Smith. Plaintiffs allege no overt acts or omissions on behalf of FFS Smith, nor do they allege that she made any decisions with regard to the named Plaintiffs' transfer or initial placement. Instead, they allege only that she "serves as the approval authority for the transfer and release of unaccompanied children within the geographic region of Northern California." ECF 31 ¶ 19. But FFS Smith does not, in fact, have authority over initial placements in the Yolo facility, nor does she have decision-making authority to release a UAC from secure or staff secure custody or transfer from secure care. *See* ECF 15-2, ¶ 9; Ex. B, Decl. of James De La Cruz (Sept. 14, 2017). Thus, Plaintiffs fail to establish that any authority FFS Smith may hold – especially where there is no evidence that this authority was ever exercised – constitutes a "substantial" part of the acts or omissions giving rise to the named Plaintiffs' claims. Therefore, the claims against HHS should be dismissed for improper venue.

Where 28 U.S.C. §§ 1391(e)(1)(B) and (C) do not apply, venue can only be proper if Defendants reside here. 28 U.S.C. § 1391(e)(1)(A). The Ninth Circuit has not decided where a government official or agency "resides" for purposes of §1391(e), although at least one court in this District has refused to find venue proper under § 1391(e) in a suit against an agency merely because two subordinate officials working in the District were named as defendants. *See Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin*, 333 F. Supp. 1302, 1304 (N.D. Cal. 1971). The District of Columbia Circuit and district courts in the Second Circuit have held that a government official "resides" under § 1391(e) in the place where her duties are performed. *See Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978); *Springle v. City of New York*, 11 CIV 8827 NRB, 2013 WL 592656, at *8 (S.D.N.Y. Feb. 14, 2013) ("[C]ourts in this Circuit have held that "residence for the purpose of venue is where the officials perform their duties."); *see also Florida Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds sub nom. Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (noting that under section 1391(b), the general venue statute, "[t]he general rule in suits against public officials is that a defendant's residence for venue purpose is the district where he performs his official duties."). For its part, the Seventh Circuit has limited the residence of agencies under § 1391(e) to their national headquarters. *See Reuben H. Donnelley Corp*. v. F.T.C., 580 F.2d 264, 267 (7th Cir. 1978) (holding that permitting a government agency to be sued in any district where it has an office "would mean that a plaintiff could file a suit in any district regardless of how remote that district's contact may be with the litigation").

Regardless of whether the Court adopts the D.C. or Seventh Circuit's approach, the named Plaintiffs cannot establish venue in this District for their claims against any of the agency defendants. Under the Seventh Circuit's rule, none of the agencies sued here have their national office in the Northern District of California, and therefore venue is not proper. *See Reuben H. Donnelley Corp.*, 580 F.2d at 267. Under the D.C. Circuit's broader view, the only federal Defendant against whom venue is potentially proper is FFS Smith. However, Plaintiffs allege no

action or inaction on the part of FFS Smith that forms the basis for any of their claims. The mere fact that she holds some authority with regard to the named Plaintiffs, even though that authority was not exercised in a manner that gave rise to any of the claims in this action, does not provide a basis this this Court to find that venue is proper over Plaintiffs' claims. Because Plaintiffs have failed to establish that venue is proper in this District for their claims, the Amended Complaint should be dismissed or transferred to a district where venue is proper.

## II. Count One should be dismissed because Plaintiffs fail to state a cognizable claim for unlawful arrest upon which relief may be granted.

In Count One, Plaintiffs allege that ICE's arrest of A.H., F.E., and J.G. violated 8 U.S.C. § 1232 and the Fourth Amendment of the U.S. Constitution and appear to allege three separate claims, under 8 U.S.C § 1232, the Fourth Amendment, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. ECF 31 ¶¶ 119–127.

As a threshold matter, to the extent Plaintiffs are seeking habeas relief in the form of the immediate release of A.H., F.E., and J.G. on the basis of their alleged unlawful arrests, *see* ECF 31 at 36, they do not allege claims upon which relief may be granted. *See U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) ("A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.") (internal citation and quotation marks omitted); *Medina v. U.S. Dep't of Homeland Sec.*, C17-218 RSM, 2017 WL 1101370, at *1–2 (W.D. Wash. Mar. 24, 2017) ("[T]he remedy for an unlawful arrest in violation of the Fourth Amendment is suppression of evidence . . . ." not release.); *cf. Sanchez v. Sessions*, --- F.3d. ---, 14-71768, 2017 WL 3723238, at *4 (9th Cir. Aug. 30, 2017) ("The exclusionary rule applies in civil removal proceedings where a noncitizen's Fourth Amendment rights are egregiously violated.").

Second, to the extent Plaintiffs seek to sue for declaratory or injunctive relief under 8 U.S.C. § 1232, no private right of action exists under that statute, and none should be implied. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (the remedies available are those 'that Congress enacted into law')). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co.*, at 568 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)) (internal quotations omitted). "[I]t is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 164 (2008).

Here, 8 U.S.C. § 1232 provides no explicit private right of action. Further, Plaintiffs do not establish, nor does the legislative evidence reveal, Congressional intent to create a right of action under that statute. *See Cort v. Ash*, 422 U.S. 66, 78 (1975); *cf. Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 883 (N.D. Cal. 2008), *aff'd sub nom. Catholic Charities CYO v. Napolitano*, 368 F. App'x 750 (9th Cir. 2010). Rather, the appropriate way to challenge agency action like DHS's arrests is under the APA, and Plaintiffs themselves list that statute as a separate means of pursuing their claim. ECF 31, at 29. "This is a predictable outcome because there is a strong presumption that Congress intended judicial review of agency action under the APA, while courts presume that Congress did not intend implied private rights of action." *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1114 (E.D. Cal. 2002), *aff'd sub nom. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003).

In any event, Plaintiffs fail to establish a plausible claim of unlawful arrest under the TVPRA or the APA. ICE plainly has the authority to arrest an alien on a warrant "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into

custody under the authority" of a warrant to arrest). Plaintiffs do not allege that ICE arrested any of the minors without a warrant or that that a decision on whether the minors are to be removed from the United States is not pending. *See generally* ECF 31; 8 U.S.C. § 1226(a).

Further, Plaintiffs allege without substantiation that "[i]t is implicit in the structure and language of the TVPRA that once ORR makes a determination that it is in the best interest of a U[A]C's to be released to a parent or other sponsor, ICE may not simply re-arrest a Sponsored U[A]C on grounds of removability, but may act only in the face of changed circumstances that are exigent in nature and based on credible information." ECF No. 31 ¶ 123. The Court may not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008). Here, Plaintiffs do not point to any language in the TVPRA that suggests this to be true. Nor do the applicable portions of the TVPRA reveal any sort of prohibition, explicit or otherwise, on ICE's authority to arrest of a minor who had previously been classified as a UAC and subsequently released to a suitable custodian while awaiting a decision on whether he or she is to be removed from the United States. *See generally* 8 U.S.C. § 1232.

Plaintiffs' Fourth Amendment claim, meanwhile, has multiple shortcomings. First, Plaintiffs' legal theory is not cognizable. Plaintiffs seek to establish that the Government has violated the Fourth Amendment by merely stating in passing that "ICE's arrest of Plaintiffs also constituted unreasonable seizures in violation of the Fourth Amendment." ECF 31 ¶ 125. They fail to explain how the arrest of a removable individual in accordance with a statute that authorizes such arrests— 8 U.S.C. § 1226(a)—constitutes an unreasonable seizure lacking in probable cause. *See Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1990) (stating that dismissal under Fed. R. Civ. P. 12(b)(6) can be based upon the lack of a cognizable legal theory); *see also Lepp v. Gonzalez,* 2005 U.S. Dist. Lexis 41525 (N. D. Cal. Aug. 2, 2005), at *25 (dismissing a complaint with prejudice because plaintiff's claim against the United States did not rest upon a cognizable legal theory). Indeed, Plaintiffs make no allegation that ICE lacked probable cause to arrest

Plaintiffs pending a decision on whether they were to be removed from the United States. *See generally* ECF 31. Nor do they adequately allege that the Fourth Amendment requires more than probable cause of removability to make a civil immigration arrest. *See generally id.*

Further, Plaintiffs seek a declaratory judgment and a permanent injunction preventing ICE from arresting individuals "who were previously released by ORR to a parent or other sponsor without reliable information of changed circumstances that are sufficiently serious and exigent to justify arrest." ECF 31, at 36. However, this is not a proper remedy for an unlawful arrest claim, especially one brought challenging an immigration arrest. *Medina*, 2017 WL 1101370, at *1–2; *cf. Sanchez*, 2017 WL 3723238, at *5. Therefore, Plaintiffs lack standing to seek such relief. *Friends of the Earth*, 528 U.S. at 185; *see also* 8 U.S.C. § 1252(f) ("Regardless of the nature of the action or claim or of the identity of the . . . parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an *individual* alien against whom proceedings under such part have been initiated.") (emphasis added). Therefore, Plaintiffs' first cause of action should be dismissed.

### III. Count Two should be dismissed because Plaintiffs lack constitutional procedural due process rights; in any event, the protections accorded are adequately robust.

Plaintiffs next argue that the minor Plaintiffs' confinement in secure or staff-secure ORR facilities and their transfers to locations "far from family" constitute violations of their procedure process rights under the Fifth Amendment. ECF 31 ¶¶ 128–34.

As an initial matter, as non-admitted aliens who were apprehended shortly after arriving at the border, ECF 31 ¶¶ 64, 83, 95, the minor Plaintiffs lack procedural due process rights related to their admission above those which Congress has provided them. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

It is well-settled that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United*

*States v. Verdugo–Urquidez*, 494 U.S. 259, 271 (1990). Aliens identified at the border who have not had any contact with the United States—even if they are subsequently paroled into the territorial United States during the resolution of their claims for admission—are not entitled to any process other than that provided by statute. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"). For such aliens, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy*, 345 U.S. at 212 ); *see Alvarez-Garcia*, 378 F.3d at 1097–98; *see also Angov v. Lynch*, 788 F.3d. 893, 898 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 896 (2016); *Castro v. United States*, 835 F.3d 422 (3d Cir. 2016); *United States v. Peralta-Sanchez*,  14-50393, 2017 WL 510454, at *4 n.8 (9th Cir. Feb. 7, 2017).

Longstanding Supreme Court precedent distinguishes among aliens who have been lawfully admitted, those who are physically present in the United States, albeit illegally, for some meaningful period of time, and those who have never entered and have yet to form a connection to the country, with the latter lacking constitutional procedural due process rights. *See Verdugo-Urquidez*, 494 U.S. at 270–71 (collecting cases); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"); *Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953); *cf. Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between unlawful presence, lawful presence, and lawful presence accompanied by other ties to the United States like "preliminary declaration of intention to become a citizen").

The minor Plaintiffs have a panoply of rights provided by Congress in the TVPRA, and in the *Flores* settlement agreement; that is all they are due. Congress has developed an extensive and detailed statutory scheme governing the treatment of UACs, and Plaintiffs do not allege that they have failed to receive those procedural protections.

16

In any event, Plaintiffs do not establish in their Amended Complaint that the numerous procedural protections accorded to them and other UACs are constitutionally inadequate. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To determine what procedural due process requires in a given situation, the Supreme Court has articulated the following factors to consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, any liberty interest Petitioner may possess must be weighed against both (1) the minimal risk of erroneous deprivation due the numerous safeguards already in place, as well as the minimal value, if any, of the additional safeguards Petitioner seeks, and (2) the Government's weighty interests in preserving public welfare, including Petitioner's own welfare.[6]

First, to the extent Plaintiffs argue that the Constitution requires notice and the opportunity to be heard before a "neutral decision maker, to examine the evidence upon which ORR purports to base its determinations, and to cross-examine witnesses," ECF 31 ¶ 132, Plaintiffs fail to explain how the fact that UACs are accorded bond hearings in front of IJs, who are neutral decision makers

---

[6] Even assuming the minor Plaintiffs have any constitutional procedural due process rights related to their admission, the Government does not concede that Plaintiffs have adequately alleged a cognizable procedural due process right, having vaguely asserted a right to family integrity without defining the right in any more detail. *Kerry v. Din*, 135 S. Ct. 2128, 2134 (2015) (plurality opinion) (cautioning against language that "establishes a free-floating and categorical liberty interest" and against describing liberty interests "so broadly" when "reviewing the sweep of implied rights").

The Government certainly does not concede a procedural due process right that would entitle Plaintiffs to the relief they seek in the way of a permanent injunction requiring ORR to "immediately transfer Plaintiffs in staff secure facilities to a facility within no more than two hours' driving distance from their guardians, sponsors, or representatives." ECF No. 31 at 36; *cf Wilson v. Demosthenes*, 972 F.2d 1348 (9th Cir. 1992) (finding similarly in the criminal context).

outside of HHS, to examine any ORR determination that they are a danger to the community, fails to satisfy that requirement. *See Flores*, 862 F.3d at 881.

Second, the Government's interests in preserving public welfare, including Plaintiffs' own welfare, cannot be overstated. *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) ("[T]he State has an urgent interest in the welfare of the child . . . ."); *Flores*, 507 U.S. at 303; *see also United States v. Salerno*, 481 U.S. 739, 748–50 (1987); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1279 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ("Public safety and crime prevention are compelling government interests.").

Indeed, where the individual is a child, the State's interest is different, and the cases regarding an adult's due process liberty interest must be viewed differently. ORR's procedures under the TVPRA are established in order to ensure that before any UAC is released from Government custody the custodian and members of the household to whom the UAC is released are evaluated and determined to be safe and suitable for the UAC. The State also has a *parens patriae* interest in protecting the children against the consequences of their own bad decisions. *See Schall v. Martin*, 467 U.S. 253, 265 (1984) (Pretrial detention of juvenile delinquents based on a finding of "serious risk" that minor "may before the return date commit an act which if committed by an adult would constitute a crime" did not violate due process, because "the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's '*parens patriae* interest in preserving and promoting the welfare of the child,'" especially because of the "recognition that juveniles, unlike adults, are always in some form of custody.") (quoting *Santosky*, 455 at 766).

Therefore, Plaintiffs fail to establish that the current procedures in place applicable to Plaintiffs' time in ORR custody violate any procedural due process rights they may possess with respect to their admission. Count Two must accordingly be dismissed.

**IV.      Plaintiffs fail to plead a plausible violation of their substantive due process rights in Count Three.**

Next, in Count Three, Plaintiffs argue that the minor Plaintiffs' detention in secure or staff secure facilities violates their substantive due process rights. To state a substantive due process claim, Plaintiffs "must show as a threshold matter that a state actor deprived [him] of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). Plaintiffs' liberty interest must be defined more specifically, as that of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed outside the custody of a government-operated or government-selected child-care institution.[7] *Flores*, 507 U.S. at 302.

The Supreme Court, in *Flores*, has spoken on this issue and has found there is no liberty interest to be placed outside of a "decent and humane custodial situation" in the absence of an available parent. *Id.* at 303. Specifically, the Court stated that "where a juvenile has no available parent, close relative, or legal guardian, where the government does not intend to punish the child, and where the conditions of governmental custody are decent and humane, such custody surely does not violate the Constitution." Rather, "[it] is rationally connected to a governmental interest in 'preserving and promoting the welfare of the child,' and is not punitive since it is not excessive in relation to that valid purpose." *Reno v. Flores*, 507 U.S. 292, 303 (1993) (quoting *Santosky v. Kramer*, 455 U.S. 745, 766 (1982)). Clearly, *Flores* applies with full force here.[8] Even assuming the truth of their allegations, Plaintiffs fail to substantiate their allegation that Defendants fail to follow their own procedures, *see* ORR Guide § 1.2, *Flores* Agreement ¶¶ 14, 23, or that they

---

[7] Plaintiffs do not contest the fact that they are, at present, unaccompanied alien children as defined by statue. *See* 6 U.S.C. § 279(g)(2).

[8] While the *Flores* plaintiffs had no parent in the United States and were held in less secure facilities than Plaintiffs, the holding in *Flores* does not turn on whether the unaccompanied minor is in removal proceedings or whether a parent or legal guardian is present in the United States. *See Flores*, 507 U.S. at 303. Plaintiffs' prior placements in a secure facility is similarly a distinction without a difference, because Plaintiffs' placements are not a punitive measure but rather one taken in the interests of safety and their own welfare. *See* ORR Guide § 1.1, 1.2.

possess a clearly defined substantive due process right that is potentially violated by the Government's actions. Therefore, Count Three should be dismissed.

## V. Plaintiffs' *Flores* claims in Count Four is Procedurally Improper.

In Count Four, Plaintiffs allege various violations of the *Flores* settlement agreement. Plaintiffs' *Flores* claim is premised on Paragraph 24B of the agreement, which states that "[a]ny minor who disagrees" with his or her placement determination, "or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1, may seek judicial review in any United States District Court **with jurisdiction and venue over the matter** to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1." Further, "[i]n such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action." *Flores* Agreement ¶ 24B (emphasis added). However, Plaintiffs impermissibly attempt to challenge aspects of the *Flores* agreement apart from the limited challenge provided in Paragraph 24B, and fail to bring any *Flores* claims in the proper venue.

The only actions that may be challenged under Paragraph 24B of the *Flores* agreement are (1) the determination to place a minor in a particular type of facility, and (2) the failure of the licensed facility to comply with the standards set forth in the Exhibit 1 of the agreement. Plaintiffs' allegations include alleged violations of Paragraphs 11, 14, and 27 of the agreement. Such allegations, to the extent they may be brought at all, should be brought as a *Flores* enforcement action under Paragraph 37, in the Central District of California.

While Plaintiffs also appear to challenge the decisions to place them in a particular facility under Paragraph 24B of the *Flores* agreement, their claim is fatally flawed in at least three respects. First, the only jurisdictional hook they plead appears to be under the APA.[9] Per the plain terms of

---

[9] The Government has not waived its sovereign immunity from suit through the *Flores* settlement agreement. *Cal. v. NRG Energy Inc.*, 391 F.3d 1011, 1023–24 (9th Cir. 2004); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992); *see also, e.g.*, *City of Fresno v. United States*, 709 F. Supp. 2d 888, 908 (E.D. Cal. 2010) (finding

Paragraph 24B, both jurisdiction *and* venue must be present, *id.*, and the Government has already established that venue is improper for all of Plaintiffs' claims. *See supra*. Second, such a claim can only be brought on behalf of an individual minor. *See Flores* Agreement ¶ 24B (liming remedies "to entering an order solely affecting the individual claims of the minor bringing the action"). Third, the standard of review under Paragraph 24B is "abuse of discretion." *Flores* Agreement ¶ 24C. Plaintiffs, however, do not plead that Defendants have abused their discretion in determining the minor Plaintiffs' placements. ECF 31 ¶¶ 143–44. Therefore, Count Four should be dismissed.

## VI. Counts Five and Six should be dismissed because Plaintiffs fail to establish injury-in-fact or plausible claims for relief.

Finally, in Counts Five and Six, Plaintiffs allege that the Government's actions are interfering with their rights to counsel, access to the courts, and to petition the Government in violation of the Fifth and First Amendments and the TVPRA. ECF 31 ¶¶ 145–58. Plaintiffs have failed to substantiate their claims to survive dismissal under Rules 12(b)(1) and (b)(6).

As a threshold matter, Plaintiffs fail to prove an injury-in-fact to sustain either claim; rather, their asserted injuries are speculative. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of and (3) a likelihood that the injury will be redressed by a favorable decision." *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1196 (2016). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation omitted). Plaintiffs base their claims on speculative

that the United States did not waive its sovereign immunity when it signed a cooperative agreement). Thus, the Court must possess jurisdiction independent of the *Flores* settlement agreement for the claim to proceed. 28 U.S.C. § 2241 does not provide jurisdiction for a claim alleging violation of a settlement agreement because it is clearly established that "habeas review under § 2241 is limited only to claims of constitutional or statutory error." *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 827 (9th Cir. 2002), *opinion amended on denial of reh'g sub nom. Gutierrez Chavez v. I.N.S.*, 337 F.3d 1023 (9th Cir. 2003). Further, 28 U.S.C. § 1331 does not provide independent grounds for jurisdiction. *Vinieratos v. U.S. Dep't of Air Force Through Aldridge*, 939 F.2d 762, 774 (9th Cir. 1991). Moreover, to the extent Petitioner alleges jurisdiction for this claim pursuant to 28 U.S.C. §§ 1343 and 1361, *see* ECF 31 ¶ 6, it is not apparent from the Verified Petition how the alleged violations of the *Flores* agreement creates a claim that would fall under either of those jurisdictional statues.

assumptions of potential future harm with no ties to an actual injury. For example, Plaintiffs assert that "unless enjoined," Defendants have and will continue to interfere with Plaintiffs' access to counsel. ECF 31 ¶ 150. Yet Plaintiffs specifically allege that they in fact met with or had access to counsel during their ORR custody. ECF 31 ¶ 80 (referring to A.H.'s attorneys actions while A.H. was in ORR custody); ¶ 92 (stating that F.E. met with an ACLU investigator while in ORR custody); ¶102 (referencing visits by J.G.'s counsel while in ORR custody). Thus, their allegations do not establish that their rights have been interfered with.

Further, as with their first claim, Plaintiffs impermissibly seek non-habeas relief in Count Five by alleging violations of 8 U.S.C. §§ 1362, 1229a, and 1232. The Court lacks subject matter jurisdiction over Plaintiffs' claims arising under 8 U.S.C. §§ 1362 and 1229a because such claims must be brought in their removal proceedings and judicial review of those proceedings.[10] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032–33 (9th Cir. 2016) ("In light of §§ 1252(b)(9) and 1252(a)(5) and our precedent, the children's right-to-counsel claims must be raised through the PFR process because they 'arise from' removal proceedings. Thus, the Court lacks jurisdiction over these claims. Further, despite Plaintiffs' reference to 8 U.S.C. § 1252(c)(5), the TVPRA does not create an implied cause of action to bring an interference claim.[11] *See supra*; *see also* 8 U.S.C. § 1232; *Cort*, 422 U.S. at 78.

---

[10] "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section." 8 U.S.C. § 1252(a)(5); *see also* 8 U.S.C. § 1252(b)(9) ("Consolidation of questions for judicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from *any* action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.") (emphasis added).

[11] Any contention that 8 U.S.C. 1232(c)(5) requires counsel to participate in placement decisions willfully misreads the statute. Paragraph (c)(5) is directed at procuring counsel to the extent practicable and without any requirement that Government pay for attorneys, primarily for immigration proceedings on behalf of UAC. *See* 8 U.S.C. § 1232(c)(5), incorporating 8 U.S.C. § 1362, which in turn provides a right to counsel in removal proceedings at no expense to the Government. Nowhere does the law dictate that counsel must be present at or participate in any determination specifically delegated to ORR, such as the review of secure custody.

Moreover, Plaintiffs do not adequately allege that ORR's custody has actually, meaningfully interfered with their right to counsel or access to court proceedings. According to the Ninth Circuit, "[a] claim of government interference with the attorney-client relationship" violating the Fifth Amendment's due process right "has three elements: (1) the government was objectively aware of an ongoing, personal attorney-client relationship; (2) the government deliberately intruded into that relationship; and (3), as a result, the defendant suffered actual and substantial prejudice. *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008).

Plaintiffs do not meet this test, but instead make a series of vague and/or conclusory allegations that "Defendants have interfered with and denied . . . [Plaintiffs'] access to counsel in violation of their constitutional and statutory rights." ECF 31 ¶¶ 145–50. This does not present the kind of deliberate, intrusive governmental conduct necessary to give rise to a constitutional violation. Plaintiffs do not claim that ICE or HHS violated any governing statutes or regulations in raising their allegations that Defendants inferred with their right to counsel. They simply cite to 8 U.S.C. §§ 1229a(b)(4)(A), and 1362, which allow Plaintiffs the "privilege of being represented [in their immigration removal proceedings], at no expense to the Government, by counsel of the alien's choosing"; and 8 U.S.C. § 1232(c)(5) which directs HHS to "ensure, to the greatest extent practicable. . . that all unaccompanied alien children who are or have been in the custody of the Secretary . . . have counsel to represent them in legal proceedings or matters. . ." ECF 31 ¶¶ 148–49. Plaintiffs thus fail to provide any to substantiate their conclusion that that the government "deliberately intruded" into their attorney-client relationship or that Plaintiffs have suffered actual and substantial prejudice. *Stringer*, 535 F.3d at 941.

Next, with regard to Plaintiffs' claim that "Defendants' have violated and, [ ] will continue to violate Plaintiffs' rights to access the courts and government benefits" they have likewise failed to state a plausible claim for relief. ECF 31 ¶¶ 151–58. Plaintiffs must set forth "sufficient factual

---

While the statute cannot be read to require counsel at each and every secure detention review, ORR has created a Director review process such that a UAC may request a reconsideration of placement. ORR Guide, § 1.4.7. At such review, the UAC's counsel may also present written arguments.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

First, Plaintiffs have failed to allege a plausible claim for relief that Defendants have interfered or will interfere with their ability to attend their state court or immigration court hearings. In the Am. Compl., Plaintiffs merely speculate that they may not have access to future immigration court hearings or state court hearings. ECF 31 ¶¶ 154, 158. This speculation does not establish the concrete injury necessary to state a plausible claim for relief.[12]

Plaintiffs likewise fail to state a cognizable claim for relief that the government is interfering with the Plaintiffs' rights to access government benefits and services. As a threshold matter, a plain reading of the Amended Complaint belies this claim. *See* ECF No 31 ¶ 66 (discussing A.H.'s pursuit of Special Immigrant Juvenile ("SIJ") classification); ¶ 94 (discussing F.E.'s SIJ application process); ¶ 103 (discussing J.G.'s U-visa application process). Plaintiffs' real complaint is with the outcome of their proceedings petitioning the government for immigration benefits—and not, as plead in the Am. Compl., interference with the right to petition for immigration benefits. *Compare* ECF 31 ¶¶ 94, 103 *with* ECF. 31 ¶¶ 155-58.

In any event, as discussed above, aliens unlawfully in the United States have limited rights. *Shaar v. INS*, 141 F.3d 953, 959 (9th Cir. 1998). Relevant here, Plaintiffs only have the right to have the visa processed within the procedures authorized by Congress. *See Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Dielmann v. INS*, 34 F.3d 851, 853 (9th Cir. 1994); *Kumar v. Gonzales*, C06-1805-MJP-JPD, 2007 WL 174089, at *2 (W.D. Wash. Jan. 17, 2007); *Awad v. Mukasey*,

---

[12] Removal proceedings and family court proceedings are routinely held with parties and witnesses appearing remotely. *See* 8 C.F.R. § 1003.25(c) (titled "Telephonic or video hearings" and stating that "[a]n Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person"); *see also, e.g.*, Family Court of the State of New York, Electronic Testimony Application and Waiver of Personal Appearance, https://www.nycourts.gov/forms/familycourt/pdfs/GF-17.pdf (last accessed September 11, 2017). Participation in immigration court proceedings also is possible by telephone or video if needed. *See* 8 C.F.R. § 1003.25(c). Moreover, Plaintiff does not and cannot point to any applicable law that requires in person conference with an attorney or appearance in immigration or family court that could credibly support these claims. *See also* ECF No. 15, at 20–21.

1:06CV870 LGJMR, 2008 WL 2223285, at *2 (S.D. Miss. May 23, 2008), *aff'd sub nom. Awad v.* *Holder*, 326 F. App'x 775 (5th Cir. 2009) ("In making a request for immigration benefits, aliens only have those statutory rights granted by Congress . . . .") (internal citation and quotation marks omitted).

Relevant here, an SIJ petition approval does not confer any legal status or right to remain in the United States, nor does it mean that the alien will be granted adjustment of status. Rather, USCIS has merely determined that the alien fits into one of the visa categories listed in 8 U.S.C. § 1153 and meets the requirements set forth in implementing regulations for that classification. Further, SIJ classification does not itself provide Plaintiffs lawful immigration status but instead allows them to apply to adjust their status to that of lawful permanent resident ("LPR") if they satisfy a number of criteria. Further, adjustment may be granted only when a visa is immediately available. *See* 8 U.S.C. §§ 1255(a), (h). Thus, to the extent that Plaintiffs assert that they are entitled to relief from removal because they have approved SIJ petitions or should be granted U visas, those claims lack a legal basis and must be dismissed. *See* Fed. R. Civ. P. 12(b)(6). Therefore, Counts Five and Six also must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, ECF 31, should be dismissed.

DATE: September 14, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel

NICOLE N. MURLEY
Trial Attorney

By: *Vinita B. Andrapalliyal*
   VINITA B. ANDRAPALLIYAL
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962
E-mail: Vinita.B.Andrapalliyal@usdoj.gov

*Counsel for Respondents*

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2017, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.


*/s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

*Attorney for Respondents*