AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
JULIA HARUMI MASS (SBN 189649)
WILLIAM S. FREEMAN (SBN 82002)
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 621-2493
Facsimile:  (415) 255-8437
Email:  jmass@aclunc.org
          wfreeman@aclunc.org

COOLEY LLP
MARTIN S. SCHENKER (SBN 109828)
NATHANIEL R. COOPER (SBN 262098)
ASHLEY K. CORKERY (SBN 301380)
TREVOR M. KEMPNER (SBN 310853)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
Email: mschenker@cooley.com
ncooper@cooley.com
acorkery@cooley.com
tkempner@cooley.com

ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
JUDY RABINOVITZ (*pro hac vice*)
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2660
Facsimile:  (212) 549-2654
E-mail: jrabinovitz@aclu.org

ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
STEPHEN B. KANG (SBN 292280)
39 Drumm Street
San Francisco, CA  94111
Telephone:  (415) 343-0770
Facsimile:  (212) 395-0950
E-mail:  skang@aclu.org

Attorneys for Petitioners/Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lorenza Gomez, as next friend for J.G., a minor, and on her own behalf, et al., <br><br> Petitioners/Plaintiffs, on behalf of themselves individually and others similarly situated, <br><br> v. <br><br> Jefferson B. Sessions, et al., <br><br> Respondents/Defendants. | Case No. 3:17-cv-03615-VC <br><br> **PLAINTIFFS' CONSOLIDATED MEMORANDUM:** <br><br> **(1) IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS;** <br> **(2) IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; AND** <br> **(3) IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION** <br><br> Date:          October 26, 2017 <br> Time:          10:00 a.m. <br> Location:    Courtroom #4 <br> Judge:        Hon. Vince Chhabria |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II. RELEVANT BACKGROUND ................................................................................................ 2

    A. Statutory Framework ................................................................................................. 2

    B. Facts Relevant to the Pending Motions ..................................................................... 4

        1. Facts Relating to J.G .......................................................................................... 5

        2. Facts Relating to A.H .......................................................................................... 7

        3. Facts Relating to F.E .......................................................................................... 8

        4. The Named Children's Experiences Are Typical of a Broader Class of Sponsored UCs with Gang Allegations ........................................................... 10

III. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED................................... 11

    A. Standard of Review .................................................................................................. 11

    B. This Court Retains Jurisdiction and Venue Over Plaintiffs' Claims ....................... 12

        1. This Court Retains Habeas Jurisdiction ........................................................... 12

        2. Venue Remains Proper in the Northern District ............................................... 15

        3. Plaintiffs' Claims Against Cardall and Esquivel Are Well Founded ............... 18

    C. Plaintiffs Have Stated Claims for Relief ................................................................. 19

        1. Claim 1 – Unlawful Arrest ............................................................................... 19

        2. Claim 2 – Procedural Due Process ................................................................... 22

        3. Claim 3 – Excessive Restraint of Liberty ........................................................ 26

        4. Claim 4 – Violations of the *Flores* Decree ...................................................... 27

        5. Claim 6 – Unlawful Denial of Benefits ........................................................... 28

IV. THE COURT SHOULD PRELIMINARILY ENJOIN DEFENDANTS' UNCONSTITUTIONAL AND UNLAWFUL POLICIES AND PRACTICES ................... 30

    A. Plaintiffs Are Likely to Succeed on the Merits of Their Claims ............................. 31

        1. Claim 1 – Unlawful Arrest ............................................................................... 31

        2. Claim 2 – Deprivation of Liberty without Due Process ................................... 33

        3. Claims 3 and 4 – Excessive Restraint on Liberty/*Flores* Violations ............. 39

    B. The Named Children Will Suffer Irreparable Harm in the Absence of an Injunction ................................................................................................................. 40

    C. The Equities Tip Sharply in Favor of the Requested Injunction .............................. 41

    D. The Requested Injunction Is in the Public Interest .................................................. 42

V. THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS AND ENJOIN DEFENDANTS' UNLAWFUL POLICIES AND PRACTICES AS TO ALL CLASS MEMBERS ............................................................................................. 42

    A. The Proposed Class Meets the Requirements of Rule 23(a)(1)-(4) .......................... 43

        1. Numerosity ........................................................................................................ 43

**TABLE OF CONTENTS**
**(continued)**

Page

     2.     Commonality................................................................................................ 45

     3.     Typicality .................................................................................................... 46

     4.     Adequacy of Representation ........................................................................ 47

   B.     The Proposed Class Meets the Requirements of Rule 23(b)(2)................................. 48

VI.     CONCLUSION.......................................................................................................... 50

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ...........................................................................45, 46

*U.S. ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954).............................................................................................28

*Ahmed v. Shockley*,
  No. 09-cv-1742, 2009 WL 2588550 (D.Md. Aug. 19, 2009) .........................................14

*Al-Amin v. Davis*,
  No. 12-cv-1197, 2012 WL 1698175 (D. Colo. May 15, 2012) ......................................13

*Alexander v. Sandoval*,
  532 U.S. 275 (2001).............................................................................................20

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ..............................................................................31

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987).............................................................................................41

*Angov v. Lynch*,
  788 F.3d 893 (9th Cir. 2015) ................................................................................24

*Arc of Cal. v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ..............................................................30, 31, 41

*Armentero v. INS*,
  340 F.3d 1058 (9th Cir. 2003) ..............................................................................14

*Armentero v. INS*,
  412 F.3d 1088 (9th Cir. 2005) ..............................................................................13

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ............................................................................45, 46

*Armstrong v. Exceptional Child Ctr., Inc.*,
  135 S. Ct. 1378 (2015).........................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................12

*Baharona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir.1999) ...............................................................................42

**TABLE OF AUTHORITIES**
(continued)

Page

*Beazer E., Inc. v. U.S. EPA., Region III,*
    No. 90-cv-2753, 1990 WL 109892 (E.D.Pa. July 30, 1990) ...............................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................................................12

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2013) ...........................................................................................18

*Beltran v. Cardall,*
    222 F. Supp. 3d 476 (E.D. Va. 2016) ......................................................................... *passim*

*Benitez Ramos v. Holder,*
    589 F.3d 426 (7th Cir. 2009) ...........................................................................................35

*U.S. ex rel. Bilokumsky v. Tod,*
    263 U.S. 149 (1923).........................................................................................................19

*Blaisdell v. Frappiea,*
    729 F.3d 1237 (9th Cir. 2013) .........................................................................................29

*Bogarin-Flores v. Napolitano,*
    No. 12-cv-0399, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012)......................................14

*Ex Parte Bollman,*
    8 U.S. 75 (1807)...............................................................................................................19

*Brantley v. Maxwell-Jolly,*
    656 F. Supp. 2d 1161 (N.D. Cal. 2009) ...........................................................................43

*Bresgal v. Brock,*
    843 F.2d 1163 (9th Cir. 1987) .........................................................................................43

*Bunikyte ex rel. Bunikiene v. Chertoff,*
    No. 07-cv-0164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007)......................................27

*Ex Parte Burford,*
    7 U.S. 448 (1806).............................................................................................................19

*Camara v. Mun. Ct.,*
    387 U.S. 523 (1967).........................................................................................................32

*Campbell v. Ganter,*
    353 F. Supp. 2d 332 (E.D.N.Y. 2004) .............................................................................14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

**TABLE OF AUTHORITIES**
(continued)

Page

*Carballo v. LaManna*,
  No. 05-cv-3276, 2006 WL 3230761 (D.S.C. Nov. 6, 2006).....................................................13

*Carlson v. Landon*,
  342 U.S. 524 (1952)..............................................................................................................19

*Carrillo v. Schneider Logistics, Inc.*,
  No. 11-cv-8557, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012).........................................42

*Castro v. Dep't of Homeland Sec.*,
  835 F.3d 422 (3d Cir. 2016)..................................................................................................25

*Chalk v. U.S. Dist. Ct.*,
  840 F.2d 701 (9th Cir. 1988) ...............................................................................................41

*Chehazeh v. Att'y Gen.*,
  666 F.3d 118 (3d Cir. 2012)..................................................................................................15

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)..........................................................................................................33, 35

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*,
  317 F.R.D. 91 (N.D. Cal. 2016)............................................................................................43

*Clark v. Martinez*,
  543 U.S. 371 (2005)..............................................................................................................25

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir.1986) ................................................................................................17

*Demery v. Arpaio*,
  37 F.3d 1020 (9th Cir. 2004) ...............................................................................................18

*Demjanjuk v. Meese*,
  784 F.2d 1114 (D.C. Cir. 1986)............................................................................................15

*Dielmann v. INS*,
  34 F.3d 851 (9th Cir. 1994) ..................................................................................................30

*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1997) ................................................................................................12

*EasyRiders Freedom FIGHT v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996) ...............................................................................................43

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................................................ 40

*First of Mich. Corp. v. Bramlet,*
    141 F.3d 260 (6th Cir. 1998) ..................................................................... *passim*

*Flores v. Lynch,*
    828 F.3d 898 (9th Cir. 2016) ................................................................................ 27

*Flores v. Sessions,*
    862 F.3d 863 (9th Cir. 2017) ..................................................................... *passim*

*Flores-Chavez v. Ashcroft,*
    362 F.3d 1150 (9th Cir. 2004) .............................................................................. 37

*Francis v. Rison,*
    894 F.2d 353 (9th Cir. 1990) ................................................................................ 15

*Friedl v. City of N.Y.,*
    210 F.3d 79 (2d. Cir. 2000) .................................................................................. 28

*Garcia v. Holder,*
    659 F.3d 1261 (9th Cir. 2011) .............................................................................. 30

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ............................................................................................ 19

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) ............................................................................................ 29

*Gonzalez v. Immigration & Customs Enf't,*
    No. 13-cv-4416, 2014 WL 12605368 (C.D. Cal. July 28, 2014) ......................... 19

*Graham v. Connor,*
    490 U.S. 386 (1989) ............................................................................................ 32

*Grant v. City of Long Beach,*
    315 F.3d 1081 (9th Cir. 2002) .............................................................................. 32

*Griffeth v. Detrich,*
    603 F.2d 118 (9th Cir. 1979) ................................................................................ 28

*Gutierrez-Chavez v. INS,*
    337 F. 3rd 1023, (9th Cir. 2003) .......................................................................... 28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

Page

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................46, 47

*Hernandez v. Lynch,*
No. 16-cv-00620, 2016 WL 7116611 (C.D. Cal. Nov. 10, 2016) .................................15

*Holder v. Curley,*
749 F. Supp. 2d 644 (E.D. Mich. 2010)...........................................................................13

*Hum v. Dericks,*
162 F.R.D. 628 (D. Haw. 1995)......................................................................................43

*J.D.B. v. N.C.,*
564 U.S. 261 (2011)........................................................................................................25

*Jarpa v. Mumford,*
211 F. Supp. 3d 706 (D.Md. 2016) ................................................................................14

*Johnson v. Eisentrager,*
339 U.S. 763 (1950).......................................................................................................24

*Jones v. Blanas,*
393 F.3d 918 (9th Cir. 2004) ....................................................................................26, 39

*Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin,*
333 F. Supp. 1302 (N.D. Cal. 1971) ..............................................................................16

*U.S. ex rel. Knauff v. Shaughnessy,*
338 U.S. 537 (1950)........................................................................................................30

*Kumar v. Gonzalez,*
No. 06-cv-1805, 2007 WL 174089 (W.D. Wash. Jan. 17, 2007) ..................................30

*Kwai Fun Wong v. United States,*
373 F.3d 952 (9th Cir. 2004) .........................................................................................24

*LaDuke v. Nelson,*
762 F.2d 1318 (9th Cir. 1985) .......................................................................................20

*Lamont v. Haig,*
590 F.2d 1124 (D.C. Cir. 1978) .....................................................................................16

*Landon v. Plasencia,*
459 U.S. 21 (1982).........................................................................................................24

Cooley LLP
Attorneys At Law
San Francisco

vii.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

**TABLE OF AUTHORITIES**
(continued)

Page

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949)...........................................................................................................15

*Lassiter v. Dep't of Soc. Servs. of Durham Cty.*,
452 U.S. 18 (1981).......................................................................................................23, 34

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .........................................................................................12

*Lynch v. Cannatella*,
810 F.2d 1363 (5th Cir. 1987) .........................................................................................25

*Mallette v. Arlington Cty. Emps.' Suppl. Ret. Sys. II*,
91 F.3d 630 (4th Cir. 1996) .............................................................................................28

*Mathews v. Diaz*,
426 U.S. 67 (1976)...........................................................................................................25

*Mathews v. Eldridge*,
424 U.S. 319 (1976)...........................................................................................22, 33, 36

*McCluskey v. Tr. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
268 F.R.D. 670 (W.D. Wash. 2010) ................................................................................45

*Medina v. U.S. Dep't of Homeland Sec.*,
No. 17-cv-0218, 2017 WL 1101370 (W.D. Wash. Mar. 24, 2017)................................19

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .....................................................................................40, 42

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) .........................................................................................42

*Milliken & Co. v. FTC*,
565 F. Supp. 511 (D.S.C. 1983)......................................................................................16

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) .........................................................................................12

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006) .........................................................................................25

*Nestor v. Hershey*,
425 F.2d 504 (D.C. Cir. 1969) .........................................................................................16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

**TABLE OF AUTHORITIES**
(continued)

Page

*Nguyen Da Yen v. Kissinger*,
528 F.2d 1194 (9th Cir. 1975) .............................................................................................15

*OSU Student All. v. Ray*,
699 F.3d 1053 (9th Cir. 2012) .......................................................................................12, 25

*Owino v. Holder*,
771 F.3d 527 (9th Cir. 2014) ..............................................................................................27

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .........................................................................................47, 49

*People v. Englebrecht*,
88 Cal. App. 4th 1236 (2001) .............................................................................................35

*Perez-Olano v. Gonzalez*,
248 F.R.D. 248 (C.D. Cal. 2008) ...................................................................................46, 48

*Rapheal v. Mukasey*,
533 F.3d 521 (7th Cir. 2008) ..............................................................................................29

*Remmie v. Mabus*,
898 F. Supp. 2d 108 (D.C. Cir. 2012).................................................................................30

*Reno v. Flores*,
507 U.S. 292 (1993).............................................................................................22, 26, 33

*Reuben H. Donnelly Corp. v. FTC*,
580 F.2d 264 (7th Cir. 1978) ..............................................................................................16

*Riley v. California*,
134 S.Ct. 2473 (2014)..........................................................................................................32

*Rivera v. Holder*,
307 F. R.D. 539 (W.D. Wash. 2015) ..................................................................................49

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .................................................................................... *passim*

*Rodriguez v. Nike Retail Servs., Inc.*,
No. 14-cv-1508, 2016 WL 8729923 (N.D. Cal. Aug. 19, 2016)........................................45

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) .......................................................................................41, 42

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLAINTIFFS' CONSOLIDATED BRIEF**
**CASE NO. 3:17-CV-03615-VC**

**TABLE OF AUTHORITIES**
(continued)

Page

*Roman v. Ashcroft*,
340 F.3d 314 (6th Cir. 2003) ..................................................................14

*Rosales-Garcia v. Holland*,
322 F. 3d 386 (6th Cir. 2003) .................................................................24

*Rubinstein v. Brownell*,
206 F.2d 449 (D.C. Cir. 1953) ...............................................................21

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) ...............................................................................13

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ...............................................................11

*Sammartano v. First Judicial District Court*,
303 F.3d 959 (9th Cir. 2002) .................................................................42

*Sanchez-Penunuri v. Longshore*,
7 F. Supp. 3d 1136 (D. Colo. 2013) .......................................................14

*Santos v. Smith*,
No. 17-cv-0020, 2017 WL 2389722 (W.D. Va. June 1, 2017) ............ *passim*

*Santosky v. Kramer*,
455 U.S. 745 (1982) ...............................................................................38

*Scales v. United States*,
367 U.S. 203 (1961) ...............................................................................35

*Schall v. Martin*,
467 U.S. 253 (1984) .............................................................23, 36, 39, 40

*Sears Sav. Bank v. Fed. Sav. & Loan Ins. Co.*,
775 F.2d 1028 (9th Cir. 1985) ...............................................................30

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) ...............................................................................24

*Sidney Coal Co., Inc. v. Soc. Sec. Admin.*,
427 F.3d 336 (6th Cir. 2005) .................................................................16

*Silva v. Di Vittorio*,
658 F.3d 1090 (9th Cir. 2011) ...............................................................28

**TABLE OF AUTHORITIES**
(continued)

Page

*Smith v. Heckler,*
  595 F. Supp. 1173 (E.D. Cal. 1984)..................................................................43

*Sonoma Cty. Comm. for Immigrant Rights v. Cty. of Sonoma,*
  644 F. Supp. 2d 1177 (N.D. Cal. 2009)..............................................................20

*Stafford v. Briggs,*
  444 U.S. 527 (1980).............................................................................................16

*State v. O.C.,*
  748 So. 2d 945 (Fla. 1999)..................................................................................35

*Sueoka v. United States,*
  101 Fed. Appx. 649 (9th Cir. 2004)....................................................................43

*Sweet v. Pfizer,*
  232 F.R.D. 360 (C.D. Cal. 2005).........................................................................46

*Torres v. City of L.A.,*
  548 F.3d 1197 (9th Cir. 2008) ............................................................................33

*Touche Ross & Co. v. Redington,*
  442 U.S. 560 (1979).............................................................................................20

*United States v. Bogle,*
  855 F.2d 707 (11th Cir. 1988) ............................................................................41

*United States v. Holmes,*
  452 F.2d 249 (7th Cir. 1971) .........................................................................21, 32

*United States v. Kirkley,*
  No. 11-cv-10097, 2011 WL 3880908 (D. Kan. Sept. 1, 2011).........................21

*United States v. Kordosky,*
  No. 88-cr-0052, 1988 WL 238041 (W.D. Wis. Sept. 12, 1988)........................21

*United States v. Peralta-Sanchez,*
  847 F.3d 1124 (9th Cir. 2017) ............................................................................24

*United States v. Raya-Vaca,*
  771 F.3d 1195 (9th Cir. 2014) ............................................................................25

*United States v. Verdugo–Urquidez,*
  494 U.S. 259 (1990).............................................................................................24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLAINTIFFS' CONSOLIDATED BRIEF**
**CASE NO. 3:17-CV-03615-VC**

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Weil,*
    432 F.2d 1320 (9th Cir. 1970) .................................................................21

*Vazquez v. Rackauckas,*
    734 F.3d 1025 (9th Cir. 2013) ................................................................35

*Vinieratos v. U.S. Dep't of Air Force,*
    939 F.2d 762 (9th Cir. 1991) .................................................................20

*Von Colln v. Cty. of Ventura,*
    189 F.R.D. 583 (C.D. Cal. 1999).............................................................44

*Wade v. Kirkland,*
    118 F.3d 667 (9th Cir. 1997) .................................................................18

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ..........................................................46, 48

*Warsoldier v. Woodford,*
    418 F.3d 989 (9th Cir. 2005) .................................................................40

*Williams v. Miller-Stout,*
    No. 05-cv-0864-ID, 2006 WL 3147667 (M.D. Ala. Nov. 2, 2006)..............................13

*Winter v. Nat'l Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)............................................................................30

*Ex Parte Young,*
    209 U.S. 123 (1908)..........................................................................15

*Zabadi v. Chertoff,*
    No. 05-cv-1796, 2005 WL 1514122 (N.D. Cal. June 17, 2005)..............................14

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)......................................................................24, 37

*Zevallos v. Obama,*
    10 F. Supp. 3d 111 (D.D.C. 2014).............................................................30

*Zinermon v. Burch,*
    494 U.S. 113 (1990)......................................................................36, 37

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xii.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE No. 3:17-CV-03615-VC

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

5 U.S.C.
   § 701 ........................................................................................................................28
   § 706 .................................................................................................................28, 30

6 U.S.C. § 279(g)(2) ...........................................................................................................25

8 U.S.C.
   § 1101(a)(27)(J) .......................................................................................................29
   § 1101(a)(48)(A) .......................................................................................................40
   § 1226(a) ..................................................................................................................20
   § 1232(c)(2) ..............................................................................................................25
   § 1232(c)(2)(A) .........................................................................................3, 21, 26, 39
   § 1232(c)(3) .................................................................................................24, 25, 38
   § 1232(c)(3)(A) ...........................................................................................................3
   § 1252(f)(1) ...............................................................................................................20

18 U.S.C. § 521(d) .............................................................................................................33

28 U.S.C.
   § 1331 .................................................................................................................15, 19
   § 1391 .................................................................................................................15, 16
   § 1391(b)(1) ..............................................................................................................18
   § 1391(e) ............................................................................................................16, 17
   § 1391(e)(1)(A) ....................................................................................................15, 16
   § 1391(e)(1)(B) ....................................................................................................15, 17
   § 2241(c)(3) .........................................................................................................20, 28

Alaska Stat. Ann. § 47.10.142(c)-(d) ................................................................................37

Ariz. Rev. Stat. Ann.
   § 8-823(A)-(B) ..........................................................................................................37
   § 8-824 ......................................................................................................................37
   § 315 .........................................................................................................................37

Cal. Welf. & Inst. Code § 307.4 .......................................................................................37

N.Y. Crim. Proc. Law
   § 170.55(8) ..........................................................................................................39, 40
   § 170.56(4) ................................................................................................................40

Nev. Rev. Stat. Ann. § 432B.470(1)-(3) ...........................................................................37

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

Page

Wash. Rev. Code Ann.
§ 13.34.062...................................................................................................37
§ 13.34.065(1)(a) ...........................................................................................37

**Other Authorities**

8 C.F.R. § 204.11 ...............................................................................................29

Chemerinsky, Federal Jurisdiction § 9.1 (4th ed. 2003) ...................................15

Federal Rules of Civil Procedure
Rule 12(b)(1)..................................................................................................11
Rule 12(b)(3)..................................................................................................12
Rule 12(b)(6)............................................................................................11, 12
Rule 23 .......................................................................................................42, 43
Rule 23(a) .................................................................................................42, 48
Rule 23(a)(1) ............................................................................................43, 45
Rule 23(a)(2) ............................................................................................45, 46
Rule 23(a)(3) ..................................................................................................46
Rule 23(a)(4) ..................................................................................................47
Rule 23(b)(2) .....................................................................................42, 48, 49

14D Wright & Miller, Fed. Prac. & Proc. § 3815 (4th ed. 2017) .................16, 18

7A Wright, Miller & Kane, Fed.l Prac. & Proc. § 1763 (3d ed. 2017)................45

Cooley LLP
Attorneys At Law
San Francisco

xiv.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek judicial intervention to protect the liberty interests of children who have been arrested and detained for months without any opportunity to review or respond to charges or evidence the federal Defendants (the "Government") rely on to justify their confinement. These children came to the United States for liberty, safety, and reunification with family members, and were placed in their parents' care by the Office of Refugee Resettlement ("ORR"), as required by statute. Immigration and Customs Enforcement ("ICE") has recently re-arrested them, inaccurately claiming that Plaintiffs were "self-admitted" gang members and, citing a "new policy," demanding that they be placed in secure custody. Without notice to their sponsors or counsel, without providing any opportunity for the youth or their parents to respond, and with no independent review of the charges, ORR acceded to ICE's demands and placed the children in jail-like conditions far from home. Plaintiffs remain in custody, yet have received no evidence that supports the Government's opinion that they are gang members, nor any opportunity to contest the allegations. In fact, a defendant in this case has admitted that the Yolo County Juvenile Detention Facility ("Yolo")—which runs a secure detention facility ORR uses to detain noncitizen juveniles—could not verify gang affiliations for most of the youth whom ORR had recently sent them.

This case was originally brought on behalf of a single child, A.H. At a hearing on A.H.'s motion for a temporary restraining order, this Court observed that ORR had fallen short of its obligation to investigate information it had received about A.H. before placing him in secure detention. The Court stated:

> ORR had already screened the child, screened the mother, made a decision that the child could be placed with the mother, and entered into a contract with the mother regarding the care of the child. [¶] In those circumstances and given that ORR . . . had already engaged in this screening process, it had an obligation to investigate the information it was receiving from DHS about A.H. . . . ORR had an obligation under the statute . . . to do more, to make sure that the child should be in custody and that . . . being in a secure facility was the least restrictive setting that is in the best interests of the child.

Tr. 6/29/17, Dkt. 22, at 5:11-6:4. Plaintiffs have discovered that the Government's unlawful conduct has extended far beyond A.H.'s individual case. Due to the systemic nature of the Government's actions, this case now includes two more juveniles and a proposed class of minors who were similarly detained by ICE based on unfounded gang allegations, referred by ORR to secure custody, and face

extended incarceration while awaiting reunification with their families ("Proposed Class").

Defendants have moved to dismiss this action on procedural grounds, objecting to the propriety of naming federal defendants, as well as challenging venue. But this Court has rightly concluded it has habeas jurisdiction over, and is a proper venue for, Plaintiffs' claims, and Defendants' contrary arguments are no more persuasive now than they were before. Indeed, the evidence that Plaintiffs have uncovered via expedited discovery—particularly regarding Defendant Elicia Smith's involvement in Plaintiffs' custody decisions—confirms that this Court was correct.

Defendants' arguments in favor of dismissal on the merits are similarly unconvincing. The Amended Petition ("Petition") contains numerous and detailed allegations showing that the Government is systematically violating the constitutional and statutory rights of immigrant children to be free from unreasonable restrictions on their liberty, as well as depriving them of their statutorily-granted right to apply for immigration benefits. And while the Government claims that its existing safeguards are sufficient to protect Plaintiffs' liberty, both the Petition's allegations and the evidence Plaintiffs have discovered, demonstrate that ORR's existing processes are irretrievably defective in numerous respects.

In light of Plaintiffs' indisputably powerful liberty interests, and the ongoing and irreparable injury they face in federal custody, Plaintiffs are entitled to preliminary injunctive relief and provisional class certification to enjoin the Government's unlawful practices. Plaintiffs seek classwide relief on their claims for unlawful arrest under the Fourth Amendment and the Trafficking Victims Protection Reauthorization Act of 2013 (the "TVPRA"), as well as their claims for procedural due process under the Fifth Amendment and the TVPRA. The individual Named Children in this case—A.H., J.G., and F.E.—also seek immediate release from Government custody and reunification with their parents, given that they have been kept in detention for *months*, without anything resembling the constitutionally and statutorily required procedures to guard against arbitrary restraints on their liberty.

## II.     RELEVANT BACKGROUND

### A.     Statutory Framework

The TVPRA requires that when an unaccompanied immigrant child (also referred to as a "UC") is detained by federal immigration authorities, the child must be transferred to the custody of

the Secretary of Health and Human Services ("HHS") within 72 hours; the Secretary must ensure that, pending any removal proceedings, the child is "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). "A child shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.* Within HHS, ORR is responsible for the UC's care.

The TVPRA permits ORR to consider a variety of factors in determining where to place an unaccompanied minor, including "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). According to guidelines published on the ORR website under the title "Children Entering the United States Unaccompanied" ("ORR Rules"), ORR may place a UC in a "secure care facility" (essentially, a juvenile prison) *only if* the UC "(1) poses a danger to self or others; or (2) has been charged with having committed a criminal offense." Corkery Dec., Ex. A (ORR Rules), § 1.2.4. ORR cautions that secure detention should not generally be based on crimes that are "isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person" or "petty offenses *which are not considered grounds for a stricter means of detention in any case* (e.g., shoplifting, joy riding, disturbing the peace)." *Id.* § 1.2.4 (emphasis added). Less secure placement options include "staff secure facilities," long-term foster care, and group homes. *Id.* §§ 1.2.4, 1.2.6.

In cases in which the UC has certain characteristics, including a "criminal history" or "gang involvement," the "ORR/Intakes Team" uses a "Placement Tool" to generate a score based on "available information on the [UC's] history and condition." *Id.* § 1.3.2. The Placement Tool "suggest[s] a level of care for the [UC]," but the Intakes Team "may, in consultation with other staff, override the score generated by the tool in special circumstances *on a case-by-case basis.*" *Id.* (emphasis added). As required by the TVPRA, many minors are released by ORR to the custody of a "sponsor"—typically a parent or other close family member—under an agreement pursuant to which the sponsor agrees to care for the UC ("Sponsored UCs"). 8 U.S.C. § 1232(c)(3)(A).

Minors within the custody of ORR are also protected by the terms of the *Flores* Decree, a nationwide consent decree that sets national standards for the detention, release, and treatment of all immigrant children in Government custody, including the right to review of their custody

1    determinations by an Immigration Judge. *See Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017). The

2    *Flores* Decree also provides for judicial review of such determinations and any other violations of the

3    Decree in any United States District Court with jurisdiction and venue over the matter.

4    **B.    Facts Relevant to the Pending Motions**

5    As described below, the evidence shows, in stark detail, how the Government has violated the

6    constitutional and statutory rights of the Named Children and the Proposed Class.

7    *First:* DHS, acting on unsubstantiated allegations by local police officials that a teenager is

8    gang affiliated, arrests the child on the basis that he is removable, *see* Nanos Dec., Ex. 5; *see also*

9    Loechner Dec., Dkt. 15-1, at 4, and instructs ORR to place him in secure detention, *see* Corkery Dec.

10   Ex. B (De La Cruz Test.), at 5:6-10, 5:23-6:2. This is done even though the child was in removal

11   proceedings at the time ORR previously released him to a sponsor. As Plaintiffs' expert Susan Cruz

12   explains, the "evidence" of gang affiliation on which DHS purports to rely does *not* contain reliable

13   indicators of gang membership or affiliation. Cruz Dec. ¶¶ 18-19, 29-31, 36, 41-43.

14   *Second:* ORR ██████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████. Corkery Dec., Ex. E (HHS), at 3728-31. ORR

17   ████████████████████████████████████████████████████████████████

18   ████████████. *See* Corkery Dec., Ex. E (HHS), at 2551-56; *see also* Nanos Dec., Ex. 7. ORR's Senior

19   Federal Field Specialist, James De La Cruz, admitted in this Court that ORR does not spend *even one*

20   *minute* reviewing any purported evidence of gang involvement or the specifics of any child's current

21   living situation. Corkery Dec., Ex. B, at 53:13-21.

22   *Third:* After making the placement, ORR's only review of the child's detention is a unilateral

23   30-day "step down" process that does not afford notice regarding the basis for its custody decision,

24   involvement of counsel, or any opportunity for the child to confront evidence or respond to the charges

25   against him. Similarly, ORR's "reunification process" puts the burden on the child and his attorneys

26   to affirmatively prove that he is *not* a gang member and that he should be released to his parent. *See*

27   *generally* Corkery Dec., Ex. A (ORR Rules), §§ 2.1 *et seq.* This process, which the Named Children's

28   sponsors originally completed within a few weeks, is now a scavenger hunt in which the child's parents

and attorneys are subjected to escalating requests for information, and nothing is ever enough. *See, e.g.*, Gomez Dec. ¶¶ 11-15; Saravia Supp. Dec. ¶¶ 2-6, 8-12; M.U. Dec ¶¶ 2-6, 10-14. Moreover, an ORR internal memo dated August 16, 2017 states: ████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████ Corkery Dec., Ex. E (HHS), at 3729.

*Fourth:* The Government's practices are causing great harm. According to Plaintiffs' expert Dr. Lisa Fortuna, youth who have faced prior trauma, like the Named Children, are at serious risk of suffering from severe psychosocial and mental health issues as a result of being placed in detention. Fortuna Dec. ¶¶ 10-22, 41.

### 1.    Facts Relating to J.G.

J.G. was born in El Salvador on ████████, 2000 and came to the United States in 2015 after gang members threatened him and beat him up, breaking his arm. J.G. Dec. ¶¶ 1-3. He was apprehended by immigration authorities and given a notice to appear in immigration court. *Id.* ¶ 5; Nanos Dec. ¶ 4, Ex. 1. Within a month, ORR released him to his mother's care under a sponsorship agreement. She took good care of him, even changing her work schedule so she could spend more time with him. Gomez Dec. ¶¶ 3-5; J.G. Dec. ¶ 11. The immigration court administratively closed J.G.'s removal proceedings based on the pendency of his mother's U Visa application. Nanos Dec. ¶¶ 5-6, Ex. 2; Gomez Dec. ¶ 2.

In late 2015, J.G. cut classes at school and was expelled. Afterwards, local police started following him, harassing him, arresting him for trespassing, and accusing him of being in a gang. J.G. Dec. ¶¶ 8-10. In November 2016, DHS issued ████████████████████████████████
████████████████████████████. Nanos Dec. ¶¶ 7-8, Ex. 3. Ms. Cruz, having reviewed the evidence relied on by the Government, concludes that the evidence "does not support the conclusion that J.G. is a member of, or affiliated with, the MS-13 gang," and that "before J.G was detained by DHS on June 16, 2017 . . . the government had no reliable basis to believe that J.G. was an MS-13 gang affiliate or member." Cruz Dec. ¶¶ 28, 34; *see also id.* ¶¶ 29-33.

On April 19, 2017, J.G. was stopped by local police while walking to a deli with a friend; the

officer said he was a gang member and referenced J.G.'s Salvadoran soccer jersey as proof. J.G. Dec. ¶¶ 12-13. The police insulted him, threatened him with deportation, and ultimately arrested him on the charge of "false personation." *Id.* ¶¶ 12-16; Gomez Dec. ¶ 7. J.G. was held in local custody, under harsh and scary conditions, for about two months. J.G. Dec. ¶¶ 15-18.

Meanwhile, DHS issued ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████. Nanos Dec. ¶¶ 12-13, Exs. 5-6. On June 16, 2017, two days after J.G.'s family posted bail, but before he was released from jail, ICE arrested him, took him to Manhattan, put him on a plane, and transported him to Yolo. *See* J.G. Dec. ¶ 20; Nanos Dec. ¶¶ 14-15. The ORR intake form shows that ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████. Nanos Dec. ¶¶ 16-18, Exs. 6-7. A notation in his file dated July 17, 2017 (one month after ORR sent him to Yolo), states: ████████████████████████████████ ███████████████████████████████████████████████. Nanos Dec., Ex. 7 (HHS), at 2555 (emphasis added).

J.G. remained at Yolo over one month, during which time Yolo never received corroboration of J.G.'s alleged gang activity. *See* Corkery Dec., Ex. D (Supp. RFA Resp. No. 3), at 2. On July 26, 2017, he was transferred to Selma Carson home in Fife, Washington, where he remains now. J.G. Dec. ¶ 23. Neither Yolo nor ORR has produced any report of his alleged gang involvement. *See, e.g.*, Corkery Dec., Ex. E (HHS), at 1786-87 (Yolo ████████████████████████████████████ ███████████████████████████████); *id.* at 1795 (J.G.'s case manager at Yolo ████████████████████████████████████████); *id.* at 5609-11. In fact, Yolo considered J.G. ██████████████████████ *id.* at 1786-87, and even ████████████████████████████. *Id.* at 1812-1813. Email messages recently produced by Defendants show ████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. Corkery Dec., Ex. E (HHS), at 3568.

1    J.G.'s multiple transfers and detention led his original immigration attorney to withdraw as

2    counsel. Nanos Dec. ¶ 3. J.G.'s mother's application for his release through "reunification" has been

3    markedly more difficult than the first time she obtained custody. Gomez Dec. ¶¶ 13-15. J.G. and his

4    mother have suffered greatly from his extended incarceration and the uncertainty regarding his release.

5    J.G. Dec. ¶¶ 22-27; Gomez Dec. ¶ 17.

6                    **2.      Facts Relating to A.H.**

7        A.H., through his mother, is the original plaintiff in this case. *See* Dkt. 7, at 2-5 (background

8    on A.H.'s case). On June 12, 2017, he was arrested by ICE officers outside his mother's home. A.H.

9    Dec., Dkt. 8, ¶ 9. The ICE warrant alleged, as the sole ground for arrest, "the pendency of ongoing

10   removal proceedings." Loechner Dec., Dkt. 15-1, at 4. The officers told A.H. that he was being arrested

11   because he had admitted to being in a gang, even though he has never been a gang member. A.H. Dec.,

12   Dkt. 8, ¶¶ 9, 23. ICE told ORR that it should place A.H. in secure detention. *See* Corkery Dec. Ex. B,

13   at 5:23-6:2. ORR ██████████████████████████████████████████████

14   ██████████████████████████████████. Corkery Dec., Ex. E (HHS), at 1-7, 254. An

15   ORR agent instructed ORR's intake personnel: "*As per the new policy,* please place the minor in a

16   secure detention center." Corkery Dec., Ex. N (Intake Email), at 1 (emphasis added).

17       But the *only* evidence the Government produced in response to the TRO in this case, and in

18   response to Yolo's efforts to verify the allegations against A.H., is ███████████████████

19   █████████████████████████████████████. Corkery Dec., Ex. F (YOLO),

20   at 27-35. Expert Susan Cruz has concluded that "this evidence does not support the conclusion that

21   A.H. is a member of, or is affiliated with, the MS-13 gang." Cruz Dec. ¶ 40. At the time ORR placed

22   A.H. in secure detention at Yolo, it "had no reliable information to establish A.H. as an MS-13 gang

23   affiliate or member." *Id.* ¶ 46.

24       A.H. was held in Yolo for over 30 days, from June 13, 2017 to about July 15, 2017, when he

25   was transferred to a less restrictive facility in Dobbs Ferry, NY. Saravia Supp. Dec. ¶ 7. A.H.'s ongoing

26   incarceration continues to separate him from his family. Saravia Dec., Dkt. 9, ¶¶ 7-10; Saravia Supp.

27   Dec. ¶ 10. A.H.'s mother began seeking reunification with her son as soon as he was detained, but the

28   process has been much more onerous than it was the last time she went through it. Saravia Supp. Dec.

¶¶ 2-6, 8-12; Greenberg Dec. ¶¶ 6-8.

A.H.'s detention also poses continued obstacles to his family court case. *See* A.H. Supp. Dec. ¶ 8; Greenberg Dec. ¶¶ 3-4 (court raised concerns about conducting evidentiary hearing while A.H. is in custody). A.H. will turn 18 on ███████, 2018, and, if he is still in ORR custody, he will be transferred to adult custody and lose his protections under the TVPRA. A.H. Dec. ¶ 1.

### 3.    Facts Relating to F.E.

F.E. was born in El Salvador on ███████, 2000 and came to the United States in 2014, after he was threatened with death by local gang members. F.E. Dec. ¶¶ 1-3. On December 5, 2014, he was ████████████████████████████████████████████. Corkery Dec., Ex. E (HHS), at 433-34. Reunification with his mother took about three days, and she entered into a sponsor agreement with ORR. M.U. Dec. ¶ 14; Corkery Dec., Ex. E (HHS), at 343, 349-50, 356-57. With the help of an immigration attorney, F.E. obtained a family court order that made it possible for him to apply for SIJ status, and eventually USCIS approved his SIJ Petition. Johnson Dec. ¶¶ 3-4, Ex. 1.

In February 2017, a school resource officer accused F.E. of "loitering" in the hallways of his school. F.E. Dec. ¶ 6. The officer searched F.E. and found a piece of paper with the number "503" written on it—the area code of his home country. *Id.* F.E. was suspended for several days and, after that, the local police began harassing and routinely stopping him on the streets. *Id.* ¶ 7. F.E. is not a gang member, *id.* ¶ 8, and he requested two meetings with the police to explain this and ask them to stop bothering him, but the harassment continued. *Id.* ¶ 9.

On June 9, 2017, F.E. was walking home with his friend from playing soccer, and started play fighting when he was stopped by police officers, who told him he was "acting stupid" and arrested him on a charge of disorderly conduct (a non-criminal violation under New York law). *Id.* ¶ 10; Johnson Dec. ¶ 5. He was kept overnight in the precinct, handcuffed, and told by the officers that he would be deported. F.E. Dec. ¶ 11. Two days later, ICE agents came to his home and re-arrested him; they told him that he was being arrested "because you aren't legal. I need to give you to immigration. You'll probably be deported." *Id.* ¶ 13; Johnson Dec. ¶ 7. Another ICE agent confirmed that he was arrested not for gang affiliation, but because he had an open immigration case. F.E. Dec. ¶ 14.

ORR's intake form shows that ████████████████████████████████████████

1     ██████████████████████████████████████████████. Corkery

2 Dec., Ex. E (HHS), at 2551-53. He ████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 █████████████████████. *Id.*

6      Similarly, a ████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ███████████████████████████████████████ Corkery Dec., Ex. G

10 (ICE), at 259-60. Ms. Cruz has concluded that "this evidence does not support the conclusion that F.E.

11 is a member of, or affiliated with, the MS-13 gang." Cruz Dec. ¶¶ 35, 39.

12      F.E. was taken to the Shenandoah Valley Juvenile Center, a secure detention facility in

13 Virginia, and held there until July 6, 2017. F.E. Dec. ¶¶ 15-16. Mr. De La Cruz has acknowledged to

14 F.E.'s attorney that ████████████████████████████████████████

15 ████████████████████████████████████ Johnson Dec. ¶ 12(b), Ex.

16 5. To date, no one has produced any evidence supporting this assertion. *Id.* ¶ 9; *see also* F.E. Dec.

17 ¶ 22; M.U. Dec. ¶ 15; Corkery Dec., Ex. E (HHS), at 4747 (Defendant Esquivel ████████

18 ████████████████████████████████████████████████). To the

19 contrary, Defendant Esquivel—the official in charge of his detention in Fairfield, California—██████

20 ████████████████████████████████████████████████████████

21 ██████████████████████ Corkery Dec., Ex. E (HHS), at 4747; *see also* Johnson Dec. ¶

22 12(a), Ex. 4 (F.E.'s case manager at Shenandoah: "I do not have any evidence confirming that [F.E.]

23 is a gang member.").

24      On June 21, 2017, USCIS issued a Notice of Intent to Revoke his approved SIJ Petition, stating,

25 "You have been identified by law enforcement as a known member of the violent street gang, MS-

26 13." Johnson Dec. ¶ 8, Ex. 2 at 4. The Notice is silent as to what agency or officer made the

27 "identification," and the basis for its allegations. *Id.*

28      F.E.'s mother and attorney have been trying for over three months to reunify him with his

family. Johnson Dec. ¶ 11; M.U. Dec. ¶ 7. Caseworkers at each of the three facilities where F.E. was detained requested the same information of them; every time their demands were met, new ones would surface. Johnson Dec. ¶¶ 11, 12(a)-(*l*); M.U. Dec. ¶¶ 7-8, 10-14. The ORR "reunification" process, which took only three days when F.E. was first apprehended after his entry into the country, has now stretched out over three months, with no end in sight. M.U. Dec. ¶ 14; Johnson Dec. ¶¶ 2, 15. This is notwithstanding a recent positive recommendation for reunification made by a case worker who conducted a home visit, Johnson Dec. ¶ 12(k); Corkery Dec., Ex. E (HHS), at 3800-02, 3833-35, and

████████████████████████████████████████████████████████

████████████████  Corkery Dec., Ex. F (YOLO), at 3800-02, 3833-35.

### 4.      The Named Children's Experiences Are Typical of a Broader Class of Sponsored UCs with Gang Allegations

J.G.'s, A.H.'s, and F.E.'s experiences are notably similar. In addition, Plaintiffs submit the declaration of K.A., a fourth Sponsored UC who tells a remarkably similar story of being released to the custody of a parent, *see* K.A. Dec. ¶¶ 8-12; having minor encounters with the local police after an incident at school, *id.* ¶¶ 13-15; and then being arrested and sent to a "staff secure" facility in Fairfield, California, *id.* ¶¶ 16-23, where he has remained for two months, *id.* ¶¶ 28-29, without any information as to why he is there or when he might be released. *Id.* ¶¶ 31-32.

As discovery in this case has revealed, these children are subject to a pattern and practice that affects a much wider group of youth. This year, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████, *See* Corkery Dec., Ex. N (Intake Email), at 1 ("*As per the new policy,* please place the minor in a secure detention center") (emphasis added); *see also* Corkery Dec., Ex. E (HHS), at 3728-31. ORR also has a pattern and practice of placing children in secure facilities based on unreviewed and unquestioned assertions by DHS that the child has a gang affiliation, even if ORR has an ongoing relationship with the child's sponsor. *See* Corkery Dec. Ex. B, at 53:16-21 (no review of DHS recommendation), 52:7-19 (no review of DHS allegations 18 days after A.H. arrest); *see also* ORR Letter re: A.H., Dkt. 27-1, at 3; Johnson Dec. ¶ 14 (De La Cruz admitting process is "thicker" than it

used to be). In the case of any child who has ever been in secure custody, only the Director of ORR can approve reunification, contrary to the published ORR Rules, which state that Federal Field Specialists have such authority. Johnson Dec. ¶ 15; Corkery Dec., Ex. A (ORR Rules), § 2.3.1. Since ORR automatically places alleged gang members in secure custody, this means that no alleged gang member can be released without the ORR Director's approval. And it appears that ORR now simply refuses to reunite any such child with his sponsor.

Indeed, Defendant Cardall, the Chief Probation officer responsible for Yolo, concluded he did not have grounds under ORR policy to detain the majority of the youth that ORR sent to Yolo from New York with alleged gang affiliations. Defendant Cardall has admitted that the federal government failed to provide, within the 30-day "step down period," evidence of alleged gang affiliation with respect to at least seven of the undocumented teenagers who were sent by ORR to Yolo from New York, and that the Yolo County Probation Department reached out to local law enforcement in the jurisdiction where the teens were arrested, but often found corroboration of gang allegations to be "lacking or insufficient." *See* Corkery Dec., Ex. C (RFA Resp.), at 2-3; *see also* Corkery Dec., Ex. D (Supp. RFA Resp.), at 2.

Finally, Plaintiffs' trauma expert Dr. Lisa Fortuna describes how children who have faced adversity in life are at high risk of suffering from severe psychological harm when placed in detention facilities. Fortuna Dec. ¶¶ 16-27. Based on the Named Children's backgrounds, she opines that these youth have a real and substantial risk of suffering from severe mental health issues as a result of being placed in these facilities,  issues including but not limited to chronic anxiety and stress, depression and suicidality, post-traumatic stress disorder, and permanent estrangement from interpersonal relationships. *Id*. ¶¶ 12-14, 27, 41. She concludes that, in her opinion, these children would be better served by a supportive family environment and being released to their parents. *Id*. ¶¶ 31, 36.

## III.    **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**

### A.    **Standard of Review**

A Rule 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court treats a facial attack like a Rule 12(b)(6) motion to dismiss, and must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). A factual attack relies on evidence outside the complaint, *id.*, and the court must "resolve all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997). Similarly, the court may look outside the pleadings to resolve a challenge to venue under Rule 12(b)(3), but the court "must draw all reasonable inferences . . . and resolve all factual conflicts in favor of [plaintiffs]." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Under Rule 12(b)(6), this Court must take all well-pled facts as true and "construe them in the light most favorable to plaintiffs. *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). The complaint must allege facts supporting a "plausible" claim, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), meaning that it "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**B.     This Court Retains Jurisdiction and Venue Over Plaintiffs' Claims**

**1.     This Court Retains Habeas Jurisdiction**

This Court rightly concluded that ORR Federal Field Specialist Elicia Smith is a proper respondent for A.H.'s habeas claim. This is also true for the Named Children and the Proposed Class. As this Court explained, "where the Government is holding someone in a facility run by some other entity . . . there are a lot of reasons . . . for not having the head of that facility be named the respondent in a habeas case." Tr. 6/29/17, Dkt. 22, at 2:16-3:10. As the Court found at A.H.'s TRO hearing:

> Ms. Smith is responsible for how things go with the custody of the child. [¶] There are all these ORR policies about the way in which the child is held in custody and the procedures for holding the child in custody, and Ms. Smith is in charge of . . . overseeing that, much like a warden would be in charge of it in a more conventional scenario.

Corkery Dec. Ex. B, at 85:11-19. The evidence amply supports this conclusion. James De La Cruz, ORR's Senior Field Program Specialist, confirmed that Ms. Smith is ORR's "top person" in the Northern California region. *Id.* at 55:13-16; *see also* Am. Pet., Dkt. 31, ¶¶ 19, 40; ORR Guide, Guide to Terms (explaining that Federal Field Specialists "serve[] as the regional approval authority for unaccompanied [] children transfer and release decisions"); De La Cruz Dec., Dkt. 15-2, ¶¶ 9-11; Mass Supp. Dec., Dkt. 19-2, Ex. 2 (Yolo County Board of Supervisors agenda item describing ORR

Cooley LLP
Attorneys At Law
San Francisco

12.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

authority over youth held pursuant to contract at Yolo).

Where the Government detains individuals pursuant to contracts with other entities, the proper custodian is the official with "legal custody" over the detainee. Here, that is Ms. Smith. In *Al-Amin v. Davis*, No. 12-cv-1197, 2012 WL 1698175, at *3 (D. Colo. May 15, 2012), a prisoner was incarcerated in a federal prison pursuant to a contract with the Georgia corrections department. *Al-Amin* found that the petitioner must sue in the district where a respondent resides who "exercised legal control with respect to the challenged 'custody,'" *id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004)), as it would make no sense to name a person with no release authority over the petitioner. *See, e.g.*, *Holder v. Curley*, 749 F. Supp. 2d 644, 646-47 (E.D. Mich. 2010) (collecting similar cases); *Williams v. Miller-Stout*, No. 05-cv-0864-ID, 2006 WL 3147667, at *1 (M.D. Ala. Nov. 2, 2006) (denying venue transfer because party with legal control was in district); *Carballo v. LaManna*, No. 05-cv-3276, 2006 WL 3230761, at *1 (D.S.C. Nov. 6, 2006).

The Government's recycled arguments fare no better now than they did before. It relies heavily on *Padilla*, while acknowledging that the Supreme Court expressly left open whether the "immediate custodian" rule applies to immigration habeas petitions. *See Padilla*, 542 U.S. at 435 n.8. The Government also suggests that the REAL ID Act resolved this issue, *see* Gov. MTD, Dkt. 54, at 6 n.4, but the REAL ID Act does not alter the critical fact that the Government—not localities who operate juvenile facilities—exercises legal authority over Plaintiffs' custody. *See Armentero v. INS*, 412 F.3d 1088, 1099 (9th Cir. 2005) (Berzon, J., dissenting) (regulations gave detention authority over Mariel Cubans to ICE officers, rendering them proper custodians post-REAL ID).

Under the Government's view, the wardens of the facilities where the Named Children are detained are the *only* proper custodians. *See* Gov. MTD, Dkt. 54, at 8. If that were correct, then only Defendants Cardall and Esquivel ("Facility Directors") could remain as defendants. Yet the Facility Directors disclaim *any* authority over the Named Children or Proposed Class members, and aver that "the Federal Defendants *alone* control every aspect of the detentions challenged in this action." Cardall MTD, Dkt. 52, at 5-6 (emphasis added); *id.* at 7; Esquivel MTD, Dkt. 58, at 4, 6 (claiming "no legal authority to make determinations" regarding Plaintiffs' custody). Dismissing the federal Defendants would leave only those parties who lack any ability to effectuate the relief sought in the complaint.

Cooley LLP
Attorneys At Law
San Francisco

13.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

The habeas custodian rules do not compel such an absurd result.

In contrast, Plaintiffs' position is consistent with decisions finding that the ICE Field Office Directors are the proper custodians for habeas petitions brought by adult immigration detainees. *See, e.g.*, *Zabadi v. Chertoff*, No. 05-cv-1796, 2005 WL 1514122, at *3 (N.D. Cal. June 17, 2005) ("The district director has full authority to direct the local warden to release petitioner."); *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003); *Campbell v. Ganter*, 353 F. Supp. 2d 332, 337 (E.D.N.Y. 2004). Here, Ms. Smith serves the analogous function in the ORR hierarchy because she makes decisions about placement and transfers for juveniles in the Northern California region. *See* Corkery Dec., Ex. A (ORR Rules), § 2.3.1 (FFSs "have the authority to approve all [UC] transfer and release decisions" and "make final release and transfer decisions").

In the alternative, this Court should find that national-level officials—including the Secretary of DHS, officials of ORR, and the Attorney General—are the proper respondents here. *See Armentero v. INS*, 340 F.3d 1058, 1069-70 (9th Cir. 2003), *withdrawn on reh'g*, 382 F.3d 1153 (9th Cir. 2004) (explaining why "practicality, efficiency, and the interests of justice" demand relaxation of immediate custodian rule in habeas challenges to immigration detention). ORR, not the wardens of contracted facilities, is the relevant decision maker. *See*, *e.g.*, *Santos v. Smith*, No. 17-cv-0020, 2017 WL 2389722, at *8 (W.D. Va. June 1, 2017) (finding ORR director proper custodian because only "a directive from ORR itself" would ensure juveniles' release). Numerous courts have likewise found that national-level officials are the proper respondents in habeas actions challenging immigration detention. *See*, *e.g.*, *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 723-25 (D.Md. 2016); *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1148 (D. Colo. 2013); *Bogarin-Flores v. Napolitano*, No. 12-cv-0399, 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012).[1] Indeed, by his own admission Mr. De La Cruz and other officials based in Washington, D.C. signed off on the decision to override the Named Children's initial placement decisions, and helped facilitate their later transfers. *See* Corkery Dec., Ex. E (HHS), at 4725, 5519, 5835-36, 5904-11; Corkery Dec., Ex. F (YOLO), at 61; Gov. MTD, Dkt. 54-

---

[1] *But see, e.g.*, *Ahmed v. Shockley*, No. 09-cv-1742, 2009 WL 2588550, at *1 n.1 (D.Md. Aug. 19, 2009) (finding local warden proper respondent).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

3, ¶¶ 1, 4, 8.[2]

Finally, apart from habeas, 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA") provide vehicles for raising Plaintiffs' statutory and constitutional claims.[3] Plaintiffs have brought suit against federal officers seeking to prevent current and future violations of federal law (rather than monetary relief), which are plainly cognizable under 28 U.S.C. § 1331. *See, e.g.*, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 697-99, nn.18-19 (1949); *Ex Parte Young*, 209 U.S. 123, 145 (1908); Erwin Chemerinsky, Federal Jurisdiction § 9.1, at 588 (4th ed. 2003) ("[T]he Supreme Court long has held that federal officers may be sued for injunctive relief."). And, the Government concedes that, at the bare minimum, APA review remains available here. *See* Gov. MTD, Dkt. 54, at 12-13.

## 2. Venue Remains Proper in the Northern District

The Government also contends that venue is improper in this District, Gov. MTD, Dkt. 54, at 9, but this argument is flawed in numerous respects. Under 28 U.S.C. § 1391, a civil action against a government official or agency is proper in any judicial district in which "a defendant in the action resides" or "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(A)-(B). As Defendants' own cases make clear, Congress's purpose in amending the general venue statute to add this provision was to "make it easier to sue" the "head of a governmental

---

[2] As a fallback, the Government asserts that this Court lacks habeas authority over J.G. and F.E. Dkt. 54 at 8 n.5. If this Court finds that national-level officials are proper respondents, then this Court would have habeas authority over them. *Cf. Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986) (permitting habeas suit in any district in exceptional circumstances involving difficulties in locating habeas petitioner). In addition, there is no serious dispute that J.G. and F.E. can raise claims under 28 U.S.C. 1331 and the APA, as discussed *infra*. Notably, the Government does not dispute this Court's authority over A.H., no doubt because "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (citation omitted); *see also Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1204 (9th Cir. 1975).

[3] This Court has previously inquired whether habeas claims and claims for declaratory and injunctive relief can be brought in the same case. Such suits are common, particularly in the immigration context. *See, e.g.*, *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 125 (3d Cir. 2012) (finding jurisdiction over complaint brought under habeas statute and Section 1331); *Hernandez v. Lynch*, No. 16-cv-00620, 2016 WL 7116611, at *1 (C.D. Cal. Nov. 10, 2016) (granting preliminary relief on complaint seeking "habeas, declaratory, and injunctive relief"); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1111 (9th Cir. 2010) (habeas class action seeking declaratory and injunctive relief).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

department." *Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin*, 333 F. Supp. 1302, 1303 (N.D. Cal. 1971); *see also Lamont v. Haig*, 590 F.2d 1124, 1128 (D.C. Cir. 1978). "[T]he legislative history [of Section 1391] emphasizes the statute's purpose, which was to broaden the venues available to plaintiffs for suits against the federal government." *Sidney Coal Co., Inc. v. Soc. Sec. Admin.*, 427 F.3d 336, 344 n.11 (6th Cir. 2005); *Stafford v. Briggs*, 444 U.S. 527, 539 (1980) (analyzing legislative history). Any interpretation of the federal venue statute must keep this purpose in mind.[4]

*First*, there can be no serious doubt that Ms. Smith "resides" in this district. 28 U.S.C. § 1391(e)(1)(A). Under section 1391(e), a government official "resides" in the judicial district "where he performs his official duties." *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969). Ms. Smith's office is located in this District, *see* Am. Pet., Dkt. 31, ¶ 19, Gov. MTD, Dkt. 54, at 10, and she carries out her functions here. *See*, *e.g.*, Corkery Dec., Ex. E (HHS), at 4493-94, 5733. That Ms. Smith performs her official duties in this district is sufficient to support venue here. *See Nestor*, 425 F.2d at 521; 14D Wright & Miller, *Fed. Prac. & Proc.* § 3815 (4th ed. 2017) ("[O]nly one—not all—defendants must reside in the chosen venue.").

The Government resists this conclusion by arguing that Ms. Smith is a mere "subordinate." Gov. MTD, Dkt. 54, at 11. Yet the record shows otherwise. *See*, Section III.B.1, *supra*. Mr. De La Cruz himself testified that Ms. Smith is "responsible for ensuring that the [detention] program follows . . . ORR's policies and procedures," Corkery Dec. Ex. B, at 54:12-55:16, which are at the heart of Plaintiffs' claims. As described below, the evidence demonstrates that Ms. Smith was far more than a mere "subordinate" with an incidental relationship with this case. *Cf. Hardin*, 333 F. Supp. at 1303. To the contrary, she played a key role in overseeing the Named Children's detention and transfers. *See Beazer E., Inc. v. U.S. EPA, Region III*, No. 90-cv-2753, 1990 WL 109892, at *1 (E.D.Pa. July 30, 1990) (denying venue transfer to Washington D.C. where local federal office "performed official

---

[4] Defendants rely on *Reuben* in an effort to limit the residence of government officials to their national headquarters. *see* Gov. MTD, Dkt. 54, at 11 (citing *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267) (7th Cir. 1978)). But *Reuben*, which was decided before *Stafford*, cannot be reconciled with the purpose of the federal venue statute. Section 1391's text and history make clear that Congress sought to broaden venue options in lawsuits that previously could *only* be brought in D.C. *Stafford*, 444 U.S. at 540-41; *Milliken & Co. v. FTC*, 565 F. Supp. 511, 514-15 (D.S.C. 1983) (explaining that *Reuben*'s holding "would defeat the language of § 1391(e) and thwart the intent of Congress").

Cooley LLP
Attorneys At Law
San Francisco
16.
Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

duties").

Relatedly, the Government mounts a narrower attack on Plaintiffs' claims against ICE and USCIS, contending that those agencies took no actions adverse to Plaintiffs in this District. *See* Gov. MTD, Dkt. 54, at 10. Even assuming that this is correct, the venue statute requires that only *one* defendant reside in this District. *See* 28 U.S.C. § 1391(e) (allowing venue in suit against federal officers to "be brought in any judicial district in which (A) *a defendant* in the action resides") (emphasis added). Because Ms. Smith "resides" here, venue for all federal Defendants is proper.[5]

*Second*, "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(e)(1)(B). The Petition alleges that Ms. Smith "serves as the approval authority for transfer and release decisions" pertaining to the Named Children and Proposed Class members, *see* Am. Pet., Dkt. 31, ¶¶ 7, 19, and the evidence confirms her involvement (and that of other ORR staff based here) in Plaintiffs' day-to-day custody. Ms. Smith ███████████████████ █████████████████████████████████████████████████████████. *See* Corkery Dec., Ex. E (HHS), at 4493-94, 5904-11; Corkery Dec., Ex. F (YOLO), at 60-61, 69-70. She ████████████████████████████████████████████████████. Corkery Dec., Ex. F (YOLO), at 38-41, 42-44; *see also* Corkery Dec., Ex. E (HHS), at 5908-5910. She and other staff based in this District ████████████████████████████████████ ████████████████████████. *See* Corkery Dec., Ex. E (HHS), at 818-19, 4725. Additionally, she ████████████████████████████████████████████████████████ ███████████████████████████. *See id.* at 5734, 5835-37; Corkery Dec., Ex. F (YOLO), at 13-15.

All these events and omissions giving rise to Plaintiffs' claims occurred in this District, under Ms. Smith's direction. Also, under § 1391(e), a plaintiff is not limited to the district where the "more substantial, or even the *most* substantial" events or omissions giving rise to the claim occurred. *See*

---

[5] Defendants mention the possibility of transfer to another court, Gov. MTD, Dkt. 54, at 9-10, but offer no argument as to why that would be appropriate, much less the required "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

*First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) (citation and quotation marks omitted). Rather, "*any* forum with a substantial connection to the plaintiff's claim' is proper. *Id.* (emphasis added). The evidence confirms that "action or inaction" in this District forms the basis of Plaintiffs' claims. Gov. MTD, Dkt. 54, at 12.[6]

### 3.    Plaintiffs' Claims Against Cardall and Esquivel Are Well Founded

Defendants Cardall and Esquivel (the "Facility Directors") seek dismissal based on two arguments not raised by the Government. *See* Cardall MTD, Dkt. 52; *see also* Equivel MTD, Dkt. 58. *First*, the Facility Directors assert that the Named Children's claims are moot as to them because the Children have been transferred out of Yolo. *See* Cardall MTD, Dkt. 52, at 7-8; *see also* Equivel MTD, Dkt. 58, at 7-8. Yet Cardall acknowledges the Petition's allegation that each Plaintiff remains subject to potential return to Yolo at any time. Cardall MTD, Dkt. 52, at 7-8; s*ee* Am. Pet., Dkt. 31, ¶¶ 10, 12, 14; *see also id.* ¶ 115 (class members "can be re-arrested . . . and sent again to secure detention"). These allegations are far from speculative. Although the Government transferred the Named Children out of Northern California, it did so without any acknowledgment that its prior conduct was improper, and without disclaiming its ability to return them in the future. *Id.*, ¶¶ 79, 90-91, 106-07; *see also* ORR Letter re: A.H., Dkt. 27-1; *cf. Bell v. City of Boise*, 709 F.3d 890, 898-99 (9th Cir. 2013) (addressing "stringent" standard for determining whether voluntary cessation renders case moot). Accordingly, there is "a likelihood of recurrence" that Plaintiffs will find themselves again in the Facility Directors' custody. *Demery v. Arpaio*, 37 F.3d 1020, 1025 (9th Cir. 2004). And if this Court grants Plaintiffs' motion for class certification, *see* Section V, *infra*, there would be a rotating group of noncitizen juveniles held in Yolo County and Fairfield subject to the Facility Directors' ongoing custody, which would defeat any assertion of mootness. *See Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

*Second*, Cardall and Esquivel contend that the Amended Petition makes "no allegations of unlawful conduct" against them. *See* Cardall MTD, Dkt. 52, at 2-4; *see also* Esquivel MTD, Dkt. 58, at 6-7. To the contrary, the Amended Petition states claims for relief against them by reason of their

---

[6] Although *Bramlet* addressed the venue provision for nonfederal parties in current Section 1391(b)(1), because the relevant language is identical, "cases construing [that] provision may be helpful in construing" the federal venue statue. 14D Wright & Miller, *Fed. Prac. & Proc.* § 3815.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

contractual relationships with ORR. *See* Am. Pet., Dkt. 31, ¶¶ 23-24. Because of those relationships, they carry out the directives and requests of the federal Defendants, including by taking custody of the Named Children. *Id.*, ¶¶ 73, 91, 100-02. More fundamentally, the Facility Directors' argument that they are not proper respondents here, and the Government's contention that they are the *only* proper defendants, cannot both be right.

### C.   Plaintiffs Have Stated Claims for Relief[7]

#### 1.   Claim 1 – Unlawful Arrest

The Government's attacks on Plaintiffs' unlawful arrest claims are unpersuasive. *First*, the Government asserts that the Named Children cannot seek relief in habeas "on the basis of their alleged unlawful arrests." Gov. MTD, Dkt. 54, at 12. To the contrary, habeas courts have traditionally heard claims brought by petitioners asserting that the state lacks probable cause to detain them pending trial. *See Gerstein v. Pugh*, 420 U.S. 103, 115 (1975) (explaining that "initial determination of probable cause [] could be reviewed by higher courts on a writ of habeas corpus) (citing, inter alia, *Ex Parte Bollman*, 8 U.S. 75, 97-101 (1807)); *Ex parte Burford*, 7 U.S. 448, 453 (1806) (invalidating, in habeas action, warrant of confinement for lack of "good cause certain, supported by oath"). Consistent with this understanding, habeas courts have entertained Fourth Amendment challenges to federal custody. *See Gonzalez v. Immigration & Customs Enf't*, No. 13-cv-4416, 2014 WL 12605368, at *3, *6-7 (C.D. Cal. July 28, 2014) (finding habeas authority over class action challenge to ICE detainers under Fourth and Fifth Amendments); *see also Carlson v. Landon*, 342 U.S. 524, 546-47 (1967) (addressing habeas challenge to propriety of re-arrest of noncitizen).[8] Moreover, Defendants concede that Plaintiffs can raise their Fourth Amendment and TVPRA claims under Section 1331 and/or the APA. Gov. MTD, Dkt. 54, at 12-13.

*Second*, Defendants contend that Plaintiffs cannot sue under the TVPRA because it provides

---

[7] Plaintiffs hereby withdraw their Fifth Claim for Relief, which alleges that Defendants unlawfully interfered with their right to counsel. *See* Am. Pet., Dkt. 31, ¶¶ 145-50.

[8] The Government's cases do not say otherwise. Indeed, *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 151, 155-58 (1923), was itself a habeas action where the Court rejected a merits argument that detention was unreasonable, without questioning that such a claim could be brought in habeas. *See Medina v. U.S. Dep't of Homeland Sec.*, No. 17-cv-0218, 2017 WL 1101370, at *2 (W.D. Wash. Mar. 24, 2017) (denying conditional release based on unique "posture of this case").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

no "private right of action," *id.* at 13, but that is irrelevant and incorrect. To begin, the habeas statute permits relief for petitioners who are "in custody in violation of the Constitution *or laws* . . . of the United States," 28 U.S.C. § 2241(c)(3) (emphasis added), and Defendants concede that statutory claims can be brought in habeas, *see* Gov. MTD, Dkt. 54, at 20 n.9. And, as noted above, Defendants agree that Plaintiffs can bring suit under the APA to enjoin TVPRA violations. *Id.* at 13. Plaintiffs do not need a separate "private right of action" to permit suit here.

Defendants are wrong in any event. Courts have long entertained suits in equity to bar the operation of Government conduct that violates statutory law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384-85 (2015) (describing "long history of judicial review of illegal executive action" in equity).[9] In contrast, all Defendants' cases either address whether a statute provides a private *damages* remedy (in contrast to the requests for injunctive or declaratory relief at issue here), *see, e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 562 (1979), or concern nonfederal defendants, *see, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

*Third*, the Government wrongly asserts that suppression of evidence is the exclusive remedy for Fourth Amendment violations. *See* Gov. MTD, Dkt. 54, at 15. In addition to habeas, the Fourth Amendment can be enforced through suits for equitable relief and damages. *See, e.g.*, *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985); *Sonoma Cty. Comm. for Immigrant Rights v. Cty. of Sonoma*, 644 F. Supp. 2d 1177 (N.D. Cal. 2009). To the extent that the Government suggests that 8 U.S.C. § 1252(f)(1) bars relief under this claim, that contention is squarely foreclosed by the Ninth Circuit's decision in *Rodriguez*, 591 F.3d at 1118-22 (holding that 1252(f)(1) "was not meant to bar classwide declaratory relief," and also that it permitted classwide injunctive relief "to enjoin conduct . . . [that] is not authorized by the statute").

The Government's only attack on the merits of Plaintiffs' false arrest claims is that 8 U.S.C. § 1226(a) authorizes it to re-arrest the Named Children based on the same charges of removability. *See* Gov. MTD, Dkt. 54, at 13-15. This argument ignores that it is unreasonable under the Fourth

---

[9] The Government cites *Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 774 (9th Cir. 1991), but all *Vinieratos* says is that "[a] general statute cannot confer jurisdiction when a more specific statute explicitly denies it." The Government does not say (nor could it) that any statute bars jurisdiction over Claims 1 through 4, and 6. In fact, it *concedes* that APA review is available.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

Amendment for government officials to repeatedly re-arrest a person based on a prior charge that supported an earlier arrest. *See United States v. Holmes*, 452 F.2d 249, 260-61 (7th Cir. 1971) (finding that criminal defendant could not be rearrested for charge for which he had already been released on bail without separate charges justifying change); *United States v. Kirkley*, No. 11-cv-10097, 2011 WL 3880908, at *5 (D. Kan. Sept. 1, 2011) ("[T]he continuing knowledge of defendant's guilt" of crime for which he had already made bond was insufficient to justify re-detention); *United States v. Kordosky*, No. 88-cr-0052, 1988 WL 238041, at *7 n.14 (W.D. Wis. Sept. 12, 1988) ("Absent some compelling justification, the repeated seizure of a person on the same probable cause cannot, by any standard, be regarded as reasonable under the Fourth Amendment."). Otherwise, "harassment by continual rearrests could be justified by the continuing existence of 'probable cause.'" *Holmes*, 452 F.2d at 260-61. Under this rule, Petitioners cannot be re-arrested based on charges of removability that have not changed since ORR first released them. Even the case law addressing precursors to Section 1226 makes clear that the Government's authority to re-arrest is subject to "reasonable discretion" and may not be "arbitrary and capricious." *Rubinstein v. Brownell*, 206 F.2d 449, 455 (D.C. Cir. 1953), *aff'd*, 346 U.S. 929 (1954).

Defendants' conduct also runs contrary to the TVPRA's structure and purpose. The statute requires that children "shall be promptly placed in the least restrictive setting that is in [their] best interest[s]." 8 U.S.C. § 1232(c)(2)(A); *see also Santos*, 2017 WL 2389722, at *5 (under TVPRA and the *Flores* Decree, "ORR should release [a UC] to a parent, if available"). Pursuant to this obligation, ORR previously determined that releasing the Named Children and other class members to their sponsors would be "in [their] best interests." *Id.*; *see also* Am. Pet., Dkt. 31, ¶ 64 (ORR released A.H. to mother under sponsorship agreement), ¶ 83 (same as to F.E.), ¶ 95 (same as to J.G.). It would frustrate the TVPRA's purpose to place Sponsored UCs "in the least restrictive settings" available, then permit ICE to re-arrest them based on preexisting removability charges. This would permit ICE to unilaterally undo ORR's previous determination that it was "in the best interests" of the Named Children to release them to their sponsors. In light of the Fourth Amendment concerns with such an interpretation, the TVPRA must be construed to require reliable evidence of changed circumstances prior to the re-arrest of any Sponsored UC. *See United States v. Weil*, 432 F.2d 1320, 1323 (9th Cir.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1970) (discussing statute that had been narrowly interpreted to avoid conflict with Fourth Amendment).

### 2.    Claim 2 – Procedural Due Process

#### a.    The Complaint States Procedural Due Process Claims Under the Fifth Amendment and the TVPRA

Plaintiffs' Second Claim alleges that Defendants have deprived them of their liberty without affording them procedural due process, in violation of the Fifth Amendment and the TVPRA. Am. Pet., Dkt. 31, ¶¶ 26-30, 60-61, 128-33. The Petition amply states claims under these provisions.

To determine the protections due process requires, courts apply the *Mathews v. Eldridge*, test, which requires consideration of (1) the private interest at stake, (2) the comparative risk of an erroneous deprivation of liberty with and without additional safeguards, and (3) any countervailing interests. 424 U.S. 319, 334-35 (1976). Each factor weighs in favor of Plaintiffs here. *First*, there can be no dispute that Plaintiffs have grave liberty interests in freedom from imprisonment and in family unity. *See Reno v. Flores*, 507 U.S. 292, 316 (1993) ("a child's constitutional freedom from bodily restraint is no narrower than an adult's") (internal quotation and citation omitted); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 481-82 (E.D. Va. 2016) (recognizing Fifth Amendment right to family integrity); Am. Pet., Dkt. 31, ¶¶ 62, 82, 93.

*Second*, Defendants argue that their current procedures are sufficient to avoid erroneous deprivation of the Named Children's liberty. *See* Gov. MTD, Dkt. 54, at 2-5, 17. But the Petition alleges serious deficiencies in these procedures. Among other problems, ORR places UCs in highly restrictive settings based on ICE's unsupported and unspecific allegations of gang affiliation and does not provide the youth (or their sponsor or counsel) notice of the charges, the evidence relied upon, or an opportunity to rebut that evidence. *See id.*, ¶¶ 46, 50, 57-60, 71-74, 76-77, 89, 107; *see also* TRO, Dkt. 7, at 10-12.[10] ORR's *initial* review is a 30-day "step-down" process that is entirely unilateral, and

---

[10] The Government asks why the bond hearings that have recently become available to youth in ORR custody do not satisfy due process. *See* Gov. MTD, Dkt. 54, at 17-18, citing *Flores*, 862 F.3d 863. On a motion to dismiss, the parties cannot present evidence on the efficacy or constitutional adequacy of these hearings, but Plaintiffs do address this issue in greater detail in their preliminary injunction motion, *infra* at IV(A)(2)(a).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

again provides no meaningful notice or opportunity to be heard. *See* Am. Pet., Dkt. 31, ¶ 61; Corkery Dec., Ex. A (ORR Rules), § 1.4.2; *cf. Schall v. Martin*, 467 U.S. 253, 263 (1984) (upholding "*brief* pretrial detention based on a finding of a 'serious risk' that [a] juvenile may commit a crime," including, *inter alia*, formal charges and probable cause hearings) (emphasis added). Similarly, in ORR's "reunification process," families are not provided the information or evidence upon which ORR bases its custody decisions, nor an opportunity to be heard by a neutral decisionmaker. *See Beltran*, 222 F. Supp. 3d at 485 (holding that "this manner of process is inadequate").

*Third*, the Government's only asserted countervailing interests are "preserving the public welfare," and protecting the children in its care. *See* Gov. MTD, Dkt. 54, at 18. But the Government does not explain how providing the youth in ORR custody with notice and an opportunity to be heard would interfere with or undermine either of these interests. Indeed, the adoption of safeguards to ensure compliance with the governing law serves the Government's own interest in "accurate and just results." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 28 (1981).[11] Given Plaintiffs' weighty liberty interests, the insufficiency of the existing procedural protections, and the Government's own interests in the welfare of youth, Plaintiffs have stated a procedural due process claim.

The Amended Petition separately alleges that Defendants' conduct violates the TVPRA. Am. Pet., Dkt. 31, ¶¶ 26-30, 60-61, 128. As this Court stated, the TVPRA requires "adequate consideration to whether [a juvenile] should be placed into . . . a secure facility," and demands that ORR "had an obligation to investigate the information it" receives in making placement determinations. *See* Corkery Dec., Ex. B, at 87:9-88:2, 88:9-13 ("ORR had an obligation under the statute . . . to make sure that the child should be in custody and . . . that being in a secure facility was the least restrictive setting that is in the best interests of the child."). The Court's conclusion is plainly correct. Here, Defendants have

---

[11] The Government cites *Schall v. Martin* to support its "*parens patriae* interest in protecting children from the consequences of their own bad decisions." Gov. MTD, Dkt. 54, at 18. But *Schall* upheld pretrial detention of juveniles based on a series of exacting procedural protections, including notice of the charges through "nonhearsay allegations," a prompt preliminary hearing, and a "formal, adversarial probable cause hearing" where the juvenile had counsel. *Id.* at 277. The Government has afforded nothing even close to that to the Named Children, who have now been detained for *months* as a result of its actions. *See* Am. Pet., Dkt. 31, ¶¶ 68, 80 (A.H. in custody since June 12), ¶¶ 88, 93 (F.E. in custody since June 16); ¶¶ 100, 107 (J.G. in custody since June 16).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

given no "adequate consideration" of the child's appropriate placement. ORR merely acceded to ICE's directive that the Named Children be placed in a secure facility, without conducting the TVPRA's required "determination." *See* Am. Pet., Dkt. 31, ¶¶ 55-57. Similarly, in order to implement the TVPRA's "[s]afety and suitability" assessments in accordance with due process, ORR must provide a process before children can be taken away from their parents. *See* 8 U.S.C. § 1232(c)(3). As the Petition alleges, *see* Am. Pet., Dkt. 31, ¶¶ 60-61, and multiple courts have found, ORR's existing procedures are wholly insufficient. *See Beltran*, 222 F. Supp. 3d at 487; *Santos*, 2017 WL 2389722, at *12.

**b.      That Some Plaintiffs Were "Apprehended at the Border" Does Not Deprive Them of Protection Against Unlawful Incarceration**

Similarly flawed is the Government's assertion that children who are "apprehended shortly after arriving at the border" can be detained without any procedural recourse. Gov. MTD, Dkt. 54, at 15. *First*, the Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const., amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). Even assuming that the Due Process Clause draws some distinction between noncitizens "identified at the border" and those not, almost all the Government's cases address a noncitizen's rights to certain procedures concerning her *exclusion or admission*. *See, e.g.*, *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015); *United States v. Peralta-Sanchez*, 847 F.3d 1124, *vacated on reh'g*, 868 F.3d 852 (9th Cir. 2017).[12] In contrast, this case concerns the right to be free from *unlawful incarceration*, which all Plaintiffs retain. *See Rosales-Garcia v. Holland*, 322 F. 3d 386, 413-15 (6th Cir. 2003) (en banc) (noncitizens stopped at border had due process rights against indefinite detention); *see also Kwai Fun Wong v. United States*, 373 F.3d

---

[12] *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 208-09 (1953) addressed the unique context of an adult noncitizen detained based on secret evidence and national security reasons, and subsequent courts have questioned its validity in light of intervening law. *See, e.g.*, *Rosales-Garcia v. Holland*, 322 F. 3d 386, 413-15 (6th Cir. 2003) (holding that *Mezei* has been "fatally undermined" by subsequent precedent). *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) *extended*, and did not contract, due process protection to certain noncitizens stopped at the border. And *United States v. Verdugo–Urquidez*, 494 U.S. 259, 271 (1990) and *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) addressed the constitutional rights of noncitizens *outside* United States territory.

952, 972-73 (9th Cir. 2004) ("non-admitted [noncitizens] living . . . in the American community . . . are undeniably 'persons' entitled to constitutional protection"); *Lynch v. Cannatella*, 810 F.2d 1363, 1373–73 (5th Cir. 1987) (recognizing rights of arriving noncitizens "to be free of gross physical abuse at the hands of [government] officials"). Moreover, all of the Government's cited cases address adults, not juveniles, and the law frequently adopts more protective rules for children, *see, e.g.*, *J.D.B. v. N.C.*, 564 U.S. 261, 272-73 (2011). The Government "[has] not identified any case holding that an excludable [noncitizen] minor . . . has no constitutional right . . . to determine whether he should be released to his parent." *Santos*, 2017 WL 2389722, at *9.

*Second*, all of the Named Children were apprehended after entering the United States. *See* Am. Pet., Dkt. 31, ¶¶ 64, 83, 95.[13] Under Ninth Circuit law, all such individuals are "entitled to the protection of the Due Process Clause." *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) ("Even an alien who has run some fifty yards into the United States" can claim Due Process protection); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (Fifth Amendment applies to those "whose presence . . . is unlawful, involuntary, or transitory").[14]

*Third*, it is undisputed that Plaintiffs are entitled to statutory protection under the TVPRA. *See* Gov. MTD, Dkt. 54, at 16. The TVPRA applies to *all* unaccompanied children in ORR custody, whether they have been "apprehended shortly after arrival" or have lived here for years. *See* 8 U.S.C. §§ 1232(c)(2)-(3); 6 U.S.C. § 279(g)(2). The TVPRA must be construed in light of the due process rights of *all* minors it covers, even assuming that the detention of certain minors would raise no constitutional concerns. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005) (courts should "give statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications . . . would not support the same limitation"); *Nadarajah v. Gonzales*,

---

[13] To the extent this argument relies on facts outside the Petition, Plaintiffs request leave to amend in order to plead the relevant allegations, which are submitted in support of Plaintiffs' preliminary injunction motion. *See* Corkery Dec., Ex. E (HHS), at 41-42, 48-51 (A.H. I-213); Corkery Dec., Ex. G (ICE), at 308-11 (F.E. I-213); F.E. Dec. ¶ 4; Corkery Dec., Ex. M (J.G. I-213), at 1-4; J.G. Dec. ¶ 5.

[14] *Castro v. Department of Homeland Security*, 835 F.3d 422 (3d Cir. 2016), found that certain noncitizens who recently entered the country could not challenge their removal orders under the Suspension Clause. Regardless of whether *Castro* was decided correctly, this Court must adhere to *Raya-Vaca*. And even *Castro* recognized that recently-entered noncitizens can raise Due Process challenges to their confinement. 835 F.3d at 449 n.32.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

443 F.3d 1069, 1077 (9th Cir. 2006).

### 3.    Claim 3 – Excessive Restraint of Liberty

The Amended Petition states a claim that the Named Children's original secure placement and ongoing detention violate the TVPRA's requirement that youth be placed in the "least restrictive setting that is in the best interest of the child" and the Fifth Amendment's restrictions on confinement that is excessive in relation to its purpose. 8 U.S.C. § 1232(c)(2)(A); *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004). ORR previously found that releasing all Petitioners to their sponsors would serve their "best interests." *See* Am. Pet., Dkt. 31, ¶¶ 64, 83, 95. Since then, Petitioners have lived in their local communities—sometimes for years. *Id.* None of the Named Children poses a danger to himself or others or has a serious criminal history that would support placement in a secure facility. *Id.*, ¶¶ 69, 86-87, 96. Yet, each was placed in the most secure possible setting and denied release, and has spent more than three months in a secure or staff-secure setting based on unfounded and false gang allegations. *Id.*, ¶¶ 81, 93, 101. Plaintiffs have therefore stated a claim for excessive restraint of liberty under both the Fifth Amendment and the TVPRA. Indeed, the Government's Motion fails to address Plaintiffs' statutory claim at all.

Contrary to the Government's assertion, *Reno v. Flores* does not govern here. In *Reno*, the Supreme Court upheld the custodial confinement of noncitizen children where they sought release to adults who were *not* their parents, legal guardians, and close relatives. *See Reno*, 507 U.S. at 300-06. The Court also stated that "freedom from physical restraint" was not at issue because the facilities there were "open" settings like shelters and group homes, rather than secure, jail-like detention facilities. 507 U.S. at 298, 302. Here, both the right to reunification with close family members and the right to be free from secure detention are at issue. The Named Children, and the class they seek to represent, have been put into highly-restrictive facilities that have "secure perimeter[s]" and "procedures typically associated with correctional facilities." *See* Am. Pet., Dkt. 31, ¶ 28 (quoting ORR Guide § 1.2.4); *see also id.*, ¶¶ 10, 12, 14, 40-63. In addition, unlike the plaintiffs in *Reno v. Flores*, Plaintiffs here seek release of the Named Children *to their parents,* who were previously

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

1    deemed appropriate custodians by ORR. *See id.*, ¶¶ 30, 64-65, 78-83, 95.[15]

2           **4.     Claim 4 – Violations of the *Flores* Decree**

3           The Named Children's custody similarly violates the *Flores* Decree.[16] Paragraph 24B of the

4    Decree provides that any "minor who disagrees with [the Government's] determination to place that

5    minor in a particular type of facility" may seek judicial review in any court with jurisdiction and venue.

6    *Flores* Decree, Dkt. 54-2, ¶ 24B; *Flores v. Lynch*, 828 F.3d 898, 903 (9th Cir. 2016) ("The Settlement

7    . . . allows individual challenges to placement or detention conditions to be brought in any district

8    court with jurisdiction and venue.") (citation omitted); *Bunikyte ex rel. Bunikiene v. Chertoff*, No. 07-

9    cv-0164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007). The Decree provides for "abuse of discretion"

10   review "for the [Government's] exercise of its discretion, and de novo review over "all other matters."

11   *Flores* Decree, Dkt. 54-2, ¶ 24C.

12          As the Petition states, the Government committed numerous errors in placing the Named

13   Children in Secure Facilities, including by misapplying the governing legal standards. *See* Am. Pet.,

14   Dkt. 31, ¶¶ 142-44. Those violations include failing to place the minor "in the least restrictive setting

15   appropriate to the minor's age and special needs," and failing to adhere to the provisions requiring

16   release of a minor to his parent absent concerns about the minor's likelihood of appearing for

17   immigration court hearings or safety. *Id.*, ¶ 144(a)-(b) (citing Paragraphs 11 and 14). The Petition also

18   alleges the Government's failure to notify the Named Children's existing counsel before transferring

19   them to faraway Secure Facilities. *Id.*, ¶ 144(c) (citing Paragraph 27). Accordingly, the Petition plainly

20   states that Named Children's custodial placements "abused [the Government's] discretion," *See* Gov.

21   MTD, Dkt. 54, at 21, including by flouting the Decree's legal requirements concerning their eligibility

22   for secure custody. *See Owino v. Holder*, 771 F.3d 527, 532 (9th Cir. 2014) (finding that agency

23   decision "based on legal error" constituted abuse of discretion).

24   ────────────────────
     [15] The Government suggests that because Plaintiffs have not disputed that they are classified as
25   "unaccompanied children" under the statute, their liberty interests are somehow weaker. *See* Gov.
     MTD, Dkt. 54, at 19 n.7. The Named Children's statutory classification, however, cannot alter the fact
26   Defendants' conduct is intruding on their fundamental liberty interest in reunifying with their parents
     and family members.

27   [16] To be clear, only the individual Named Children assert claims pursuant to Paragraph 24B of the
     *Flores* Decree. *See* Am. Pet., Dkt. 31, ¶ 32; *see also* Gov. MTD, Dkt. 54, at 20-21. They do not seek
28   to raise those claims on behalf of the Proposed Class.

Instead of defending the Named Children's *Flores* claims on the merits, the Government raises a series of flawed procedural defenses. It states that the Decree does not waive sovereign immunity and that violations of the Decree cannot be asserted in habeas. *See* Gov. MTD, Dkt. 54, 20-21 n.9. But in the same breath, the Government agrees that Plaintiffs' *Flores* claims can be raised under the APA. *Id.* at 20; *see also* 5 U.S.C. § 701, *et seq.* Because this Court's authority to hear Plaintiffs' *Flores* claims is undisputed, the Government's jurisdictional contentions need not be addressed. In any event, the Government is wrong. Habeas is available to any petitioner who alleges that "[h]e is in custody in violation of the Constitution or laws. . . ." 28 U.S.C. § 2241(c)(3). The Government does not dispute that the *Flores* Decree imposes binding legal obligations as to the treatment of immigrant children, and habeas is available to test violations of them.[17]

### 5.      Claim 6 – Unlawful Denial of Benefits

The First Amendment right to petition and the Due Process Clause of the Fifth Amendment protect the right to pursue legal claims through the courts, and the right to apply for government benefits and services. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); *Friedl v. City of N.Y.*, 210 F.3d 79, 87 (2d. Cir. 2000). Also, due process and the APA require that government agencies fairly process applications for government benefits. *See Griffeth v. Detrich*, 603 F.2d 118, 119-20 (9th Cir. 1979) (property interest in relief required constitutionally fair application process); *Mallette v. Arlington Cty. Emps.' Suppl. Ret. Sys. II*, 91 F.3d 630, 636-40 (4th Cir. 1996) (due process required for applications for disability retirement benefits); 5 U.S.C. § 706. Plaintiffs have stated a claim for relief under both theories.

*First*, the right to petition encompasses access to the courts. In the prisoner context, the Ninth

---

[17] The Government cites *Gutierrez-Chavez v. INS*, but that court recognized that jurisdiction would remain over claims of a "failure to exercise discretion or manifest injustice." 337 F.3d 1023, 1024 (9th Cir. 2003) (amending opinion). Here, the Named Children assert that the Government violated its legal obligations under the Decree, not merely that it abused its discretion. Nor is it true that habeas is restricted to violations of "constitutional and statutory law," since habeas courts have long reviewed claims that the Government has violated other sources of law, like regulations. *See, e.g., U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (finding that habeas petitioner had stated claim for relief based on Government's violations of its "existing valid regulations").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

Circuit has recognized that Plaintiffs have "the right to litigate without active interference." *Blaisdel v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) (internal quotation and citation omitted). Plaintiffs allege that Defendants' custody decisions interfere with their ongoing legal proceedings, which include ongoing removal proceedings, and state family court proceedings that are necessary predicates for their applications for Special Immigrant Juvenile (SIJ) status. *See* Am. Pet., Dkt. 31, ¶¶ 63, 66, 154; 8 U.S.C. §§ 1101(a)(27)(J) (SIJ eligibility factors).[18]

Defendants say that videoconferencing, venue transfers, or physical transportation of the Plaintiffs would cure any problems their transfers caused. *See* Defs. Opp. to TRO, Dkt. 15, at 13-15. But these measures cannot ameliorate the deficiencies caused by Plaintiffs' inability to appear in person with their retained counsel. *Cf. Rapheal v. Mukasey*, 533 F.3d 521, 532-33 (7th Cir. 2008) (finding violation of fair hearing right where petitioner could not review key documents undermining her credibility during videoconference hearing). Moreover, Defendants' argument relies on disputed facts that cannot be resolved on a motion to dismiss, *see* Gov. MTD, Dkt. 54, at 24, n.12, like the Plaintiffs' understanding of and ability to participate in remote proceedings (particularly via interpreters), and whether certain state courts even permit remote participation.

*Second*, Plaintiffs allege that the Government has impeded Plaintiffs' efforts to obtain immigration benefits based on their alleged gang membership, notwithstanding Defendants' lack of reliable evidence to support these allegations. *See* Am. Pet., Dkt. 31, ¶¶ 63, 81; *id.* ¶ 94 (notice of intent to revoke F.E.'s previously issued SIJ approval); *id.* ¶ 103 (deeming J.G. inadmissible for U-visa based on being "confirmed member of [MS-13]"). This violates the Due Process Clause and the APA. *See id.* ¶ 33. Laws creating an entitlement to a particular governmental benefit create a liberty or property interest protected by due process. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). The Named Plaintiffs and other Sponsored UCs are statutorily eligible for several forms of immigration benefits and relief.[19] *See, e.g.*, Am. Pet., Dkt. 31, ¶ 66 (A.H. eligibility for SIJ). These

---

[18] A.H.'s original Petition included specific allegations detailing how Defendant's arrest and transfer of A.H. to Yolo interfered with his state court hearing. *See* Pet., Dkt. 1, ¶¶ 23, 24, 47. These allegations were inadvertently omitted from the Amended Petition, but Plaintiffs will reallege these facts in an amended petition if necessary.

[19] *See, e.g.*, 8 U.S.C. § 1101(a)(27)(J) (statute setting forth SIJ requirements); 8 C.F.R. § 204.11 (governing application for SIJ status).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

forms of status or relief are benefits in themselves, and have other important legal consequences, regardless of whether they ultimately lead to lawful permanent residency or citizenship. *See Garcia v. Holder*, 659 F.3d 1261, 1272 (9th Cir. 2011) (SIJ parole qualifies as "admission" for purposes of establishing eligibility for cancellation of removal).

The APA also bars Defendants from using false accusations of gang affiliation to deny applications for relief. 5 U.S.C. § 706. An agency must "examine the relevant data and articulate a satisfactory explanation for its action," which must include "a rational connection [to] the facts." *Sears Sav. Bank v. Fed. Sav. & Loan Ins. Co.*, 775 F.2d 1028, 1029 (9th Cir. 1985) (citations omitted). The Amended Petition alleges that DHS recommended denying A.H. any immigration benefits or services "[i]n light of [his] affiliation to a violent street gang." *See* Am. Pet., Dkt. 31, ¶ 81. Plaintiffs also allege that USCIS has denied relief to the three Named Children based on similar reasons. As Defendants concede, Plaintiffs have a right to have their applications "processed within the procedures authorized by Congress." Gov. MTD, Dkt. 54, at 24. DHS has imposed a new, statutorily unauthorized threshold to deny benefits or relief based on unproven assertions of gang affiliation, thereby violating the APA and due process.[20] *Cf. Zevallos v. Obama*, 10 F. Supp. 3d 111, 118 (D.D.C. 2014) (agency designation of plaintiff as "foreign narcotics trafficker" subject to review under APA); *Remmie v. Mabus*, 898 F. Supp. 2d 108, 121 (D.C. Cir. 2012) (holding unlawful agency denial of relief that lacked explanation).

## IV. THE COURT SHOULD PRELIMINARILY ENJOIN DEFENDANTS' UNCONSTITUTIONAL AND UNLAWFUL POLICIES AND PRACTICES

To obtain a preliminary injunction, a plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts evaluate these factors on a "sliding scale." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (internal quotations and

---

[20] None of Defendants' cases say otherwise. *See* Gov. MTD, Dkt. 54, at 24-25 (*citing, e.g.*, *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-44 (1950) (denying entry based on Congressional delegation of discretion to executive did not violate due process); *Dielmann v. INS*, 34 F.3d 851, 853 (9th Cir. 1994) (denial of motion to reopen deportation order based on subsequent marriage was properly based on agency policy); *Kumar v. Gonzalez*, No. 06-cv-1805, 2007 WL 174089 (W.D. Wash. Jan. 17, 2007) (denial of requests to reopen or stay removal order based on pending application for asylum was in accordance with agency policy)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

citation omitted). Thus, a "stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Regardless, "the moving party [must] demonstrate a fair chance of success on the merits or questions serious enough to require litigation." *Arc of Cal.*, 757 F.3d at 993-94 (internal quotations and citation omitted).

All four factors are readily satisfied here. Plaintiffs are likely to succeed on the merits of the claims for which they seek preliminary relief:[21] unlawful arrest (Claim 1); deprivation of liberty without procedural due process (Claim 2); excessive restraint on liberty (Claim 3); and violations of the *Flores* Decree (Claim 4). The Plaintiffs have suffered and—unless Defendants are enjoined—will continue to suffer irreparable harm as a result of Defendants' violations of their rights, including psychological and emotional trauma as a result of their confinement. The equities tip sharply in favor of the requested relief, which would simply restore the Named Children's liberty and put procedural safeguards in place to allow other Sponsored UCs due process and protect against future constitutional violations, at little cost to Defendants. Similarly, the public interest weighs heavily in favor of an order upholding the protections of the Constitution and federal law.

As a result, Plaintiffs respectfully request that the Court issue a preliminary injunction that: (1) prohibits Defendants from future unlawful rearrests of Proposed Class members; (2) prohibits Defendants from detaining and transferring Proposed Class members to secure or staff secure facilities based on gang allegations, without providing them adequate procedural safeguards—including immediate notice and prompt, adversarial hearings where the Government bears the burden of proof; and (3) orders such hearings for any class members already in custody (other than the Named Children, who have already made a showing that they should be released).

---

[21] Plaintiffs seek classwide relief on Claims 1 (false arrest) and 2 (procedural due process) for the entire Proposed Class, as well as the release of the individual Named Children under Claims 3 (excessive restraint of liberty) and 4 (*Flores* Decree). At this time, Plaintiffs do not seek preliminary relief for Claim 6 (Denial of Benefits). Plaintiffs reserve the right to bring claims for preliminary and/or permanent relief on all claims at a later date.

Cooley LLP
Attorneys At Law
San Francisco

31.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

**A.**   **Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

**1.**   **Claim 1 – Unlawful Arrest**

Plaintiffs are likely to succeed on their claim that Defendants DHS and ICE violated the Fourth Amendment and the TVPRA by re-arresting the Named Children based on their pre-existing removability and/or unsubstantiated allegations of gang affiliation. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (citation omitted). This Amendment's "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967). In assessing reasonableness, courts balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (internal quotation and citation omitted).

As discussed in Section III.C.1, *supra*, Plaintiffs cannot be re-arrested based on charges of removability that have not changed since they were first released from ORR custody, lest they be subject to "harassment by continual rearrests" purportedly "justified by the continuing existence of 'probable cause.'" *Holmes*, 452 F.2d at 260-61. The evidentiary record, as well as Defendants' Motion, only confirm that the Named Children's preexisting charges of removability were the *only* stated grounds for their most recent arrests by ICE, *see* Nanos Dec., Ex. 5 (J.G.); *see also* Loechner Dec., Dkt. 15-1, at 4 (A.H.), as well as the only factual ground supported by reliable evidence, *see* Cruz Dec. ¶¶ 34, 39, 46. Each of the Named Children had been cared for by his sponsor since ORR released him, and none has a criminal history or any other factor that suggests that he poses a danger or harm to himself or others or a flight risk. *See* Saravia Dec., Dkt. 9, ¶¶ 2-4; A.H. Dec., Dkt. 8, ¶¶ 4-6; Gibbs Dec., Dkt 10, ¶¶ 12-18, Exs. 8-11; F.E. Dec. ¶¶ 6-12; M.U. Dec. ¶ 2; Gomez Dec. ¶¶ 2-5, Ex. 1; J.G. Dec. ¶ 11. For both F.E. and J.G., ORR ███████████████████████████████████████ ███████████████████████████████████. *See* Nanos Dec., Exs. 7-8; *see also* Corkery Dec., Ex. E (HHS), at 2551-56.

To the extent that Defendants now claim—contrary to the language of their own arrest warrants—that the Named Children's and Proposed Class members' re-arrests are justified based on alleged gang affiliation, the Fourth Amendment would still require probable cause to support those

Cooley LLP
Attorneys At Law
San Francisco

32.

**Plaintiffs' Consolidated Brief**
**Case No. 3:17-cv-03615-VC**

allegations. There is no reliable evidence of actual gang affiliation for any of the Named Children and, accordingly, there was no probable cause to support their arrest based on such allegations. *See* Cruz Dec. ¶¶ 34, 39, 46; *Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002) (probable cause turns on "information that the officers had at the time of [] arrest"). The "indicia" of gang membership or affiliation relied upon as to the Named Children are poor indicators of gang membership or affiliation. Cruz Dec. ¶¶ 28-46; *see also* Corkery Dec., Ex. C (RFA Resp.), at 2-3; Corkery Dec., Ex. D (Supp. RFA Resp.), at 2.

It is well-established that laws and practices must place "sufficiently specific limits on the enforcement discretion of the police to meet constitutional standards for definiteness and clarity." *City of Chicago v. Morales*, 527 U.S. 41, 64 (1999) (plurality opinion) (internal quotation and citation omitted). Thus, even if active gang participation were sufficient to justify the re-arrest of Sponsored UCs, the specific indicia applied by ICE fail these standards.[22] Similarly, it is clear that when ICE arrested the Named Children, they lacked probable cause to believe that they were actually associated with MS-13. *See Torres v. City of L.A.*, 548 F.3d 1197, 1209, 1212 (9th Cir. 2008) (upholding jury's conclusion that police lacked probable cause to detain alleged gang member suspected of association with murder, in part because police lacked "direct evidence that [the suspect] was a member of a gang"); *see also* Corkery Dec., Ex. I (Sini Test.), at 11 (noting that DHS uses "its immigration enforcement tools" in cases "when [ORR is] not able to effectuate a criminal arrest").

### 2.     Claim 2 – Deprivation of Liberty without Due Process

#### a.     Defendants' Practices Violate Procedural Due Process

The evidence procured by Plaintiffs in expedited discovery shows that Plaintiffs are also likely to succeed on the merits of their claim that Defendants' practices violate procedural due process and the TVPRA. *See Mathews v. Eldridge*, 424 U.S. at 334-35.

*Private interests at stake.* There can be no dispute that all children in this case have a "core

---

[22] Simple association with a gang, without evidence of underlying criminal conduct with a nexus to said gang, is not illegal, and deprivations of liberty based on gang membership—such as sentencing enhancements—generally require specific proof of intent, participation and criminal conduct. *See* 18 U.S.C. § 521(d) (requiring knowledge of, or engagement in, violent or drug-related offenses of gang, intent to promote interests of gang, *and* conviction in past 5 years of drug-related or violent crime).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

liberty interest" in their freedom from incarceration. *Reno*, 507 U.S. at 315 (O'Connor J., concurring). Because Defendants place Sponsored UCs with alleged gang affiliations in secure facilities, their confinement is in restrictive, jail-like facilities. *See* A.H. Dec., Dkt. 8, ¶¶ 19-20 (describing restrictions on freedom at Yolo); F.E. Dec. ¶¶ 15-18; J.G. Dec. ¶ 22; White Dec. ¶¶ 3-4, Ex. 1. The Named Children and their family members also have a Fifth Amendment right to family integrity, which is "perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court." *Beltran*, 222 F. Supp. 3d at 481-82 (quotation and citations omitted). "[A] parent's desire for and right to the companionship, care, custody and management of his or her children . . . undeniably warrants deference and, absent a powerful countervailing interest, protection."); *Lassiter*, 452 U.S. at 27-28 (citation omitted); *see also Santos*, 2017 WL 2389722, at *11 ("both a restraint of liberty and a continued separation of a child from a parent require" that government bear burden of proof).

*Risk of erroneous deprivation.* As explained above, Section III(C)(2), *supra*, ORR's existing procedures —including the "step down" process on which Defendants so heavily rely—suffer from numerous defects. *See* TRO, Dkt. 7, at 10-12. The evidence only confirms this conclusion. For example, ORR's own placement tool—which it uses to "determine the initial placement of [UCs]," *see* Corkery Dec., Ex. A (ORR Rules), § 1.4.2—indicated that J.G. and F.E. should be placed in non-secure shelters, not secure facilities, yet ORR ███████████████████████████████ ███████████████████████████. *See* Nanos Dec., Exs. 7-8; *see also* Corkery Dec., Ex. E (HHS), at 2551-56. Testimony from an ORR official confirmed that it is ORR's practice to rely on ICE information, and not to review or test that information, to make custody determinations. *See* Corkery Dec. Ex. B, at 53:16-21. For A.H., the decision was made based on both gang allegations and incorrect information provided by ICE regarding his juvenile record. Corkery Dec. Ex. B., at 46:23-49:6. The lack of notice and an opportunity to contest ORR's grounds for detention, either before or after the detention commences, create a substantial risk of erroneous deprivation of liberty.

The record demonstrates that Defendants' placement decisions were riddled with error. Indeed, Yolo made various efforts to verify gang affiliation for J.G., A.H. and many other children, yet no such evidence was available from ICE *or* SCPD. *See* Corkery Dec., Ex. C (RFA Resp.), at 2-3; *see also* Corkery Dec., Ex. D (Supp. RFA Resp.), at 2. What is more, Defendants' existing methods of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
34.
PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

"determining" whether the Named Children and Proposed Class members are gang members suffers from numerous defects, including failing to corroborate evidence with specific details, and failing to differentiate between cultural differences and emulating media, on the one hand, and gang affiliation, on the other. *See* Cruz Dec. ¶¶ 1-13, 17-23, 29-31, 36-37, 41-43; *see also* K.A. Dec. ¶¶ 20-21; Corkery Dec., Ex. F (YOLO), at 16, 22. ████████████████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.*, Cruz Dec. ¶ 48.

The risk of error in this process is particularly high given the nature of Defendants' allegations. As the Ninth Circuit has explained, "[d]etermining whether an individual is an active gang member presents a considerable risk of error" due to "[t]he informal," "fleeting" nature of gang membership, and "lack of objective criteria" used to show membership. *Vazquez v. Rackauckas*, 734 F.3d 1025, 1046 (9th Cir. 2013).[23] These factors "heighten the need for careful factfinding." *Id.* The testimony of ORR's own officials shows that ORR's procedures are far from "careful." *See* Corkery Dec., Ex. B, at 53:16-21. In fact, one Defendant has already admitted that ORR frequently makes erroneous gang membership determinations based on unreliable or nonexistent evidence that cannot be verified. *See* Corkery Dec., Ex. C (RFA Resp.), at 2-3; *see also* Corkery Dec., Ex. D (Supp. RFA Resp.), at 2.

Likewise, ORR's processes for determining the fitness of Named Children's custodians are similarly insufficient, and courts have criticized those processes as "opaque," *Beltran*, 222 F. Supp. 3d at 485, and "extremely troubling," *Santos*, 2017 WL 2389722, at *12. Certainly ORR has acted inconsistently in its conduct of home studies in the cases of the Named Children. *Compare* Saravia Supp. Dec. ¶¶ 9-10 (mother told she "failed" home study, but no one would tell her why) *with* M.U. Dec. ¶¶ 12, 16 (after home visit, case worker said she would recommend son's release, but no release

---

[23] In light of the "fleeting nature" of gang affiliation and differing levels of involvement, gang affiliation alone cannot justify such severe intrusions on individual liberty. *See e.g. Scales v. United States*, 367 U.S. 203, 228 (1961) (criminal liability based on membership in a group engaged in illegal advocacy requires individual "guilty knowledge and intent"); *People v. Englebrecht*, 88 Cal. App. 4th 1236, 1261 (2001) (subjection to civil gang injunction requires finding that an individual "participates in or acts in concert with an ongoing organization" in a manner that is "more than nominal, passive, inactive or purely technical"); *State v. O.C.*, 748 So. 2d 945, 950 (Fla. 1999) (statute that "punishes mere association" with gang without nexus to particular crime violates due process); *see also Benitez Ramos v. Holder*, 589 F.3d 426, 430 (7th Cir. 2009) (explaining that there is "ambiguity about what constitutes a 'gang,'" that gangs engage in a "variety of activities, not all criminal," and that some gang members' participation is "innocuous"); *Morales*, 527 U.S. at 67 (requiring some evidence of "harmful purpose or effect" for law enforcement officials to order gang members to disperse from or vacate area).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

one month later, and no explanation why).

In addition, Sponsored UCs are deprived of fundamental liberty interests *before* they have any notice of, much less a chance to contest, the allegations against them. "In situations where the State feasibly can provide a predeprivation hearing," "it generally must do so regardless of the adequacy of a postdeprivation [] remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). And "the procedures afforded juveniles detained prior to fact-finding [must] provide sufficient protection against erroneous and unnecessary deprivations of liberty." *Schall*, 467 U.S. at 263 (citing *Mathews*, 424 U.S. at 335). Here, Defendants moved the Named Children across the country and separated them from their families and lawyers, and put them in Secure Facilities before affording them any meaningful process. Due process requires that they have a meaningful opportunity to confront the evidence against them before a neutral decision-maker *before*—or, in exigent circumstances, within a short period after— tearing youth out of their communities and putting them in secure custody.

Relatedly, while Defendants suggest that a bond hearing per the terms of the *Flores* Decree would cure any procedural defects in their UC detention process, *see also* Am. Pet., Dkt. 31, ¶¶ 17-18, that claim is undercut by the limitations the Government imposes in that process. Even if, during such a bond hearing, an immigration judge determines that a child "does not pose a danger to the community and need not remain in an ORR facility for that reason," ORR policies state that it can override that decision and continue to detain the child. *See* Corkery Dec., Ex. A (ORR Rules), § 2.9; *see also* Johnson Dec. ¶ 14; Corkery Dec., Ex. E (HHS), at 4479 (noting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *Flores*, 862 F.3d at 878 (stating that HHS must make "a separate decision . . . with respect to the implementation of the child's appropriate care and custody."). The record shows that ORR has no compunction about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Corkery Dec., Ex. E (HHS), at 1781-84, 2551-53; *see also* Corkery Dec., Ex. A (ORR Rules), § 2.9. Because ORR can similarly override a bond hearing determination, an immigration judge cannot order the relief to which the Named Children are entitled.

Furthermore, in bond hearings, the Government ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Corkery Dec.,

1   Ex. E (HHS), at 2629. As multiple cases have found, such a procedure cannot satisfy due process

2   requirements. *See Santos*, 2017 WL 2389722, at *11-12; *Beltran*, 222 F. Supp. 3d at 486. And the

3   Government does not guarantee bond hearings for minors *prior to* putting them in secure custody and

4   transferring them far from their families and communities. Such after-the-fact hearings cannot satisfy

5   due process. *See Zinermon*, 494 U.S. at 132.

6       *Lack of countervailing interests.* Defendants' countervailing interests cannot overcome

7   Plaintiffs powerful liberty interests. *See* Section III.C.3, *supra*. Indeed, while the Government claims

8   an interest in the welfare of the Named Children, *see* Gov. MTD, Dkt. 54, at 18, it defends a juvenile

9   detention system that appears to be uniquely untrammeled by process. The Government has pointed

10  to *no* juvenile welfare system in the country that operates as unilaterally and with such minimal

11  attention to the grave liberty interests of juveniles and their parents. And, to Plaintiffs' knowledge,

12  there is *no* state in the Ninth Circuit that permits a government to remove a child from the care of his

13  existing custodian without providing (at a minimum) swift notice to the parent of the bases of the

14  child's removal, as well as prompt hearings on the appropriateness of the removal.[24] Given the

15  widespread adoption of such procedures in the states, the Government cannot credibly claim that it is

16  too burdensome to provide similar safeguards to Sponsored UCs.

17                 **b.    Defendants' Practices Violate the TVPRA**

18      The TVPRA requires ORR to "promptly" place UCs in the "least restrictive setting that is in

19  the best interest of the child" and prohibits placement in a secure facility "absent a determination that

20  the child poses a danger to self or others or has been charged with having committed a criminal

21  offense." 8 U.S.C. § 1232(c)(2)(A). While the statute does not describe the precise contours of how

22  "determinations" must be made, it should be interpreted in such a way as to avoid constitutional

23  concerns, and in accordance with the Fifth Amendment requirements described above. *See, e.g.*,

24

25  [24] *See, e.g.*, Alaska Stat. Ann. § 47.10.142(c)-(d) (requiring "immediate[]" notice to guardians, petition filed within 24 hours of assuming custody, and temporary custody hearing within 48 hours of notice); Ariz. Rev. Stat. Ann. § 8-823(A)-(B), § 8-824 (requiring notice to guardian within six hours of

26  removal, preliminary protective hearing within five to seven days of custody); Cal. Welf. & Inst. Code §§ 307.4, 315 (requiring immediate filing of petition to remove child, detention hearing held "as soon

27  as possible"); Nev. Rev. Stat. Ann. § 432B.470(1)-(3) (notice within, at maximum, 24 hours; hearing must take place within 72 hours of removal); Wash. Rev. Code Ann. §§ 13.34.065(1)(a), 13.34.062

28  (notice to parent and shelter care hearing held within 72 hours after state takes custody).

37.

**PLAINTIFFS' CONSOLIDATED BRIEF**
**CASE NO. 3:17-CV-03615-VC**

*Zadvydas*, 533 U.S. at 689; *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1153 (9th Cir. 2004) (reading regulations concerning service of charges on noncitizen children in light of constitutional concerns). And as this Court rightly concluded, the statute demands an "adequate determination" as to whether a juvenile "should be placed . . . into a secure facility." *See* Corkery Dec., Ex. B., at 87:7-14.

Similarly, in order to implement the TVPRA's "safety and suitability" assessments in accordance with due process requirements, ORR must provide some form of adversarial process before children can be taken away from their parents. *See* 8 U.S.C. § 1232(c)(3) (requiring HHS to make suitability assessment of proposed custodian). The fundamental right to family integrity requires that the burden be on ORR to justify the change in custody; ORR cannot "simply require [the] Petitioner[s] to change the agency's mind." *Beltran*, 222 F. Supp. 3d at 486; *Santos*, 2017 WL 2389722, at *12 ("[W]hen a parent is requesting reunification, the burden should be on ORR to show why its continued custody of a U[]C is appropriate, rather than placing that burden on the parent."); *see also Santosky v. Kramer*, 455 U.S. 745, 746-48 (1982) (due process in parental termination proceedings requires state to meet burden by "clear and convincing evidence").

Here, ORR failed to provide the Named Children with the "determination" that the TVPRA required. Indeed, it failed to provide them with *any* meaningful determination. Instead, it merely acceded to ICE's directive that the Named Children be placed in a secure facility, without conducting any "determination" of its own, as required by the TVPRA. But the TVPRA does not allow the Government to "shoot first and ask questions later."

This Court need look no further than A.H.'s case for evidence of ORR's failure to conduct *any* proper determination as to whether Proposed Class members should be placed in Secure Facilities. At the TRO hearing, this Court ordered ORR to "careful[ly] check of the accuracy of the information it received from DHS," including obtaining police reports and court records, and "contacting the appropriate local law enforcement officials" for information concerning A.H.'s alleged gang membership. Tr. 6/29/17, Dkt. 22, at 7:10-17. The Court also directed ORR to provide A.H. an opportunity to be heard on its detention decision. *Id.* at 7:18-20. After a telephonic conference on July 7, 2017, ORR filed its response to the Court's order. *See* ORR Letter re: A.H., Dkt. 27-1. There, ORR Director E. Scott Lloyd concluded that ORR's original decision to place A.H. in secure custody was

correct, even though ORR "cannot answer . . . [w]hether DHS acted beyond its statutory authority . . . in taking A.H. into custody," or "determin[e] . . . the veracity of DHS' original claims regarding gang affiliation." *Id.* at 3. ORR did *not* state that it had contacted any of the arresting officers from Suffolk County. *Id.* ORR asserted that even in the case of a sponsored child, once DHS makes an arrest, "ORR takes all children referred into custody, regardless of any claim of dangerousness." *Id.* As the evidence now shows, ██████████████████████████████████████████████████████████████████

*See, e.g.*, Corkery Dec., Ex. E (HHS), at 3728-31.

### 3.   Claims 3 and 4 – Excessive Restraint on Liberty/*Flores* Violations

Plaintiffs are also likely to succeed on the merits of their claim for excessive restraint on liberty in violation of the substantive due process afforded by the Fifth Amendment and the TVPRA and their claims under the *Flores* Decree. Under the TVPRA, juveniles must be "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. 1232(c)(2)(A). In making placements, ORR can "consider danger to self, danger to the community, and risk of flight." 8 U.S.C. 1232(c)(2)(A). A juvenile cannot be placed in a secure facility "absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.* Similarly, the Fifth Amendment requires that the "terms and conditions of [Plaintiffs'] confinement . . . are in fact compatible" with the government's stated purposes. *Schall*, 467 U.S. at 269. Detention "excessive in relation to its non-punitive purpose" violates substantive due process. *Jones*, 393 F.3d at 933-34 (citations and quotation marks omitted).

The Named Children's detention in secure or staff secure custody fails all of these standards. ORR previously found that releasing all Named Children to their sponsors would serve their "best interests." Saravia Dec., Dkt. 9, ¶ 2; Gomez Dec. ¶ 3; M.U. Dec. ¶ 2. Since that time, Named Children have attended their immigration court hearings with the support of their family members, and lived like normal teenagers in their local communities—sometimes for years. Until their recent arrests, Defendants never alleged that they posed dangers to themselves or others. *See* A.H. Dec., Dkt. 8, ¶¶ 4-5, 23; F.E. Dec. ¶¶ 5-6; J.G. Dec. ¶¶ 6-8.

The Government ostensibly takes the position that the Named Children's initial placement in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

39.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

secure facilities and ongoing detention is justified by their alleged gang membership.[25] *See* Corkery Dec., Ex. C (RFA Resp.), at 2-3; Corkery Dec., Ex. D (Supp. RFA Resp.), at 2. But, as the record shows, there is little to no credible evidence that any of the Named Children are gang members. *See* Cruz Dec. ¶¶ 28-49. Indeed, Defendants' primary evidence of their alleged gang affiliation is comprised of unreliable multiple-hearsay reports from unidentified law enforcement officers, which Plaintiffs have had no chance to rebut. *Id.* ¶¶ 30-31, 36, 41-42. J.G., A.H., and F.E. have all been in ORR custody for over three months and Defendants have not justified why the Named Children must remain in custody; to the contrary, evidence produced in expedited discovery supports their *release*. *See, e.g.*, F.E. Dec. ¶¶ 19-20 (social workers in two facilities told him they could tell he was not a gang member).

Defendants have no "legitimate governmental purpose" justifying their continued detention of the Named Children in custody, much less in staff-secure facilities, rendering their continued restraint of their liberty "excessive in relation to" the Defendants' alleged justifications. *Schall*, 467 U.S. at 269 (internal quotation and citation omitted). Plaintiffs are likely to succeed on the merits of the Third Claim for Relief.

**B.    The Named Children Will Suffer Irreparable Harm in the Absence of an Injunction**

The Named Children and Proposed Class will undoubtedly suffer irreparable and grave harm in the absence of an injunction. As discussed above, Defendants have violated and—unless enjoined—will continue to violate the Named Children's constitutional and statutory rights. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (indicating that only "colorable claim" of constitutional violation is needed to establish irreparable harm at the

---

[25] A.H. has two pending adjournments in contemplation of dismissal ("ACD") in New York. Under New York law, an ACD "shall not be deemed to be a conviction or an admission of guilt" and "[n]o person shall suffer any disability or forfeiture as a result of such an order." N.Y. Crim. Proc. Law §§ 170.55(8) (McKinney). After completion of the term of adjournment, "the arrest and prosecution shall be deemed a nullity." *Id;* N.Y. Crim. Proc. Law § 170.56(4). An ACD is not a conviction for immigration purposes. 8 U.S.C. § 1101(a)(48)(A) ("conviction" under immigration statute requires finding of guilt or admission of sufficient facts to support guilt).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

preliminary injunction stage) (internal quotations and citation omitted); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)).

The likely harm to the Named Children goes far beyond the violation of their legal rights, given that their interests in physical liberty and family unity are at stake. The "unnecessary deprivation of liberty clearly constitutes irreparable harm." *United States v. Bogle*, 855 F.2d 707, 710-11 (11th Cir. 1988) (citation omitted). As Plaintiffs' expert psychiatric witness, Dr. Lisa Fortuna, explains, the separation of the Named Children from their families and their detention are likely to have a severe, irreversible impact on their wellbeing. Fortuna Dec. ¶¶ 9-13, 41. The longer that the Named Children remain in confinement, the more likely it becomes that their development will suffer. *Id.*, ¶¶ 37-40. Their confinement also runs the risk of causing irreversible psychological injury, including post-traumatic stress disorder and suicidal inclinations, and exacerbating behavioral issues. *Id.*, ¶¶ 14-31; *see also* White Dec. ¶¶ 3-4. The Named Children already report feeling anxious, sad and depressed. J.G. Dec. ¶¶ 22-25; A.H. Supp. Dec. ¶ 9; F.E. Dec. ¶ 18, 21; K.A. Dec. ¶ 30. Such harm cannot be remedied post-hoc. *See Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 710 (9th Cir. 1988) (finding that "emotional and psychological . . . injury cannot be adequately compensated for by a monetary award after trial"); *see also* Corkery Dec., Ex. E (HHS), at 3729 (indicating ███████████ ██████████████████).[26]

### C.     The Equities Tip Sharply in Favor of the Requested Injunction

When ruling on a preliminary injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Arc of Cal.*, 757 F.3d at 991 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). Plaintiffs seek an order that Defendants not violate the constitutional or statutory rights of the Named Children or the Proposed Class. Such an order would cause no injury to Defendants, since a

---

[26] Defendants' unsubstantiated allegations of gang affiliation have the potential to cause further irreparable harm to J.G. and F.E. in the event they are eventually returned to El Salvador, their country of origin. The government there recently passed a law that requires that any Salvadoran deported from the United States on the basis of allegations of gang affiliation be detained upon reentry into El Salvador. *See* Cruz Dec. ¶¶ 25-26.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

41.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

government agency "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (citation omitted).

Moreover, the ongoing harms to the Named Children far outweigh any injury Defendants might claim to suffer. The Named Children have been separated from their families, locked in detention facilities and denied the opportunity to contest the alleged bases for their confinement. They are suffering mentally and emotionally, and their ongoing detention has the potential to cause them profound developmental harm. Fortuna Dec. ¶¶ 9-41. Conversely, the requested relief would require only that Defendants implement procedural safeguards to protect the constitutional and statutory rights of Sponsored UCs and release the Named Children.

### D.    The Requested Injunction Is in the Public Interest

The Ninth Circuit has repeatedly held that "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)). There is also a weighty public interest in "ensur[ing] that federal statutes are construed and implemented in a manner that avoids serious constitutional questions." *Rodriguez*, 715 F.3d at 1146. This is all the more true here given that Plaintiffs simply ask for procedural protections for vulnerable Sponsored UCs before Defendants deprive them of fundamental liberty interests; their requested relief would not result in the automatic release of any class member. *Accord id.* at 1145.

### V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS AND ENJOIN DEFENDANTS' UNLAWFUL POLICIES AND PRACTICES AS TO ALL CLASS MEMBERS

Ninth Circuit "courts routinely grant provisional class certification for purposes of entering [preliminary] injunctive relief" under Rule 23(b)(2), where the plaintiff establishes that the four prerequisites in Rule 23(a) are also met. *Carrillo v. Schneider Logistics, Inc.*, No. 11-cv-8557, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (citing *Baharona-Gomez v. Reno*, 167 F.3d 1228, 1233 (9th Cir.1999)); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) (finding district court did not abuse its discretion by provisionally certifying class for purpose of entering preliminary injunction). As demonstrated below, it is clear that Rule 23's requirements are

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

satisfied here. As a result, the Court should provisionally certify the following Proposed Class for purposes of the preliminary injunction sought by Plaintiffs:

> All unaccompanied immigrant children who had previously been detained in ORR custody and released by ORR to a parent or other sponsor ("Sponsored UCs"), and who thereafter have been arrested or are now or in the future being considered for arrest by U.S. immigration authorities on or after April 1, 2017 with allegations of gang affiliation and who have been detained or would, if arrested, be considered for detention in a secure or staff secure detention center ("Secure Facility") under the oversight authority of the San Francisco-based ORR Federal Field Specialist ("SF ORR").[27]

## A.  The Proposed Class Meets the Requirements of Rule 23(a)(1)-(4)

### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no magic number" for determining when the numerosity requirement has been satisfied," and "[c]ourts have certified classes with as few as thirteen members." *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995). Where, as here, a plaintiff "seek[s] only injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [] reasonable inference[s] . . . that the number of unknown and future members . . . is sufficient to make joinder impracticable." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*, 317 F.R.D. 91, 100 (N.D. Cal. 2016) (internal quotation marks omitted) (citing *Sueoka v. United States*, 101 Fed. Appx. 649, 653 (9th Cir. 2004)). Indeed, in injunctive relief-only cases, "[j]oinder in the class of persons who may be injured in the future has been held impracticable without regard to the number of persons already injured." *Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984).

The Proposed Class is sufficiently numerous. Plaintiffs seek relief on behalf of all Sponsored UCs who "have been or will be" arrested by ICE with allegations of gang affiliation and are thereafter detained in a Secure Facility under the oversight of SF ORR. *See* Am. Pet., Dkt. 31, ¶ 104. No fewer

---

[27] District courts "are empowered to grant [class-wide] preliminary injunctions regardless of whether the class has been certified." *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1178, n.4 (N.D. Cal. 2009) (internal quotation and citation omitted) (enjoining implementing of legislation that would reduce benefits to adults with disabilities, and extending injunction beyond named plaintiffs); *EasyRiders Freedom FIGHT v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) (affirming order enjoining enforcement of unconstitutionally vague law statewide without class certification); *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987) ("Class-wide relief may be appropriate even in an individual action.") (citations omitted). Regardless, Plaintiffs seek an order provisionally certifying the Proposed Class to avoid any dispute as to the appropriate scope of the requested preliminary injunction, and because the requirements of Rule 23 are so plainly met.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

43.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

than seven Sponsored UCs, including the Named Children, were arrested by ICE and detained by ORR as a result of the policies and practices at issue here between June and August 2017, alone. *See* Corkery Dec., Ex. C (RFA Resp.), at No. 1; Corkery Dec., Ex. F (YOLO), at 759-61. An internal ORR memo ████████████████████████████████████████████████████████████████████████████████████. Corkery Dec., Ex. E (HHS), at 3731. ████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████ ████████████████████ *Id.* While the precise number of Sponsored UCs who "will be," at some future time, re-arrested and detained under similar circumstances is unknown, "general knowledge and common sense indicate that it is large." *Von Colln v. Cty. of Ventura*, 189 F.R.D. 583, 590 (C.D. Cal. 1999). According to data published by ORR, there are currently tens of thousands of Sponsored UCs living in the custody of a parent or other sponsor. Kang Dec. ¶¶ 4-5. As the Named Children's experiences illustrate, any number of these Sponsored UCs are at risk of being arrested and transferred to a detention center within the oversight of SF ORR, regardless of where in the country they currently reside. *See, e.g.*, J.G. Dec., ¶¶ 17-20. Indeed, in a July 28, 2013 speech later posted to the official website of the White House, President Donald J. Trump has specifically decried the fact that "unaccompanied alien minors [are] released all throughout our country into United States communities." Corkery Dec., Ex. J (White House Press Release), at 9. Similarly, Defendant Sessions has publicly complained that "we need to be able to deport people rapidly who enter the country illegally, and we have to end this policy of taking unaccompanied minors . . . and turning them over to the Department of Health and Human Services, and then they take them to their 'destination city'" Corkery Dec., Ex. K (Sessions Article), at 2; *see also* Corkery Dec., Ex. H (ICE Press Release), at 3 (referring to "[t]welve individuals arrested during the operation crossed the border as unaccompanied minors," including two with SIJ status).[28]

    Additional factors commonly considered by courts in the numerosity inquiry compel the

---

[28] *See also* Corkery Dec., Ex. L (Reuters Article re: Immigration Raids), at 1 (reporting that ICE planned to target 16 and 17-year old alleged gang members, based on, inter alia "frequenting an area notorious for gang and wearing gang apparel").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

conclusion that class treatment is appropriate. These factors include: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *McCluskey v. Tr. of Red Dot Corp. Emp. Stock Ownership Plan & Trust,* 268 F.R.D. 670, 673 (W.D. Wash. 2010) (citation omitted). While each of these factors weighs sharply in favor of class certification, factors (3) and (4) are particularly pertinent. Plaintiffs seek relief on behalf of a Proposed Class of undocumented immigrant children, taken—in many cases without notice—from their parent(s) or other custodial sponsor and denied access to counsel. These children largely lack the knowledge, skills and resources needed to understand, let alone assert, their statutory and constitutional rights on their own. Mass Dec. ¶ 6. Moreover, ORR can and does transfer Sponsored UCs from one facility to another, complicating Proposed Class members' ability to identify and secure legal representation and obstructing—intentionally or not—their ability to understand their legal rights and proceed individually. For example, shortly after counsel in this case visited him at Yolo, J.G. was transferred by ORR to a staff secure facility near Tacoma, Washington, hundreds of miles from his attorneys. J.G. Dec. ¶¶ 21-23; Mass Dec. ¶ 7. As a result, any doubt as to whether Rule 23(a)(1) is met should be resolved in favor of class treatment. *See Rodriguez*, 591 F.3d at 1123 (finding numerosity satisfied, in part, because of "the severe practical concerns that would likely attend [prospective immigrant class members] were they forced to proceed alone").

### 2.  Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "[N]ot every question of law or fact must be common to the class; 'all that Rule 23(a)(2) requires is a single *significant* question of law or fact.'" *Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-1508, 2016 WL 8729923, at \*8-9 (N.D. Cal. Aug. 19, 2016) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013); *see also Rodriguez,* 591 F.3d at 1122 ("[T]he commonality requirements asks [sic] us to look only for some shared legal issue or a common core of facts.").

The standard is even more liberal in a civil rights suit seeking injunctive and declaratory relief, like this one, which "challenges a system-wide practice or policy that affects all of the putative class

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

45.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by*

*Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005). Such suits "by their very nature often present common

questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1763

(3d ed. 2017); *see also Rodriguez*, 591 F.3d at 1122-25 (finding commonality satisfied in habeas class

action involving challenges to prolonged immigration detention without bond hearing); *Walters v.*

*Reno*, 145 F.3d 1032, 1045-46 (9th Cir. 1998) (finding commonality in case challenging notices of

deportation proceedings).

 The claims brought by the Named Children on behalf of the Proposed Class raise a litany of

common questions of both law and fact, including (by way of non-exhaustive illustration):

- whether ICE can re-arrest a Sponsored UC based solely on removability;
- whether mere allegations of gang affiliation provide a reasonable basis for ICE to re-arrest a Sponsored UC;
- whether ORR takes any steps to corroborate information regarding the alleged gang affiliation of a Sponsored UC before placing the Sponsored UC in a Secure Facility, or instead merely rubber stamps ICE's recommendation and referral;
- whether Sponsored UCs who are re-arrested based on allegations of gang affiliation are entitled to notice and an opportunity to be heard before a neutral decision maker regarding the basis for their confinement; and
- whether ORR's placement of Sponsored UCs in Secure Facilities based on allegations of gang affiliation violates the TVPRA's requirement that UCs be "placed in the least restrictive setting that is in [their] best interests."

Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive

standard. *Abdullah*, 731 F.3d at 957; *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008)

("Courts have found that a single common issue of law or fact is sufficient.") (citation omitted); *see*

*also Sweet v. Pfizer*, 232 F.R.D. 360, 367 (C.D. Cal. 2005) ("there must only be one single issue

common to the proposed class") (quotation and citation omitted).

### 3. Typicality

 Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the

claims or defenses of the class members. "Under the rule's permissive standards, representative claims

are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be

substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality

is satisfied "when each class member's claim arises from the same course of events, and each class

Cooley LLP
Attorneys At Law
San Francisco

46.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

1   member makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at

2   1124 (quoting *Armstrong*, 275 F.3d at 868). "The test of typicality is 'whether other members have

3   the same or similar injury, whether the action is based on conduct which is not unique to the named

4   plaintiffs, and whether other class members have been injured by the same course of conduct.'"

5   *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation omitted).

6          As discussed in Section III.C.1, *supra*, each of the Named Children were re-arrested by ICE

7   after having previously been released to a sponsor and placed in a Secure Facility by ORR. In each

8   case, the re-arrest and subsequent secure detention were based on allegations of gang affiliation. In

9   accordance with Defendants' policies and practices, none of the Named Children were provided with

10  notice of the evidence on which these allegations were based or an opportunity to test such evidence.

11  None of them have been released to their parents despite their families' diligent participation in ORR's

12  reunification petition process. The claims of the Named Children are therefore typical of the claims

13  belonging to members of the putative class, which is defined to include Sponsored UCs who have been

14  or will be re-arrested and placed in a Secure Facility under substantively similar circumstances, in

15  violation of the same statutory and constitutional rights on which the Named Children based their

16  claims. *See* Section III.C, *supra*.

17                  **4.      Adequacy of Representation**

18         Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the

19  interests of the class." The adequacy inquiry asks: "(1) do the named plaintiffs and their counsel have

20  any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

21  prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both requirements

22  are plainly satisfied here.

23         In the six weeks since this litigation was filed, the Plaintiffs and their counsel[29] have vigorously

24  represented the interests of the Proposed Class, competently and without conflicts of interest. Among

---

[29] Counsel for the Named Parties are *pro bono* attorneys from the ACLU of Northern California, the ACLU Immigrants' Rights Project and the law firm of Cooley LLP. Collectively, Proposed Class counsel have wide-ranging experience in immigration, habeas corpus, class action and other complex litigation. *See* Mass Dec. ¶¶ 4-5; Kang Dec. ¶¶ 9-20; Schenker Dec. ¶¶ 3-4. Each has an excellent reputation in the community for advocacy in their respective areas, brings to bear considerable legal resources, and will energetically pursue the interests of the putative class.

other things, the Plaintiffs and their counsel have successfully obtained expedited discovery from Defendants, and brought this Motion for the benefit of the Proposed Class. The Plaintiffs have met with their counsel repeatedly in furtherance of these objectives, and offered evidence in support of this Motion, at a pace befitting the gravity of the deprivations of liberty being suffered by the entire Proposed Class. There can be no doubt about the sincerity of the Plaintiffs or their counsel in prosecuting this action on behalf of the Proposed Class.

**B.      The Proposed Class Meets the Requirements of Rule 23(b)(2)**

In addition to satisfying the four prerequisites of Rule 23(a), the Proposed Class qualifies for class treatment under Rule 23(b)(2). Rule 23(b)(2) requires that Plaintiffs establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule [23](b)(2) was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047. As a result, "'[i]t is sufficient' to meet the requirements of Rule 23(b)(2) [that] 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125-26 (citation omitted) (finding that class of non-citizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members [sought] the exact same relief as a matter of statutory or, in the alternative, constitutional right"). "Identification of all class members is not necessary under Rule 23(b)(2)." *Perez-Olano*, 248 F.R.D. at 259. Rather, applying "[R]ule [23](b)(2)] is appropriate [where] plaintiffs bring a class action on behalf of a 'shifting population.'" *Id.* (citation omitted). The class that Plaintiffs seek to certify is a quintessential Rule 23(b)(2) class.

*First*, Defendants are acting on grounds that are generally applicable to the class because they subject all members of the Proposed Class to the same policies or practices. Discovery has shown that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████. Corkery Dec., Ex. E (HHS), at 3731, 3549 (discussing June 15, 2017 training on ORR's "new policy" regarding secure placement), 3407 (discussing ORR's secure policy update, including as to treatment of "gang affiliat[ed]" UCs); *see also* Corkery Dec. Ex. B, at 5:6-10,

5:23-6:2 (testimony of ORR's De La Cruz acknowledging a number of "secure referrals" from DHS in connection with the immigration "sweep of children"). Discovery has also revealed that ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Corkery Dec., Ex. E (HHS), at 3728-29. The similar experiences of the Named Children confirm that Defendants practices are generally applied to members of the Proposed Class. Each of the Named Children was transferred to the custody of ORR, who placed them in a secure facility based on the allegations of gang affiliation provided by DHS and without conducting any independent determination of whether the Named Children were, in fact, gang members as DHS alleged. And all three Named Children were subsequently stepped down to less secure facilities because ORR their placement in a secure facility was deemed unnecessary. It is therefore evident that this "action concerns a . . . policy applicable to the entire class that (if unlawful) subjects class members to unnecessary detention. The Rule's requirements are satisfied." *Rivera v. Holder*, 307 F. R.D. 539, 551 (W.D. Wash. 2015).

*Second*, the injunctive relief requested by Plaintiffs is appropriate for the class as a whole. The class requests uniform relief in the form of an injunction: (1) prohibiting Defendants from future unlawful rearrests of Proposed Class members; (2) prohibiting Defendants from detaining and transferring Proposed Class members to secure or staff secure facilities based on gang allegations, without providing them adequate procedural safeguards—including immediate notice and prompt, adversarial hearings where the Government bears the burden of proof; and (3) ordering such hearings for any class members already in custody (other than the Named Children, who have already made a showing that they should be released).

Because a single injunction would afford this relief as to all members of the Proposed Class, certification under Rule 23(b)(2) is appropriate. *See Parsons*, 754 F.3d at 689 (finding declaratory and injunctive relief proper as to class where "every [member] . . . is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice"); *Rodriguez*, 591 F.3d at 1126 (certifying Rule 23(b)(2) class of immigrant detainees where "relief from a single practice is requested by all class members").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

49.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

1

## VI.     <u>CONCLUSION</u>

2

Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss and grant

3

Plaintiffs' Motion for Preliminary Injunction and Motion for Provisional Class Certification.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

50.

Plaintiffs' Consolidated Brief
Case No. 3:17-cv-03615-VC

1   Dated:        September 25, 2017          COOLEY LLP
                                             MARTIN S. SCHENKER (109828)
2                                            NATHANIEL R. COOPER (262098)
                                             TREVOR M. KEMPNER (310853)
3                                            ASHLEY KEMPER CORKERY (301380)

4

5                                            */s/ Martin S. Schenker*
                                             Martin S. Schenker
6                                            *Attorneys for Plaintiffs*

7

8

9   Dated:        September 25, 2017          AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF NORTHERN CALIFORNIA
10                                           JULIA HARUMI MASS (189649)
                                             WILLIAM S. FREEMAN (82002)
11

12

13                                           */s/ Julia Harumi Mass*
                                             Julia Harumi Mass
14                                           *Attorneys for Plaintiffs*

15

16

17  Dated:        September 25, 2017          ACLU FOUNDATION
                                             IMMIGRANTS' RIGHTS PROJECT
18                                           STEPHEN B. KANG (SBN 292280)
                                             JUDY RABINOVITZ (*pro hac vice*)
19

20

21                                           */s/ Stephen S. Kang*
                                             Stephen S. Kang
22                                           *Attorneys for Plaintiffs*

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

51.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC