1    AMERICAN CIVIL LIBERTIES UNION            COOLEY LLP
     FOUNDATION OF NORTHERN CALIFORNIA         MARTIN S. SCHENKER (SBN 109828)
2    JULIA HARUMI MASS (SBN 189649)            NATHANIEL R. COOPER (SBN 262098)
     WILLIAM S. FREEMAN (SBN 82002)            KATHLYN QUERUBIN (SBN 275085)
3    39 Drumm Street                           ASHLEY K. CORKERY (SBN 301380)
     San Francisco, CA 94111                   TREVOR M. KEMPNER (SBN 310853)
4    Telephone:  (415) 621-2493                101 California Street, 5th Floor
     Facsimile:  (415) 255-8437                San Francisco, CA 94111
5    Email:   jmass@aclunc.org                 Telephone: (415) 693-2000
              wfreeman@aclunc.org              Facsimile: (415) 693-2222
6                                              Email: mschenker@cooley.com
     ACLU FOUNDATION                           ncooper@cooley.com
7    IMMIGRANTS' RIGHTS PROJECT                acorkery@cooley.com
     JUDY RABINOVITZ (pro hac vice)            tkempner@cooley.com
8    125 Broad Street, 18th Floor
     New York, NY  10004                       ACLU FOUNDATION
9    Telephone:  (212) 549-2660                IMMIGRANTS' RIGHTS PROJECT
     Facsimile:  (212) 549-2654                STEPHEN B. KANG (SBN 292280)
10   E-mail:  jrabinovitz@aclu.org             39 Drumm Street
                                               San Francisco, CA  94111
11   LAW OFFICES OF HOLLY S. COOPER            Telephone:  (415) 343-0770
     HOLLY S. COOPER (SBN 197626)              Facsimile:  (212) 395-0950
12   P.O. Box 4358                             E-mail:  skang@aclu.org
     Davis, CA 95617
13   Telephone: 530-574-8200
     Facsimile: 530-752-0822
14   Email: hscooper@ucdavis.edu

15   Attorneys for Plaintiffs

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19

20   Lorenza Gomez, as next friend for J.G., a       Case No. 3:17-cv-03615-VC
     minor, and on her own behalf, et al.,
21                                                    **PLAINTIFFS' CONSOLIDATED REPLY**
                                                      **MEMORANDUM:**
22        Petitioners/Plaintiffs, on behalf of
          themselves individually and others         **(1) IN SUPPORT OF MOTION FOR**
23        similarly situated,                         **PRELIMINARY INJUNCTION; AND**
                                                      **(2) IN SUPPORT OF MOTION FOR**
24        v.                                          **PROVISIONAL CLASS CERTIFICATION**

25   Jefferson B. Sessions, et al.,                   Date:        October 26, 2017
                                                      Time:        10:00 a.m.
26        Respondents/Defendants.                     Location:    Courtroom #4
                                                      Judge:       Hon. Vince Chhabria
27

28            **REDACTED VERSION OF DOCUMENT SUBMITTED PARTIALLY UNDER SEAL**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   OBJECTIONS TO DEFENDANTS' EVIDENCE ............................................. 1

III.  RELEVANT BACKGROUND ......................................................................... 3

IV.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR PRELIMINARY
      INJUNCTION ................................................................................................... 5

      A.    The Relief Sought by Plaintiffs is Appropriate and Reasonable ................................. 5

      B.    Plaintiffs Have Shown a Likelihood of Success on the Merits .................................... 6

            1.    Plaintiffs Do Not Need a "Private Right of Action" to Raise Violations
                  of the TVPRA, and, Regardless, the TVPRA Provides Such a Right ............ 6

            2.    Plaintiffs Are Likely to Succeed on Their Unlawful Arrest Claims ............... 7

            3.    Plaintiffs Are Likely to Succeed on Their Procedural Due Process
                  Claims ................................................................................................... 11

            4.    Plaintiffs Are Likely to Succeed on the Merits of Their Substantive
                  Due Process and Flores Claims ............................................................... 15

            5.    The Harm to Plaintiffs, the Balance of the Equities, and the Public
                  Interest All Weigh in Favor of Plaintiffs' Requested Relief ....................... 18

            6.    The Court Should Order the Release of the Named Children ...................... 19

V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS .......... 20

      A.    Plaintiffs Meet the Requirements for Class Certification Under Rule 23 ................. 20

            1.    The Proposed Class Is so Numerous that Joinder Is Impracticable .............. 21

            2.    Plaintiffs' Class Claims Present Common Questions With Common
                  Answers ................................................................................................. 23

            3.    Plaintiffs Satisfy the Requirements of Rule 23(b)(2) ................................. 24

VI.   CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Addington v. Texas*,
　441 U.S. 418 (1979)..................................................................................................14

*Alli v. Decker*,
　650 F.3d 1007 (3d Cir. 2011)......................................................................................9

*Armstrong v. Exceptional Child Ctr., Inc.*,
　135 S. Ct. 1378 (2015)............................................................................................1, 7

*Barnes v. Healy*,
　980 F.2d 572 (9th Cir. 1992) .....................................................................................14

*Beltran v. Cardall*,
　222 F. Supp. 3d 476 (E.D. Va. 2016) ...........................................................13, 14, 19

*Boumediene v. Bush*,
　553 U.S. 723 (2008)....................................................................................................6

*Boyd v. City of Oakland*,
　458 F. Supp. 2d 1015 (N.D. Cal. 2006) .......................................................................2

*Briseno v. ConAgra Foods, Inc.*,
　844 F.3d 1121 (9th Cir. 2017) ...................................................................................24

*Bruce v. Christian*,
　113 F.R.D. 554 (S.D.N.Y. 1986) ..........................................................................21, 23

*Bublitz v. E.I. du Pont de Nemours & Co.*,
　202 F.R.D. 251 (S.D. Iowa 2001) ..............................................................................21

*Califano v. Yamasaki*,
　442 U.S. 682 (1979)....................................................................................................9

*Civil Rights Educ. & Enf't Ctr. V. Hosp. Props. Trust*,
　317 F.R.D. 91 (N.D. Cal. 2016)..................................................................................22

*Cnty. of Santa Clara v. Trump*,
　Nos. 17-cv-0574, 17-cv-0485, 2017 WL 1459081 (N.D. Cal. Apr. 25, 2017)............19

*Cole v. City of Memphis*,
　839 F.3d 530 (6th Cir. 2016) ...............................................................................24, 25

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
　375 F.2d 648 (4th Cir. 1967) .....................................................................................21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Dale Elecs., Inc. v. R.C.L. Elecs., Inc.,*
    53 F.R.D. 531 (D.N.H. 1971) ...................................................................21

*Demery v. Arpaio,*
    378 F.3d 1020 (9th Cir. 2004) .................................................................20

*Demjanjuk v. Meese,*
    784 F.2d 1114 (D.C. Cir. 1986) ...............................................................20

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)...................................................................................7

*Easy Riders Freedom F.I.G.H.T. v. Cal. Highway Patrol,*
    92 F.3d 1486 (9th Cir. 2010) ...................................................................25

*Escalante v. Cal. Physicians' Serv.,*
    309 F.R.D. 612 (C.D. Cal. 2015) .............................................................24

*Goss v. Lopez,*
    419 U.S. 565 (1975)..................................................................................12

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ...................................................................5

*Matter of Grijalva,*
    19 I.&N. Dec. 713 (BIA 1988) .................................................................15

*Grimaldo v. Reno,*
    187 F.R.D. 643 (D. Colo. 1999) ................................................................8

*Hernandez v. Sessions,*
    No. 16-cv-56829, 2017 WL 4341748 (9th Cir. Oct. 2, 2017) ........... *passim*

*Hilton v. Braunskill,*
    481 U.S. 770 (1987)..................................................................................19

*INS v. St. Cyr,*
    533 U.S. 289 (2001)................................................................................6, 8

*Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson,*
    799 F.2d 547 (9th Cir. 1986) ...................................................................10

*Khoury v. Asher,*
    3 F. Supp. 3d 877 (W.D. Wash. 2014)........................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

**TABLE OF AUTHORITIES**
(continued)

Page

*L.H. v. Schwarzenegger*,
   519 F. Supp. 2d 1072 (E.D. Cal. 2007)...................................................................2

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) .............................................................................10

*Lassiter v. Dep't of Soc. Servs.*,
   452 U.S. 18 (1981) ................................................................................................13

*Latta v. Otter*,
   771 F.3d 496 (9th Cir. 2014) ...............................................................................18

*Lopez v. Heckler*,
   725 F.2d 1489 (9th Cir. 1984), 469 U.S. 1082 (1984)...........................................5

*Lyon v. U.S. Immigration and Customs Enf't*,
   300 F.R.D. 628 (2014) ....................................................................................22, 24

*M.S.P.C. v. Customs & Border Prot.*,
   60 F.Supp.3d 1156 (D.N.M. 2014) .......................................................................12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) .................................................................................5

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)........................................................................................11, 14

*McCluskey v. Tr. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
   268 F.R.D. 670 (W.D. Wash. 2010) .................................................................22, 23

*Miranda-Olivares v. Clackamas Cnty.*,
   No. 12-cv-2317, 2014 WL 1414305 (D. Or. Apr. 11, 2014) ..................................9

*Nguyen Da Yen v. Kissinger*,
   528 F.2d 1194 (9th Cir. 1975) ...............................................................................7

*Nken v. Holder*,
   556 U.S. 418 (2009).................................................................................................9

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   615 F.3d 1106 (9th Cir. 2010) ................................................................................7

*Oliva-Ramos v. Att'y Gen.*,
   694 F.3d 259 (3d Cir. 2012)..................................................................................10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*Opera Plaza Resid. Parcel Homeowners Ass'n v. Hoang,*
376 F.3d 831 (9th Cir. 2004) ...................................................................................7

*Orr v. Bank of Am., NT & SA,*
285 F.3d 764 (9th Cir. 2002) ...................................................................................2

*Peyton v. Rowe,*
391 U.S. 54 (1968)...................................................................................................20

*Planned Parenthood of Greater Tex. v. Abbott,*
734 F.3d 406 (5th Cir. 2013) ...................................................................................18

*Preminger v. Principi,*
422 F.3d 815 (9th Cir. 2005) ...................................................................................18

*R.I.L.-R. v. Johnson,*
80 F. Supp. 3d 164 (D.D.C. 2015) .......................................................................9, 19

*Reid v. Donelan,*
297 F.R.D. 185 (D. Mass. 2014)..............................................................................9

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010) ..............................................................................8, 9

*Rodriguez v. Robbins,*
715 F.3d 1127 (9th Cir. 2013) .................................................................................18

*Rosas v. Baca,*
No. 12-cv-0428, 2012 WL 2061694 (C.D. Cal. June 7, 2012)....................................23

*Rubinstein v. Brownell,*
206 F.2d 449 (D.C. Cir. 1953), *aff'd,* 346 U.S. 929 (1954).....................................10

*Saavedra v. Scribner,*
482 F. App'x. 268 (9th Cir. 2012) ............................................................................14

*Santos v. Smith,*
No. 17-cv-0020, 2017 WL 2389722 (W.D. Va. June 1, 2017)..........................12, 14, 19

*Schall v. Martin,*
467 U.S. 253 (1984).................................................................................................14

*Shalala v. Ill. Council on Long Term Care, Inc.,*
529 U.S. 1 (2000).....................................................................................................17

**TABLE OF AUTHORITIES**
(continued)

Page

*Shelton v. Bledsoe,*
    775 F.3d 554 (3d Cir. 2015) ................................................................................24

*Shook v. El Paso Cnty.,*
    386 F.3d 963 (10th Cir. 2004) ........................................................................24, 25

*Singh v. Holder,*
    638 F.3d 1196 (9th Cir. 2011) ..............................................................................9

*Stanley v. Illinois,*
    405 U.S. 645 (1972) ............................................................................................14

*Stanley v. Univ. of S. Cal.,*
    13 F.3d 313 (9th Cir. 1994) ..................................................................................5

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
    316 F.2d 804 (9th Cir. 1963) ................................................................................5

*United States v. Barajas-Alvarado,*
    655 F.3d 1077 (9th Cir. 2011) ............................................................................12

*United States v. Bennett,*
    363 F.3d 947 (9th Cir. 2004) ................................................................................2

*United States v. Kordosky,*
    No. 88-cr-0052, 1988 WL 238041 (W.D.Wis. Sept. 12, 1988) ..........................11

*United States v. Novelli,*
    381 F. Supp. 2d 1125 (C.D. Cal. 2005) ..............................................................2

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ............................................................................23

*Willner v. Manpower Inc.,*
    No. 11-CV-02846-JST, 2014 WL 2939732 (N.D. Cal. June 30, 2014) ..............20

*Yaffe v. Powers,*
    454 F.2d 1362 (1st Cir. 1972) ............................................................................24

*In re Yahoo Mail Litig.,*
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................24

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ............................................................................................19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

1

# TABLE OF AUTHORITIES
## (continued)

2

**Page**

3

**Statutes and Other Authorities**

4

5 U.S.C.

5

§ 706(2)(A) ................................................................................................................7

6

8 U.S.C.

§ 1226.......................................................................................................................9

7

§ 1226(e) ..................................................................................................................9

§ 1232(a)(1), (a)(4), (a)(5)(D), (d)(2) .....................................................................7

8

§§ 1252(a)(2)(A), (B), (C), 1252(a)(4), (5), 1252(g) ..............................................8

§ 1252(f)(1).......................................................................................................7, 8, 9

9

§ 1357(d) ................................................................................................................10

10

28 U.S.C.

11

§ 2241(c)(3) .............................................................................................................6

12

8 C.F.R.

§ 287.7....................................................................................................................10

13

§ 1003.19................................................................................................................14

14

78 Tex. L. Rev. 1661 (2000) ...........................................................................................8

15

Administrative Procedure Act...........................................................................6, 7, 18, 20

16

Fourth Amendment .......................................................................................9, 10, 11

17

Fed. R. Civ. P. 56(c)(4) ....................................................................................................1

18

Fed. R. Evid.

19

602 ...........................................................................................................................2

701(a) .......................................................................................................................3

20

802 ...........................................................................................................................2

1002 .........................................................................................................................2

21

22

*Federal Courts Issues in Immigration Law* ....................................................................8

23

H.R. Rep. No. 104-469 (1996)..........................................................................................8

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii.

PLAINTIFFS' CONSOLIDATED BRIEF
CASE NO. 3:17-CV-03615-VC

## I.    __INTRODUCTION__

The Government's opposition brief, Dkt. 67, does not seriously dispute *any* of the facts that establish the merits of Plaintiffs' claims, including facts concerning the arrests, initial placement decisions, and ongoing treatment of the Named Children. Instead, it relies on incompetent evidence in an effort to paper over its initial placement determinations.[1]

The Government asserts that federal law and the Constitution permit it to rearrest a Sponsored UC based on charges of removability that have not changed since the child was first released from ORR custody, then transport that child thousands of miles away from his family and put him in secure custody without affording the child *any* opportunity to show he should not be detained. The Government argues that, once the child has been put in juvenile lockup, the statute allows it to keep the child in some form of detention indefinitely. This system is permissible, the Government says, because (1) ORR has an "operational goal" to "step down" the child to a less harsh form of confinement when the original allegations of gang involvement are found to be unreliable, and (2) because the child can request a bond hearing where the *child* bears the burden of proving that he is *not* a gang member or a danger to himself or others, and in which the judge cannot order the child's release.

This system cannot be constitutional. The law and the facts demonstrate that the Government's arrest, original placement in jail-like conditions, and continued detention of the Named Children violates their statutory and constitutional rights, and that the Government's unlawful policies and practices extend to the proposed Class. This Court should grant Plaintiffs' request for provisional class certification and preliminary injunctive relief.

## II.    __OBJECTIONS TO DEFENDANTS' EVIDENCE__

Pursuant to Civ. L.R. 7-5(b) and Fed. R. Civ. P. 56(c)(4), Plaintiffs object to, and move to strike, portions of the declarations of Joseph Pisciotta: Dkt. 67-2 (A.H.), ¶¶ 4-10; Dkt. 67-3 (F.E.), ¶¶ 4-6; and Dkt. 67-4 (J.G.), ¶¶ 4-5. Mr. Pisciotta, a line agent with the Homeland Security

---

[1] For purposes of this memorandum, "Defendants" refers to all Defendants, and "the Government" refers to all federal defendants. As needed, Brent Cardall and Jose Esquivel are referred to by name as "Defendant Cardall" and "Defendant Esquivel."

Investigations ("HSI") division of DHS, improperly (1) paraphrases hearsay police reports created by unnamed officers of the Suffolk County Police Department ("SCPD"); (2) offers hearsay statements and conclusions of unnamed persons within HSI; and (3) offers lay opinion not based on personal perception. Plaintiffs cannot address each inadmissible statement due to space constraints, but present typical examples of each.

Lack of Personal Knowledge. Mr. Pisciotta does not have personal knowledge of the underlying facts or events pertaining to the Named Children, in violation of Fed. R. Evid. 602. *See Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1023 (N.D. Cal. 2006); *L.H. v. Schwarzenegger*, 519 F. Supp. 2d 1072, 1078–79 (E.D. Cal. 2007).

Hearsay. All of the alleged facts supporting the claims of gang affiliation of the Named Children are based on statements by unnamed persons within or even outside of SCPD, or on SCPD records that contain multiple levels of hearsay, in violation of Fed. R. Evid. 802.[2]  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 779 (9th Cir. 2002).

Best Evidence Rule. Mr. Pisciotta repeatedly characterizes hearsay documents instead of introducing them, in violation of Fed. R. Evid. 1002.[3] *See United States v. Bennett*, 363 F.3d 947, 954 (9th Cir. 2004) (agent could not testify about data obtained from GPS device without introducing data); *United States v. Novelli*, 381 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005).[4]

---

[2] To cite one example: "On February 27, 2017, F.E. and another student were involved in causing a disturbance at Brentwood High School. . . . While in the Principal's office, F.E.'s notebook was observed to have '503' written on it." Dkt. 67-3, ¶ 4a. There is no mention of even the name of any percipient witness. Perhaps the alleged "disturbance" was reported by someone to a school resource officer, who reported it to the principal, who reported it to SCPD.  Someone at SCPD (who may have been different from the person who received the information) then wrote a police report, which someone at HSI (apparently not Mr. Pisciotta) read. This could involve up to six levels of hearsay.

[3] *See, e.g.*, Dkt. 67-2, ¶¶ 4a-b (seeking to describe details of arrests of A.H. "[a]ccording to records provided by local law enforcement"); Dkt. 67-4, ¶ 4d ("I have reviewed photographs provided by SCPD showing J.G. throwing gang signs"); Dkt. 67-3, ¶ 5 ("F.E. was involved with a disturbance with an individual positively identified by SCPD as a MS-13 gang member.").

[4] This is particularly critical with respect to the claim that A.H. "self admitted to [SCPD] PO Viar as a MS 13 gang member." Defendants fail to present a sworn statement from Officer Viar even though Mr. Pisciotta claims to have "worked closely with" the "SCPD Gang Unit," Dkt. 67-2, ¶ 1. Mr. Pisciotta also fails to disclose that the SCPD police report he appears to quote also says that A.H. "did not admit to being a gang member." Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 245.

**Impermissible Lay Opinion Testimony**. Defendants have not attempted to qualify Mr. Pisciotta as an expert in any subject matter.[5] Thus he may only express opinions to the extent that they are "rationally based on [his] perception." Fed. R. Evid. 701(a). His statements that each of the Named Children is a gang member; his lay opinions about the meaning of certain symbols, artifacts and colors; and statements as to what SCPD or other "New York State law enforcement agencies" believe are all inadmissible. Dkt. 67-2, ¶¶ 4-10; Dkt. 67-3, ¶¶ 4-6; Dkt. 67-4, ¶¶ 4-5.

## III.   RELEVANT BACKGROUND

The following facts are conclusively established because Defendants have introduced them, have not attempted to rebut them, or have responded with inadmissible evidence.

The three Named Children, each of whom had previously been released by ORR to a sponsor, were rearrested by DHS under arrest warrants based on their removability—the same basis for removal proceedings already pending against them. Dkt. 67-2, at 8; Dkt. 67-3, at 7; Dkt. 67-4, at 6. DHS instructed ORR to place each of the children in secure confinement based solely on allegations of gang membership. Corkery Dec., Dkt. 61-2, Ex. B (De La Cruz Test.) at 5:6-10, 5:23-6:2. These allegations were made by SCPD, whose Commissioner has testified to Congress that he views DHS immigration enforcement as a "tool" to "remove . . . people from our streets" when police lack sufficient information to make an arrest. *Id.*, Ex. I (Sini Test.) at 11. Pursuant to a newly adopted policy that ███████████████████████████████████████████ ███████████████ ORR immediately ordered each of the children to secure detention, without any attempt to verify the truth of the gang allegations. Corkery Dec., Dkt. 61-2, Ex. E (HHS) at 3729; *id.*, Ex. B at 53:13-21. To achieve this result, supervisory personnel █████████████████████████ ███████████████████████████████████████████████████ Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 2551-56; Nanos Dec., Dkt. 61-19, Ex. 7.

According to Mr. Pisciotta, DHS labels a child as a "gang member" if he falls under two of the following criteria, and as a "gang associate" if he falls under just one of them:  "frequents an area

---

[5] This omission stands in sharp contrast with the declarations of Plaintiffs' experts, Ms. Cruz and Dr. Fortuna (Dkt. 60-7 and 61-8, respectively), each of which contains detailed biographical material and qualifications.

notorious for gangs"; "associates with known gang members"; is "identified" as a gang member, even by an "untested informant"; or "has been identified through documented reasonable suspicion." Dkt. 67-2, 67-3, 67-4, ¶ 3(b), (e), (j). The vague allegations Mr. Pisciotta uses to support conclusions of gang membership for the Named Children do not specify particular people, locations, or alleged gang symbols or colors. These are precisely the kinds of ambiguous, unsourced allegations that, according to Plaintiffs' expert Susan Cruz, law enforcement often misunderstands or overstates, and that are often based on generalized suspicions or racial profiling. *See* Dkt. 67-2, ¶¶ 4-10; Dkt. 67-3, ¶¶ 4-6; Dkt. 67-4, ¶ 4; Cruz Dec., Dkt. 61-7, ¶¶ 10-24.

Four months after the Named Children's arrests, Defendants' evidentiary submissions (the Sualog and Pisciotta declarations) appear to rely exclusively on the original SCPD arrest records and show no post-arrest investigation, despite the Court's order to investigate the claimed basis for A.H.'s arrest. Tr. 6/29/17, Dkt. 22, at 7:10-17. This is consistent with Defendant Cardall's admissions that the Government failed to provide evidence of alleged gang affiliation with respect to at least seven undocumented teenagers sent to Yolo and that Yolo staff found corroboration of gang allegations from local law enforcement agencies often to be "lacking or insufficient." Corkery Dec., Dkt. 61-2, Ex. C (RFA Resp.), at 2-3. This led to Yolo's conclusion that it "did not have just cause to detain most of the undocumented teenagers." *Id.* at 3.

Moreover, all three Named Children have been "stepped down" from secure confinement, consistent with the "new operational goal" of ORR to transfer a UC from "secure" to "staff secure" where "(1) no documentation . . . to support gang involvement is presented to ORR . . . ; (2) the UC does not disclose gang involvement, and (3) there is no other evidence of gang involvement." Sualog Dec., Dkt. 67-1, ¶¶ 3-4. In other words, ORR stepped the children down because it has "no documentation" and "no other evidence of gang involvement." Despite this lack of evidence, each of the Named Children remains in ORR detention, four months after their arrests.

Despite the recommendations of ORR's own federal field specialists and positive home study reports for F.E. and J.G., Kempner Dec., Ex. A. (HHS), at 822-42, 1788-814, none of the children has been released or reunified with a sponsor, and ORR appears to have no plan to release them. Instead, DHS and ORR regurgitate every claim of gang affiliation made by SCPD, no matter how

discredited or unsupported, to justify the continued detention of the Named Children. The current Administration intends to ███████████████████████████████████████████ ████████████████████████████████████████. Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3729.

## IV. THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### A. The Relief Sought by Plaintiffs is Appropriate and Reasonable

The Government misunderstands the distinction between prohibitory and mandatory injunctions. A prohibitory injunction "preserve[s] the status quo," *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009), which "refers . . . to 'the last uncontested status which preceded the pending controversy,'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Here, Plaintiffs seek simply to maintain the status quo pending final resolution.

The "last uncontested status" of the parties is the Named Children's status as UCs on release to approved custodians pursuant to sponsorship agreements. *See, e.g.*, *Tanner*, 316 F.2d at 809; *GoTo.com*, 202 F.3d at 1210. As the Ninth Circuit has said, ruling that the status quo entails the Named Children's current incarceration "would predicate [Plaintiffs'] entitlement to preliminary relief on [their] having learned of the contested act sufficiently in advance to be able to file a lawsuit and seek a restraining order," and would "allow persons to shield themselves from equitable claims simply by presenting potential disputants with *faits accomplis*." *Lopez v. Heckler*, 725 F.2d 1489, 1509 (9th Cir. 1984), *vacated and remanded on other grounds*, 469 U.S. 1082 (1984).

Even if this Court found that certain aspects of the requested injunction are mandatory, granting relief is still proper where, as here, the "facts and law clearly favor" Plaintiffs and very serious damage will continue in the absence of an injunction. *Stanley v. Univ. of S. Cal.*, 13 F.3d 313, 1320 (9th Cir. 1994). The Ninth Circuit recently concluded that ongoing detention of undocumented immigrants detained on excessive money bond was precisely the kind of "extreme or very serious damage" that merits a mandatory injunction. *Hernandez v. Sessions*, No. 16-cv-56829, 2017 WL 4341748, at *17 (9th Cir. Oct. 2, 2017). The court observed that "[m]andatory injunctions

1  are most likely to be appropriate when the status quo . . . is exactly what will inflict the irreparable

2  injury upon complainant." *Id.* (internal quotation and citation omitted). There is no dispute that, for

3  every day the Named Children (or other class members) are detained, they suffer irreparable injury.

4  Fortuna Dec., Dkt. 61-8, ¶¶ 12-14, 27, 41.

**B.    Plaintiffs Have Shown a Likelihood of Success on the Merits**

5
**1.    Plaintiffs Do Not Need a "Private Right of Action" to Raise Violations of the TVPRA, and, Regardless, the TVPRA Provides Such a Right**

6

7       The Government argues that Plaintiffs cannot raise claims under the TVPRA at all.[6] *See* Dkt.

8  67 at 7-8. Plaintiffs have already explained why this argument is both irrelevant and incorrect as to

9  their unlawful arrest claims, Dkt. 61-1 at 19-20, and Defendants' expanded attack on Plaintiffs' other

10 claims also fails. Plaintiffs do not need a "private right of action" because this is a suit for equitable

11 relief against the federal government, and three independent avenues permit them to raise statutory

12 claims against their arrests and detention.

13      *First*, petitioners suing in habeas can raise challenges to their ongoing custody based on

14 statutory law, as Defendants acknowledge. *See* 28 U.S.C. § 2241(c)(3) (permitting petitioners to

15 challenge ongoing "custody in violation of the Constitution *or laws* . . . of the United States")

16 (emphasis added); Dkt. 54 at 20 n.9. Indeed, this Court has *already* granted habeas relief to A.H.

17 based on Defendants' TVPRA violations. *See* Tr. 6/29/17, Dkt. 22, at 5:11-6:4 (ORR had violated its

18 "obligation under the statute" to investigate A.H,'s custodial placement). Defendants  respond that

19 Plaintiffs "cannot challenge [their] arrest[s] in habeas," Dkt. 67, at 7 n.1, but that is both wrong, *see*

20 Section IV(B)(2) *infra*, and disregards that Plaintiffs are challenging their *current detention*, as well

21 as their initial arrests. It is "uncontroversial" that habeas courts can grant relief based on such claims.

22 *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *INS v. St. Cyr*, 533 U.S. 289, 301-02 (2001)

23 (explaining that "historical core" of habeas allowed review of challenges to detention "based on . . .

24 the erroneous application or interpretation of statutes").

25      *Second*, the Administrative Procedure Act ("APA") permits suit to enforce statutory law, as

26

27  ────────────────

[6] Just as the Government incorporates by reference arguments made in support of its motion to dismiss into its argument in opposition to Plaintiffs' PI Motion, Plaintiffs will address such legal arguments as they apply to the PI Motion. *See* Dkt. 67 at 22:19; 23:5-7, 12; 29:13-14.

28

Defendants concede. *See* Dkt. 54, at 13. Defendants offer no reason why the APA would not allow suit for violations of the TVPRA here. *See* 5 U.S.C. § 706(2)(A); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975) ("defendants' discretion does not extend to the violation of constitutional rights.").

*Third*, courts have long entertained suits for equitable relief for violations of federal law regardless of whether a given statute provides a right of action. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384-85 (2015). Defendants claim that Plaintiffs are required to show "the existence of [a] Congressionally-created right" to bring TVPRA claims, Dkt. 67, at 7, but that is exactly backward. The default rule—on which all nine Justices in *Armstrong* agreed—is that such equitable suits remain available, absent Congressional intent to foreclose them. *Compare Armstrong*, 135 S. Ct. at 1385-86, *with id.* at 1390-92 (Sotomayor, J., dissenting). There is nothing in the TVPRA (or any other statute) that forecloses equitable relief here, and the Government's cited authorities address claims for money damages, *see Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010), or suits against nonfederal defendants, *see* Dkt. 61-1 at 20.

Even assuming Plaintiffs must show a separate "private right of action," the TVPRA provides such a right because the Named Children "are specifically mentioned as beneficiaries in the statute." *Opera Plaza Resid. Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004) (citations omitted); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (implying "availability of private securities fraud actions" because statute describes protection of investors). The TVPRA contains numerous references to the children it intends to protect, *see, e.g.*, 8 U.S.C. § 1232(a)(1), (a)(4), (a)(5)(D), (d)(2), requiring that their detention is "safe and secure" and in "the[ir] best interest[s]." *Id.* § 1232(c)(2)-(3).

## 2.   Plaintiffs Are Likely to Succeed on Their Unlawful Arrest Claims

### a.   No Statute Bars Relief on Plaintiffs' Unlawful Arrest Claims

The Government argues that this Court cannot grant classwide relief on Plaintiffs' unlawful arrest claims because of 8 U.S.C. § 1252(f)(1). *See* Dkt. 67 at 9-11, 31. This argument fails for three independent reasons. *First*, the Ninth Circuit has explained that Section 1252(f)(1) does not apply where Plaintiffs seek to enjoin unlawful procedures that the statute does not authorize. *See*

1    *Rodriguez v. Hayes*, 591 F.3d 1105, 1121 (9th Cir. 2010) ("The requested injunction . . . does not

2    seek to enjoin the operation of Part IV provisions to relieve harm caused by misinterpretation of

3    other statutory provisions, but to enjoin conduct alleged not to be authorized by the proper operation

4    of Part IV provisions."). Here, Plaintiffs claim that Defendants' arrest practices are not authorized by

5    Section 1226(a), and conflict with the TVPRA. Dkt. 61-1 at 19-22, 32-33. Accordingly, their

6    requested injunction does not seek "to enjoin the operation of the immigration detention statutes, but

7    to enjoin conduct it asserts is not authorized by the statutes." *Rodriguez*, 591 F.3d at 1120; *see also*,

8    *e.g.*, *Grimaldo v. Reno*, 187 F.R.D. 643, 648 (D. Colo. 1999). Section 1252(f)(1) permits injunctive

9    relief to "relieve harm caused by [Defendants'] misinterpretation." *Rodriguez*, 591 F.3d at 1121.[7]

10    The Government claims that this reading of Section 1252(f)(1) is "circular," Dkt. 67 at 11,

11    but cannot deny that *Rodriguez* read the statute in exactly this way. And there is nothing untoward

12    about this interpretation. Section 1252(f)(1)'s legislative history shows that Congress intended to

13    protect statutory removal procedures from being enjoined on a class-wide basis on constitutional

14    grounds before the Supreme Court could consider the issue. *See* H.R. Rep. No. 104-469, pt. 1, at 161

15    (1996). Thus, the provision "prohibit[s] injunctions that would broadly prevent the application of the

16    new statutory procedures designed by Congress, on the basis of constitutional challenges that the

17    Supreme Court had not yet resolved, rather than to prevent injunctions against unlawful

18    implementation of those procedures by regulations that conflict with the statute." *See* Gerald

19    Neuman, *Federal Courts Issues in Immigration Law*, 78 Tex. L. Rev. 1661, 1683 n.129 (2000).

20    *Second*, Section 1252(f)(1) does not apply to habeas actions because it makes no specific

21    reference to repealing habeas corpus. "Implications from statutory text or legislative history are not

22    sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous

23    statutory directives. . . ." *St. Cyr*, 533 U.S. at 299 (citation omitted). Unlike other subsections in

24    Section 1252, subsection (f)(1) fails to mention habeas corpus. *See, e.g.*, 8 U.S.C. §§ 1252(a)(2)(A),

25    (B), (C), 1252(a)(4), (5), 1252(g). Congress thereby made clear its intention not to apply the statute's

26

27    [7] Even assuming *J.E.F.M. v. Lynch* was rightly decided, it concerned a case where the statutory claims had been dismissed, and also did not address the other arguments Plaintiffs raise here. No.

28    14-cv-1026-TSZ, 2015 WL 12030113, at *1 (W.D. Wash. May 5, 2015).

limitations to habeas actions like this one. *See Nken v. Holder*, 556 U.S. 418, 430-31 (2009).

*Third*, the Government does not address Plaintiffs' prayer for declaratory relief, which is available to the putative class regardless of the application of Section 1252(f)(1). *See Rodriguez*, 591 F.3d at 1119 (finding that Section 1252(f)(1) did not preclude declaratory relief because, *inter alia*, "'restrain' . . . is best read to refer to temporary injunctive relief") (citation omitted); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in [Section] 1252(f)(1) do not encompass declaratory relief."); *Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014). Defendants would presumably comply with declaratory relief requiring them to cease their unlawful arrest practices. *See, e.g.*, *Khoury v. Asher*, 3 F. Supp. 3d 877, 892 (W.D. Wash. 2014).[8]

Defendants also suggest that 8 U.S.C. § 1226(e) precludes Plaintiffs' unlawful arrest claims. Dkt. 67 at 11, n.3. Controlling law forecloses this argument because Plaintiffs are bringing constitutional and statutory challenges to Defendants' arrest practices, not to the agency's discretionary judgment. *See, e.g.*, *Hernandez*, 2017 WL 4341748, at *7 ("[Section] 1226(e) does not . . . preclude . . . habeas jurisdiction over constitutional claims or questions of law.") (internal quotation and citation omitted); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164, 176-77 (D.D.C. 2015).

### b. Defendants' Practices Violate the Fourth Amendment and the TVPRA

The Government contends that the Fourth Amendment imposes no limit to the number of arrests that can be made based on the pendency of removal proceedings under 8 U.S.C. § 1226, dismissing numerous cases to the contrary as "inapplicable criminal case law." Dkt. 67 at 12; *cf.* Dkt. 61-1 at 21. But statutory arrest authority is always bound by the limits of the Fourth Amendment, even in the immigration context. *See Miranda-Olivares v. Clackamas Cnty.*, No. 12-cv-2317, 2014

---

[8] Section 1252(f)(1) is inapplicable here for one final reason: Even assuming it otherwise prohibits the entry of injunctive relief, the statute's last clause permits a court to "enjoin or restrain" the operation of the relevant immigration statutes "with respect to the application of such provisions to *an individual alien against whom proceedings under such part have been initiated*." 8 U.S.C. § 1252(f)(1) (emphasis added). In other words, the statute bars classwide injunctions sought by individuals who have *not yet been subjected* to immigration proceedings. In contrast, the Named Children—and the class members they seek to represent—are all juveniles "against whom proceedings . . . have been initiated." *Id.*; *cf. Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WL 1414305, at *11 (D. Or. Apr. 11, 2014) (county liable under Fourth Amendment for detaining individual in response to an immigration detainer issued by ICE under 8 U.S.C. § 1357(d) and 8 C.F.R. § 287.7); *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 283-84 (3d Cir. 2012) (explaining that ICE's arrest authority is construed to comply with Fourth Amendment limits). Defendants do not— and cannot—explain how ICE's statutory authority to arrest removable UCs can supersede Fourth Amendment reasonableness limits on making repeated arrests, without changed circumstances, after ORR has released children to appropriate sponsors.

The Government's main case, *Abel v. United States*, did not involve the rearrest of an individual who had previously been released pending removal proceedings. *See* Dkt. 67 at 12, *citing* 362 U.S. 217, 232 (1960). Far from suggesting that arrests pursuant to administrative warrants are always constitutional, *Abel* merely held that the particular immigration arrest in that case complied with the Fourth Amendment. Moreover, *Abel* distinguished *Carlson v. Landon*, where the Supreme Court directed the release of a noncitizen who had been rearrested on his original warrant after release on bail. 342 U.S. 524, 546-47 (1952). Just as Plaintiffs urge here, *Carlson* applied "the rule in criminal cases" to "require . . . a new warrant" for an arrest in a civil deportation proceeding where the noncitizen had previously been released on bail. *Id.* at 538; *see also Rubinstein v. Brownell*, 206 F.2d 449, 455 (D.C. Cir. 1953), *aff'd*, 346 U.S. 929 (1954) (preliminary injunction should issue to restrain Attorney General from revoking bail and detaining immigrant pending deportation proceedings absent risk of safety or flight).[9]

The Government also argues that "the absence of any language [in the TVPRA] regarding arrests" makes clear that the TVPRA does not "govern arrests of minors." Dkt. 67 at 13. Yet the Government makes little attempt to square its position with the TVPRA, which prescribes a detailed

---

[9] The Government's repeated assertion that the only injunctive remedy for unlawful arrest is suppression of evidence continues to ignore the long history of cases prohibiting immigration authorities from arresting people on insufficient grounds. *See* Dkt. 67 at 9:7-13; PI Mot., Dkt. 61-1, at 20, *citing LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985). *See also Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (record supported issuance of preliminary relief to address "systemic policy and practice of fourth amendment violations" by immigration agency in conducting searches and making arrests) (internal quotations and citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

scheme governing the custody and release of juveniles, endows HHS (not ICE) to make decisions concerning their care and placement, and requires placement of juveniles in the "least restrictive settings" possible. *See* Dkt. 61-1 at 21-22. Not only would the Government's reading of Section 1226(a) allow it to unilaterally undo ORR's custodial determinations, the scheme contemplated by the Government is truly nightmarish. Under the Government's theory, a child can be apprehended by DHS, turned over to ORR, released by ORR to a sponsor, and then at any time thereafter rearrested by DHS on the original ground of "removability." HHS then detains the child for 30 days, and probably much longer, while it "again determine[s] 'the least restrictive setting that is in the best interests of the child.'" Dkt. 67, at 13. In the event that HHS again releases the child to the sponsor, nothing prevents DHS from rearresting the child yet again, and repeating the same cycle ad infinitum.[10] But "[a]bsent some compelling justification, the repeated seizure of a person on the same probable cause cannot, by any standard, be regarded as reasonable under the Fourth Amendment." *United States v. Kordosky*, No. 88-cr-0052, 1988 WL 238041, at *7 n.14 (W.D.Wis. Sept. 12, 1988). For these reasons, Plaintiffs are likely to prevail on their unlawful arrest claims.

### 3. Plaintiffs Are Likely to Succeed on Their Procedural Due Process Claims

#### a. The Government's Existing Practices Do Not Comport With Due Process.

Defendants fail to address how their existing practices satisfy due process under the balancing test required by *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Indeed, the experience of the three Named Children exposes how the Government's practices led to an egregious loss of liberty: months after being taken from their parents and incarcerated, and despite an absence of credible evidence to support their detention, A.H., F.E., and J.G. continue to languish in ORR custody with no clear path as to how to secure their liberty and reunite with their parents.[11]

---

[10] Under the current scheme, it appears that ORR is not exercising its judgment to pursue "the best interests of the child," as mandated by Congress, but is instead keeping children in indefinite detention due to ██████████████████████████████████████ Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3729, 3568.

[11] Defendants put a new spin on their argument that the juvenile Plaintiffs lack any due process protection against their unlawful detention: that the circumstances of the Named Children's entry into this country "assimilate" them to the status of arriving noncitizens who supposedly lack due process rights. Dkt. 67, at 14. This argument fails to address Plaintiffs' contention that *all* noncitizens—whether "arriving" or not—have constitutional rights against their unlawful custody.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

The Government disclaims any notice and hearing requirement for their initial incarceration of the UCs by arguing that ORR is entitled to blindly follow DHS's assertion that any UC is a gang member. Dkt. 67 at 23-26. But the record shows that such reliance creates a high risk of erroneous deprivation. First, the original SCPD arrest records on which DHS and ORR relied to detain A.H. are self-contradictory. *See* Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 245-47 (including A.H.'s denial of gang membership to one officer and a report by a second officer that he "self admitted" gang membership to a third officer). Second, as Plaintiffs' expert Susan Cruz testifies, ICE had no reasonable basis to believe that *any* Named Child was a gang member because it relies on over-inclusive "indicia" that do not accurately identify gang affiliation. *See* Cruz Dec., Dkt. 61-7, ¶¶ 28-46. Even Defendant Cardall has admitted that Yolo often found the evidence of gang affiliation of the UCs "lacking or insufficient." *See* Corkery Dec., Dkt. 61-2, Ex. C (RFA Resp.), at 2-3; *see also* Corkery Dec., Dkt. 61-2, Ex. D (Supp. RFA Resp.), at 2. The Government tries to dismiss this admission by stating that Yolo's assessment was made "at a later time." Dkt. 67 at 25, n.7. But Yolo sought and evaluated the same information available when ICE arrested and ORR incarcerated the UCs. The Government offers no reason (and none exists) why it should not have reached the same conclusion prior to the Named Children's arrest and transfer to secure detention.

ORR claims it is unable, within the 72-hour statutory period, to evaluate a claim of gang affiliation as to each UC referred to it, but the agency has provided no evidence to support this assertion. *See* Dkt. 67 at 24. State procedures for emergency removal of children from their homes regularly require notice and a temporary custody hearing within 72 hours (or even less time). Dkt. 61-1, at 37, n.24 (citing examples). The Supreme Court has held that even comparatively minor deprivations of liberty, such as school suspensions of less than 10 days, can only proceed after notice and a prompt hearing. *Goss v. Lopez*, 419 U.S. 565, 581-83 (1975). A federal agency responsible for

---

*See* Dkt. 61-1 at 24-25. It is also wrong. *See Santos v. Smith*, No. 17-cv-0020, 2017 WL 2389722, at *8 (W.D. Va. June 1, 2017). The Government's only cited cases for this proposition concern noncitizens in expedited removal proceedings, which have nothing to do with this case. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011); *M.S.P.C. v. Customs & Border Prot.*, 60 F.Supp.3d 1156, 1158 (D.N.M. 2014), *vacated as moot*, No. 14-cv-0769, 2015 WL 7454248 (D.N.M. Sept. 23, 2015).

Cooley LLP
Attorneys At Law
San Francisco

12.

Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC

the care of unaccompanied immigrant children surely cannot evade the same requirement adhered to by county agencies and school districts throughout the country. Given the Government's claim it has instituted a system for "immediate" verification of information relevant to the child's placement, Dkt. 67 at 24, n.6, it is hard to see why it cannot provide adequate process within 72 hours, particularly where the child is the subject of an existing sponsorship agreement.

ORR, despite admitting that there is no basis for holding the Named Children in secure custody, claims it must detain them while finding a suitable custodian. *See* Dkt. 67 at 27-29.[12] But this explanation is unconvincing. To begin, ORR's only claimed basis for placing the children in secure custody—and for reevaluating the sponsor's fitness—is the faulty gang allegations against the children. Once that basis falls away, so must any cause to question the parent's fitness. More fundamentally, ORR cannot claim one basis for detaining the juveniles, and then when that basis unravels, look for *another* basis to justify continued detention. Rather than providing notice of the basis for its action and an opportunity to respond, the Government is casting about for a justification, without providing notice of the standards it is applying or the evidence upon which bases its decision, much less a hearing to test that evidence.

ORR's "family reunification" process is also constitutionally insufficient. *See* Dkt. 61-1 at 34-36; *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 37 (1981) (finding that "state intervention to terminate the relationship between [a parent] and her child must be accomplished by procedures meeting the requisites of the Due Process Clause."); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 485 (E.D. Va. 2016) (finding that the reunification process "exhibits several deficiencies"). Plaintiff Saravia received a negative home study recommendation, but ORR did not explain why, or what she could do to address its concerns. Saravia Supp. Dec., Dkt. 61-14, ¶¶ 9-10. ORR's own evaluators *recommended release* of F.E. to his mother, M.U., yet he still remains detained. *See* M.U. Dec., Dkt.

---

[12] The Government's assertion that Plaintiffs have not challenged the reunification process in their Complaint is incorrect. Plaintiffs repeatedly asserted their rights to family integrity and to be free of excessive restraint, both of which are implicated in the failures of the reunification process. *See* Complaint ¶¶ 30, 62, 82, 93, 110(j), 130, 132, 136, 144(b). Moreover, the Government cannot be surprised by the inclusion of the family reunification process in this case, after repeatedly putting it at issue. Dkt. 54 at 18; Dkt. 15 at 9.

Cooley LLP
Attorneys At Law
San Francisco

13.

Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC

61-12, ¶¶ 12, 16. This "opaque," *Beltran*, 222 F. Supp. 3d at 485, and "extremely troubling," *Santos*, 2017 WL 2389722, at *12, process leaves Plaintiffs in the same position they were in at the start of this case: their children are being detained by ORR on false charges, with no opportunity to challenge that detention "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotations and citation omitted).

### b.   The *Flores* Bond Hearing Process Is Insufficient

The Government also contends that *Flores* bond hearings can resuscitate an otherwise infirm process. This argument fails for several reasons. *First*, the Government does not guarantee that these bond hearings will happen *before* juveniles are transferred to secure custody hundreds or thousands of miles away from their families, communities, and preexisting counsel. Plaintiffs should not undergo such serious deprivations before being provided any process to challenge their custody. *See* Dkt. 61-1, at 36. Indeed, F.E.'s attorney requested a bond hearing on August 22, 2017, but F.E. has still not had it. Johnson Dec., Dkt. 61-17, ¶ 14. There is no evidence to suggest this delay is unusual or that Plaintiffs could expect a prompt hearing if they requested one.

*Second*, the Government's operation of *Flores* bond hearings renders them procedurally deficient. To begin, the Government puts the burden on the UC to show that he or she does not pose a danger to the community or is not a flight risk, ORR Guide 2.9,[13] in contravention of settled doctrine holding that where serious interests are at stake, the Government must bear the burden of proof. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418, 427 (1979); *Stanley v. Illinois*, 405 U.S. 645, 656-57 (1972); *cf. Schall v. Martin*, 467 U.S. 253, 277 (1984). In addition, the immigration judge may assess the UC's dangerousness or flight risk based on "any information that is available." 8 C.F.R. § 1003.19. The Government's use of unreliable gang allegations creates a serious risk of crediting the Government's flawed evidence of gang involvement. *See* Pisciotta Decs., Dkt. 67-2, 67-3, 67-4

---

[13] The Government disingenuously suggests that notice of one's *right* to a bond hearing is sufficient to provide notice and an opportunity to be heard within the meaning of the Due Process Clause. *See* Dkt. 67, at 29, n.8. But due process requires "notice that gives an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense." *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992); *see also Saavedra v. Scribner*, 482 F. App'x. 268, 270-71 (9th Cir. 2012) (prisoner in solitary confinement "must receive some notice of the *charges* against him" or "the factual basis leading to consideration for confinement.") (internal quotation and citations omitted).

Cooley LLP
Attorneys At Law
San Francisco

14.

Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC

(asserting gang affiliation based on unnamed sources and documents); *Matter of Grijalva*, 19 I.&N. Dec. 713, 721-22 (BIA 1988).[14] *See also* Johnson Dec., Dkt. 61-17, ¶ 10. Moreover, although the TVPRA requires that ORR facilitate access to counsel for UCs in its custody, ORR-funded legal service providers may not use ORR funding to represent youth in *Flores* bond hearings. *See* Holguin Dec. ¶¶ 4-6; *see also id.*, Ex. 5. Thus, UCs who do not have retained counsel would be forced to appear *pro se* to seek an order of release from an immigration court.

*Third*, and most important, bond hearings will not afford complete relief to Plaintiffs because ORR retains the authority to keep children in custody even if an Immigration Judge determines they are not risks to themselves or others. ORR Guide § 2.9. As ORR has instructed its own personnel, bond hearings "cannot order a UAC released from ORR. For UAC in shelter care, group homes, and in some cases staff secure facilities, ORR has already determined that the UAC is not a danger, and a bond hearing *would have no effect*." Holguin Dec., Ex. 2, at 1 (emphasis added). ORR has already stepped down the Named Children to shelters or staff secure facilities, implicitly acknowledging that the Named Children are not dangerous. A bond hearing would be futile for them.

### 4.  Plaintiffs Are Likely to Succeed on the Merits of Their Substantive Due Process and *Flores* Claims

The Government raises only one new argument against Plaintiffs' third claim for relief for excessive restraint in violation of the TVPRA and substantive due process: that Plaintiffs have no substantive due process right to family integrity because of ORR's "determination" that the parents are unfit sponsors. Dkt. 67 at 17. But Plaintiffs have provided substantial evidence that the Named Children's initial arrests and placement in secure custody were unfounded, as well as evidence that ORR's own officials support the Named Children's release. ORR's unwarranted denials of family

---

[14] The Government's conduct as to the Named Children underscores this point. In this proceeding, with stricter evidentiary standards than apply in immigration court, the Government has sought to introduce evidence of gang affiliation based on records and materials that have not been produced, and possibly even photographs that *do not depict any of the Named Children*. *See* T. Simon. Dec., ¶¶ 2-4, Ex. 1 (De La Cruz email ███████████████████████████████████████ ██████████████████████████████████████████████████ If an immigration judge credited that hearsay evidence, the Government would be required to maintain custody of the Named Children until they reach the age of 18, at which time ████████████████████████ ████████. *See* Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3728-31.

reunification therefore prolong the Named Children's confinement, in violation of their substantive due process and TVPRA rights.

**F.E.** ████████████████████████████████████

████████████████████████████████████

████ Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3833-35, 3800-02. ████████

████████████████████████████████████

████████████ *Id.* at 3801.[15] In addition, ████

████████████████████████████████████

████████████ *Id.* The FFS and FFS Supervisor averred that ████

████████████████████████████████████

████████████ and that they ████

████████ *Id.* at 3802; *see also* Kempner Dec., Ex. A (HHS), at 822-42 ████

████████████████████. The Government claims F.E. is a gang member based solely on inadmissible evidence that (1) he was seen in the presence of "known MS-13 gang members," and (2) "503" was written in one of his notebooks. Pisciotta Dec., Dkt. 67-3, ¶ 4(a), (c); *but see* Cruz Dec., Dkt. 61-7, ¶ 20 (interaction with gang members is weak indicator of gang affiliation) and ¶ 23 (country code, standing alone, more likely to indicate national pride than gang affiliation). To the contrary, staff at the ORR facilities where F.E. has been incarcerated corroborate his own declaration that he is not a gang member. F.E. Dec., Dkt. 61-11, ¶ 8; Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 4747 (Defendant Esquivel ████████; Johnson Dec., Dkt. 61-17, ¶ 12(a), Ex. 4 (Shenandoah case manager wrote, "I do not have any evidence confirming that [F.E.] is a gang member").

**A.H.** The Court is already familiar with A.H.'s arrest and detention. Plaintiffs have presented additional evidence that a) he was stepped down to a staff-secure facility, b) he has maintained the highest level of good behavior at that facility, and c) his mother complied with all the requests made

---

[15] In fact, James De La Cruz rejected the photos as evidence that was adverse to F.E. *See* T. Simon. Dec., Ex. 1 (noting the photos "do not appear to match the UAC that ORR has in custody.").

Cooley LLP
Attorneys At Law
San Francisco

16.

Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC

of her for reunification but the request was denied. *See* A.H. Supp. Dec., Dkt. 61-13, ¶ 6; Saravia Supp. Dec., Dkt. 61-14, ¶¶ 3-12. Although Pisciotta misleadingly repeats third-hand allegations of gang affiliation from local police, *see supra* Section II, the Government provides no other evidence that A.H. is currently in the least restrictive appropriate setting, or that he could not be safely released to his mother.

***J.G.*** In a home study report dated August 27, 2017, a caseworker ██████████████ ████████████ Kempner Dec., Ex. A (HHS), at 1788-814. At Yolo, he pursued "education, socialization with his peers, and [was] respectful to the staff/peers in the center." *Id.* at 1795; *id.* at 1786-87 (Yolo report noting inter alia, J.G. ████████████████████████████████ ████████████████████████. Although Pisciotta now attempts to justify J.G.'s original classification as a gang member, he does not contradict ████████████████ ████████████████████. *Cf.* Pisciotta Dec., Dkt. 67-4, ¶ 4(a)-(g) *and* Nanos Dec., Dkt. 61-19, Ex. 8, at 2555; Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 1786-87, 1795 (at Yolo, J.G. "showed no signs that his [sic] part of the MS 13 gang"); J.G. Dec., Dkt. 61-9, ¶ 26.

The Government has not submitted evidence to support its continued detention of the Named Children, even as it concedes that each was stepped down because there was no evidence to keep them in secure custody (which is purportedly mandatory for gang members). *See* Sualog Dec, Dkt. 67-1, ¶ 3. In addition, the Government provides no authority to support its claim that Plaintiffs must exhaust the bond hearing procedure. Dkt. 67, at 29-30. Exhaustion should not be required where it would be futile. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). F.E. and J.G. are already in the least restrictive settings available and therefore, by the Government's own statement, "a bond hearing would have no effect." Holguin Dec., Ex. 2, at 1. In addition, exhaustion should not be required where "irreparable injury will result," *Hernandez*, 2017 WL 4341748, at *8, and the Named Children have already suffered serious injuries.

For similar reasons, the Named Children's custody violates the *Flores* Decree. As set forth above, Defendants' conduct has violated numerous of the Named Children's rights under the Decree, over which this Court retains de novo review. *Flores* Decree, Dkt. 54-2, ¶ 24C. Among other errors, the Government misapplied the governing legal standards concerning the Named Children's custody,

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

1   *id.*, ¶¶ 11, 14, and failed to notify counsel before their transfers, *id.*, ¶ 27. The Government does not

2   answer these arguments, and instead repeats its jurisdiction and venue objections, which Plaintiffs

3   have already refuted. *See* Dkt. 61-1, at 12-18. Defendants also insist that violations of the *Flores*

4   Decree cannot be remedied in habeas, which Plaintiffs dispute. *See id.* at 27-28. But regardless of

5   whether habeas provides a vehicle for raising those claims, Defendants concede that (at a minimum)

6   APA review is available to entertain the *Flores* claims. Dkt. 54, at 20. Thus, it is undisputed that this

7   Court has authority to grant relief to the Named Children based on Defendants' *Flores* violations.

8   **5.    The Harm to Plaintiffs, the Balance of the Equities, and the Public Interest All Weigh in Favor of Plaintiffs' Requested Relief**

9   Defendants do not dispute that the detention of the Named Children and proposed class

10   causes them grave harms. *See* Dkt. 61-1, at 40-41. Their only response on this point is that the *Flores*

11   Immigration Judge bond process and ORR's release procedures "alleviate[] any risk of irreparable

12   harm," Dkt. 67 at 31, but Plaintiffs have shown why those procedures do not protect them. *See supra*

13   Section IV(B)(3)(b). More fundamentally, Plaintiffs' core claim is that Defendants' existing

14   procedures are insufficient. In light of Plaintiffs' ongoing detention, and the risk that future class

15   members will be deprived of their fundamental rights, they should not be required to undergo

16   constitutionally inadequate procedures before seeking relief before this Court.

17   Nor have Defendants identified any countervailing interest that weighs against granting

18   relief. They contend that Plaintiffs' requested relief contradicts "the express wishes of Congress,"

19   Dkt. 67 at 31, but the TVPRA actually *bars* Defendants' conduct here. Plaintiffs' requested relief

20   therefore vindicates, not undermines, legislative intent. *See Rodriguez v. Robbins*, 715 F.3d 1127,

21   1145 (9th Cir. 2013). Similarly, "public interest concerns are implicated when a constitutional right

22   has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v.*

23   *Principi*, 422 F.3d 815, 826 (9th Cir. 2005).[16] Defendants further claim (without evidence) that an

24   injunction "would harm the Government's strong interest in . . . enforcement of the immigration

25

26   [16] Defendants cite *Planned Parenthood of Greater Tex. v. Abbott*, 734 F.3d 406 (5th Cir. 2013), for

27   the view that enjoining a statute inherently causes the government irreparable harm, Dkt. 67 at 31, but the Ninth Circuit has never adopted that rule. *See Latta v. Otter*, 771 F.3d 496, 500 & n.1 (9th Cir. 2014). And Plaintiffs do not seek to enjoin any statute here, but rather seek to require

28   Defendants to comply with their statutory and constitutional obligations.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

**PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC**

laws," Dkt. 67, at 31, but the government's power over immigration "is subject to important constitutional limitations," *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). As such, courts routinely grant injunctions in the immigration context. *See, e.g., Hernandez*, 2017 WL 4341748, at \*15; *Cnty. of Santa Clara v. Trump*, Nos. 17-cv-0574, 17-cv-0485, 2017 WL 1459081, \*27 (N.D. Cal. Apr. 25, 2017); *R.I.L.-R.*, 80 F. Supp. 3d at 191.

### 6.    The Court Should Order the Release of the Named Children

In light of the severe deprivations that the Named Children have already endured, this Court should order them released from ORR custody and reunified with their parents. This Court has "broad discretion in conditioning a judgment granting habeas relief," *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). The severe violations of their procedural due process rights, standing alone, would be grounds for release. *See Beltran*, 222 F. Supp. 3d at 489 (ordering release in habeas for child about to turn 18 because additional process would be of limited value); *Santos*, 2017 WL 2389722, at \*14 (ordering release in light of "the proximity to [UC's] eighteenth birthday and the lengthy delays that he and his mother have already endured as to their request for family reunification"). The Named Children's excessive restraint claims also show that the Government never had a proper basis to detain them, and supply a further basis for their release.

Defendants insist that this Court lacks authority to grant relief to the Named Children because they were not in Yolo or Fairfield at the time the Amended Petition was filed. Dkt. 66, at 5-6; Dkt. 67 at 4-5. This argument is incorrect, for three independent reasons. *See* Dkt. 61-1 at 12-15, n.2, 18-19. *First*, if this Court finds that national-level officials—like the heads of ORR and ICE—are the proper respondents here, then it would have authority to direct those respondents to order release. *Id.* at 12-14. Defendants cannot plausibly claim that officials outside this District would be beyond this Court's jurisdiction, when habeas courts throughout the country routinely direct national-level respondents to grant relief. *Id.* (citing cases). *Second*, if this Court deems Elicia Smith the proper respondent here, the Amended Petition alleges, and the evidence shows, that Defendants regularly transfer the Named Children to different facilities throughout the country. *Id.* at 15-19. Defendants maintain that they were correct to put A.H. and J.G. in Yolo and F.E. in Fairfield. Cardall MTD, Dkt. 52, at 7-8; Am. Pet., Dkt. 31, ¶¶ 10, 12, 14, 115. Accordingly, the Named

Cooley LLP
Attorneys At Law
San Francisco

19.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

1 Children could easily return to Ms. Smith's custody again. *See Peyton v. Rowe*, 391 U.S. 54, 55

2 (1968) (recognizing that future detention could be challenged in habeas); *Demery v. Arpaio*, 378

3 F.3d 1020, 1025-26 (9th Cir. 2004) (finding that case not moot where there was "a likelihood of

4 recurrence" of future custody); *Demjanjuk v. Meese*, 784 F.2d 1114, 1115-16 (D.C. Cir. 1986).

5 *Third*, this Court retains authority—separate and apart from its habeas powers—under Section 1331

6 and/or the APA to order injunctive and declaratory relief for the named Plaintiffs. Dkt. 61-1 at 15.[17]

7 **V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS**

8       **A.      Plaintiffs Meet the Requirements for Class Certification Under Rule 23**

9       Defendants do not contest that the Named Children's claims are typical of the class, or that

10 the Named Children and their counsel will adequately represent the class's interests. They challenge

11 only the sufficiency of Plaintiffs' showings regarding numerosity under Rule 23(a)(1), commonality

12 under Rule 23(a)(2), and the appropriateness of uniform injunctive relief under Rule 23(b)(2). The

13 Court should reject Defendants' arguments and provisionally certify the Proposed Class for the

14 purpose of entering a preliminary injunction:

15       1.      Prohibiting DHS from arresting Sponsored UCs based on removability alone and

16 absent probable cause of changed circumstances of non-trivial criminal conduct or that the UC poses

17 a danger to himself or others, provided dangerousness cannot be based on gang allegations based

18 solely on clothing, appearance, and associations;

19       2.      Prohibiting ORR from placing Sponsored UCs in secure or staff secure facilities

20 under the oversight of the San Francisco Federal Field Specialist without (a) notice of the facts and

21 evidence upon which ORR recommends secure placement and (b) a hearing before a neutral

22 decision-maker in which the Sponsored UC has the right to counsel; has the opportunity to confront

23 witnesses; and in which ORR bears the burden of establishing that the UC is a danger to himself or

24 others; and

25

26 [17] The Court retains authority to order relief for A.H. for one additional reason, which is that he was
transferred *after* he filed the first Petition in this Court. *See* Dkt. 61-1 at 15 n.2. Defendant Cardall is
27 wrong to suggest that the Amended Petition does not "relate back" to the original Petition for this
purpose, since he relies on out-of-circuit cases that do not address habeas. *See also Willner v.*
28 *Manpower Inc.*, No. 11-CV-02846-JST, 2014 WL 2939732, at *5-6 (N.D. Cal. June 30, 2014).

3.     Prohibiting ORR from continuing to detain Sponsored UCs who are or have been in custody under the oversight of the San Francisco Federal Field Specialist without notice of the facts and evidence upon which ORR recommends secure placement or continued ORR custody at a hearing before a neutral decision-maker in which the Sponsored UC and sponsor have the right to counsel; the opportunity to confront witnesses; and in which ORR bears the burden of justifying the UC's continued secure placement or custody.

### 1.     The Proposed Class Is so Numerous that Joinder Is Impracticable

As discussed in Plaintiffs' Opening Brief, the Proposed Class is sufficiently numerous, and the characteristics of the individual Class Members—who are indigent, underage, geographically dispersed and transitory—as well as the prospective nature of the relief sought by Plaintiffs, make joinder of all Class Members impracticable.

Defendants argue that Plaintiffs did not carry their burden to identify a sufficient number of existing Class Members. But documents produced by the Government show that ████████████ ████████████████████████████████████████████████████████ Kempner Dec. ¶ 4; *id.*, Ex. A (HHS), at 2564-2802; Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3728-31. This is more than sufficient to satisfy Rule 23(a)(1). Indeed, courts frequently certify similarly-sized classes, particularly where, as here, the class includes future unknown class members. *See, e.g.*, *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (court certified class of "present and future" public housing tenants comprised of 16 identified members, noting that "the fluid composition of the public housing population [wa]s particularly well suited for status as a class because while the identity of the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant."); *see also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 members); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (17 members); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531 (D.N.H. 1971) (13 members).

Defendants next contend that the Court should not consider prospective Class Members in determining whether joinder is impracticable because Plaintiffs have "provide[d] no concrete basis" on which the Court could conclude that additional Sponsored UCs will become Class Members in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

the future. Dkt. 67, at 24. Defendants offer no support for the imposition of a "concreteness" requirement, and—to the contrary—it is well-established that Plaintiffs "may rely on the reasonable inference . . . that the number of unknown and future members . . . is sufficient to make joinder impracticable." *Civil Rights Educ. & Enf't Ctr. V. Hosp. Props. Trust*, 317 F.R.D. 91, 100 (N.D. Cal. 2016). As Plaintiffs have explained, this inference is readily drawn, including from ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Corkery Dec., Ex. E (HHS), at 3729-31. Tellingly, Defendants fail to address this memo in their Opposition, or to rebut the evidence that the Government's policies will generate substantial numbers of future Class Members, despite being in exclusive possession of such information.

Defendants' final argument is that Plaintiffs "do not explain how any of th[e five additional] factors [considered by courts] make [joinder impracticable]." Dkt. 67, at 35. These factors include: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *McCluskey v. Tr. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (internal quotations and citations omitted). But Defendants ignore the evidence cited in Plaintiffs' Brief, Dkt. 61-1, establishing that UCs often lack the knowledge, skills and resources to understand, let alone assert, their statutory and constitutional rights, which reduces the likelihood that UCs will file individual suits. *See* Mass Dec., Dkt. 61-4, ¶ 6.[18] ORR's frequent transfers of UCs to different facilities also obstructs their ability to understand their legal rights and proceed individually. *See* J.G. Dec., Dkt. 61-9, ¶ 21-23; Mass Dec., 61-4, ¶ 7; *Lyon v. U.S. Immigration and Customs Enf't*, 300 F.R.D. 628, 636 (2014) (finding numerosity met

---

[18]  Defendants provide no evidence to support their claim that ORR-funded legal services providers—whom ORR prohibits from representing youth in *Flores* bond hearings—could assist individual class members to pursue the constitutional and statutory claims brought in this litigation. *See* Holguin Dec., ¶¶ 4-7; Exs. 4-5.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

"because class members are 'transitory' (*e.g.*, they may be transferred to other facilities, they may be removed, or they may be permitted to stay.)"); *Bruce*, 113 F.R.D. at 557 (noting that "fluid composition" of class made it "particularly well suited" for class action treatment.). The fifth factor—whether the matter involves "requests for prospective relief that may have an effect on future class members"—clearly tilts in Plaintiffs' favor. *McCluskey*, 268 F.R.D. at 674.

### 2. Plaintiffs' Class Claims Present Common Questions With Common Answers

The Proposed Class similarly satisfies the commonality requirements of Rule 23(a)(2). Defendants argue that commonality is defeated by hypothetical variations in the evidence regarding individual Class Members' alleged gang affiliation and custody. Dkt. 67, at 38-39. These arguments miss the forest for the trees. Plaintiffs' class claims do not turn on the strength or sufficiency of the evidence of their alleged gang affiliation. Rather, they turn on whether Defendants' *procedures* (or lack thereof) for arresting and detaining Class Members violate constitutional and statutory rights. These violations require resolution of the same questions and seek to remedy the same injury for all Class Members. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (finding commonality satisfied notwithstanding "[d]ifferences among the class members with respect to the merits" of their claims); *Rosas v. Baca*, No. 12-cv-0428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.") (citation omitted).

For example, Claim 1 requires the Court to resolve the legal question of whether DHS can rearrest a Sponsored UC based solely on removability. Dkt. 61-1 at 46. Claim 2 requires the Court to determine whether Class Members who are rearrested on allegations of gang affiliation are entitled to notice and a meaningful opportunity to be heard before a neutral decision maker, and whether the Government's existing procedures satisfy due process. *Id*. Class Members allege that they are entitled to *the same process* regardless of the strength or absence of evidence of gang affiliation, which can be answered "in one stroke" as to all Class Members.[19]

---

[19] Contrary to Defendants' suggestion, even Class Members for whom the allegations of gang affiliation are strong are entitled to process, and were therefore injured by Defendants' conduct.

Cooley LLP
Attorneys At Law
San Francisco

23.

Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC

Defendants' argument that Plaintiffs' class claims are incapable of generating common answers because they "presum[e] [] common facts that may well not be present," Dkt. 67 at 38, is similarly misplaced. Plaintiffs have established that DHS has a common practice of rearresting Sponsored UCs based solely on removability and allegations of gang affiliation. *See* Dkt. 61-1 at 19-22. Similarly, it is ORR's express policy ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Corkery Dec., Ex. E (HHS), at 3729. Plaintiffs do not ask the Court to "presume" anything. Rather, they simply ask the Court to determine whether Defendants' policies violate Class Members' constitutional and statutory rights.

### 3.      Plaintiffs Satisfy the Requirements of Rule 23(b)(2)

Defendants acknowledge that the Ninth Circuit has held that Rule 23 contains no "ascertainability" requirement, but reframe their ascertainability challenge as a failure to comport with Rule 23(b)(2). *See* Dkt. 67, at 40, n.9 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124, n.4 (9th Cir. 2017)). That is wrong.

As an initial matter, courts in this circuit have held that "the ascertainability requirement does not apply to Rule 23(b)(2) classes," for which it "serves little purpose." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015); *see also Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 621 (C.D. Cal. 2015) (finding that court need not consider ascertainability on motion to certify class under Rule 23(b)(2)). The First, Third, Sixth and Tenth Circuits have all held the same. *Cole v. City of Memphis*, 839 F.3d 530, 541-42 (6th Cir. 2016); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (holding that "the actual membership of [a Rule 23(b)(2)] class need not . . . be precisely delimited"); *Shelton v. Bledsoe*, 775 F.3d 554, 560 (3d Cir. 2015); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004). Indeed, such a requirement would undermine Rule 23(b)(2)'s function in permitting prosecution of "civil rights actions in which the members of the class are often incapable of specific enumeration." *Yaffe*, 454 F.2d at 1366 (citation omitted). "In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily

---

*Lyon*, 300 F.R.D. at 636 (rejecting argument that putative class members who would have been removed regardless of challenged practice were not injured by the alleged constitutional violation).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC

1    ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting

2    prison population." *Shook*, 386 F.3d at 972.

3         Moreover, Defendants' claim that it would not be possible to tell, at the time of arrest,

4    whether a Sponsored UC will eventually be placed in a secure facility fails in light of ORR's own

5    policy, which ███████████████████████████████████████████████████████████

6    ███████████████ Corkery Dec., Dkt. 61-2, Ex. E (HHS), at 3729. Thus *any* Sponsored UC who is

7    arrested by ICE and referred to ORR with allegations of gang affiliation will be considered by ORR

8    for placement in a secure facility and therefore falls within the Proposed Class. The injunction

9    sought by Plaintiffs would (1) prohibit Defendants from arresting such UCs solely on the basis of

10   removability and allegations of gang affiliation absent probable cause of non-trivial criminal conduct

11   or dangerousness, and (2) require ORR to provide meaningful due process to such UCs prior to or

12   immediately after their placement in a secure facility, and therefore "provides the sole remedy

13   necessary to protect the affected class." *Cole*, 839 F.3d at 542.

14        The Court may issue an injunction broader than, or even in absence of, a certified class, "if

15   such breadth is necessary to give prevailing parties the relief to which they are entitled." *Easy Riders*

16   *Freedom F.I.G.H.T. v. Cal. Highway Patrol*, 92 F.3d 1486, 1501-02 (9th Cir. 2010). It is therefore

17   within this Court's power to issue an injunction to prevent the arrest of *any* Sponsored UC absent

18   probable cause of non-trivial criminal conduct or dangerousness in order to ensure the Named

19   Children, if released, are not rearrested based solely on removability and unfounded gang allegation

20   in the future. Finally, if the proposed class definition, combined with uncertainty about when

21   Sponsored UCs in ORR custody may be transferred to the jurisdiction of the San Francisco Federal

22   Field Specialist, raises insurmountable concerns about the implementation of injunctive relief,

23   Plaintiffs would be amenable to broadening the scope of the class.

24   **VI.    <u>CONCLUSION</u>**

25        The Court should grant Plaintiffs' Motions for Preliminary Injunction and for Provisional

26   Class Certification.

27

28

Cooley LLP
Attorneys At Law
San Francisco

25.

**Plaintiffs' Consolidated Reply Brief
Case No. 3:17-cv-03615-VC**

1   Dated:    October 13, 2017        COOLEY LLP

2                       MARTIN S. SCHENKER (109828)
NATHANIEL R. COOPER (262098)

3                       KATHLYN QUERUBIN (275085)
TREVOR M. KEMPNER (310853)

4                       ASHLEY KEMPER CORKERY (301380)

5                       */s/ Martin S. Schenker*

6                       Martin S. Schenker
*Attorneys for Plaintiffs*

7

8   Dated:    October 13, 2017        AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

9                       JULIA HARUMI MASS (189649)

10                     WILLIAM S. FREEMAN (82002)

11                     */s/ Julia Harumi Mass*

12                     Julia Harumi Mass
*Attorneys for Plaintiffs*

13

14   Dated:    October 13, 2017        ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT

15                     STEPHEN B. KANG (SBN 292280)

16                     JUDY RABINOVITZ (*pro hac vice*)

17                     */s/ Stephen S. Kang*

18                     Stephen S. Kang
*Attorneys for Plaintiffs*

19

20   Dated:    October 13, 2017        LAW OFFICES OF HOLLY S. COOPER
HOLLY S. COOPER (SBN 197626)

21

22                     /s/ *Holly S. Cooper*

23                     Holly S. Cooper
*Attorneys for Plaintiffs*

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

PLAINTIFFS' CONSOLIDATED REPLY BRIEF
CASE NO. 3:17-CV-03615-VC