1  AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF NORTHERN
2  CALIFORNIA
   WILLIAM S. FREEMAN (SBN 82002)
3  SEAN RIORDAN (SBN 255752)
   39 Drumm Street
4  San Francisco, CA 94111
   Telephone: (415) 621-2493
5  Facsimile:  (415) 255-8437
   Email:    wfreeman@aclunc.org
6            sriordan@aclunc.org

COOLEY LLP
MARTIN S. SCHENKER (SBN 109828)
NATHANIEL R. COOPER (SBN 262098)
ASHLEY K. CORKERY (SBN 301380)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222
Email:       mschenker@cooley.com
             ncooper@cooley.com
             acorkery@cooley.com

7  *Attorneys for Petitioner/Plaintiff*
   Ilsa Saravia, on behalf of herself and others
8  similarly situated.
   (Additional Counsel listed on following page)

9

10                         UNITED STATES DISTRICT COURT

11                        NORTHERN DISTRICT OF CALIFORNIA

12

13  ILSA SARAVIA, as next friend for A.H., a
    minor, and on her own behalf,

14                         Petitioner/Plaintiff, on
15                         behalf of herself and others
                           similarly situated,
16
        v.
17
18  MATTHEW G. WHITAKER, Acting
    Attorney General of the United States; ALEX
19  M. AZAR II, Secretary of the Department of
    Health and Human Services of the United
20  States; LYNN JOHNSON, Assistant
    Secretary for the Administration for Children
21  and Families; SCOTT LLOYD, Director of
    the Office of Refugee Resettlement of the
22  United States; ELICIA SMITH, Federal Field
    Specialist of the Office of Refugee
23  Resettlement of the United States; KIRSTJEN
    NIELSEN, Secretary of the Department of
24  Homeland Security of the United States;
    RONALD D. VITIELLO, Deputy Director
25  and Senior Official Performing the Duties of
    Director for U.S. Immigration and Customs
26  Enforcement; and FRANK CISSNA, Director
    of U.S. Citizenship and Immigration Services,
27
                           Respondents/Defendants.
28

Case No.  3:17-cv-03615-VC

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**IMMIGRATION ACTION**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
JUDY RABINOVITZ*
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660
Facsimile: (212) 549-2654
Email: jrabinovitz@aclu.org

ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
STEPHEN B. KANG (SBN 292280)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0770
Facsimile: (212) 395-0950
Email: skang@aclu.org

LAW OFFICES OF HOLLY S. COOPER
HOLLY S. COOPER (SBN 197626)
P.O. Box 4358
Davis, CA 95617
Telephone: 530-574-8200
Facsimile: 530-752-0822
Email: hscooper@ucdavis.edu

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
PAIGE AUSTIN*
AADHITHI PADMANABHAN**
CHRISTOPHER DUNN**
125 Broad Street, 19th Floor
New York, NY 10004
Telephone: (212) 607-3300
Facsimile: (212) 607-3318
Email:  paustin@nyclu.org
          apadmanabhan@nyclu.org
          cdunn@nyclu.org


*Appearing Pro Hac Vice
** Motion for Pro Hac Vice Forthcoming

*Attorneys for Petitioner/Plaintiff,*
*on behalf of herself and others similarly situated.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

JURISDICTION ................................................................................................................... 2

VENUE ................................................................................................................................ 2

INTRADISTRICT ASSIGNMENT ..................................................................................... 3

PARTIES ............................................................................................................................. 3

FACTS AND LEGAL FRAMEWORK .............................................................................. 4

    ORR Custody of Unaccompanied Children ................................................................. 4

    Other Rights of Unaccompanied Children .................................................................. 6

    ICE "Sweeps" Target Unaccompanied Minors ........................................................... 6

    Resulting Deprivations of Plaintiff's and Class Members' Rights .............................. 10

FACTS PERTAINING TO A.H. ......................................................................................... 14

OTHER CLASS MEMBERS ............................................................................................... 19

CLASS ACTION ALLEGATIONS ..................................................................................... 22

INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS .................................... 24

PRAYER FOR RELIEF ....................................................................................................... 29

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

**INTRODUCTION**

**1.**     Under the guise of a "crackdown" on transnational street gangs, federal immigration authorities and the federal agency responsible for the care and custody of unaccompanied immigrant children have undertaken a concerted effort to arrest, detain, and transport children far from their families and attorneys, and to deny them immigration benefits and services to which they are entitled under U.S. law, based on flimsy, unreliable and unsubstantiated allegations of gang affiliation.

**2.**     The agencies in charge of this effort do not undertake any meaningful review of the allegations of gang affiliation on which their decisions are based; do not inform the children, their families or their immigration counsel of the basis of these allegations; and do not provide them any opportunity to review or challenge the evidence the government relies on to place the children in jail-like conditions, destroy family integrity, and deny or interfere with access to relief under U.S. immigration laws.

**3.**     This treatment is not only extremely harmful; it is unlawful.  But official statements and actions confirm that the administration plans to continue and expand its efforts to deport children profiled as gang members based on the neighborhoods they live in and their countries of origin, and that responsible federal agencies will continue to deny these children their statutory and constitutional rights.

**4.**     Petitioner and Plaintiff Ilsa Saravia ("Plaintiff"), acting as next friend for her minor child "A.H.",[1] and the class she provisionally represents, has been a victim of this unlawful conduct. A.H. had previously been taken into custody and evaluated by the U.S. Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"), and had been released to her under an ORR sponsor agreement.  Though he had only minor trouble in the juvenile justice system, A.H. was rearrested by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), denied access to family and legal counsel, transported far from home, and held in jail-like conditions for months without any process through which he could challenge his

---

[1] While Plaintiff's son is now eighteen years old, he was under eighteen at the outset of this action and at the time the Court provisionally certified a class. Accordingly, Plaintiff's son is referred to as a minor child in this Second Amended Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

confinement or deny the gang allegations that were the reason for his harsh treatment. These and other actions by the federal authorities also threaten A.H.'s access to lawful status in the United States and therefore may result in his deportation to a country from which he has fled abuse and violence.

5.      Plaintiff brings this action on behalf of A.H. and two classes (the "Classes") consisting of all unaccompanied immigrant children (also referred to as "UCs") who came to the country as unaccompanied minors; were previously detained in ORR custody and then released by ORR to a sponsor; and (a) have been or will be rearrested by DHS on the basis of a removability warrant on or after April 1, 2017 on allegations of gang affiliation (the "Detention Class") and/or (b) have been or will be denied immigration benefits or relief by USCIS at a time when DHS has or is aware of any information that the noncitizen is or may have been affiliated with a gang ("Benefits Class") (collectively, "Class members" or "members of the Plaintiff Classes"). Plaintiff seeks declaratory and injunctive relief to prevent Defendants from continuing to carry out an unlawful scheme to arrest, summarily incarcerate, and deny immigration benefits to Class members in violation of federal immigration law and fundamental rights guaranteed to all persons under the U.S. Constitution. Injunctive relief is necessary to end these ongoing violations of Plaintiff's constitutional and statutory rights.

## JURISDICTION

6.      This Court has subject matter jurisdiction over a writ of habeas corpus and Plaintiff's complaint for injunctive and declaratory relief pursuant to Art. I, § 9, cl. 2 of the United States Constitution; 28 U.S.C. § 2201; 28 U.S.C. § 2241; 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1361; and 5 U.S.C. § 702. This action arises under the First, Fourth and Fifth Amendments of the United States Constitution; the Immigration and Nationality Act ("INA"); the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

## VENUE

7.      Venue is properly with this Court pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 1391(e). A defendant resides in this District, and a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of California, including decisions concerning the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

detention of Plaintiff's son, who was held in ORR custody in Yolo County in northern California at the time this action commenced.  Specifically, Defendant Elicia Smith, the Federal Field Specialist who serves as the approval authority for transfer and release decisions pertaining to unaccompanied minors within the Northern California region, is, or was at the time this action commenced, based in San Francisco.  Venue is proper in this Court pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-94 (1973).

## INTRADISTRICT ASSIGNMENT

**8.**     Pursuant to Civil L. R. 3-2(c), this case is properly assigned to the San Francisco Division of this Court because the action arises in the City and County of San Francisco.

## PARTIES

**9.**     Plaintiff Ilsa Saravia, the next friend of A.H., is the mother of A.H. and is filing this complaint and petition on A.H.'s behalf.  She also seeks injunctive relief on her own behalf as to the Second Claim for Relief only.  Plaintiff Saravia resides in Amityville, Suffolk County (Long Island), New York.  Plaintiff Saravia is A.H.'s sponsor under an agreement with ORR, has been awarded sole custody of A.H. by the State of New York, and is dedicated to A.H.'s best interests.

**10.**     A.H. was, at the time this action commenced, a seventeen year old unaccompanied immigrant child and a citizen of Honduras.  Until June 12, 2017, he resided with his mother on Long Island, but was then arrested by ICE and transported by Defendants to a secure detention facility in Woodland, California, where he remained in the custody of ORR at the time this action commenced. As such, at the time this action commenced and at the time the Court provisionally certified the Detention Class in this case, he was in custody under color of the authority of the United States, and he was in custody in violation of the Constitution or laws of the United States, within the meaning of 28 U.S.C. § 2241.

**11.**     Defendant Matthew G. Whitaker is the Acting Attorney General of the United States, responsible for the enforcement of the nation's immigration laws.  He is sued solely in his official capacity.

**12.**     Defendant Alex M. Azar II is the Secretary of HHS, the federal agency upon whose orders the individual Plaintiff Class members were detained.  He is sued solely in his official capacity.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

13.    Defendant Lynn Johnson is the Assistant Secretary of the Administration for Children and Families.  The Administration for Children and Families is an office within HHS that has responsibility for ORR, the agency that is directly responsible for Plaintiff's detention.  He is sued solely in his official capacity.

14.    Defendant Scott Lloyd is the Director of ORR.  He is sued solely in his official capacity.

15.    Defendant Elicia Smith is a Federal Field Specialist for ORR, who serves as the approval authority for the transfer and release of unaccompanied children within the geographic region of Northern California.  She works in the field and maintains a work space in San Francisco, California.  She is sued solely in her official capacity.

16.    Defendant Kirstjen Nielsen is the Secretary of the U.S. Department of Homeland Security ("DHS"), the governmental department that is responsible for the arrests of the Plaintiff Class members that are the subject of this litigation.  She is sued solely in her official capacity.

17.    Defendant Ronald D. Vitiello is the Director of ICE, the principal investigative agency of DHS that carries out the arrests of UCs that are the subject of this action.  He is sued solely in his official capacity.

18.    Defendant Frank Cissna is the Director of U.S. Citizenship and Immigration Services ("USCIS"), an agency of DHS that oversees lawful immigration into the United States and, among other things, administers the process by which UCs can obtain Special Immigrant Juvenile ("SIJ") status, as explained more fully below.  He is sued solely in his official capacity.

## FACTS AND LEGAL FRAMEWORK

### ORR Custody of Unaccompanied Children

19.    When a UC is initially detained by federal immigration authorities, the TVPRA requires that the child be transferred to the custody of the Secretary of HHS within 72 hours.  The duties of the Secretary of HHS under the TVPRA are carried out by officials within ORR.

20.    The Secretary of HHS must then ensure that pending the completion of any removal proceedings, the child is "promptly placed in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

21.     Under the TVPRA, "[a] child shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or had been charged with committing a criminal offense." 8 U.S.C. § 1232(c)(2)(A).

22.     According to rules published on the ORR website under the title "Children Entering the United States Unaccompanied" ("ORR Rules"), a "secure care facility" is, in essence, a maximum security prison for children, characterized by "a secure perimeter, major restraining construction inside the facility, and procedures typically associated with correctional facilities."[2]  ORR Rules, § 1.2.4.  A "staff secure facility" is for children "who may require close supervision but do not need placement in a secure facility."  *Id.*, Guide to Terms.  A "staff secure" facility "maintains stricter security measures . . . than a shelter in order to control disruptive behavior and to prevent escape," and may also contain a "secure perimeter with a 'no climb' fence."  *Id.*  Detention in either kind of facility constitutes a significant deprivation of liberty.

23.     The TVPRA permits ORR to consider a variety of factors in determining where to place an unaccompanied minor who has been transferred into its custody, including "danger to self, danger to the community, and risk of flight."  8 U.S.C. § 1232(c)(2)(A).  Section 1.2.4 of the ORR Rules permits ORR to place a UC in a secure care facility if the UC "[h]as been charged with, is chargeable with a crime, or has been convicted of a crime," but such crimes are not to include "isolated offenses" or "petty offenses."

24.     As required by the TVPRA, many minors are released by ORR to the custody of a "sponsor" – typically a parent or other close family member – under an agreement pursuant to which the sponsor agrees to care for the UC ("Sponsored UCs").  8 U.S.C. § 1232(c)(3)(A).  The process of

---

[2] Except where otherwise noted, Plaintiffs use the term "secure" to include residential treatment centers (RTCs) which, according to ORR, are "24-hour-a-day structured program[s]" that  that ORR uses "at the recommendation of a psychiatrist or psychologist or with ORR Treatment Authorization Request (TAR) approval for an unaccompanied alien child who poses a danger to self or others and does not require inpatient hospitalization."  ORR Rules: Guide to Terms, available at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms.  RTCs are often locked facilities with 24 hour surveillance and monitoring and, as recently found by a federal court, "engage[] in practices that are not necessary for the protection of minors or others."  *Flores v. Sessions*, 2:85-cv-04544-DMG, Dkt. No. 470 at 13 (C.D. Cal., July 30, 2018).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

releasing a UC to a sponsor involves a comprehensive evaluation by ORR of both the UC and the sponsor.

25.     ORR, in the past and in most circumstances, utilizes a "placement matrix" to evaluate the factors relevant to the decision of whether to place a UC in a secure or staff secure facility.

**Other Rights of Unaccompanied Children**

26.     The TVPRA further provides that the Secretary of HHS shall ensure, to the greatest extent practicable, that unaccompanied minors in HHS custody "have counsel to represent them in legal proceedings" and "[t]o the greatest extent practicable . . . shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge." 8 U.S.C. § 1232(c)(5).

27.     The U.S. Constitution confers additional rights on minors in immigration proceedings since relevant protections extend to all "persons" regardless of immigration status.  Among these rights are the First Amendment right to access to the courts and counsel and to petition the government; the Fourth Amendment guarantee of freedom from unreasonable searches and seizures; and Fifth Amendment guarantees of substantive and procedural due process.

**ICE "Sweeps" Target Unaccompanied Minors**

28.     On July 28, 2017, President Donald J. Trump gave a speech in Brentwood, NY, a hamlet within the Long Island town of Islip, in which he decried the fact that "unaccompanied alien minors arrived at the border and were released all throughout our country into United States communities" – even though the release of UCs into "the least restrictive setting that is in the best interest of the child" is explicitly required by the TVPRA.  The President repeatedly asserted that "the laws are stacked against us."  He declared that "we will restore law and order on Long Island," but also made clear that his ambitions were broader, stating, "we're just getting started . . . one by one, we're liberating our American towns" from alleged gang members, whom he referred to as "animals."[3]

---

[3] "Trump's speech encouraging police to be 'rough,' annotated," Washington Post, 7/28/17, available at: https://www.washingtonpost.com/news/politics/wp/2017/07/28/trumps-speech-encouraging-police-to-be-rough-annotated/?utm_term=.0be6120d2adc.

Cooley LLP
Attorneys At Law
San Francisco

6.

2ND Amended Petition for Writ of Habeas Corpus &
Class Action Comp. for Injunctive & Decl. Relief
Case No.: 3:17-CV-03615-VC

29.     In an interview with Fox News commentator Tucker Carlson broadcast on August 3, 2017, then-Attorney General Jeff Sessions said: "[W]e need to be able to deport people rapidly who enter the country illegally, and we have to end this policy of taking unaccompanied minors . . . and turning them over to the Department of Health and Human Services, and then they take them to their 'destination city'. . . .  So this is a very bad and dangerous policy and it can be ended and it must be ended."[4]

30.     Consistent with these statements, Defendants enacted an aggressive enforcement program against Plaintiff's son and other juveniles like him, resulting in the harms that are the subject of this lawsuit.

31.     In the spring of 2017, ICE agents began a program of conducting immigration "sweeps" in various locations, in which they arrest UCs whom local law enforcement authorities have identified to ICE as being affiliated with gangs.  One location in which such a sweep has commenced is Brentwood, NY.  As a result of this sweep and subsequent sweeps, the individual Detention Class members – each of whom is a Sponsored UC – have been arrested, often transported to distant locations, and incarcerated.

32.     On June 14, 2017, ICE announced in a press release that it had launched "Operation Matador," a joint initiative with several local law enforcement agencies in and around New York City including the Suffolk County Police Department ("SCPD").  ICE announced that during the previous 30 days, "45 individuals were arrested during this ongoing enforcement effort, all of which were confirmed as gang members and affiliates."  This included 12 unaccompanied children, all of whom were allegedly "confirmed as MS-13 gang members."  According to the same press release, individuals are "confirmed as gang members" if they meet any of a number of criteria, including "if they admit membership in a gang" or have been "identified as a gang member by a reliable source."[5]

33.     Since the spring of 2017, numerous UCs living in and around Brentwood have been arrested by ICE, purportedly on the basis that they are somehow "affiliated" with gangs or gang

---

[4]  Video of interview available at:  http://insider.foxnews.com/2017/08/03/jeff-sessions-tucker-carlson-tonight-ms-13-illegal-immigration.
[5]  "Operation Matador nets 39 MS-13 arrests in last 30 days," 6/14/17, available at: https://www.ice.gov/news/releases/operation-matador-nets-39-ms-13-arrests-last-30-days.

Cooley LLP
Attorneys At Law
San Francisco

7.

2ND Amended Petition for Writ of Habeas Corpus &
Class Action Comp. for Injunctive & Decl. Relief
Case No.: 3:17-CV-03615-VC

members.  They are then summarily transported to "secure care facilities," which are prison-like detention centers under the jurisdiction of ORR, including the Yolo County Juvenile Detention Facility ("Yolo") in Woodland, California.  Yolo is under the jurisdiction of the Northern California Field Office of ORR and Defendant Elicia Smith, the Federal Field Specialist in charge of that office.  Yolo is one of only two secure care facilities used by ORR, the other being the Shenandoah Valley Juvenile Center in Staunton, Virginia.

**34.**     Operation Matador was merely the leading edge of a broader effort by the Trump Administration to target unaccompanied minors for arrest and detention based on alleged gang affiliation and to retain them in ORR custody until they turn eighteen, at which point they are transferred to ICE.

**35.**     On July 21, 2017, Reuters reported that based on an internal government memo it had seen, "U.S. immigration agents are planning nationwide raids . . . to arrest, among others, teenagers who entered the country without guardians and are suspected gang members . . . ."  Reuters quoted ICE as contending that "a person can be identified as a gang member if they meet two or more criteria, including having gang tattoos, frequenting an area notorious for gangs and wearing gang apparel."  According to the document, ICE field offices are directed "to identify people in their areas that meet the criteria."[6]

**36.**     ICE often relies on local law enforcement to identify suspected gang members.  During a White House press briefing on July 27, 2017, Thomas Homan, then the Acting Director of ICE, was asked, "[H]ow are suspected gang members being identified for ICE enforcement?  Is it just through local law enforcement . . . ?"  He responded, in part:  "Local law enforcement, they're usually the ones that – you know, they – they have the most intelligence on gang members.  It's part of what we look for to find gang members."[7]

---

[6] "Exclusive:  U.S. Immigration raids to target suspected gang members," by Julia Edwards Ainsley, 7/21/17, available at: http://www.reuters.com/article/us-usa-immigration-raids-exclusive-idUSKBN1A62K6?utm_source=twitter&utm_medium=Social.

[7] Video available at: https://www.youtube.com/watch?v=_CrNlU9vAbk (beginning at 18:30).  The official White House text, which is slightly different, is available at: https://www.whitehouse.gov/the-press-office/2017/07/27/press-briefing-press-secretary-sarah-sanders-7272017-2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

37.     For their part, at least some local law enforcement officials view ICE enforcement as a way to remove from their communities youths that they view with suspicion, even in the absence of evidence sufficient to support a criminal arrest, much less a criminal conviction.  Suffolk County Police Commissioner Timothy Sini recently admitted in an interview: "There are times when we know someone is an MS-13 gang member . . . but we're not in a position to make a criminal arrest.  So another tool in our toolbox is to work with the Department of Homeland Security to target active known MS-13 gang members for violation of civil immigration laws, which is another way to remove dangerous individuals from our streets."[8]

38.     In written testimony on May 22, 2017 to the Senate Committee on Homeland Security and Governmental Affairs, Commissioner Sini elaborated on SCPD's "gang eradication strategy," stating that its tactics include "effectuating street arrests" of suspected gang members, "debriefing all of our arrestees," and "shar[ing] intelligence with Homeland Security . . . in order to facilitate the commencement of removal proceedings . . . ."  He also stated that "we automatically notify the Department of Homeland Security when we arrest an individual for a misdemeanor or felony who was not born in this country so that immigration authorities can take appropriate action . . . ."[9]

39.     The SCPD is currently a party to an agreement with the U.S. Department of Justice that requires SCPD to implement "significant changes in how it engages the Latino community."  The agreement, entered into in 2014, is the culmination of an investigation commenced by the Department of Justice in 2009, arising out of allegations of discriminatory policing directed against Latinos.[10]

40.     Notwithstanding this troubling history, ICE uncritically accepts allegations of suspected gang membership made by SCPD in deciding to issue arrest warrants for unaccompanied

---

[8] "39 Members of MS-13 Are Arrested, Authorities Say," *New York Times*, June 14, 2017, available at: https://nyti.ms/2sq/JMWr.
[9] Timothy D. Sini, Testimony Regarding MS-13, given to the United States Committee on Homeland Security and Governmental Affairs, 5/22/17, at pp. 9-11, available at: https://www.hsgac.senate.gov/download/05/22/2017/testimony-sini-2017-05-24.
[10] U.S. Department of Justice Press Release, "United States Agrees to Comprehensive Settlement To Resolve Its Investigation Of The Suffolk County Police Department For Discriminatory Policing Against Latinos," 12/3/13, located at: https://www.justice.gov/usao-edny/pr/united-states-agrees-comprehensive-settlement-resolve-its-investigation-suffolk-county.

Cooley LLP
Attorneys At Law
San Francisco

9.

2ND Amended Petition for Writ of Habeas Corpus &
Class Action Comp. for Injunctive & Decl. Relief
Case No.: 3:17-CV-03615-VC

1  minors in Suffolk County.  To make matters worse, ORR does not subject these allegations to any

2  form of review before placing a child in secure detention.

3  **41.**    Rather, it is ORR's policy to *override* its own placement matrix to ensure that any gang

4  allegation – regardless of corroboration – automatically results in secure confinement.  That is, where

5  local law enforcement alleges that a UC is affiliated with a gang, ORR automatically places that UC

6  in a jail-like facility, even if the factors typically considered by ORR dictate placement in a less secure

7  setting.

8  **Resulting Deprivations of Plaintiff's and Class Members' Rights**

9  **42.**    As a result of the administration's current crackdown, Plaintiff Class members have

10  been subjected to a cascading series of deprivations of their statutory, court-ordered and Constitutional

11  rights.  Because they are suspected of gang involvement – often based on nothing more than conjecture

12  and profiling – they have been placed by ORR in secure care or staff secure facilities, making a

13  mockery of the TVPRA's statutory requirement that they be placed in "the least restrictive setting that

14  is in the best interest of the child."  The deprivations described herein are even more glaring because

15  Plaintiff Class members, as Sponsored UCs, have already been apprehended by the federal

16  government, released to the custody of ORR, and released by ORR to the custody of a sponsor.

17  **43.**    On June 12, 2017, ORR amended § 1.2.4 of the ORR Rules to permit it to consider, as

18  a basis for placement in secure custody, whether the UC "has self-disclosed violent history or gang

19  involvement prior to placement in ORR custody" and "reported gang affiliation or display[ing] gang

20  affiliation while in care."  These amendments coincided with the rollout of "Operation Matador" and

21  the arrests of multiple Class members.

22  **44.**    Evidence adduced in this case has shed light on Defendants' practices regarding the

23  arrest, detention and transfer of UCs suspected of gang affiliation.  When ICE arrests a UC suspected

24  of gang affiliation, it promptly notifies ORR of the arrest, but does not immediately transfer physical

25  custody of the UC to ORR.  Instead, ICE keeps the UC in secure detention at an undisclosed location,

26  without making any effort to notify the UC's sponsor, family members, or counsel, or to provide the

27  UC access to counsel.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

45.     While ICE keeps the UC imprisoned, it sends a bare summary of information about the UC to ORR via email.  This information may include significant errors, including reporting the existence of criminal charges that have been dismissed or otherwise resolved, or inaccurate notations that an individual is a "self-admitted gang member;" and relies on hearsay allegations by local law enforcement authorities that have not been tested or questioned in any form by ICE.

46.     As discussed above, it is ORR's policy and practice to place UCs suspected of gang affiliations in a secure care facility.  ORR takes no steps to corroborate the allegations of gang affiliation, which are often based on circumstantial evidence or multiple layers of hearsay.

47.     ICE rearrests Sponsored UCs suspected of gang affiliations, not on criminal warrants, but on administrative warrants stating only that "there is probable cause to believe that [the UC] is removable from the United States . . . based upon . . . the pendency of ongoing removal proceedings against the subject."

48.     As to Sponsored UCs, such rearrest based on nothing more than "removability" violates the TVPRA.  If ICE can upend ORR's decisions to reunify UCs with their parents under sponsor agreements and serially rearrest Sponsored UCs solely based on "removability," the protections afforded UCs under the TVPRA are meaningless.

49.     In addition, ICE arrests of Sponsored UCs based on removability and absent reliable information about changed circumstances that justify such arrest — as opposed to a process by which ORR reviews its own prior custody determination based on information provided by ICE or other sources — are unreasonable under the Fourth Amendment.

50.     When ICE notifies ORR that it has rearrested a Sponsored UC, ORR treats the UC as though this were the first time it had ever been in contact with the UC, ignoring its own previous evaluation of the UC and his or her sponsor.  In sworn testimony given in this Court on June 29, 2017, ORR Senior Field Specialist Supervisor James De La Cruz stated that in the case of a rearrest of a Sponsored UC, it is ORR policy *not* to contact the UC's sponsor prior to deciding to place the UC in secure detention and permitting ICE to transport the UC to a location distant from the sponsor.

51.     Within a few hours of receiving ICE's notification and recommendation, ORR takes steps to place the unaccompanied minor in accordance with ICE's recommendation.  In making this

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

decision, ORR relies exclusively on information provided by ICE via email, without any attempt to review any of its own files concerning the UC or its own prior custody determination, to corroborate any of ICE's information, or to provide notice to the child (or his or her guardian or attorney) as to what information is being considered. In his sworn testimony in this Court, Mr. De La Cruz admitted that it has "no procedures for reviewing or challenging [ICE's] recommendation" before making a decision to send a UC to secure detention. In essence, ORR merely accepts whatever is reported by ICE. In addition, ORR policy dictates that once detained, suspected gang members are not to be released. An ORR internal memo dated August 16, 2017 states: "No current gang members are eligible for release to a sponsor . . . ."

52.     After ORR determines where the child will be detained, ICE transports the UC to that facility, and transfers physical custody of the minor to ORR only after the transportation process has been completed. During this time, neither ICE nor ORR makes any effort to inform the minor's family members, sponsor, or counsel concerning the child's whereabouts, or to permit them any opportunity to be informed of, much less challenge, ICE's and ORR's placement decision.

53.     Also during this time, ICE systematically deprives unaccompanied minors of their Fifth Amendment rights by interrogating them without counsel present, even if the child has attempted to resist answering questions and/or requested to contact his or her counsel before answering.

54.     ORR, for its part, is summarily placing these children in secure detention without the required "determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." 8 U.S.C. 1232(c)(2)(A). ORR's placement decisions also violate its obligation that a UC be placed in "the least restrictive setting that is in the best interest of the child." By reflexively accepting the recommendations of ICE, it is only considering the alleged "interest" of law enforcement authorities. Moreover, because ORR's policy and practice is to take 30 days to complete any re-evaluation of its initial placement decision, ORR's conduct imposes a 30-day period of confinement in jail-like conditions on Plaintiff.

55.     Even in the 30-day period following this initial placement, ORR does not provide unaccompanied minors, their sponsors, or their attorneys the evidence upon which ORR relies to detain them in the most restrictive settings available for children in ORR custody. Neither a UC, nor

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

his or her counsel or sponsor, has any opportunity to test this evidence, to cross examine the witnesses who may be the source of incriminating information, or to present additional facts to a neutral decision-maker who could weigh the evidence impartially.

56.     The arrest and transfer of unaccompanied minors to distant locations and their detention in jail-like conditions is extremely harmful.  It is a severe deprivation of liberty that imposes psychological harm and suffering upon the children who are detained.  It also prevents unaccompanied minors from seeing their families, meeting with counsel, and participating meaningfully in ongoing immigration proceedings and other matters that impact their ultimate ability to remain in the United States.  These harms are imposed even when not required by geographic limitations of available facilities.  Many unaccompanied minors who were originally placed in secure facilities were later "stepped down" to "staff secure" facilities geographically distant from their families, lawyers, and court proceedings, despite the presence of "staff secure" ORR facilities in their home regions.

57.     As a result of these policies and practices, prior to the entry of the Preliminary Injunction in this case, a Sponsored UC who was rearrested on gang affiliation had no ability to rebut or disprove the allegations against the UC, or earn release back to the UC's sponsor.  Rather, as revealed by an internal ORR memorandum, it was the Government's policy that Sponsored UCs arrested on allegations of gang affiliation were to be held by ORR until they turned eighteen, at which point they would be transferred to ICE for adult detention.  ORR also took the position that even if it could not establish that a rearrested Sponsored UC was a flight risk or a danger to the community, the rearrest gave it the right to re-examine the suitability of the sponsor whom it had previously approved, and ORR frequently delayed or denied the release of Sponsored UCs based on pretextual concerns about sponsor suitability.

58.     In addition to the impediment that detention in remote facilities has on unaccompanied minors' participation in ongoing legal proceedings, allegations of gang involvement are shared with USCIS and used as a pretense to deny children benefits to which they are otherwise entitled under the law.  ICE memorializes and shares allegations of gang involvement, including in memoranda entitled "Alien File Regarding Gang Affiliation" that it then places in children's files.  This so-called "gang memo" directs that the child at issue "should not be afforded any type of immigration services, relief,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

benefit or otherwise released from custody pending the outcome of removal proceedings."  The immigration benefits, protections, and services ("Immigration Benefits") implicated by these gang memos and other forms of ICE information-sharing with USCIS include, but are not limited to, SIJ status, U-visa status, and T-visa status.

59.    USCIS has issued notices of intent to deny or revoke approval of SIJ status for unaccompanied minors who are alleged to have gang affiliations, and in some cases has denied or revoked SIJ status on that basis.  On information and belief, that USCIS has issued these notices and taken other actions to deny or obstruct unaccompanied minors' access to Immigration Benefits to which they are entitled based on DHS's recommendations, without any independent review of the evidence upon with DHS's recommendations are made.

## FACTS PERTAINING TO A.H.

60.    After suffering severe abuse and neglect from his father in Honduras, A.H. fled Honduras and entered the United States as an unaccompanied minor on or about April 26, 2015.  After crossing the border, A.H was detained by U.S. Customs and Border Protection in the Rio Grande Valley, a region in southern Texas.  A.H. was then placed in the custody of ORR.  A.H. spent one month in ORR custody at Lincoln Hall Boys' Haven in Lincolndale, New York, before being released to the custody of his mother, Plaintiff Saravia, on or about May 28, 2015.  Plaintiff Saravia signed a sponsor agreement with ORR and became A.H.'s official sponsor.

61.    For over two years, between May 28, 2015 and June 12, 2017, A.H. lived with Plaintiff Saravia, his mother and sponsor, in Long Island, New York.  By order of the New York State Family Court for Nassau County dated January 29, 2016, Plaintiff Saravia was awarded sole residential and legal custody of A.H.

62.    As described below, A.H. became eligible to apply for SIJ status upon the issuance of an appropriate state court order (commonly referred to as a "Predicate Order") finding that (1) he is a dependent of the court; (2) he cannot be reunited with one parent due to abuse, abandonment and/or neglect; and (3) it is not in his best interest to return to his home country.  8 U.S.C. § 1101(a)(27)(J). If A.H. obtains SIJ classification (using USCIS Form I-360) based on a Predicate Order, he can obtain

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

lawful permanent residency and a path to citizenship, and he can be protected from removal from the United States.

63.    On or about January 3, 2017, through his New York attorney, Stephanie Gibbs, A.H. filed a Motion for Special Findings in the Family Court in Nassau County, requesting that the Family Court issue a Predicate Order containing the findings required under the TVPRA.  On January 18, 2018, the Nassau family court issued an order containing the findings necessary to establish A.H.'s eligibility for SIJ status.  On January 31, 2018, A.H., through his immigration counsel, filed an I-360 application with USCIS requesting SIJ classification.  That application remains pending with USCIS.[11]

64.    A.H. is also the subject of removal proceedings under 8 U.S.C. § 1229a in Immigration Court in New York, New York.

65.    On or about June 12, 2017, A.H. was arrested outside his home by two plainclothes officers who identified themselves as ICE officers and said they had an order to arrest him.  The DHS arrest warrant stated, as the sole cause for the arrest, that DHS had "probable cause to believe" that A.H. was "removable from the United States . . . based on . . . the pendency of ongoing removal proceedings . . . ."  A.H. asked why the officers were arresting him and they told A.H. he had admitted to being in a gang, which was untrue.  The officers handcuffed him and transported him to a holding cell.  They did not give him an opportunity to gather any belongings or to communicate with either his mother or his attorney.

66.    During his time in the United States, A.H. has had two minor brushes with law enforcement, neither of which resulted in a conviction of any offense.  In April or May 2016, a classmate alleged that A.H. had threatened him with a knife.  Although A.H. was charged with "menacing with a weapon," A.H. denies having even been in possession of a knife and the charges were later adjourned in contemplation of dismissal.  In March 2017, A.H. was charged with fifth degree marijuana possession, the lowest possible possession offense.  This charge, too, was adjourned in contemplation of dismissal.  At the time of his arrest, A.H. informed the arresting officers that his criminal cases had been resolved.

---

[11] In the meantime, USCIS granted A.H. a temporary work authorization document, which would be revoked if he is denied Immigration Benefits.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

67.     Under New York criminal law, adjournment in contemplation of dismissal is a final adjudication that does not involve either an admission or a finding of guilt, and therefore should not be treated as a "conviction" that carries adverse immigration consequences.

68.     Shortly after arresting A.H., ICE informed ORR via email that it had arrested A.H., and provided ORR with information concerning A.H., much of which was incomplete or incorrect, or both. ICE informed ORR of A.H.'s two arrests, but falsely stated that the arrest for "menacing" had occurred within the previous three weeks and that criminal charges were "pending," when in fact the arrest had occurred a year earlier and the charges had been adjourned in contemplation of dismissal.  ICE also falsely informed ORR that the charge for possession of marijuana was "pending," when in fact it too had been adjourned in contemplation of dismissal.  Finally, ICE falsely reported that A.H. was a "self-admitted gang member," based on a double-hearsay statement in a SCPD arrest report that is inconsistent with an earlier statement in the same report, which explicitly stated that A.H. denied being a gang member.  ICE recommended to ORR that A.H. be placed in secure confinement.

69.     Based on this incomplete and largely inaccurate information, in less than three hours ORR accepted ICE's recommendation that A.H. should be sent to secure confinement, and arranged for him to be sent to Yolo.  During this time, ORR did not review its own extensive files on A.H. relating to its earlier decision to release him to the custody of his mother; did nothing to question or verify any of the third-hand information reported by ICE; did not inform A.H., his mother or his counsel of its determination or the information it was relying on in making the determination; and did not allow A.H., his mother or his counsel any opportunity to challenge the information or confront witnesses against him.

70.     A.H. remained in ICE custody for approximately 36 hours, during which time ICE transported him first to a secure detention facility in New York City; and then by airplane to Los Angeles and Sacramento, California; and finally to Yolo.  During this entire time he was detained by, and in the physical custody of, ICE agents.  A.H. was not formally transferred to ORR custody until after ICE had placed him in secure detention at Yolo.

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

71.    During his detention by ICE, A.H. made repeated requests to be permitted to contact his attorney, but every such request was denied.  He was interrogated by ICE officers notwithstanding that he had an attorney and had requested to be able to talk to his attorney.

72.    Even though ICE had already sent information to ORR stating that A.H. was a "self-admitted gang member," the ICE agents repeatedly asked A.H. if he was in a gang.  A.H. denied all involvement with a gang.

73.    A.H. also requested to be permitted to contact his mother, but his requests were denied until he told the agents that he would not talk to them until he had been permitted to speak with his mother.  When he was permitted to call his mother for a very short time, he told her that he had been arrested by ICE and that she should contact his attorney.

74.    During the time of his initial detention and transportation across country, A.H.'s attorney, Ms. Gibbs, repeatedly requested of Defendants and their agents information concerning A.H.'s location, his condition, and the reasons he had been detained.  Defendants did not even confirm that they had arrested A.H. until the day after his arrest; and even then, they provided no information as to A.H.'s whereabouts until approximately 5:00 p.m. on Tuesday, June 13, 2017, when Mr. De La Cruz of ORR finally told A.H.'s attorney that A.H. was "en route" to Yolo.  Even then, Mr. De La Cruz did not provide information about who had decided to send him there or why A.H. had been taken into custody.

75.    At a hearing in this case on June 29, 2017, after hearing testimony from Mr. De La Cruz of ORR, the Court ruled that because ORR "had already screened the child, screened the mother, made a decision that the child could be placed with the mother, and entered into a contract with the mother regarding the care of the child," ORR "had an obligation to investigate the information it was receiving from DHS about A.H."  The Court ordered Defendants "to look much more carefully than it has done up to now into whether it should have taken the child into custody," including that it must "conduct a careful check of the accuracy of the information it received from DHS . . . including contacting the appropriate local law enforcement officials who might have information about the child's status as a member or affiliate of MS-13."  The Court also ruled that "ORR must give the child an opportunity to be heard in the presence of his attorney and must give his attorney the opportunity

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

to be heard in connection with this decision," and that "ORR must give the attorney access to all the information on which the decision would be based and give her an opportunity to respond to that information before the final decision is made . . . ." (Dkt. No. 22, at 5-6.)

76.     At the time of A.H.'s arrest, his Family Court matter was scheduled to take place on July 6, 2017 at 9:00 a.m. in Westbury, New York.  A.H. had planned to be present and to testify on his own behalf in order to establish the conditions that would enable the Court to issue the Predicate Order under the TVPRA.

77.     ORR took some of the steps ordered by the Court.  In response to the Court's order, ORR produced a written report dated July 10, 2017.  That report described the steps taken by ORR in revisiting its initial decision regarding A.H.'s placement, but did not indicate that ORR had contacted local law enforcement officials about the allegations of gang membership, noting only that "[w]e believe the documents we received are authentic, and A.H.'s counsel makes no claim that they are otherwise."  (Dkt. No. 27-1, at 2.)  While refusing to concede that it had acted improperly or reached an erroneous conclusion in connection with its initial decision to place A.H. in secure confinement, ORR decided that A.H. should be "stepped down" to a less restrictive "staff secure facility" (*id*. at 5), and subsequently transferred A.H. to a staff secure facility in Dobbs Ferry, NY, closer to his home.

78.     After A.H. was transferred to Dobbs Ferry, his attorney and Plaintiff Saravia diligently provided information and access as required by ORR to seek his reunification with Plaintiff Saravia. A.H.'s reunification petition was denied.

79.     Among the documents ORR provided to A.H. in response to this Court's order was a memo dated June 26, 2017 bearing the seal of Defendant DHS that concludes, "In light of [A.H.'s] affiliation to a violent street gang, he should not be afforded any type of immigration services, relief, benefit or otherwise released from custody pending the outcome of removal proceedings."  This memo indicates its intended recipient is "Alien File Regarding Gang Affiliation."  Alien files – commonly known as "A files" – are accessible to USCIS and relied upon in adjudications of applications for immigration relief or benefits.

80.     After this Court granted A.H. preliminary injunctive relief on November 20, 2017, an immigration judge ruled that A.H. was not a danger to the community and must be released from

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

1  custody.  Despite this ruling, DHS refused to release A.H. from ORR custody to his mother, Plaintiff

2  Saravia, claiming that it had developed doubts as to whether Ms. Saravia continued to be a suitable

3  sponsor.  Plaintiff was required to make an emergency application for A.H.'s release to this Court

4  (ECF No. 108), which Defendants opposed (ECF No. 113).  Only after this Court ordered DHS to

5  release A.H. did it actually do so.  (ECF No. 117.)

6      **81.**     As a result of Defendants' wrongful acts, A.H. was arrested without cause, placed in a

7  secure cell 2,500 miles from his mother and guardian, deprived of access to his counsel, and deprived

8  of notice and an opportunity to be heard on whether he should be detained, in violation of due process

9  and federal law.

10     **82.**     Based on the experiences of other similarly situated UCs including those described

11  below who were denied immigration benefits as a result of ICE memos similar to those in A.H.'s A

12  file, there is a substantial risk that USCIS will not grant A.H.'s SIJ Status Petition (USCIS Form I-

13  360) as a result of ICE's allegations that A.H. is affiliated with a gang.

14                             **OTHER CLASS MEMBERS**

15     **83.**     F.E. first entered the United States in June 2014.  After being arrested by immigration

16  authorities within the United States, ORR released him to the custody of his mother.  In June 2017,

17  ICE rearrested him as a seventeen year old based on unsubstantiated gang allegations.  ICE transferred

18  him to a secure ORR facility.

19     **84.**     After he was taken into ORR custody in June 2017, F.E.'s attorney and mother

20  diligently provided information and repeatedly sought F.E.'s release and reunification with his family.

21  ORR denied F.E.'s release.  On information and belief, ORR's refusal to release F.E. was based on

22  Defendants' inaccurate, unfounded, and unreliable gang allegations.

23     **85.**     Only after this Court granted the provisional Class preliminary injunctive relief on

24  November 20, 2017 and an immigration judge found F.E.'s detention was unwarranted did ORR

25  release F.E. to his family.

26     **86.**     Meanwhile, F.E. had applied for SIJ status on October 28, 2016. On February 13, 2017,

27  USCIS issued a notice of action indicating its approval of SIJ status.  On the basis of this approval,

28  F.E. had applied to adjust his status to lawful permanent resident.  However, on June 21, 2017, just

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

days after his rearrest by ICE, USCIS notified F.E. of its intent to revoke his SIJ status, based in part on a claim that the Family Court that had issued the predicate order on which SIJ status was based had not been informed of F.E.'s alleged "gang activities." USCIS subsequently revoked F.E.'s SIJ status, again citing his alleged gang affiliation. F.E. has appealed this determination to the Administrative Appeals Office of USCIS.

87. J.G. first entered the United States in 2015. After being arrested by immigration authorities within the United States, ORR released him to the custody of his mother. In June 2017, ICE arrested him as a seventeen year old based on unsubstantiated gang allegations. ICE transferred him to a secure ORR facility.

88. Only after this Court granted the provisional Class preliminary injunctive relief on November 20, 2017 and an immigration judge found J.G.'s detention was unwarranted did ORR release J.G. to his family.

89. Prior to his rearrest by ICE in 2017, J.G. had applied for a U-3 visa as a derivative of his mother's U Visa (a visa for which certain crime victims are eligible). He was placed in removal proceedings when he arrived in the U.S. in 2015, but those proceedings were administratively closed because of the pending U-3 visa application. In February 2017, USCIS notified J.G.'s attorney that USCIS considers J.G. inadmissible based on a record that includes "information indicating that he is a confirmed member of the Mara Salvatrucha (MS-13) street gang," based in part on such nebulous factors as "frequenting an area notorious for gangs," "being seen by law enforcement or by a source previously deemed reliable displaying gang signs or symbols," and "being identified as a gang member by documented or undocumented sources of information previously deemed reliable by law enforcement personnel."

90. In August 2017, USCIS issued a letter denying J.G.'s application for a U-3 visa. USCIS found him "inadmissible" and therefore ineligible for the visa because "the record indicates that federal and local law enforcement have identified him as an active MS-13 gang member." The denial letter repeats the same nebulous factors as did the earlier notification. USCIS concluded that "law enforcement has deemed [J.G.] a threat to the public," even though an immigration judge later found he did not pose such a threat in the hearing ordered by this Court. USCIS found that the evidence

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

presented by J.G.'s attorney to show that he was not a gang member – including the absence of gang tattoos on his body – was insufficient.

**91.** Prior to this Court granting preliminary injunctive relief to the provisional Class, at no time was J.G. given any explanation of the reasons upon which ORR based its decision to place him in a secure facility or to move him to staff-secure facility far from his home, family, and immigration attorney, or any opportunity to examine the evidence on which ORR relied in making its decision, or any opportunity confront the evidence or witnesses against him, or to present evidence on his own behalf.

**92.** USCIS has denied or imminently will deny the applications for Immigration Benefits filed by other Class members. L.V., a Class member, was redetained by ICE in July 2017 and ordered released at his *Saravia* hearing in November 2017 after an immigration judge found the gang allegations against him baseless. But six months later, USCIS denied his application for SIJS status — pending since prior to his redetention — on the basis of those same allegations, finding that the state court had not made an informed decision in issuing the predicate special findings order. Despite the immigration judge's findings and wealth of other evidence that L.V. is not gang affiliated, USCIS stated that L.V. "has been identified by the Suffolk County Police Department Gang Unit as a known member of a violent street gang" as the police gang unit "has observed the petitioner wearing paraphernalia indicative of gang membership on multiple occasions in the presence of known gang members."

**93.** A state court also made the predicate findings for another Class member, J.B., to obtain SIJ status. But USCIS then issued a notice of intent to deny him SIJ status on the basis that the state court could not have made an informed decision because the child was a gang member. USCIS ultimately denied J.B. SIJ status.

**94.** As set forth more fully below, on November 20, 2017 this Court provisionally certified a Class in this action and issued a preliminary injunction requiring Defendants to grant prompt hearings to Class members who had been rearrested and detained on gang allegations, in order to determine whether their detention was justified by changed circumstances relating to flight risk or dangerousness. In the months immediately following the issuance of the preliminary injunction, 32

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

Class members were afforded what came to be known as "*Saravia* hearings" before Immigration Judges.  As of March 2018, Immigration Judges found the allegations of danger unfounded as to 30 of those Class members, underscoring the appropriateness of the preliminary relief ordered by the Court and the need for a permanent injunction.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff, as an individual and in her representative capacity, brings the claims set forth herein against Defendants pursuant to Federal Rule of Civil Procedure 23(b)(2) to certify an injunctive relief class.  On November 20, 2017, this Court provisionally certified the Detention Class, with respect to the Second Claim for Relief, of noncitizen minors meeting the following criteria:

> (1) the noncitizen came to the country as an unaccompanied minor; (2) the noncitizen was previously detained in ORR custody and then released by ORR to a sponsor; (3) the noncitizen has been or will be rearrested by DHS on the basis of a removability warrant on or after April 1, 2017 on allegations of gang affiliation.

(ECF No. 100 at 38.)

96.     As of the time of filing of this Second Amended Petition, Plaintiff has filed a Motion to Clarify the Class Definition (ECF No. 159).  Subsequent references to the "Detention Class" will incorporate any revised class definition that the Court may establish.

97.     Plaintiff, in her representative capacity, also seeks to certify, with respect to the Fourth Claim for Relief, the Benefits Class, an injunctive relief class of noncitizens who filed an application for Immigration Benefits before they reached 21 years of age[12] and meet the following criteria:

> (1) the noncitizen came to the country as an unaccompanied minor; (2) the noncitizen was previously detained in ORR custody and then released by ORR to a sponsor; (3) the noncitizen has been or will be denied immigration benefits or relief by USCIS at a time when DHS has or is aware of any information that the noncitizen is or may have been affiliated with a gang.

98.     On information and belief, both the Detention Class and the Benefits Class consists of a large number of similarly situated individuals located throughout the country, such that joinder of all members of the respective Classes is impracticable.

---

[12] *See* 8 U.S.C. 1101(b)(1) (defining generally "child" for purposes of immigration benefits as "unmarried person under twenty-one years of age").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

99.    There are common questions of law and fact affecting individual Class members, including but not limited to, the following:

a.    Whether Defendants' policies, practices and conduct of arresting and detaining unaccompanied minors based on allegations of gang affiliation are implemented without reliable information supporting those allegations;

b.    Whether ICE's arrest of Plaintiff was based on reliable evidence of changed circumstances following ORR's release of Plaintiff to a parent;

c.    Whether Defendants' policies, practices and conduct result in the placement of unaccompanied minors in secure, residential treatment centers, or staff-secure care facilities without notice to the unaccompanied minors' family members, sponsors, or counsel;

d.    Whether Defendants' policies, practices and conduct result in the placement of unaccompanied minors in ORR secure, residential treatment centers, or staff-secure care facilities without notice or opportunity to rebut the allegations ORR relies on to justify secure or staff-secure custody;

e.    Whether Defendants' criteria for placement of unaccompanied minors in a secure, residential treatment center, or staff secure facility are so overbroad so as not to be justified by Defendants' interests;

f.    Whether Defendants have an obligation to transfer unaccompanied minors who are stepped down to lower security facilities to available facilities near the minors' homes and/or families;

g.    Whether Defendants' policies, practices and conduct with respect to Sponsored UCs unlawfully denies or obstructs the unaccompanied minors' access to Immigration Benefits;

h.    Whether such policies, practices and conduct violated and continue to violate Plaintiff's rights to be free from unreasonable seizures under the Fourth Amendment of the United States Constitution;

i.    Whether such policies, practices and conduct violated and continue to violate the Plaintiff's rights, absent changed circumstances based on credible information, to remain in the

Cooley LLP
Attorneys At Law
San Francisco

23.

2ND Amended Petition for Writ of Habeas Corpus &
Class Action Comp. for Injunctive & Decl. Relief
Case No.: 3:17-CV-03615-VC

1   custody of a parent or other sponsor once released thereto by ORR under the TVPRA, 8 U.S.C. §

2   1232;

3         **j.**      Whether such policies, practices and conduct violated and continue to violate

4   Plaintiff's rights to procedural and substantive due process as to Immigration Benefits under the Fifth

5   Amendment and the APA;

6         **k.**      Whether such polices, practices and conduct violated and continue to violate

7   the Plaintiff's rights to be placed in the least restrictive setting under the TVPRA, 8 U.S.C. §

8   1232(c)(2)(A); and

9         **l.**      Whether injunctive relief should issue to enjoin the policies, practices and

10  conduct of the Defendants' agents and employees.

11      **100.**   Plaintiff's claims are typical of those of the Class members with respect to the

12  constitutionality and legality of Defendants' policies, practices and conduct at issue here.  The

13  prosecution of individual actions against Defendants by individual members of the Plaintiff Classes

14  would create a risk of inconsistent and varying adjudications, which would result in variable standards

15  of conduct for Defendants and a lack of uniform immigration policy nationwide.

16      **101.**   Plaintiff will fairly and adequately protect the interests of members of the Plaintiff

17  Classes and are unaware of any conflict among or between the members of the Plaintiff Classes that

18  would preclude their fair and adequate representation.  Plaintiff is represented by counsel who have

19  extensive experience litigating similar matters.

20              **INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS**

21      **102.**   Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as

22  though fully set forth herein.

23      **103.**   An actual and substantial controversy exists between Plaintiff and Defendants

24  regarding their respective legal rights and duties.  Plaintiff contend that Defendants have violated Class

25  members' constitutional and statutory rights as alleged above.  Defendants deny that their conduct

26  violates any such rights and intend to continue such conduct.

27      **104.**   Moreover, in view of Defendants' policies and practices, at the time this action

28  commenced, Plaintiff was threatened with continuing and future deprivations of her rights, because

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

her son could have been "stepped up" to secure detention without due process, or, in the event he had been released to her, he could have been rearrested based on the continuing status of being in removal proceedings and sent again to secure detention.

105.    Defendants' conduct as alleged above has caused and, absent permanent injunctive relief or a writ of habeas corpus, will in the future cause irreparable harm to members of the Plaintiff Classes denying Class members family integrity, liberty without due process, as well as their statutory and contractual rights to be placed in the least restrictive setting that is in their best interest.

106.    Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. This Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706.

107.    There is no adequate remedy at law for the continuing violations by Defendants of Class members' constitutional and statutory rights.

**FIRST CLAIM FOR RELIEF**
**Unlawful Arrest**
**Fourth Amendment to the U.S. Constitution; 8 U.S.C. § 1232; 5 U.S.C. §§ 702, 706**
(By Plaintiff Against Defendants Whitaker, Nielsen and Vitiello)

108.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

109.    At the time that ICE arrested each member of the Plaintiff Classes, the Class member had been released to a parent or other sponsor pursuant to an ORR sponsorship agreement and was living at liberty.

110.    Prior to his release to a sponsor under an ORR sponsorship agreement, each member of the Plaintiff Classes had been in ORR custody, and had been previously released to ORR by an agency of DHS pursuant to the TVPRA.

111.    Although ICE has broad authority to arrest undocumented persons, the TVPRA limits that authority in the case of Sponsored UCs, who have been previously arrested, placed in immigration proceedings, and transferred to the custody of HHS. Consistent with the TVPRA's mandate that "the care and custody of all unaccompanied alien children, including responsibility for their detention,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

where appropriate, shall be the responsibility of the Secretary of Health and Human Services," 8 U.S.C. § 1232(b)(1), from and after the time an arresting agency transfers custody of a UC to ORR, ORR takes responsibility for the UC care and custody, and is required to place the UC in "the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2).

112.  It is implicit in the structure and language of the TVPRA that once ORR makes a determination that it is in the best interest of a UC to be released to a parent or other sponsor, ICE may not simply rearrest a Sponsored UC on grounds of removability, but may act only in the face of changed circumstances that are exigent in nature and based on credible information. Were this not the case, the protections conferred by the TVPRA would be meaningless, as Sponsored UCs would be perpetually subject to rearrest by ICE.

113.  ICE lacked reliable information of changed or exigent circumstances that would justify the  arrests of Class members after ORR had made a determination that it was in the best interests of each member of the Plaintiff Classes to be released to a parent or other sponsor pursuant to an ORR sponsorship agreement; accordingly, ICE did not have a reasonable basis to rearrest the Class members.

114.  For all of the above reasons, ICE's arrests of Class members violated the TVPRA, 8 U.S.C. § 1232.

115.  For all of the above reasons, ICE's arrest of Plaintiffs also constituted an unreasonable seizure in violation of the Fourth Amendment to the U.S. Constitution.

116.  Unless enjoined, ICE will continue to rearrest minors who have been previously released to sponsors by ORR without reliable information of changed or exigent circumstances that would justify arrest in violation of the TVPRA, 8 U.S.C. § 1232 and the Fourth Amendment to the U.S. Constitution.

### SECOND CLAIM FOR RELIEF
**Deprivation of Liberty without Procedural Due Process**
**Fifth Amendment to the U.S. Constitution; 5 U.S.C. §§ 702, 706**
(By Plaintiff Against All Defendants except Defendant Cissna)

117.  Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

118. The Fifth Amendment to the U.S. Constitution protects all "persons" from deprivation of liberty without due process of law.

119. The members of the Plaintiff Classes have liberty interests in family integrity, which is protected by procedural due process.

120. Confinement in a secure, residential treatment centers, or staff secure ORR contract facility is a significant deprivation of liberty.

121. In making its determinations to place Class members in secure, residential treatment centers, and staff secure facilities, ORR relies on DHS's unsubstantiated allegations of gang membership and fails to provide Class members, their attorney, and their sponsors notice and an opportunity to be heard before a neutral decision maker, to examine the evidence upon which ORR purports to base its determinations, and to cross-examine witnesses.

122. In addition to unlawfully transporting Plaintiffs far from family to detain them in secure facilities, Defendants fail to consistently transfer Plaintiffs who are "stepped down" to lower security facilities to available facilities near Plaintiffs' homes and families.

123. By these actions, Defendants have violated and, unless enjoined, will continue to violate Class members' procedural due process rights under the Fifth Amendment.

### THIRD CLAIM FOR RELIEF
### Excessive Restraint of Liberty
### Fifth Amendment to the U.S. Constitution; TVPRA (8 U.S.C. § 1232); 5 U.S.C. §§ 702, 706
(By Plaintiff Against All Defendants except Defendant Cissna )

124. Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

125. The TVPRA requires that unaccompanied minors in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child," and other protections to ensure compliance with the "least restrictive setting" standard and family reunification. 8 U.S.C. § 1232(c).

126. The Due Process Clause of the Fifth Amendment permits civil detention of individuals only where it is reasonably related to the Government's stated interests in preventing flight risk and danger.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

127.     Members of the Plaintiff Classes do not meet Defendants' own criteria for placement in a secure or staff secure care facility.

128.     To the extent Class members meet Defendants' criteria for placement in a secure or staff secure care facility, those criteria are so overbroad as to impose liberty restrictions that are not reasonably related to Defendants' interests.

129.     Detention of Class members in secure or staff secure facilities is so unnecessarily restrictive as to be punitive in nature and therefore violates their right to substantive due process.

130.     Defendants have violated, and, unless enjoined, will continue to violate, Class members' rights under the TVPRA and the substantive due process component of the Fifth Amendment.

**FOURTH CLAIM FOR RELIEF**
**Denial of Immigration Benefits**
**Fifth Amendment to the U.S. Constitution; 5 U.S.C. §§ 702, 706**
(By Plaintiff Against All Defendants)

131.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

132.     The Fifth Amendment right to due process also includes the right to apply for Immigration Benefits to which an individual is eligible and to have such an application adjudicated fairly.  The APA also prohibits Defendants from taking action that is arbitrary and capricious, contrary to law, or unconstitutional, and requires the fair adjudication of immigration benefits that is consistent with law.

133.     Defendant DHS has issued memos directing that, due to alleged gang affiliation, Class members should be denied any Immigration Benefits, including but not limited to SIJ status, U-visa status, and T-visa status, or release from custody pending their removal from the United States.

134.     Based on unsubstantiated gang allegations, and without providing Class members a meaningful opportunity to rebut those allegations, Defendant USCIS denies and revokes approval for Immigration Benefits for which Class members are eligible under U.S. and international law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

**135.** Through the above described conduct, Defendants have violated and, unless enjoined, will continue to violate Class members' rights to a fair adjudication of their applications for Immigration Benefits under the Fifth Amendment to the U.S. Constitution and the APA.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

**1.**     A declaration that Defendants have violated the rights of Plaintiff Class members under the First, Fourth, and Fifth Amendments to the U.S. Constitution, the TVPRA, and the INA in connection with their arrest, transportation, and detention to secure or staff secure detention facilities and their denial of Immigration Benefits;

**2.**     A declaration that:

    **a.**     ICE may not rearrest UCs who have previously been released to the care and custody of ORR, including those that ORR has released to the care and custody of a parent or other sponsor, without reliable evidence of changed circumstances that are sufficiently serious and exigent to justify arrest;

    **b.**     Before placing a Sponsored UC into custody, ORR must provide the UC notice of the accusations and the basis of the accusations upon which ORR predicates its custody decision and an opportunity to respond to that evidence at a hearing before a neutral decision maker in which ORR has the burden of justifying the custody decision and the UC has the right to be represented by counsel and cross-examine witnesses;

    **c.**     ORR may not place a UC in confinement in a secure detention center, residential treatment center, or staff secure detention center absent admissible evidence of non-trivial criminal conduct or evidence that the UC poses a danger to himself or others, and dangerousness cannot be based on gang allegations based in whole or in part on clothing, appearance, and associations; and

    **d.**     Defendants may not deny access to Immigration Benefits, including by interfering in a UC's state court proceedings, based in whole or in part on gang allegations that are based solely on clothing, appearance, and associations;

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

**3.**     An order certifying a class or classes consisting, in whole or part, of all Sponsored UCs who are rearrested by Defendants on a removability warrant based on allegations of changed circumstances, including but not limited to allegations of gang affiliation, or such class or classes as the Court may deem appropriate;

**4.**     A permanent injunction ordering Defendants, and all persons acting under their direction:

**a.**     to immediately afford Class members who are currently in custody in secure detention centers, residential treatment centers, or staff secure facilities access to the evidence upon which ORR based its custody decision and an opportunity to be heard before a neutral decision-maker regarding that evidence, including the opportunity to cross-examine witnesses upon whose statements ORR relies;

**b.**     to immediately transfer Class members in staff secure facilities to a facility within no more than two hours' driving distance from their guardians, sponsors or representatives;

**c.**     to refrain from arresting UCs who were previously released by ORR to a parent or other sponsor without reliable information of changed circumstances that are sufficiently serious and exigent to justify arrest;

**d.**     to afford Class members who come into ORR custody in the future and as to whom ORR receives or makes a recommendation to place in secure custody notice of the accusations and the basis of the accusations upon which ORR predicates its custody decision and an opportunity to respond to that evidence at a hearing before a neutral decision maker in which ORR has the burden of justifying the custody decision and the UC has the right to be represented by counsel and cross-examine witnesses before transferring the UC to secure custody or within 48 hours of referral to ORR, whichever comes first; and

**e.**     to refrain from interfering with Class members' access to Immigration Benefits including by detaining them and denying Immigration Benefits due to unsubstantiated gang allegations, including gang allegations that are based solely on clothing, appearance, and associations;

**5.**     Attorneys' fees and costs; and

**6.**     For such other and further relief as the Court may deem proper.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC

Dated:      November 15, 2018          AMERICAN CIVIL LIBERTIES UNION
                                       FOUNDATION OF NORTHERN CALIFORNIA


                                       By: */s/* William S. Freeman
                                              William S. Freeman
                                              Sean Riordan

                                       COOLEY LLP


                                       By: */s/* Martin S. Schenker
                                              Martin S. Schenker
                                              Nathaniel R. Cooper
                                              Ashley K. Corkery


                                       ACLU FOUNDATION IMMIGRANTS' RIGHTS
                                       PROJECT


                                       By: */s/* Stephen B. Kang
                                              Stephen B. Kang
                                              Judy Rabinovitz

                                       LAW OFFICES OF HOLLY S. COOPER


                                       By: */s/* Holly S. Cooper
                                              Holly S. Cooper


                                       NEW YORK CIVIL LIBERTIES UNION


                                       By: */s/* Paige Austin
                                              Paige Austin
                                              Aadhithi Padmanabhan
                                              Christopher Dunn


                                       *Attorneys for Petitioner/Plaintiff,* on behalf of
                                       herself and others similarly situated.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

31.

2ND AMENDED PETITION FOR WRIT OF HABEAS CORPUS &
CLASS ACTION COMP. FOR INJUNCTIVE & DECL. RELIEF
CASE NO.: 3:17-CV-03615-VC