AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
WILLIAM S. FREEMAN (SBN 82002)
SEAN RIORDAN (SBN 255752)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: wfreeman@aclunc.org
        sriordan@aclunc.org

COOLEY LLP
MARTIN S. SCHENKER (SBN 109828)
ASHLEY K. CORKERY (SBN 301380)
EVAN G. SLOVAK (SBN 319409)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
Email: mschenker@cooley.com
        acorkery@cooley.com
        eslovak@cooley.com

LAW OFFICES OF HOLLY S. COOPER
HOLLY S. COOPER (SBN 197626)
P.O. Box 4358
Davis, CA 95617
Telephone: (530) 574-8200
Facsimile: (530) 752-0822
Email: hscooper@ucdavis.edu

Attorneys for Plaintiff

ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
STEPHEN B. KANG (SBN 292280)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0770
Facsimile: (212) 395-0950
E-mail: skang@aclu.org

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
CHRISTOPHER DUNN
AMY BELSHER
JESSICA PERRY
125 Broad Street, 19th Floor
New York, NY 10004
Telephone: (212) 607-3300
Facsimile: (212) 607-3318
Email: dcunn@nyclu.org
        abelser@nyclu.org
        jperry@nyclu.org

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Ilsa Saravia, as next friend for A.H., a minor, and on behalf of herself individually and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>William Barr, Attorney General, et al.,<br><br>Defendants. | Case No. 3:17-cv-03615-VC<br><br>Honorable Vince Chhabria<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A.  Procedural History ................................................................................ 3

    B.  Settlement Negotiations ....................................................................... 5

    C.  Material Terms of the Proposed Settlement........................................ 6

III. LEGAL STANDARD......................................................................................... 8

IV. ANALYSIS ........................................................................................................ 9

    A.  The Requirements of Rule 23(a) Are Satisfied................................... 9

    B.  The Requirements of Rule 23(b)(2) Are Satisfied............................ 13

    C.  The Proposed Settlement Falls Well Within the Range of Possible Approval.......... 14

    D.  The Proposed Notice Form and Notice Plan Is Appropriate. ................................... 16

V.  CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s**

**Cases**

*Al-Harbi v. Immigration & Naturalization Serv.*,
   284 F.3d 1080 (9th Cir. 2002) ........................................................................9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................9, 13

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ......................................................................11

*Arnott v. U.S. Citizenship & Immigration Servs.*,
   290 F.R.D. 579 (C.D. Cal. 2012)..............................................................10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ......................................................................11

*Gray v. Golden Gate Nat'l Rec. Area*,
   279 F.R.D. 501 (N.D. Cal. 2011)..............................................................14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................9, 11

*Hanon v. Dataprods. Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................12

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
   305 F.R.D. 164 (N.D. Cal. 2015)......................................................9, 10, 12

*Lilly v. Jamba Juice Co.*,
   No. 13-cv-2998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .........................14, 16

*Lynch v. Rank*,
   604 F. Supp. 30 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984) ..................12

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................................11

*Nwabueze v. AT&T Inc.*,
   No. 09-cv-1529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ..............................8

*Pecover v. Elec. Arts Inc.*,
No. 08-cv-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)..............................13

*Perez-Funez v. Dist. Dir., I.N.S.*,
611 F. Supp. 990 (C.D. Cal. 1984) .......................................................10

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) .............................................................15

*Saravia for A.H. v. Sessions*,
905 F.3d 1137 (9th Cir. 2018) ............................................................4

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................ *passim*

*Stott v. Capital Fin. Servs., Inc.*,
277 F.R.D. 316 (N.D. Tex. 2011) ........................................................17

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .........................................9, 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................................10

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ...........................................................14

**Statutes**

5 U.S.C. § 706
§ 706(2)......................................................................................4
§ 706(2)(A), (D)..........................................................................5

8 U.S.C. § 1232
§ 1232(b)(3) & (c)(2)(A) ..............................................................3
§ 1232(c)(2)(A)..........................................................................5

Equal Access to Justice Act ..............................................................9

28 U.S.C. § 2412(d)(2)(G)...........................................................9

United States Constitution, Fourth Amendment.....................................4

United States Constitution, Fifth Amendment....................................4, 5, 11

Trafficking Victims Protection Reauthorization Act ................................................2, 4, 5

**Other Authorities**

Fed.R.Civ.P.
    Rule 23 ................................................................................................2, 9
    Rule 23(a)............................................................................................... *passim*
    Rule 23(a)(1) .........................................................................................10
    Rule 23(a)(2) .........................................................................................10
    Rule 23(a)(2) .........................................................................................11
    Rule 23(a)(3) .........................................................................................11
    Rule 23(a)(4) .........................................................................................12
    Rule 23(b) ......................................................................................9, 13, 14
    Rule 23(b)(2) .........................................................................................1
    Rule 23(b)(2) ............................................................................9, 13, 14, 18
    Rule 23(b)(3) .........................................................................................13
    Rule 23(c)(2)(A) ....................................................................................17
    Rule 23(e)...........................................................................................1, 8

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

PLEASE TAKE NOTICE that on October 15, 2020 at 10:00am, or soon thereafter in accordance with General Order No. 72-5, Plaintiff will and hereby does move the Court for an order granting preliminary approval of the settlement negotiated with Defendant in this Action.

Plaintiff requests that the Court: (1) find it will likely approve the settlements; (2) find it will likely certify the settlement classes for settlement purposes; (3) appoint Plaintiff as the class representative for the settlement classes for purposes of disseminating notice; (4) appoint Martin Schenker, Ashley Corkery, and Evan G. Slovak (Cooley LLP); Stephen Kang (ACLU Immigrants' Rights Project); William S. Freeman and Sean Riordan (ACLU Northern California); Holly Cooper (Law Offices of Holly Cooper); Amy Belsher and Jessica Perry (NYCLU) (collectively, "Class Counsel") as counsel for the settlement classes; (5) direct notice to the settlement classes in connection with the settlements, and approve the form and manner thereof; (6) approve of Plaintiff's proposed notice methods; and (7) set a schedule for final approval of the settlements and Plaintiff's request for attorneys' fees and expenses. This motion is supported by the memorandum of points and authorities, all papers and records on file in this matter, and such other matters as the Court may consider.

## I.  INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (e), Plaintiff respectfully requests that the Court: (i) preliminarily approve the proposed class-wide injunctive relief settlement (the "Settlement") set forth in the attached settlement agreement (the "Agreement") (Exh. 1); (ii) certify the proposed class of immigrant minors described in the Agreement for settlement purposes (the "Settlement Class" or "Class Members"); (iii) approve the proposed form and plan of notice (Exh. 1); and (iv) schedule a final fairness hearing, as set forth in the attached stipulated order ("Proposed Order"). As set forth herein, the Settlement is more than fair and reasonable to Class Members and therefore plainly warrants approval by this Court.

Plaintiff Ilsa Saravia ("Plaintiff") brought this class action lawsuit as next friend for A.H., a minor at the time suit was filed, to protect the constitutional and statutory rights of immigrant children who came to this country as unaccompanied minors, were detained by the United States Government

(the "Government"), released by the Office of Refugee Resettlement ("ORR") to a parent or sponsor ("Sponsored UCs"), and subsequently rearrested and detained by the Government on allegations of gang affiliation. On November 20, 2017, this Court issued an order (the "Order," ECF No. 100), granting preliminary injunctive relief to a provisionally certified nationwide class of Sponsored UCs who were rearrested by the Government based on allegations of gang affiliation. The Order required that the Government provide these minors with a hearing before a neutral immigration judge to determine whether changed circumstances or dangerousness justified the rearrest ("*Saravia* Hearings"). The vast majority of Class Members were released following their *Saravia* Hearings, proving the necessity of requiring the Government to present facts supporting its rearrests to a neutral decisionmaker.

The Settlement retains the protections contained in the Court's preliminary Order, adds procedural protections related to *Saravia* Hearings, and ensures that the Government will not deny immigration benefits (including Special Immigrant Juvenile ("SIJ") status) based on gang allegations. The Settlement was reached after vigorous litigation, two in-person settlement conferences with the Honorable Magistrate Judge Laurel Beeler, and extensive direct negotiations between counsel for the parties. The Settlement meets the requirements for judicial approval under Rule 23 and should be approved by the Court.

## II. BACKGROUND

This lawsuit began with 2017 Government operations to detain undocumented Central American immigrants allegedly involved with gangs and transport them to high-security detention centers, often far away from their homes. Many of the targets of these operations were children, mostly boys aged 15 to 17, who had entered the United States as unaccompanied minors, had been previously apprehended by the Department of Homeland Security ("DHS") and transferred to the custody of the Office of Refugee Resettlement of the Department of Health and Human Services ("HHS"), and later released to live with a parent or other sponsor while they contested removal. These Sponsored UCs were entitled to special protections pursuant to the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), including that a UC detained by federal immigration authorities

be "placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(b)(3) & (c)(2)(A).

Despite these statutory protections, ICE rearrested dozens of Sponsored UCs without notice to their parents or immigration attorneys. The "evidence" forming the basis for these rearrests consisted almost entirely of uncorroborated, multiple-hearsay statements from unidentified local law enforcement personnel. Typical were allegations that a child had been seen in an area "frequented by gang members," had worn clothing purportedly associated with gang membership, had allegedly "self-admitted" gang membership, or had written the country code for El Salvador into a school notebook. Whenever any allegation of gang affiliation was made, ORR consistently overrode its own decision matrix and automatically placed the child in secure facilities, without notice, hearing or other opportunity to rebut the allegations.

## A. Procedural History

This case was originally brought by Plaintiff Saravia on behalf of a single minor, A.H., on June 22, 2017. *See* Pl. Pet., ECF No. 3. At a hearing on A.H.'s motion for a temporary restraining order, the Court observed that ORR had fallen short of its obligation to investigate information it had received about A.H. before placing him in a secure facility. *See* 6/29/2017 Hr'g Tr., ECF No. 22, at 5:11-6:4. Shortly thereafter, Plaintiff's counsel discovered that the Government's conduct extended far beyond A.H.'s individual case and that the Government was systematically re-arresting unaccompanied children based on gang allegations. On August 11, 2017, Plaintiff filed an amended petition, which added two named Plaintiffs, and sued on behalf of three minor children and sought to represent a putative class challenging the Government's above-described practices.[1] *See* Pls. First Am. Pet., ECF No. 31. The Parties engaged in expedited discovery, including the production of a significant volume of documents by the Government. *See* Joint Disc. Br., ECF No. 36.

Plaintiff moved for a preliminary injunction and provisional class certification on September 25, 2017, after which the Court held two hearings during which the Government presented witnesses and Plaintiffs had the opportunity for cross-examination. *See* Pl. Mot., ECF No. 61; *see also*

---

[1] The other two named Plaintiffs were later dismissed. As used hereinafter, "Plaintiff" refers to Ilsa Saravia, suing as next friend for A.H.

10/27/2017 Hr'g Tr., ECF No. 98; 11/1/2017 Hr'g Tr., ECF No. 170. On November 20, 2017, the Court issued an order granting a class-wide preliminary injunction for a provisionally certified class of Sponsored UCs requiring that the Government establish changed circumstances or dangerousness at a *Saravia* Hearing to justify the Sponsored UC's rearrest and to support continued detention. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197-98 (N.D. Cal. 2017). A series of *Saravia* Hearings were held following the issuance of the Court's Order. ***Nearly 90%*** of Sponsored UCs who were detained at the time of the Order prevailed at their hearings and were released to their prior sponsors. *See* Defs. Chart re: *Saravia* Hearings, ECF No. 124-1. The Government appealed the Order, and, on October 1, 2018, the Ninth Circuit affirmed the Court's preliminary injunction. *See Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

On November 15, 2018, Plaintiff filed a Second Amended Petition (the "SAP"), which, among other things, added new factual allegations based on information that Plaintiff learned through discovery and other events following the Court's Order. *See* SAP, ECF No. 164. The SAP, which is the operative pleading, sets forth four claims for class-wide relief:

**Claim 1** challenges the rearrest of Sponsored UCs based on allegations of gang affiliation in violation of the Fourth Amendment, the TVPRA, and the Administrative Procedure Act (5 U.S.C. § 706(2)). *See* SAP, ¶¶ 108-116. The rearrests of Sponsored UCs are not (and do not purport to be) based on cause that the UCs have committed any federal crime. *See id*. ¶¶ 47-49, 65. Instead, they are styled as administrative arrests relying on the UCs' status as a non-citizen and purported "removability." *See id*. This claim alleges that, because Class Members were already arrested for their alleged removability at the time they first came to the United States (in many cases years prior to the rearrest at issue), it is unreasonable and unlawful for the Government to rearrest them based on the same removability charge absent changed circumstances or dangerousness. *See id*. ¶¶ 112-13.

**Claim 2** challenges the Government's systematic violation of the procedural due process clause of the Fifth Amendment. *See* SAP, ¶¶ 117-23. As this Court held, and the Ninth Circuit affirmed, "due process requires the government to give the minor a prompt hearing before an immigration judge or other neutral decision-maker, where the government must set forth the basis for its decision to rearrest the minor, and where the minor and his sponsor may seek to rebut the

government's showing." *Saravia*, 280 F. Supp. 3d at 1194. The results of *Saravia* Hearings to date further validate this holding and demonstrate the importance of the procedural safeguards sought by this claim. *See* SAP, ¶ 94; *see also* Defs. Chart re: Saravia *Hearings*, ECF No. 124-1. There can be no dispute that Class Members have weighty liberty interests in freedom from confinement and family unity, which are encroached by the challenged rearrests. *See* SAP, ¶¶ 105, 119-20.

**Claim 3** challenges the conditions of Class Members' confinement under the substantive Due Process Clause and the TVPRA. *See* SAP, ¶¶ 124-30. This claim alleges that, given the flimsiness and unreliability of the Government's allegations of gang affiliation, holding Class Members in secure (or, in most cases, any) confinement was unreasonable. *See id*. ¶¶ 127-29. Indeed, ORR regularly overrode the recommendations of its own placement matrix to place Class Members in secure facilities, rather than in the less restrictive facilities the matrix advised based on these Class Members' circumstances. *See id*. ¶ 41. Detaining these minors in secure facilities violates the Due Process Clause because it is a "punitive" restriction on liberty that bears no reasonable relationship to any legitimate governmental purpose. *See id*. ¶ 129. The Government's detention practices also violates the TVPRA, which requires that children be placed in the "least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

**Claim 4** challenges the Government's policy or practice to deny, revoke, and obstruct UCs' access to immigration benefits on the basis of alleged gang affiliation, in violation of the APA and the Due Process Clause of the Fifth Amendment. *See* SAP, ¶¶ 131-35; 5 U.S.C. § 706(2)(A), (D); U.S. Const. Am. V. The Government acts arbitrarily in violation of the APA by considering allegations of gang affiliation in determining immigration benefit eligibility, acts in excess of its statutory authority in violation of the APA by rejecting the state court factual determinations in denying benefits based on allegations of gang affiliation, and violates procedural due process by failing to provide procedural safeguards when denying or revoking immigration benefits to eligible unaccompanied minors on the basis of gang allegations. *See* SAP, ¶¶ 132-34.

## B.  Settlement Negotiations

On January 29, 2019, counsel for the Government reached out to class counsel to discuss the possibility of mediation. The parties engaged in initial negotiations for several months, and also

engaged in settlement discovery through the summer of 2019.

The parties participated in a settlement conference before Judge Beeler on July 16, 2019. *See* Minute Order dtd. 7/17/19, ECF No. 226. Following the settlement conference, the parties exchanged several draft settlement agreements and participated in numerous conference calls. . On December 9, 2019, the parties participated in a second settlement conference before Judge Beeler. *See* Minute Order dtd. December 9, 2019, ECF No. 231. Additional settlement negotiations ensued over several months, involving telephone conversations and the exchange of roughly a dozen complete drafts of a proposed settlement agreement. The negotiations were at times difficult, with the respective parties asserting competing proposals and expressing strongly held and divergent views. After many months of back-and-forth, the parties subsequently reached an agreement in principle in early 2020, and finalized the agreement on September 15, 2020.

## C. Material Terms of the Proposed Settlement

The Agreement defines two classes, one of which is a subset of the other. First, the Agreement defines the following class of Sponsored UCs who will receive relief pursuant to Claims 1-3 of (the "Claims 1-3 Settlement Class"):

> [A]ll noncitizen minors[2] meeting the following criteria: (1) the noncitizen minor came to the United States as an unaccompanied minor; (2) the noncitizen minor was previously detained in ORR custody and then released by ORR to a sponsor; and (3) the noncitizen minor has been or will be rearrested by DHS[3] on the basis of a removability warrant based in whole or in part on allegations of gang affiliation. This class expressly excludes arrests of noncitizen minors who already are subject to final orders of removal.

The Agreement then includes a sub-class specific to Claim 4 (the "Claim 4 Benefits Subclass"), which is defined as follows:

---

[2] The parties agree that the Settlement Class includes any children designated as "accompanied children" ("ACs," also referred to herein as "UCs") at the time of rearrest, as long as such children otherwise meet the class definition.

[3] Most Class Members to date have been rearrested by ICE, and the parties anticipate that ICE will remain the principal component within DHS that conducts rearrests. In the event a Class Member is rearrested by United States Custom and Border Protection ("CBP"), a component agency of DHS, the provisions of Section II.J will apply. The Settlement Class expressly excludes individuals entering the United States whom CBP encounters or apprehends at or near the border as a result of routine patrol or checkpoint operations.

> [This class includes] all Settlement Class Members who also applied for asylum, SIJ status, T or U nonimmigrant status, or a waiver of inadmissibility or application for adjustment of status that is related to such an application for asylum, SIJ status or T or U nonimmigrant status, before the age of 21, and had or will have an application for asylum, SIJ status, T or U nonimmigrant status, or a waiver of inadmissibility or adjustment of status that is related to such an application denied by USCIS [IU.S. Citizenship and Immigration Services] when any information that the noncitizen is or may have been affiliated with a gang is a basis for the denial.

The sections of the Agreement then describe in detail the benefits afforded to the members of each class.

For the Claims 1-3 Benefit Class, the Agreement sets forth the policies and procedures the Government will follow when it seeks to rearrest or detain a nonimmigrant minor on allegations of gang affiliation. One such requirement obligates ICE officers to determine in advance whether someone they intend to rearrest on suspicion of gang membership or affiliation is also a Sponsored UC (a material "pre-deprivation" benefit to Class Members that extends beyond the relief afforded by the preliminary injunction Order). ICE officers are obligated to contact other ICE officers and lawyers for guidance regarding the legal requirements applicable to Class Members, and to determine whether the targeted UC's circumstances have sufficiently changed since release such that rearrest is justified. If the individual Class Member's circumstances had not changed between their rearrest and their most recent release from ORR custody, the Class Member will not be rearrested.

If the Government determines that changed circumstances exist and proceeds to rearrest the Class Member, the Agreement affirms the Class Member's right to a *Saravia* Hearing and lays out detailed procedures governing the hearing. Among other things, the Agreement provides that the Government must give notice to the Class Member or his or her counsel within 48 hours of rearrest; that the Government must provide the Class Member with information explaining the purpose and nature of the proceedings; and that the *Saravia* Hearing must occur within ten days of rearrest (though the Class Member may request additional time to prepare or seek out a lawyer). Further, the Agreement provides that *Saravia* Hearings cannot occur at inconvenient or overly burdensome locations, and provides Class Members with some choices regarding venue. At *Saravia* Hearings, the Government has the burden to show changed circumstances or dangerousness since the Class Member was last released to their sponsor. If the Class Member prevails, they must be released to their prior

sponor within three calendar days. New protections and procedures also govern situations where the Class Member's prior sponsor is no longer available, the Government has evidence of abuse neglect, or other facts indicate that the Class Member's safety is in jeopardy.

For the Claim 4 Benefits Subclass, the Agreement limits the ability of USCIS to deny specified immigration benefits based on allegations of gang membership or affiliation, and includes important programmatic changes particularly with respect to USCIS's consideration of gang allegations in applications for SIJ Status. Class Members who are denied immigration benefits will receive the evidence underlying the Government's decision to deny benefits, and will be entitled to respond to that evidence with arguments and evidence of their own. Furthermore, any Subclass Member who was previously denied one of the applicable immigration benefits because of purported gang affiliation may apply for a review of the decision.

If the proposed Agreement becomes final, Class Members will be prohibited from pursuing any "causes of action for declaratory or equitable relief, including injunctive relief, known or unknown, that . . . relate[s] to any alleged unlawful rearrest of Class Members on the basis of allegations of gang affiliation" that existed prior to the preliminary approval of this Agreement and which were or could have been alleged in this action." The proposed Agreement does not release claims for money damages, nor does it release claims for injunctive, declaratory, or equitable relief that are not immigration- or asylum-related, nor claims that are not based on the allegations made in this action.

III.    **LEGAL STANDARD**

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citations omitted). Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval. "Court approval requires a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Nwabueze v. AT&T Inc.*, No. 09-cv-1529, 2013 WL 6199596, at *3 (N.D. Cal. Nov. 27, 2013) (citation omitted). By this

motion, Plaintiff seeks to complete the first step.[4]

As part of the preliminary approval process, the Court determines whether the class is proper for settlement purposes, and, if so, preliminarily certifies the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To support certification, a court must find each of Rule 23(a)'s requirements (*i.e.*, numerosity, commonality, typicality, and adequacy of representation) satisfied. In addition, the party seeking certification must show that the proposed class satisfies "one of the subsections of Rule 23(b)"—here, Rule 23(b)(2), which "permits certification where 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 175 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 23(b)(2)). In conducting the certification analysis, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

In deciding on preliminary approval, the Court determines whether the proposed settlement warrants consideration by members of the class and a later, full examination by the Court at a final approval hearing. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This does not require the Court to perform a fulsome analysis of the settlement at this time, but rather merely to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

## IV.    ANALYSIS

### A.    The Requirements of Rule 23(a) Are Satisfied.

Rule 23(a) provides four baseline requirements for certifying a class: numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23. The Court already found that all four

---

[4] Counsel for Plaintiff will seek attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), which provides that a prevailing party may file its motion for attorneys' fees within 30 days of a "final judgment," which is defined as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). *See also Al-Harbi v. Immigration & Naturalization Serv.*, 284 F.3d 1080, 1082 (9th Cir. 2002) (holding that "final judgment" under EAJA is "the date on which a party's case has met its final demise, such that there is no longer any possibility that the district court's judgment is open to attack") (quotation marks and citation omitted).

requirements were satisfied with respect to the provisional class. *Saravia*, 280 F. Supp. 3d at 1202-05 (holding that all four requirements of Rule 23(a) were met with respect to the provisional class). As discussed below, they are likewise satisfied here.

***Numerosity.*** Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Where a plaintiff seeks injunctive and declaratory relief, the numerosity "'requirement is relaxed and plaintiffs may rely on [] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed []class . . . is sufficient to make joinder impracticable.'" *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (citation omitted).

As the Court previously held with respect to the provisional class, the numerosity requirement is readily satisfied, because the protections afforded under the Agreement extend to hundreds if not thousands of Sponsored UCs.[5] *See Saravia*, 280 F. Supp. 3d at 1203. Indeed, over forty children have received *Saravia* Hearings to date while countless others have been spared an unlawful rearrest by the deterrent effect of these hearings and the Court's Order. *See Kamakahi*, 305 F.R.D. at 183 ("[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.") (citation omitted). Moreover, "[i]n light of the tens of thousands of undocumented minors released to sponsors and currently living in the United States" the class will only continue to grow as the government learns of, and contemplates acting on allegations of gang affiliation to justify rearrest. *Saravia*, 280 F. Supp. 3d at 1203. Accordingly, the numerosity requirement is satisfied.

***Commonality.*** The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff alleges the existence of a "common contention" that is "capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement has "'been construed

---

[5] According to ORR published data, there are tens of thousands of Sponsored UCs living in the custody of a parent or other sponsor. *See Saravia*, 280 F. Supp. 3d at 1203. Any number of these Sponsored UCs are at risk of rearrest and transfer to a detention center, thus benefitting from the policies and procedures due to them as Class Members.

permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citation omitted). Indeed, "commonality only requires a single significant question of law or fact[,]" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (citation omitted), and that is particularly so where a suit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).

The proposed Settlement Class presents claims that raise common questions of fact and law. With respect to the Claims 1-3 Settlement Class, the claims raise the common question of whether the Government violates the Due Process Clause of the Fifth Amendment and other federal laws when it seeks to rearrest a Sponsored UC in whole or in part on allegations of gang affiliation. This claim is common to all Class Members. This Court previously concluded as much, explaining that the basic question undergirding Plaintiff's allegations is whether "DHS and ORR policies violate[d] class members' rights in a systemic way." Saravia, 280 F. Supp. 3d at 1204 (quoting Parsons v. Ryan, 754 F.3d 657, 675 (9th Cir. 2014) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." (alteration and citation omitted))). Accordingly, the claims underlying the Claims 1-3 Settlement Class are sufficiently common to satisfy Rule 23(a)(2)'s permissive commonality standard.

Likewise, the central legal question presented by Claim 4 is common to the entire class. The Government policies at issue resulted in the same injury to all Class Members, and the Agreement redresses this injury by instituting a uniform set of procedures. *See Parsons*, 754 F.3d at 678 (finding commonality and noting "although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [] policy or practice that creates a substantial risk of serious harm" (citations omitted)). Commonality is therefore satisfied.

***Typicality.*** The next requirement of Rule 23(a) is typicality, which focuses on the relationship between the facts and issues of the class relative to the representatives of that class. Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test

of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

The typicality requirement will occasionally merge with the commonality requirement, see Parsons, 754 F.3d at 687, which is met for the Settlement Class. This Court previously found the typicality element was satisfied for purposes of the provisionally certified class because: (1) the named Plaintiff and proposed Class Members were noncitizen minors who came to the United States unaccompanied and were subjected to the same practice; (2) the due process and other federal claims raised by Plaintiff and the proposed Class Members were the same; and (3) Plaintiff and proposed Class Members suffered the same or similar injury. Saravia, 280 F. Supp. 3d at 1204. These same elements apply to the Claims 1-3 Settlement Class, and the Court's prior analysis demonstrates that the typicality requirement is satisfied. Similarly, the typicality requirement is also met for the Claim 4 Benefits Subclass. Plaintiff is typical of the members of the Claim 4 Benefits Subclass because he applied for immigration benefits prior to turning 21, USCIS unlawfully withheld approval of his SIJ Status Petition and indicated an intent to deny the benefit based on alleged gang affiliation. See SAP, ¶¶ 65, 68, 72, 79, 82.

**Adequacy.** The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied "if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel." *Kamakahi*, 305 F.R.D. at 184. Class counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984).

Here, Plaintiff has fairly and adequately protected the interests of the proposed Settlement Class, and will continue to do so. Plaintiff was rearrested by the Government on allegations of gang affiliation and USCIS unlawfully withheld approval of his SIJ Status Petition and indicated an intent to deny the benefit based on alleged gang affiliation. *See* SAP, ¶¶ 65, 68, 72, 79, 82. As a result,

1  Plaintiff's interests are aligned with the remaining putative class. *See Saravia*, 280 F. Supp. 3d at

2  1204-05.

3  Likewise, class counsel are attorneys from a prominent law firm and with expertise in class

4  actions, together with attorneys from non-profit organizations that specialize in civil rights and

5  immigration law. *See* J. Mass Decl. ISO Provisional Class Certification, ECF No. 61-4 (detailing

6  William S. Freeman's qualifications and experience); M. Schenker Decl. ISO Provisional Class

7  Certification, ECF No. 61-5 (detailing Martin Schenker's, Nate Cooper's, and Ashley Corkery's

8  qualifications and experience); S. Kang Decl. ISO Provisional Class Certification, ECF No. 61-6

9  (detailing Stephen Kang's qualifications and experience). Collectively, these attorneys have extensive

10 background in litigating class actions, and have extensive experience in the underlying issues of

11 immigration law, constitutional law, and administrative law. *See Saravia*, 280 F. Supp. 3d at 1205

12 (acknowledging counsel's "experience litigating complex civil actions and cases involving" similar

13 issues). This is sufficient to meet the adequacy requirement. As described above, counsel negotiated

14 aggressively and at great length with counsel for Defendants to achieve a settlement that they believed

15 to be highly beneficial to the Class.

16 **B.     The Requirements of Rule 23(b)(2) Are Satisfied.**

17 The next issue for the Court is whether Plaintiff has shown that at least one of the requirements

18 of Rule 23(b) is met. *See Amchem Prods.*, 521 U.S. at 614-15. Under Rule 23(b)(2), class certification

19 may be appropriate where the defendant "has acted or refused to act on grounds that apply generally

20 to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

21 the class as a whole." *Parsons*, 754 F.3d at 688-89 (citations omitted). "That inquiry does not require

22 an examination of the viability or bases of the class members' claims for relief, does not require that

23 the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a

24 finding that all members of the class have suffered identical injuries." *Id.* at 688 (citations omitted).

25 Thus, "'Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class

26 is plainly more permissive than 23(b)(3)'s requirement that questions common to the class

27 *predominate* over individual issues.'" *Pecover v. Elec. Arts Inc.*, No. 08-cv-2820, 2010 WL 8742757,

28 at *14 (N.D. Cal. Dec. 21, 2010) (citation omitted). It is "'almost automatically satisfied in actions

primarily seeking injunctive relief.'" *Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (citation omitted). It is well-settled that "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate" under Rule 23(b)(2). *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Rule 23(b)(2) is met here for the Settlement Class. Plaintiff has sought injunctive relief from the Government's policy and practice of rearresting Sponsored UCs based on unfounded gang allegations, referring them to secure custody, and subjecting them to extended incarceration without notice or a right to be heard. Plaintiff has further sought relief from the denial of immigration benefits protected by statutes and federal law on the basis of such unfounded gang allegations. The Government has thus acted on grounds that "apply generally to the class." Fed. R. Civ. P. 23(b)(2). Plaintiff sought to enjoin the Government from further unlawful interference with Plaintiff's and the absent Class Members' due process right to, *inter alia*, hearings before a neutral factfinder. The proposed settlement plan resolves these claims for the class "as a whole" by addressing the Government's authority to rearrest or detain Class Members based in any part on allegations of gang affiliation. "Because a single injunction can protect all class members' procedural due process rights, the requirements of Rule 23(b)(2) are satisfied." *Saravia*, 280 F. Supp. 3d at 1205 (citation omitted).

## C. The Proposed Settlement Falls Well Within the Range of Possible Approval.

"Preliminary approval of a settlement [that meets the requirements of Rules 23(a) and 23(b)] is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lilly v. Jamba Juice Co.*, No. 13-cv-2998, 2015 WL 1248027 at *7 (N.D. Cal. Mar. 18, 2015) (internal quotation and citations omitted). In considering whether the settlement falls within the range of possible approval, courts look to "plaintiffs' expected recovery balanced against the value of the settlement offer," as well as the "risk and [ ] anticipated expense and complexity of further litigation." *Tableware*, 484 F. Supp. 2d at 1080. The proposed settlement here easily satisfies this requirement. As explained above, the proposed Agreement has played, and will continue to play, a critical role in protecting the constitutional rights of current or prospective Class Members who face potential rearrest

or denial of immigration benefits.

First, the Agreement is the product of hard-fought, non-collusive negotiations between the Government and Plaintiff. Prior to the parties' extensive negotiations, Plaintiff vigorously litigated a petition for writ of habeas corpus and a motion for preliminary injunction, including defeating the Government's appeal to the Ninth Circuit Court of Appeals, in order to bring the case to a position where settlement negotiations were appropriate. Following the determination of the appeal, as set forth above, Class Counsel engaged in difficult, protracted arms-length negotiations with Defendants and their counsel to obtain the settlement embodied in the Agreement. The parties' negotiations included roughly a dozen exchanges of settlement agreement drafts and two full-day in-person settlement conferences with the Honorable Judge Laurel Beeler in July and December 2019. This litigation, the views expressed by this Court and the Ninth Circuit, and the able assistance of Judge Beeler informed those arm's-length negotiations.

Moreover, when considering a proposed settlement, "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, counsel for all parties are well versed in class actions and immigration law and are fully capable of weighing the facts, law, and risks of continued litigation. Thus, "[e]xperienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time[.]" *Tableware*, 484 F. Supp. 2d at 1080. No evidence suggests the proposed settlement is collusive and, indeed, the extensive negotiation process—which included *two* in-person mediation sessions attended by numerous out-of-state attorneys before Judge Beeler—would disprove any such claim.

Additionally, the "substantive fairness and adequacy of the settlement confirms this view of the fair procedures used to reach the settlement." *Id.* The proposed Settlement provides for fair and meaningful procedures the Government must follow regarding how ICE may arrest a minor suspected of being gang members or affiliates. Under the proposed Settlement, ICE will be required to determine in advance of any rearrest whether the potential rearrestee is a minor, alert ICE officers and lawyers for guidance should ICE arrest a minor, and ensure any arrested Class Member receives a *Saravia*

Hearing. This is significant and meaningful relief. Similarly, the proposed Settlement ensures that all proposed Class Members who applied for asylum, SIJ, T or U nonimmigrant status, or a waiver of inadmissibility or application for adjustment of status related to those benefits before the age of 21, and who had their application revoked or denied by USCIS at least in part on the basis of gang affiliation, will have an opportunity to re-open those benefit applications and have them re-adjudicated pursuant to the procedures specified in the proposed Settlement. This, too, is significant relief and provides for protections that were not guaranteed should the parties have continued with litigation. Finally, the settlement "protects the rights of class members by ensuring that class members retain their individual damages claims." *Lilly*, 2015 WL 2062858, at *7.

Further litigation would have presented significant risks and burdens to both sides. Defendants contested the merits of Plaintiff's claims, and heavily disputed whether Plaintiff's requested relief is an appropriate remedy for the harms alleged. While Plaintiff enjoyed early successes securing injunctive relief and prevailing after Defendants' appeal, the Plaintiff Class still would have assumed a degree of risk by continuing to litigate these claims through trial, including on Claims 1, 3 and 4, which were not subject to the preliminary injunction contained in this Court's Order.

In contrast, the proposed Settlement provides significant, meaningful relief to Class Members. Plaintiff's Settlement Class is comprised of vulnerable noncitizen minors who have been, or will be, rearrested by the Government. And members of the Claim 4 Benefits Subclass are noncitizen minors who applied for certain immigration benefits but who have been or will be denied such benefits (without an opportunity to review and challenge the Government's evidence) because of alleged gang affiliation. The protections afforded in the proposed Settlement are the result of a detailed and intensive negotiation process, and was secured after extensive discovery and litigation. As a result, Plaintiff has a powerful interest in obtaining the relief the Agreement affords. By any measure, it is sufficiently fair to warrant preliminary approval.

### D. The Proposed Notice Form and Notice Plan Is Appropriate.

The parties have agreed to provide notice to the Settlement Class through several methods.

*First*, within fourteen days of preliminary approval, Defendants will compile and provide Plaintiff's counsel a list of all known Class Members. This list is to include, *inter alia*, the Class

Member's name and the last known address of any attorney who is currently entered as counsel before DHS, USCIS, or EOIR for the class member. Defendants will then directly notify (via U.S. Mail) the Settlement Class Members who are within the United States by providing them or their counsel with the attached notice form in English and Spanish and obtaining any waiver as appropriate.

*Second*, because many of the Settlement Class Members are or recently have been represented by counsel in connection with their immigration proceedings, Plaintiff's counsel will coordinate the dissemination of the attached notice form and the Agreement via electronic mail to list-servs of attorneys who provide immigration legal services to children. Plaintiff's counsel will do so within seven days of preliminary approval.

*Third*, notice will be disseminated within fourteen days of the Court's preliminary approval of the proposed settlement by publication through the follow means:

- Electronic postings on the websites of the National ACLU, ACLU of Northern California, and New York Civil Liberties Union Foundation in accessible formats in English and Spanish;

- Hard copy postings of the Class Notice in all ORR secure, staff-secure facilities, and residential treatment centers, and any DHS facilities where Settlement Class Members are reasonably likely to be held after rearrest; and

- Electronic postings in a reasonably accessible location on a website controlled by Defendants in accessible formats in English and Spanish.

All notices posted on websites shall remain available for a minimum of sixty days.

*Fourth*, the parties have engaged in extensive outreach to interested persons and organizations as part of the process of reaching the Agreement, and have had ample communication with these interested persons and organizations since the Agreement was reached.

Additionally, the content of the proposed notice form is appropriate. The form explains the basis of the lawsuits, the contours of the Settlement Class, the relief to which Settlement Class Members are entitled, the rights of Settlement Class Members (including the right to object), the date for submitting such objections, and the date for the fairness hearing. *See, e.g.*, *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (notice was appropriate under Rule 23(c)(2)(A)

where, as here, it "clearly provided the nature of the action, the definition of the Settlement Class, the terms of the settlement, the class members' options, including the fact that they could not exclude themselves, the claims, defenses, and the procedures surrounding the settlement"; "[c]lass members were further provided with the date of the fairness hearing and were given the opportunity to object to the settlement, which was described in clear terms"; and "[t]he scope of the class and effect of the Court's potential approval of the settlement were clearly explained to the recipients of the notice").

The proposed notice plan thus easily satisfies the Advisory Committee's standards for effecting class notice under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the attached proposed order preliminarily approving the Agreement, preliminarily certifying the proposed Settlement Class, and approving the proposed notice form and notice plan.

Dated: September 17, 2020              COOLEY LLP

                                       */s/ Martin S. Schenker*
                                       Martin S. Schenker
                                       Ashley K. Corkery
                                       Evan G. Slovak


Dated: September 17, 2020              AMERICAN CIVIL LIBERTIES UNION
                                       FOUNDATION OF NORTHERN CALIFORNIA

                                       */s/ William S. Freeman*
                                       William S. Freeman
                                       Sean Riordan


Dated: September 17, 2020              AMERICAN CIVIL LIBERTIES UNION
                                       IMMIGRANTS' RIGHTS PROJECT

                                       */s/ Stephen B. Kang*
                                       Stephen B. Kang

Dated: September 17, 2020    LAW OFFICES OF HOLLY COOPER

*/s/ Holly S. Cooper*
Holly S. Cooper


Dated: September 17, 2020    NEW YORK CIVIL LIBERTIES UNION
FOUNDATION

*/s/ Jessica Perry*
Jessica Perry
Amy Belsher

*Attorneys for Plaintiff*

## ATTESTATION

I hereby attest that concurrence in the filing of this document has been obtained from the Signatory of this document, pursuant to L.R. 5-1(i)(3).

*/s/ Martin S. Schenker*
Martin S. Schenker