# EXHIBIT 1

**ILSA SARAVIA, as next friend for A.H., a minor, and on her behalf,**

    **Plaintiff/Plaintiff,**

  vs.

**WILLIAM BARR, U.S. Attorney General, *et al.*,**

    **Respondents/Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:17-cv-03615

**SETTLEMENT AGREEMENT AND RELEASE**

Honorable Vince Chhabria

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff, Ilsa Saravia, as next friend for A.H., a minor at the time Saravia filed the above-captioned matter ("Plaintiff"), on behalf of themselves and all Class Members, and Defendants William P. Barr, Attorney General of the United States; Chad F. Wolf, Acting Secretary of Homeland Security; U.S. Department of Homeland Security ("DHS"); Tony H. Pham, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement ("ICE"); Alex M. Azar II, Secretary of Health and Human Services; U.S. Department of Health and Human Services ("HHS"); Lynn A. Johnson, Assistant Secretary for the Administration for Children and Families; Heidi H. Stirrup, Acting Director of the Office of Refugee Resettlement ("ORR"); Elicia Smith, Federal Field Specialist of the Office of Refugee Resettlement of the United States; Joseph B. Edlow, Deputy Director for Policy, U.S. Citizenship and Immigration Services ("USCIS"); and James McHenry, Director of the Executive Office for Immigration Review ("EOIR") (collectively, the "Parties"), by and through their attorneys. This Agreement is effective as of the date it is executed by all Parties and upon final approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, as set forth below.

**RECITALS**

On June 22, 2017, Plaintiff filed a petition for writ of habeas corpus against HHS. On August 11, 2017, Plaintiff filed a first amended petition for writ of habeas corpus and class action complaint for injunctive and declaratory relief to add additional substantive claims, parties and class allegations, and to seek additional relief ("FAC").

On September 25, 2017, Plaintiff filed a motion for a preliminary injunction and for provisional class certification.

On November 20, 2017, the United States District Court for the Northern District of California granted Plaintiff's motion for preliminary injunction and provisionally certified a class under Federal Rule of Civil Procedure 23(b)(2) with regard to Claim 2 of the FAC.

The Court defined the provisionally certified class as: "a class of noncitizen minors meeting the following criteria: (1) the noncitizen came to the country as an unaccompanied minor; (2) the noncitizen was previously detained in ORR custody and then released by ORR to a sponsor; (3) the noncitizen has been or will be rearrested by DHS on the basis of a removability warrant on or after April 1, 2017, on allegations of gang affiliation."

The Court's preliminary injunction required DHS to establish at a hearing before an immigration judge "to ensure that changed circumstances indeed justify the rearrest" ( "*Saravia* Hearings"). *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197-98 (N.D. Cal. 2017).

In January 2018, Defendants appealed the preliminary injunction order to the U.S. Court of Appeals for the Ninth Circuit. The District Court stayed proceedings pending the appeal. On October 1, 2018, the Ninth Circuit affirmed the preliminary injunction order. *See Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Plaintiff moved to clarify the class definition on November 9, 2018. The Court granted Plaintiff's motion, in part, and clarified the definition of the provisionally certified class on December 3, 2018. The Court stated the "provisional class" respecting Claim 2 "is not limited to minors who are taken into DHS custody solely on allegations of gang affiliation (and who otherwise meet the class definition), but rather includes those minors taken into custody based partly on allegations of gang affiliation." December 3, 2018 Order, ECF No. 173, at 1.

On November 15, 2018, Plaintiff filed a Second Amended Complaint ("SAC"), which, among other things, added new factual allegations based on information learned through discovery and events that had occurred following the Court's issuance of a preliminary injunction. *See* SAC, ECF No. 164. On November 29, 2018, Defendants moved to dismiss the SAC. The Court has not ruled on Defendants' motion to dismiss the SAC.

Plaintiff believes that the claims in the SAC have merit and that Plaintiff and the Class Members would be entitled to permanent relief at least as protective as that which is currently available under the preliminary injunction, as affirmed by the Ninth Circuit.

Defendants deny any and all liability of any kind to the Plaintiff or the Class Members. Defendants further make no admission that any Class Member suffered any harm, let alone harm from the actions of Defendants.

The Parties, however, have concluded that further litigation would be protracted and expensive for all Parties. After taking into account these factors, as well as the risks of further litigation, the Parties agreed to settle in the manner and upon the terms set forth in this Agreement.

The Parties believe this Agreement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Agreement after extensive arms-length negotiations, including through two Settlement Conferences with the Honorable Judge Laurel Beeler, which took place on July 16, 2019, and December 9, 2019.

Considering the benefits that Plaintiff and the Class Members will receive from settlement of the Action and the risks of litigation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and in the best interests of Plaintiff and the Class Members. Plaintiff has agreed that Defendants shall be released from the Released Equitable Claims pursuant to the terms and provisions of this Agreement and has agreed to the dismissal with prejudice of this Action and all Released Equitable Claims, as defined in Section I.R.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to the final approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Agreement, that the Released Equitable Claims shall be compromised, settled, forever released, barred, and dismissed with prejudice, upon and subject to the following terms and conditions:

## I. DEFINITIONS

Wherever used in this Agreement, the following terms have the meanings set forth below:

**A.** "**Action**" means the lawsuit captioned *Saravia* v. *Barr*, *et al.*, Case No. 3:17-cv-03615 (VC) (LB) (N.D. Cal.).

**B.** "**Claim 4 Benefits Subclass**" means the class for purposes of Plaintiff's Claim 4 shall be defined to include all Settlement Class Members who also applied for asylum, SIJ status, T or U nonimmigrant status, or a waiver of inadmissibility or application for adjustment of status that is related to such an application for asylum, SIJ status or T or U nonimmigrant status, before the age of 21, and had or will have an application for asylum, SIJ status, T or U nonimmigrant status, or a waiver of inadmissibility or adjustment of status that is related to such an application denied by USCIS when any information that the noncitizen is or may have been affiliated with a gang is a basis for the denial.

**C.** "**Class Counsel**" means counsel for Plaintiff and Class Members in this action, Martin S. Schenker, Ashley K. Corkery, and Evan G. Slovak (Cooley LLP); William Freeman and Sean Riordan (ACLU Foundation of Northern California); Stephen B. Kang (ACLU Immigrants' Rights Project); Holly S. Cooper (Law Offices of Holly Cooper); and Amy Belsher and Jessica Perry (New York Civil Liberties Union Foundation), and their successors.

**D.** "**Class Members**" means members of the Settlement Class.

**E.** "**Classwide Settlement**" means the settlement of the claims asserted by Plaintiff, on behalf of herself and others similarly situated, in the SAC, as reflected in this Agreement.

**F.** "**Defendants**" means William P. Barr, Attorney General of the United States; Chad R. Wolf, Acting Secretary of DHS; Tony H. Pham, Senior Official

Performing the Duties of the Director; Alex M. Azar II, Secretary of HHS; Lynn A. Johnson, Assistant Secretary for the Administration for Children and Families; Heidi H. Stirrup, Acting Director of ORR; Elicia Smith, Federal Field Specialist of the ORR; Joseph B. Edlow, Deputy Director for Policy, USCIS; and James McHenry, Director of EOIR, and their successors.

**G.** "**Effective Date**" means the date the Court issues an order finally approving this Agreement.

**H.** "**Final Fairness Hearing**" means the hearing at which the Court decides whether to approve the Classwide Settlement as being fair, reasonable and adequate.[1]

**I.** "**Government**" means the United States federal government agencies whose heads are named Defendants in the Action, including DHS, ICE, USCIS, HHS, ORR and EOIR.

**J.** "**Minor**" means any person under the age of 18 years. The term "minor" shall not include an emancipated minor or a person who has been incarcerated due to a conviction for a criminal offense as an adult. Defendants shall treat all persons who are under the age of 18 but not included within the definition of "minor" as adults for all purposes, including release on bond or recognizance.

**K.** "**Orders**" means Judge Chhabria's November 20, 2017 order granting Plaintiff's motion for a preliminary injunction (ECF No. 100) and December 3, 2018 order clarifying the class definition (ECF No. 173).

**L.** "**Party or Parties**" means, in the singular one of and in the plural all of Plaintiff and Defendants.

**M.** "**Plaintiff**" means Ilsa Saravia, as next friend for A.H., a minor at the time

---

[1] Counsel for Defendants shall not travel to San Francisco for the Fairness hearing, due to the inherent risks of travel related to the current COVID-19 pandemic.

Saravia filed the above-captioned matter.

**N.**     "**Plaintiff's Claims 1 and 2**" means Plaintiff's First Claim for Relief in the SAC, which challenges the Government's allegedly unlawful arrest of unaccompanied alien children ("UACs") released to a sponsor in violation of the Fourth Amendment and Plaintiff's Second Claim for Relief, which challenges the Government's alleged systematic deprivation of the liberty and family integrity rights of these sponsored UACs in violation of the Fifth Amendment and the Trafficking Victims Protection Reauthorization Act ( "TVPRA").

**O.**     "**Plaintiff's Claim 3**" means Plaintiff's Third Claim for Relief in the SAC, which challenges the Government's alleged restrictive placement of Class Members in secure and staff secure ORR facilities in violation of substantive due process.

**P.**     "**Plaintiff's Claim 4**" means Plaintiff's Fourth Claim for Relief in the SAC, which challenges the Government's alleged denial of immigration benefits based on unsubstantiated gang allegations, in violation of the Fifth Amendment and Administrative Procedure Act.

**Q.**     "**Released Equitable Claims**" includes all claims, demands, rights, liabilities and causes of action for declaratory or equitable relief, including injunctive relief, known or unknown, that:

**1.**     Relate to any alleged unlawful rearrest of Class Members on the basis of allegations of gang affiliation; and

**2.**     Existed prior to the Preliminary Approval of this Agreement, and which were or could have been alleged in the Action based on the same common nucleus of operative facts alleged and the arguments made by Plaintiff in the Action.

**R.**     "**Released Parties**" means Defendants in their official capacities, as well as

their past, present, or future department heads, inferior officers, employees, agents, representatives, or contractors.

**S.** "*Saravia* **Flowchart**" means the document attached as Appendix A, which ICE has committed to employ in determining Class Member eligibility in complying with the Orders and this Agreement.

**T.** "**Settlement Class**" means the class for purposes of Plaintiff's Claims 1-3, which shall be defined to include all noncitizen minors[2] meeting the following criteria: (1) the noncitizen minor came to the United States as an unaccompanied minor; (2) the noncitizen minor was previously detained in ORR custody and then released by ORR to a sponsor; and (3) the noncitizen minor has been or will be rearrested by DHS[3] on the basis of a removability warrant based in whole or in part on allegations of gang affiliation. This class expressly excludes arrests of noncitizen minors who already are subject to final orders of removal.

**U.** "**Subclass Member(s)**" means the members of the Claim 4 Benefits Subclass.

## II. SETTLEMENT RELIEF FOR PLAINTIFF'S CLAIMS 1 AND 2

**A.** The components of the settlement relief to be provided to the Class Members in connection with Plaintiff's Claims 1 and 2, including the continued implementation of the Orders, are set forth in this Section II and are to be provided by Defendants DHS, ICE, EOIR, HHS, and ORR.

---

[2] The Parties agree that the Settlement Class includes any children designated as "accompanied children" ("ACs") at the time of rearrest by Defendants, as long as such children otherwise meet the class definition.

[3] Most Class Members to date have been rearrested by ICE, and the Parties anticipate that ICE will remain the principal component within DHS that conducts rearrests. In the event a Class Member is rearrested by United States Custom and Border Protection ("CBP"), a component agency of DHS, the provisions of Section II.J will apply. The class expressly excludes individuals entering the United States who CBP encounters or apprehends at or near the border as a result of routine patrol or checkpoint operations.

**B.** ICE agrees to implement, or continue to implement, the following:

    **1.** _Saravia_ Flowchart

        **a.** Prior to effectuating an arrest of a noncitizen minor, or as proximate to the time of the arrest as possible due to exigent circumstances or encountering a minor in other circumstances outside of a law enforcement operation, Enforcement and Removal Operations ("ERO") and Homeland Security Investigations ("HSI") personnel will refer to the _Saravia_ Flowchart, attached as Appendix A, to determine Class Member eligibility in complying with the Orders.[4]

        **b.** ERO and HSI shall make available a version of the _Saravia_ Flowchart accessible to ICE law enforcement personnel for their review and use in the field.

        **c.** Nothing in this Agreement shall be construed as a concession by Plaintiff that the Flowchart's interpretation and application of the TVPRA, 8 U.S.C. 1232, is correct, including a concession that a given child is properly designated "accompanied" or "unaccompanied" under the Flowchart.

    **2.** Guidance/Broadcasts

        **a.** ICE agrees to continue to provide _Saravia_ job-aids, including a case summary, class definition, and resulting impact, to ICE's personnel and will update these job-aids consistent with this Agreement.

        **b.** ICE agrees to update the _Saravia_ broadcast that was provided

---

[4] By way of clarification, if the _Saravia_ Flowchart directs either "Case referred to ORR for placement" or "ICE custody," the decision maker will proceed to the specified steps to determine "Does Saravia apply?"

to the field with the terms of this Agreement and provide it to its workforce.

3. <u>Training</u>

   a. ICE agrees to continue to provide *Saravia* training to ICE's workforce and will update the training consistent with this Agreement.

   b. HSI also agrees to include *Saravia* settlement requirements and the *Saravia* Flowchart in its advanced gang training at the Federal Law Enforcement Training Center. HSI further agrees to provide its National Gang Unit group supervisors informative training about guidelines implementing this Agreement.

   c. ERO and HSI will provide Plaintiff's counsel with copies of all materials used in conjunction with the trainings referenced in (i) and (ii) above, subject to any privileges ERO and/or HSI may assert for the materials. Any invocation of privilege under this subparagraph shall be accompanied by a privilege log completed in a manner consistent with the Federal Rules of Civil Procedure.[5] The parties agree that any exchange of information will be governed by the provisions of the protective order entered in this case.

4. <u>HSI (or its successor organization) Operations</u>

   a. HSI agrees to include the following language in all operations plans generated through the Investigative Case Management system:

---

[5] These privilege logs will include, at minimum, custodian, date, to/from information, document description, document type, and privilege claim.

OPERATIONAL CONSIDERATIONS UNDER *SARAVIA v. BARR* SETTLEMENT AGREEMENT: *Saravia* class members include any noncitizen minor who (1) came to the United States as an unaccompanied alien child; (2) was previously in Department of Health and Human Services Office of Refugee Resettlement (ORR) custody and then released by ORR to a sponsor; and (3) has been or will be rearrested by ICE on the basis of a removability warrant based in whole or in part on allegations of gang affiliation. HSI must contact their local OPLA field office as soon as operationally possible when there is a probability of targeting or arresting a *Saravia* class member, or if a *Saravia* class member is identified after arrest. Under the terms of the settlement agreement, *Saravia* class members are entitled to expedited custody hearings and the government is required to prove that there has been change of circumstances to justify ICE's rearrest of the minor.

**b.** Pre-operation briefings/teleconferences held prior to operations will include:

**(1)** A notice for the briefing/teleconference sent to all HSI law enforcement participants, including the name, start date, and location of the operation, along with JFRMU and OPLA *Saravia* settlement agreement subject matter expert contact information.

**(2)** A copy of the *Saravia* Flowchart.

**(3)** ICE Headquarters and field personnel will participate in the briefings and/or teleconferences and *Saravia* subject matter experts will be available to field questions.

**(4)** OPLA will provide guidance regarding UACs who may be encountered as part of the operation and this Agreement.

**5.** <u>ERO Operations</u>

**a.** ERO will include in its operations plan guidance that discusses or summarizes *Saravia* and the requirement in identifying

11

Class Members and complying with the terms of this Agreement.

**(1)** The *Saravia* Flowchart and JFRMU subject matter expert contact information will be presented to ICE personnel participating in an operation.

**b.** ERO will include and abide by the following language in its operation plans:

During enforcement actions, officers may encounter minors who are unaccompanied alien children (UAC) or accompanied children (AC). If a minor is a UAC upon encounter the law requires that ICE notify ORR within 48 hours of the encounter and transfer the minor to Office of Refugee Resettlement (ORR) within 72 hours. AC's would be subject to ICE custody but only in very limited circumstances. However, specific requirements apply to minors who are Saravia class members. Any minor is potentially a Saravia class member and subject to the terms of the Saravia settlement agreement. The Saravia settlement may apply to all minors, not just UAC, if they had a prior encounter with DHS as a UAC and they were previously in ORR custody. *(See* Saravia Settlement Agreement, dated _____, 2020.) To the extent possible, officers should determine whether a minor is a Saravia class member prior to encounter. Upon encountering a minor, the local FOJC shall be contacted for guidance. If this person is unavailable, contact the local Office of the Principal Legal Advisor for guidance regarding the applicability of the TVPRA and to verify potential Saravia class membership. Prior to arresting the minor – or as close to the time of arrest as possible if exigent circumstances apply or if the encounter took place outside of a law enforcement operation – refer to the Saravia Flowchart to determine class member eligibility. Saravia class members whose circumstances have not changed since their last release from ORR, including UACs and ACs, will be placed by ERO officers in the care of an available sponsor to whom the UAC or AC was previously released, or to immediate family members who have no ascertainable criminal history and/or are not targets of the operation. If the minor is a UAC, officers should notify ORR at 202-401-5709 that the UAC was encountered within 48 hours of the encounter even if they cannot be apprehended due to Saravia requirements. If a UAC is placed under arrest, officers/agents should contact ORR upon completion of processing.

**C.** After a Class Member is rearrested, ICE will issue a notice (or the equivalent) of a *Saravia* Hearing (a "*Saravia* Notice"). Service and contents of the

12

*Saravia* Notice shall include the following:

1. ICE shall serve by U.S. mail, e-mail, or in person, the *Saravia* Notice on the Class Member's sponsor of record.

2. ICE shall provide the *Saravia* Notice to Class Counsel and the Class Member's immigration counsel, if any, at the time it is served on the Class Member's sponsor, or as soon as possible thereafter.

3. This *Saravia* Notice shall specify that the class member may select the venue where the *Saravia* Hearing is to take place: either jurisdiction of arrest, jurisdiction of residence, or jurisdiction of detention.

4. The *Saravia* Notice shall include the nature of the proceedings, the legal authority under which the proceedings are conducted, and the specific acts or conduct alleged that provide the authority for the rearrest.

5. The *Saravia* Notice will be served on the minor and his or her counsel, if any within 48 hours of rearrest.

D. ICE will file the Class Members' *Saravia* Notice with the immigration court in the jurisdiction of the Class Member's rearrest pursuant to Section II.C as soon as practicable. A Class Member who receives a *Saravia* Notice will be entitled to *Saravia* Hearing within ten (10) calendar days of rearrest, unless a continuance is granted or venue is changed as described in Section II.C.3 above and Section II.E below.

E. A Class Member who receives a *Saravia* Notice may request a continuance from the court presiding over the Class Member's docketed *Saravia* Hearing, including a request for an extension of time before the commencement of the hearing or following the conclusion of the Government's presentation of its evidence at the *Saravia* Hearing. ICE will not oppose the initial request for a continuance.

13

1. Notwithstanding the foregoing, a Class Member may also request a subsequent continuance or continuances for good cause shown. ICE may oppose a subsequent continuance or continuances.

2. If a scheduled *Saravia* Hearing must be postponed on the day of the proceeding by no fault of the Class Member, such as due to inclement weather, judicial adjournment (e.g., illness or sickness of the judge), or other similar situations, ICE will not oppose a continuance.

F. The venue for *Saravia* Hearings shall be as follows:

1. The *Saravia* Hearing will take place in the immigration court closest to the location of the Class Member's rearrest unless, within five days of receiving the notice of *Saravia* Hearing, the Class Member elects to have the hearing take place in the immigration court closest to the location of the Class Member's current detention or the location of the Class Member's residence. The noncitizen minor's filing of any such motion will restart the 10-day clock for conducting the *Saravia* Hearing.

2. If the noncitizen is in HHS custody, the noncitizen minor may select whether the *Saravia* Hearing will take place in the immigration court closest to the location of the care provider (current detention), in the immigration court closest to the location of rearrest, or in the immigration court closest to the location the minor's residence, except that a hearing will not be required to be held in the immigration court closest to the location or residence of rearrest if ORR certifies that there is no care provider willing to accept the noncitizen that is located within a three hours' drive of the immigration court for those jurisdictions.

3. All *Saravia* Hearing proceedings prior to the in-person *Saravia*

Hearing, such as requests for continuances, may be conducted by video teleconferencing ("VTC"), or teleconference.

**G.** The burden of proof at *Saravia* Hearings is on ICE to establish the circumstances have changed such that the Class Member now presents a danger to the community or is a flight risk, as defined by the Board of Immigration Appeals.

**H.** ICE shall have a procedure whereby the name and identifying information of any noncitizen minor detained by DHS, or who is a target for rearrest, is promptly queried against the appropriate databases of all sponsored noncitizen minors to determine whether the noncitizen minor was previously released to a sponsor by ORR, and otherwise qualifies as a Class Member, and should be entitled to a *Saravia* Hearing under the terms of this Agreement.

**I.** ICE agrees to ongoing, timely, and accurate reporting to Class Counsel regarding the rearrest of Class Members is required, including by serving any *Saravia* Notice at or immediately after the time it is issued, and promptly responding to Class Counsel's requests for information regarding the scheduling, status, or outcome of any *Saravia* Hearing.

**J.** In the event a Class Member is rearrested by CBP, CBP shall transfer any unaccompanied Class Member to ORR consistent with the provisions of the TVPRA, 8 U.S.C. 1232(b)(3). If the Class Member is accompanied, CBP shall transfer the Class Member to ICE within seventy-two hours, absent exceptional circumstances. The term "exceptional circumstances" as used in this paragraph shall have the same meaning as in 8 U.S.C. 1232(b)(3). The time for ICE or ORR to perform the obligations set forth in this Agreement shall begin to run from when the Class Member enters the custody of ICE or HHS (ORR).

15

## III. SETTLEMENT RELIEF FOR PLAINTIFF'S CLAIM 3

**A.** The components of the settlement relief to be provided to the members of the Settlement Class in connection with Plaintiff's Claim 3 are set forth in this Section III and are to be provided by Defendant ORR.

**B.** Where a prior sponsor is willing to resume custody over a Class Member who prevailed at a *Saravia* Hearing, and that Class Member was rearrested prior to the *Saravia* Hearing, that Class Member must be released to his or her sponsor within three (3) calendar days, except under circumstances described in Section III.C below.

**C.** ORR will not release a Class Member who prevailed at the *Saravia* Hearing to the previous sponsors, where:

**1.** The sponsor is physically not available anymore (e.g., removed or imprisoned or cannot be located or is not willing to take the minor back);

**2.** ORR has evidence that the prior sponsor, or individuals in the sponsor's household, are abusing or neglecting the Class Member or other child in the sponsor's home; or

**3.** The Class Member was previously released to a Category 2b or Category 3 sponsor but the Class Member was not living with his or her Category 2b or Category 3 sponsors immediately prior to arrest. For Class Members who are rearrested by ICE after serving time in a local jail, ORR will release to the previous Category 2b or Category 3 sponsor if the UAC was living with the Category 2b or Category 3 sponsor immediately prior to their arrest by local authorities.

**D.** For a Class Member who prevailed at the *Saravia* Hearing, but who is not released to the prior sponsor pursuant to Section III.C above, ORR will conduct sponsorship determination proceedings pursuant to the requirements

16

of the TVPRA and its policies for release to a sponsor, and any other applicable law. In connection with this process, ORR shall not use allegations of gang affiliation that served as a basis for arrest as a basis to deny the Class Member's release to a sponsor.

**E.**     A Class Member who prevails at his or her *Saravia* Hearing, but who cannot be released to the prior sponsor pursuant to Section III.C above, will be placed in a shelter if there is placement available in a shelter where the care provider is willing and able to accept the child. This Agreement does not affect ORR's ability to place Class Members in influx facilities if it has limited space available, and/or ORR's ability to place Class Members in RTCs if a licensed psychiatrist or psychologist has found that the child poses a danger to self or others. This Agreement similarly does not affect any Class Member's rights to challenge their placement in an influx facility or Residential Treatment Center (RTC) under any applicable law.

**F.**     For three years after the Effective Date of the Agreement, whenever ORR concludes that a Class Member cannot be returned to a prior sponsor, ORR will inform Class Counsel of the reasons why the sponsor cannot be returned within seventy-two (72) hours of reaching that conclusion, for the purpose of monitoring compliance with this Agreement.

**G.**     If the Class Member prevails at the *Saravia* Hearing, ORR cannot conclude that the Class Member's prior sponsor is no longer suitable, or is neglecting or abusing the child, based on the rationale that the prior sponsor is unable to prevent the Class Member from associating or affiliating with alleged gang members.

## IV.     SETTLEMENT RELIEF FOR PLAINTIFF'S CLAIM 4

**A.**     The components of the settlement relief to be provided to the members of the Claim 4 Benefits Subclass are set forth in this Section IV and are to be

provided by Defendant USCIS.

**B.** Programmatic Changes - SIJ Petitions

**1.** USCIS agrees it will not refuse its consent to a request for SIJ classification based in whole or in part on the fact that the state court did not consider or sufficiently consider evidence of the petitioner's gang affiliation when making its determination that it was not in the best interest of the child to return to his or her home country.

**2.** USCIS agrees that it will not revoke a petition for SIJ classification based in whole or in part on the fact that the state court's best interest determination was not made with consideration of the petitioner's gang affiliation.

**3.** USCIS agrees that it will not use its consent authority to reweigh the evidence the juvenile court considered when it issued the predicate order.

**4.** USCIS agrees that it will not refuse consent for SIJ classification on the basis that:

    **a.** the state court did not consider allegations of gang affiliation in deciding whether to issue a predicate order, or the application does not disclose sufficient information concerning whether the state court considered allegations of gang affiliation;

    **b.** the applicant did not present evidence of his gang affiliation to the state court, where gang-related issues were never raised to the state court and gang-related issues did not form a basis for any of the state court's findings in issuing the predicate order;

    **c.** USCIS considers the state court's evidentiary record incomplete, or cannot determine whether the state court's

18

evidentiary record was complete, on the subject of gang affiliation (for example, where the petitioner raised fear of gangs as a partial basis for the best interests finding, but the state court did not consider any evidence of petitioner's gang affiliation); and

    **d.**    the state court issued a predicate order after expressly considering evidence of the applicant's alleged gang affiliation, but USCIS deems that evidence was incomplete or cannot determine whether the state court record was complete (for example, where USCIS believes the applicant should have disclosed additional evidence of gang affiliation to the state court than is apparent in the record).

**5.**    This section will apply prospectively to all SIJ petitions, including those re-adjudicated pursuant to Section IV.C.1. below.

**C.**    The substantive eligibility criteria for immigration benefits shall be as follows:

    **1.**    Special Immigrant Juvenile ("SIJ") Classification

        **a.**    USCIS agrees to adjudicate SIJ petitions in accordance with provisions herein.

        **b.**    For any Subclass Members (as defined above) who identify themselves to USCIS by filing a no-cost motion to reopen that includes in bold on the I-290B "Saravia Class Member – FEE EXEMPT" or who the Parties jointly identify as qualifying Subclass Members as having received a SIJ revocation or denial, USCIS agrees to:

            **(1)**    set aside the SIJ revocations and denials to the extent USCIS's decision to withhold or revoke its consent to

grant SIJ classification was based at least in part on alleged gang affiliation; and

**(2)** to adjudicate their SIJ classification applications pursuant to the procedures set forth above.

**2.** Other immigration benefits shall be as follows:

**a.** An agreement from USCIS that it will not consider allegations of gang affiliation in determining Subclass Members' statutory eligibility for asylum, T or U nonimmigrant status, or waiver of inadmissibility or adjustment of status that is related to such an application for asylum, SIJ status or T or U nonimmigrant status, except to the extent permitted by the INA and other applicable law.

**b.** An agreement that when USCIS determines whether to grant, deny, or revoke a particular benefit to a Subclass Member as a matter of statutory eligibility (pursuant to the enumerated circumstances above) or in the exercise of discretion, and concludes that it intends to deny the benefit based at least in part on alleged gang affiliation, it will use the procedural requirements set forth herein before denying or revoking the benefit.

**c.** Subclass Members (as defined above) whose applications were denied or revoked at least in part due to allegations of gang affiliation prior to the Claim 4 Implementation Date may submit a no-cost motion to reconsider that includes in bold on the I-290B "Saravia Class Member – FEE EXEMPT." For these Subclass Members, USCIS agrees to re-open and adjudicate their benefits pursuant to the procedures set forth

herein.

**3.** The procedures for when USCIS seeks to use allegations of gang affiliation to deny or revoke immigration benefits shall be as follows:

    **a.** No conclusory third-party statement of a petitioner's gang membership or affiliation without additional evidence will be deemed sufficient evidence upon which USCIS will base a decision.

    **b.** Adequate notice shall be provided to the applicant before USCIS denies an immigration benefit partially or entirely on the basis of suspected gang affiliation.

        **(1)** An agreement from USCIS that if USCIS intends to deny or revoke a Subclass Member's application for an application for asylum, T or U nonimmigrant status, or a waiver of inadmissibility or application for adjustment of status that is related to such an application for asylum, SIJ status or T or U nonimmigrant status based even partially on suspected gang affiliation, USCIS must provide adequate notice of the basis of the denial or revocation and a meaningful opportunity to be heard before denying or revoking the benefit.

        **(2)** Adequate notice shall include, at a minimum, the following:

            **(a)** USCIS will send a Request for Evidence ("RFE"), Notice of Intent to Deny ("NOID"), or Notice of Intent to Revoke ("NOIR") to the applicant informing them of the agency's intent

21

to deny or revoke the benefit. If allegations of gang affiliation are even a partial basis for the denial or revocation, the agency will articulate the factual basis for the allegations of suspected gang affiliation at the time it issues the RFE, NOID, or NOIR.

**(b)** USCIS will provide the applicant to the maximum extent possible all evidence in USCIS's possession concerning gang allegations that it was aware of and relied on in its determination to issue said RFE, NOID, or NOIR to the extent allowed by 8 C.F.R. § 103.2 (b)(16)(iii)-(iv). This evidence may include, but is not limited to the following:

  **(i)** Gang memoranda in the applicant's A-file;

  **(ii)** Any I-213s that reference gang affiliation; and

  **(iii)** Documentary evidence in DHS's possession concerning the alleged gang affiliation.

**(c)** Where USCIS relies on evidence, documentary, recorded, or otherwise, to determine that the applicant is affiliated with a gang, but declines to produce the underlying evidence or records it has relied on to make that determination pursuant to 8 C.F.R. §§ 103.2 (b)(16)(iii)-(iv), USCIS shall provide, to the maximum extent

22

possible, a detailed description of that evidence in a manner sufficient to clearly identify the derogatory information and allow the applicant to rebut it. That description shall include, if appropriate: descriptions of the source, agency, or officer that provided the information; descriptions of any incidents of alleged conduct or criminal activity described in the evidence, and the dates they took place; and, to the extent possible, any indications as to whether the preparer of the evidence is making statements based on personal knowledge or that the evidence was based on the knowledge of people other than the preparer.

(d) The applicant may then respond to the evidence USCIS presents with rebuttal evidence sufficient to demonstrate, by a preponderance of the evidence, statutory eligibility or entitlement to a positive exercise of discretion to receive the benefit. The applicant will be given 87 days to respond to an RFE, 33 days to respond to a NOIR, and 33 days to respond to a NOID. Where the applicant may require additional time to respond due to circumstances beyond the applicant's control, such as obtaining evidence from a separate state or federal governmental agency, the applicant may apply to administratively close the case for

23

six months, and request that USCIS re-issue the RFE, NOID, or NOIR after the six months has elapsed.

**(e)**     USCIS procedures for making a discretionary decision shall provide for the weighing of all positive and negative factors.  A notice of intent to deny or revoke a benefit on the basis of discretion will provide the analysis of such positive and negative factors that could assist or potentially assist the applicant in rebutting the gang allegation.

**(f)**     Examples of relevant, probative, and credible rebuttal evidence include, but are not limited to:

**(i)**     Credible testimony that the applicant is not a gang member, which may be provided in the form of an interview with USCIS;

**(ii)**     Family and community support in the United States;

**(iii)**     Participation in secondary or post-secondary education;

**(iv)**     Existence of value and service to the community;

**(v)**     Proof of genuine rehabilitation (if the applicant was previously affiliated with a gang).

**(g)**     USCIS will review the applicant's rebuttal

24

evidence. If USCIS concludes that the applicant rebutted the gang allegations by a preponderance of the evidence, it will proceed with processing the benefit application.

**(h)** If USCIS concludes that the applicant did not rebut the gang allegations by a preponderance of the evidence, USCIS's decision will include an explanation of the basis for its conclusion in detail addressing each piece of rebuttal evidence that the applicant submits, and explain why that rebuttal evidence was insufficient to meet the applicant's burden.

**(i)** Any denial based at least in part upon evidence of gang affiliation will undergo secondary review before issuance.

**(j)** The applicant may then appeal the agency's denial of a petition for T or U nonimmigrant status, or adjustment of status for T or U nonimmigrants to the Administrative Appeals Office ("AAO") for appellate review. An applicant whose asylum application is referred to the Immigration Judge will have the opportunity for a de novo review of the application for asylum and any related adjustment and waiver applications over which the IJ has jurisdiction in removal proceedings.

**(k)** The RFE, NOID, or NOIR provided to any identified Subclass Member should inform the

applicant of the specific procedural rights granted under this settlement. A denial or revocation by USCIS will summarize the appropriate USCIS appeals process.

## V. RELEASE OF CLAIMS AND PRESERVATION OF DEFENSES

**A.** **Release**. Upon final approval of this Agreement by the Court, Plaintiff and all Class Members and Subclass Members waive and release all Released Parties from the Released Equitable Claims. Nothing in this Agreement shall have any preclusive effect on any damages claim by Plaintiff or any Class Member or Subclass Member, or any claim by Plaintiff or any Class Member or Subclass Member concerning any individualized challenges to their custody or denial/revocation of benefits.

**B.** **Preservation of Defenses.** By agreeing to this Agreement and the releases contained herein, Defendants do not waive any defenses available to any Defendant or the United States in any other pending or future action to claims that were or could have been made in the Action that arise from the same common nucleus of operative facts alleged by Plaintiff in his pleadings and the arguments made in the Action.

## VI. RETENTION OF JURISDICTION AND DISMISSAL

**A.** This Agreement shall become effective upon final court approval (the "Effective Date"). Promptly following the Effective Date, Plaintiff shall file a stipulated request for dismissal and judgment. This Action shall be dismissed upon the Court's approval of the stipulated request for dismissal and entry of judgment (the "Dismissal Date").

**B.** Notwithstanding such dismissal, the Court will retain jurisdiction following the Dismissal Date to interpret or enforce this Agreement and all terms of this Agreement shall remain in full force and effect for five (5) years following

the Dismissal Date, except as expressly provided in Section VI.C, below. The parties agree that the Agreement terminates at the conclusion of the five (5) year term. The Parties further agree that they shall jointly request that the stipulated request for dismissal and judgment shall provide as follows:

> The Court shall retain jurisdiction over all disputes between and among the Parties arising out of the Agreement, including but not limited to interpretation and enforcement of the terms of the Agreement, except as otherwise provided in the Agreement, for a term of five (5) years.

**C.**     For three (3) years following the Dismissal Date, Defendants will continue to provide the notices to Class Counsel required by Sections II.I and III.F. Thereafter, the *Saravia* Notice shall only be provided to the attorney or accredited representative identified on a properly executed and filed Form EOIR 28 or G-28 Notice of Entry of Appearance as Attorney or Accredited Representative and sponsor.  Any attorney or accredited representative appearing on behalf of a class member at the *Saravia* Hearing or in connection with an appeal to the Board of Immigration Appeals must also comply with all requirements for filing a Notice of Entry of Appearance with the Immigration Court or Board of Immigration Appeals as appropriate.

**VII.    DISPUTE RESOLUTION PROCEDURES.**

**A.**     **Disputes Regarding Implementation.** The Government will implement the terms laid out in Claims 1-3 of this Agreement within thirty (30) days of the Effective Date (the "Implementation Date").  USCIS will implement the terms laid out in Claim 4 within sixty (60) days of the Effective Date (the "Claim 4 Implementation Date").  Within ten (10) days of the Implementation Date and the Claim 4 Implementation Date, respectively, the Government will provide written reports confirming that it has implemented the terms of this Agreement and detailing the steps the Government has taken

to do so (the "Implementation Report"). For the purposes of Claim 4, implementation refers to the programmatic change outlined in Section IV.B, the acceptance of requests to re-open Class Member cases upon request as provided above, and the ability to adjudicate Class Member applications per the procedures outlined above. All Class Member applications will be adjudicated in the normal course of business and will not be given special priority over applications by non-Class Members.

1. If, after receiving an Implementation Report (or in the event the Government fails to timely provide an Implementation Report on either the Implementation Date or the Claim 4 Implementation Date), Plaintiff believes that any part of this Agreement has not been implemented or lacks sufficient information to determine whether the Agreement has been implemented, Plaintiff will provide the Government with written notice and an opportunity to cure any such failure within thirty (30) days of such written notice (the "Cure Period"). The Parties may agree to extend the Cure Period in writing.

2. If, after the expiration of the Cure Period (and any mutually agreed extensions thereof), Plaintiff believes that the Government has still failed to implement the terms of this Agreement or to provide the Implementation Report, either Party may seek review from Judge Beeler (or her successor, hereinafter, the "Mediator"). The Mediator shall be empowered to issue binding decisions and to order the Government to take specific measures necessary to implement the terms of this Agreement.

3. Notwithstanding the foregoing, if before the Cure Period Expires, Plaintiff has a good faith belief that immediate, irreparable harm to a Class Member or members is imminent and cannot be resolved within

the thirty (30) day time frame specified in Section VII.A.1, the Parties agree that Plaintiff need not wait for the expiration of the Cure Period and may seek the Mediator's immediate review.

**B.** **Disputes Regarding Compliance.** The Parties also acknowledge that disputes may arise as to the interpretation or scope of, or the Government's compliance with, the Agreement (or which otherwise arise out of or related to the Agreement), after the Implementation Date (a "Dispute").

**1.** If either Party has a good faith belief that the other Party is not in compliance with the requirements of this Agreement, the complaining Party shall promptly notify the other Party, in writing, of the specific grounds upon which noncompliance is alleged (the "Notice of Dispute"). The Notice of Dispute setting forth the disputed issue(s) shall be served on Plaintiff to:

STEPHEN KANG
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
skang@aclu.org

And on Defendants to:
NICOLE N. MURLEY
Senior Litigation Counsel
Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, D.C. 20044
Tel: (202) 616-0473
Email: Nicole.Murley@usdoj.gov

**2.** The Parties shall promptly meet and confer in a good faith effort to informally resolve the Dispute. Additionally, at any time upon or after serving a Notice of Dispute, either Party may reserve with the

Mediator a date for the telephonic mediation of the dispute ("Dispute Mediation"). The Dispute Mediation shall take place no fewer than ten (10) business days after the service of the Notice of Dispute, unless the Parties agree otherwise.

3. If the Dispute cannot be resolved within twenty (20) business days of the Notice of Dispute or the Mediator agrees that the Parties have reached a stalemate, then either Party may move to enforce the Agreement in the United States District Court for the Northern District of California. Notwithstanding the foregoing, the Parties may agree to extend the informal and formal mediation periods when appropriate.

4. The Parties agree that the statements or conduct occurring at or in conjunction with the mediation process described in Section VII.B.1-3 of the Agreement shall be confidential and that no public disclosure shall be made regarding statements made or conduct occurring in the mediation process at any time before, during, or after the mediation process. All documents and information disclosed by either Party during the mediation process shall not be admissible in any judicial proceeding. All statements or conclusions of the mediator shall not be admissible in any subsequent judicial proceeding. The parties may disclose the issues presented and, following the mediation, the final result may be disclosed.

5. If Plaintiff has a good faith belief that immediate, irreparable harm to a Class Member or Members is imminent and cannot be resolved within the time frames specified in Section VII.B—after first providing notice of harm to Defendants' Counsel—the Parties agree that Plaintiff may make an immediate application for relief to the

United States District Court for the Northern District of California.

## VIII. CLASSWIDE SETTLEMENT PROCEDURES

    **A.**    **Cooperation to Obtain Court Approval.** The Parties shall jointly make reasonable and good faith efforts to secure the Court's approval of the Classwide Settlement.

    **B.**    **Preliminary Approval and Provisional Class Certification.** Plaintiff shall prepare and file a motion seeking preliminary approval of the Classwide Settlement and provisional class certification no later than September 25, 2020, and set the preliminary approval hearing for October 15, 2020, at 10:00 a.m., or as soon thereafter as may be convenient for or directed by the Court. The motion for preliminary approval of the Classwide Settlement and provisional class certification must request the Court to:

        **1.**    Preliminarily approve the Classwide Settlement as being within the range of a fair, reasonable, and adequate settlement within the meaning of Federal Rule of Civil Procedure 23 and applicable law, and consistent with due process;

        **2.**    Preliminarily approve the certification of the Settlement Class and the Claim 4 Benefits Subclass;

        **3.**    Appoint Plaintiff as class representative;

        **4.**    Appoint Martin S. Schenker, Ashley K. Corkery, and Evan G. Slovak (Cooley LLP), William Freeman and Sean Riordan (ACLU Foundation of Northern California), Stephen B. Kang (ACLU Immigrants' Rights Project), Holly S. Cooper (Law Offices of Holly Cooper), and Amy Belsher and Jessica Perry (New York Civil Liberties Union Foundation) as Class Counsel;

        **5.**    Approve the Notice Plan set forth in Section VIII.C;

        **6.**    Set the date and time of the Final Fairness Hearing; and

**7.**     Stay all proceedings in the Action against Defendants until the Court renders a final decision on approval of the Classwide Settlement.

**C.**     **Notice.** The Parties will propose to the Court that the Class Notice shall be given to the Class Members upon preliminary approval of the Settlement via the following means:

**1.**     The Class Notice shall be substantially in the form of **Exhibit A** to this Agreement.

**2.**     Within fourteen (14) days of the Court's preliminary approval of the Settlement:

   **a.**     Defendants shall compile a list of the following individuals: all existing Settlement Class Members who are under 18 years of age at the time the Class Notice is sent; all Claim 4 Benefits Subclass Members, and all children who Defendants previously identified as Class Members ("Class List"). This List will contain the following information: the Class or Subclass Member's name; last known address (if any); last known address of the Class or Subclass Member's sponsor (if any); and last known address of any attorney who is currently entered as counsel before DHS, USCIS, or EOIR for the Class or Subclass Member.

   **b.**     Defendants will send a copy of the Class Notice directly via U.S. Mail to the last known address (if any), or to the last known address of the sponsor (if any), of all individuals on the Class List, as well as the last known address of any attorney who is currently entered as counsel before DHS, USCIS, or EOIR for an individual on the Class List.[6]

---

[6] All mailed and posted Class Notices shall include the Spanish translations provided by

c.     Defendants will provide Plaintiff with a copy of the Class List.

3.     In addition, the Class Notice shall be distributed by publication as follows, within seven (7) days of preliminary approval of the Settlement:

a.     Defendants shall post a copy of the Class Notice in a reasonably accessible location on a website controlled by Defendants in accessible formats in English and Spanish.

b.     Defendants shall post a copy of the Class Notice in a reasonably accessible location in all ORR secure, staff-secure facilities, and residential treatment centers, and any DHS facilities where Settlement Class Members are reasonably likely to be held after rearrest. Within seven (7) days of preliminary approval, Defendants shall provide Plaintiffs with a list of all ORR and DHS facilities where they have posted the Class Notice. Plaintiff may then propose other ORR and DHS facilities they reasonably believe are likely to hold Settlement Class Members after rearrest, and the parties will meet and confer concerning whether the Class Notice should be posted in those additional facilities.

c.     Plaintiff shall post a copy of the Class Notice on the websites of the National ACLU, ACLU of Northern California, and New York Civil Liberties Union Foundation in accessible formats in English and Spanish;

d.     Plaintiff shall disseminate the Class Notice and Agreement to all attorneys who have previously represented children at Saravia Hearings, and are known to Class Counsel. Plaintiff

Plaintiff and agreed to by the Parties.

will also disseminate the Class Notice and Agreement via electronic mail list-servs of attorneys who provide immigration legal services to children. Any notices posted on websites shall remain posted for no less than sixty (60) days. The Parties will advise the Court as part of the motion for Final Approval confirming that notice has been issued according to this Section.

4. The Parties will make best efforts to agree to amend the Class Notice and notice procedures as required by the Court in order to obtain Court approval and adoption of the terms of this Agreement in a final order in this case.

5. Nothing in this paragraph or this Agreement shall prevent Class Counsel from further disseminating the Class Notice to, *inter alia*, other non-profit organizations and/or legal services providers. Additionally, nothing in this paragraph or this Agreement shall prevent Class Counsel from issuing any press release regarding this Agreement or otherwise obtaining press attention for the Agreement.

D. **Objections.** Any Class Member who wishes to object to the fairness, reasonableness or adequacy of the class relief set forth in Sections II-IV of this Agreement must mail them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Division, or file them in person at any location of the United States District Court for the Northern District of California within forty-five (45) calendar days after the date the Notice mailing described in Section VIII.C.3.b is complete. The delivery date is deemed to be the date the objection is deposited in the U.S. Mail or international mail as evidenced by the postmark. Written objections must be verified by a declaration under penalty of perjury or a sworn affidavit

and must include: (a) the name and case number of the Action, (b) the full name, address, and telephone number of the person objecting; (c) a statement of each objection; and (d) a written brief detailing the specific reasons, if any, for each objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection(s). Any Class Member who submits a written objection, as described in this paragraph, has the option to appear at the Final Fairness Hearing, either in person or through counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Classwide Settlement. If a Class Member makes an objection through an attorney, the Class Member shall be responsible for his or her personal attorneys' fees and costs.

E. **Final Order Approving Classwide Settlement.** Before the Final Fairness Hearing, Plaintiff must apply for Court approval of a proposed Final Order. In support of the Final Approval Order, the parties shall provide the Court with declarations attesting to the notice procedures utilized.

F. **Notice of Final Approval**. Upon Final Approval of the Settlement, the Parties shall provide notice of Final Approval to the Class by the following means:

   1. Meeting and conferring concerning language for a final Class Notice (in English and Spanish), and a shortened version of that Notice for posting in ORR and DHS facilities, within seven (7) days of Final Approval;

   2. Posting Updated Class Notice (in English and Spanish), to the same websites and distribution lists as set forth in Section VIII.C.3

   3. Within 30 days from the date of Final Approval of the Settlement, Defendants will mail the Updated Class Notice (in English and

Spanish) to each individual on the Class List, and the last known address of any attorney who is currently entered as counsel before DHS, USCIS, or EOIR for the Class or Subclass Member. Defendants will confirm to Class Counsel via email that such mailing has been sent within five (5) business days of mailing.

4. Defendants will also post and make available the shortened version of the Updated Class Notice in all facilities described in Section VIII.3.C.b. Should the Parties become aware of other facilities that are reasonably likely to hold Class Members, the Parties will meet and confer on an ongoing basis concerning posting the updated Class Notice in those facilities.

## IX. ADDITIONAL PROVISIONS

A. **No Admission of Wrongdoing.** This Agreement, whether or not executed, and any proceedings taken pursuant to it:

1. shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiff or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants; or any admission by the Defendants of any violations of, or failure to comply with, the Constitution, laws or regulations; and

2. shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against any of the parties to this Agreement, in any

other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, Defendants may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

**B.** **Real Parties in Interest.**  In executing this Agreement, the Parties warrant and represent that they, including Plaintiff in her representative capacity on behalf of the Class Members and Subclass members, are the only persons having any interest in the claims asserted in this Action.  Neither these claims, nor any part of these claims, have been assigned, granted, or transferred in any way to any other person, firm, or entity.

**C.** **Voluntary Agreement.**  The Parties executed this Agreement voluntarily and without duress or undue influence.

**D.** **Binding on Successors.**  This Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives, including those which may result from a reorganization of the relevant Government agencies.

**E.** **Authorization.**  Each Party warrants and represents that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**F.** **Entire Agreement.**  This Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action.  This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

**G.** **Exhibits.**  The exhibits to this Agreement are integral parts of the Agreement

and the settlement and are incorporated into this Agreement as though fully set forth in the Agreement.

**H.** **Modifications and Amendments.** No amendment, change, or modification to this Agreement shall be valid unless in writing signed by the Parties or their counsel.

**I.** **Governing Law.** This Agreement is governed by federal law and must be interpreted under federal law and without regard to conflict of laws principles.

**J.** **Further Assurances.** The Parties must execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Agreement and to carry out this Agreement's expressed intent.

**K.** **Execution Date.** This Agreement is deemed executed on the date the Agreement is signed by all of the undersigned.

**L.** **Counterparts.** This Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitute one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies or PDFs of executed copies of this Agreement may be treated as originals.

**M.** **Recitals.** The Recitals are incorporated by this reference and are part of the Agreement.

**N.** **Severability.** If any provision of this settlement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement shall continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt in good faith to renegotiate the provision of this Settlement that was declared invalid, void or unenforceable.

**O.** **Deadlines**.  All deadlines in this Agreement will be calculated in accordance with the guidelines set forth in Federal Rule of Civil Procedure 6(a).

**P.** **Force Majeure.**  Any Defendant(s) shall be excused from compliance with the terms and conditions of this Agreement and required by the Implementation Date to the extent and for such time that performance is impossible or impracticable by circumstances that it either could not have reasonably anticipated or is beyond its reasonable control, including, but not limited to, any act of God, pandemic disease, fire, flood, earthquake, explosion, war, or terrorist attack (a "Force Majeure Event").  Any Defendant seeking an extension from compliance due to the occurrence of a Force Majeure Event must notify Plaintiff by email as soon as reasonably possible (but in all events no later than three business days) after the occurrence of the Force Majeure Event, specifying the nature and extent of the Force Majeure Event, the anticipated duration of such Defendant(s)'s inability to fully perform hereunder as a result of such Force Majeure Event, and the efforts such Defendant(s) is undertaking to mitigate the impact of the Force Majeure Event.  A Defendant(s) whose performance hereunder is impacted by a Force Majeure event must undertake diligent efforts to minimize the impact of such Force Majeure Event on its performance.  Performance hereunder shall not be excused for delays to the extent they have occurred regardless of a Force Majeure Event.

The undersigned, by their signatures on behalf of Plaintiff and Defendants, warrant that upon execution of this Agreement in their representative capacities, their principals, agents, assignees, employees, successors, and those working for or on behalf of Defendants and Plaintiff shall be fully and unequivocally bound hereunder to the full extent authorized by law.

Dated: _____, 2020                    COOLEY LLP


                                           By: _____
                                               Martin S. Schenker

Dated: _____, 2020                    AMERICAN CIVIL LIBERTIES UNION
                                           IMMIGRANTS' RIGHTS PROJECT


                                           By: _____
                                               Stephen B. Kang

Dated: _____, 2020                    AMERICAN CIVIL LIBERTIES UNION
                                           FOUNDATION OF NORTHERN CALIFORNIA


                                           By: _____
                                               William S. Freeman

Dated: _____, 2020                    LAW OFFICES OF HOLLY COOPER


                                           By: _____
                                               Holly S. Cooper

Dated: _____, 2020                    NEW YORK CIVIL LIBERTIES UNION
                                           FOUNDATION


                                           By: _____
                                               Amy Belsher
                                               *Attorneys for Petitioner/Plaintiff*

Dated: _____, 2020    UNITED STATES DEPARTMENT OF JUSTICE


By: _____
   Nicole N. Murley
   *Counsel for Respondents/Defendants*

# Exhibit A

# *SARAVIA V. BARR* – NOTICE OF PROPOSED SETTLEMENT

**If you are a non-citizen minor who came to the United States as an unaccompanied child, was released from government custody, and then re-arrested by immigration authorities under suspicion of gang membership, your rights may be affected by a proposed class action settlement.**

A proposed settlement has been reached in a class action lawsuit called *Saravia v. Barr*, Case No. 3:17-cv-03615 (N.D. Cal.). This lawsuit is about the rights of noncitizen minors who were once detained in U.S. government custody by the Office of Refugee Resettlement ("ORR"), released to parents or other sponsors in the United States, and then re-arrested by the government based on allegations of gang membership or affiliation. The parties in the lawsuit have proposed to settle the case, and a federal court must decide whether to approve the settlement.

This Notice will tell you about your rights under this proposed settlement. You are not being sued, and this is not an advertisement. If you think this Settlement relates to you, please read.

## What is the lawsuit about?

*Saravia v. Barr* is a federal court case brought on behalf of a class of noncitizen minors who entered the United States as unaccompanied minors, were detained by ORR, were released to a parent or other sponsor, and were later rearrested by immigration officials based on allegations of gang affiliation. A case like this is brought on behalf of a whole group of people who are alleging similar legal disputes.

The case alleges that the rearrest and detention of, and denial of immigration benefits to, these minors violates the U.S. Constitution, the Trafficking Victims Protection Reauthorization Act ( "TVPRA"), and other laws. In November 2017, a federal Judge issued an order requiring that the government provide Class Members with a hearing before an immigration judge within seven days of their rearrest (called a "Saravia Hearing"). See *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197-98 (N.D. Cal. 2017).

After additional litigation, Plaintiff and the government subsequently agreed to a settlement, which will (1) provide Class Members with the right to a Saravia Hearing pursuant to certain procedures, and (2) provide certain rights to Class Members with respect to their applications for certain immigration benefits, including applications for asylum, Special Immigrant Juvenile ( "SIJ") status, or T or U nonimmigrant status.

The government denies any wrongdoing, but is settling the case in order to avoid the expense and resources to keep fighting the case. The Plaintiff and their attorneys believe that the Settlement provides important rights and benefits for the Class, and that it is in the best interests of the Class to settle the case, while avoiding the expense and delay of continuing to litigate the case.

## Who is included?

There are two groups of people who will have rights under this Settlement. You may be a "Class Member," and you may also be a "Subclass Member."

You may be a Class Member if you:

> Are a noncitizen minor;
> Came to the United States as an unaccompanied minor;
> Were previously detained in Office of Refugee Resettlement ("ORR") custody and then released to a parent or other sponsor;
> Were rearrested by the Department of Homeland Security ("DHS") based, in whole or in part, on allegations of gang affiliation; and
> were not subject to a final order of removal.

You may also be a Subclass Member if you:

> Are or were a Class Member as described above; and
> Applied for asylum, Special Immigrant Status ("SIJ"), T or U nonimmigrant status, or a waiver of inadmissibility or application for adjustment of status that is related to an application for asylum, SIJ status, or T or U nonimmigrant status, before the age of 21; and
> Your application was denied by United States Citizenship and Immigrant Services ( "USCIS") when any information that you are or may have been affiliated with a gang is the basis for the denial.

## What rights does the settlement provide?

<u>This is only a summary of the Settlement.  If you want to know more, you should read the Settlement or talk to your lawyer to learn more about it.</u>

The Settlement affects the U.S. government's authority to arrest or detain the Class Members. Among other things, the Settlement Agreement requires that the U.S. government will:

> Adopt policies and procedures for how ICE arrests minors who are suspected of being gang members or affiliates.  These policies require ICE to follow guidance in determining before any operation whether any unaccompanied alien children ("UAC") may be encountered.  If ICE arrests a UAC, ICE must contact other ICE officers and lawyers for guidance concerning the legal requirements that apply to the arrest or detention of Class Members.  If the Class Member's circumstances have not changed since their last release from ORR, the Class Member will be released to the prior sponsor they were released to, or to immediate family members who have no ascertainable criminal history and/or were not targets of the operation.
> Ensure that ICE officers are trained on the procedures and policies for arresting Class Members.

If a Class Member is arrested, the Settlement ensures that he or she will get a hearing before an immigration judge where they can argue that he or she should not be detained. The Settlement requires that the hearing will follow these rules:

The hearing must take place within ten days of the rearrest, unless the Class Member wants more time to get ready for the hearing or find a lawyer for the hearing.

The government will give the Class Member notice and information explaining the nature of the proceedings. This notice must be given to the Class Member and his or her counsel within 48 hours of the rearrest.

The Class Member will also have the right to select where the hearing will take place.

- o If the Class Member is in ICE detention, the hearing will take place in the place of the immigration court nearest to the Class Member's rearrest, unless within five days, the Class Member chooses to have the hearing take place in the immigration court nearest to where they are currently detained, or the place where they lived before they were arrested.

- o If the Class Member is in ORR detention, the Class Member can choose whether to have the hearing in the immigration court nearest to the place they are currently detained, or where they were rearrested, or where the Class Member was living before they were rearrested, unless there is no ORR facility willing to accept the minor within three hours' drive of the immigration court where the Class Member was rearrested or living before they were rearrested.

At this hearing, the government has the burden to show how the circumstances have changed since the Class Member was released to his or her sponsor such that the Class Member is either a danger to the community or is a flight risk justifying his/her detention. The Class Member has the right to hire a lawyer for that hearing, or to ask for time to find a lawyer.

If a Class Member wins their hearing, the Class Member must be released to their previous sponsor, or if in ICE's custody a parent or legal guardian, within three (3) calendar days, except where the sponsor is either unable or unfit to reassume custody.

If the previous sponsor is not available anymore, or ORR has evidence that the prior sponsor, or others in the sponsors household, are abusing or neglecting the Class Member or other children living with them, or (in some cases) the child was not living with the prior sponsor before rearrest, ORR will evaluate whether the child can be released to a new sponsor.

Any Class Member who is not released within three (3) days will be put in a shelter if there is one available to take the child.

The Settlement also sets procedures for Subclass Members who applied for certain immigration benefits before USCIS, and were denied those benefits because the government accused them of being gang members or affiliates.

The benefits at issue are Special Immigrant Juvenile Status, T-visas, U-visas, and asylum. The Settlement does not involve other immigration benefits, and does not involve immigration benefits that you apply for in immigration court.

The Settlement requires the government to:

Adopt policies and procedures for Subclass Members who apply for Special Immigration Juvenile Status, which affects USCIS's ability to rely on allegations of gang affiliation or membership to deny immigration benefits.

Give Subclass Members notice and evidence, or a summary of evidence, if the government wants to deny immigration benefits based on allegations of gang affiliation.

Give Subclass Members the chance to respond with their own arguments and evidence.

Give any Subclass Member who was previously denied an immigration benefit based on allegations of gang affiliation the chance to apply for a new decision.

The Settlement Agreement does not provide any monetary payments to Class Members, but also does not prevent Class Members from filing other lawsuits seeking money for harms they may have suffered due to the facts in the lawsuit.

If the Settlement Agreement is approved, Class Members will settle the legal claims identified in the Agreement and agree to stop fighting this lawsuit. All of the terms of the proposed Settlement are subject to Court approval at a "Final Approval Hearing" which is explained below. A copy of the Settlement Agreement is available at _____, or, if this Notice was mailed, is enclosed.

## You have the right to object to the Settlement.

If you like the Settlement's terms, you don't have to do anything.

If you are not satisfied with the Settlement, you do not have the right to opt out of it. But you do have the right to ask the Court to deny approval for the Settlement by filing an objection. If the Court denies approval, the lawsuit will continue. If that is what you want to happen, you must object. You may object to the proposed settlement in writing. If you object in writing, you may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

All written objections and supporting papers must:

Clearly identify the following case name and number: *Saravia v. Barr*, Case No. 3:17-cv-03615 (N.D. Cal.);

Be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and

Be filed or postmarked on or before _____, 2020.

## When and where will the Court decide whether to approve the Settlement?

The Final Approval Hearing will be held on _____, 2020, at _____ AM/PM at Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, to determine the fairness,

reasonableness, and adequacy of the proposed Settlement.  The date may change without further notice to the class.

## Where can I get more information?

This notice summarizes the proposed settlement.  For the full terms of the settlement, please see the attached Settlement Agreement.  You should feel free to talk to your lawyer if you want to know more about the Settlement.

The Settlement Agreement is also available at the following websites:  <mark>WEBSITES</mark>

You can also contact Class Counsel at these mail or email addresses:

Stephen Kang
ACLU IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA  94111
skang@aclu.org

Ashley Corkery
COOLEY LLP
101 California St., 5th Floor
San Francisco, CA 94111
acorkery@cooley.com

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco Division, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.


**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

## Class Counsel

Proposed Class Counsel for Settlement Class:

Martin S. Schenker
Ashley K. Corkery
Evan G. Slovak
COOLEY LLP
101 California St., 5th Floor
San Francisco, CA 94111

Stephen B. Kang
AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA  94111

William S. Freeman
Sean Riordan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA  94111

Holly S. Cooper
LAW OFFICES OF HOLLY COOPER
P.O. Box 4358
Davis, CA 95617

Amy Belsher
Jessica Perry
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004